**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NICOLE HARRIS,** | ) | **No:    1:14-cv-04391** |
| | ) | |
| **Plaintiff,** | ) | **Judge John W. Darrah** |
| | ) | |
| **v.** | ) | **Magistrate Susan E Co** |
| | ) | |
| **CITY OF CHICAGO, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**FILED**
**12/15/2014**
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**PLAINTIFF NICOLE HARRIS' OPPOSITION**
**TO THE DEFENDANT OFFICERS AND CITY'S MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

SUMMARY OF FACTUAL ALLEGATIONS ............................................................... 2

    **A.  Jaquari Dancy's Death on May 14, 2005** .................................................. 2

    **B.  Ms. Harris' Twenty-Eight Hour Interrogation** ...................................... 3

        1. Ms. Harris' Interrogation at Area 5 Police Headquarters ............................. 3

        2. Evidence Exonerating Ms. Harris of Jaquari's Death ................................... 4

        3. The Polygraph Examination and the Fabricated Confession ......................... 5

    **C.  Ms. Harris' Exoneration on the Basis of Innocence** ................................ 7

ARGUMENT ..................................................................................................................... 8

**I.  MS. HARRIS' COMPLAINT STATES A CLAIM FOR VIOLATION OF HER FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL** ................................. 8

    **A.  Police Defendants Violated Ms. Harris' Due Process Right When They Fabricated Her Confession and Other Evidence to Wrongfully Convict Her.** ......... 8

    **B.  Ms. Harris Has a Viable Claim That Police Defendants Suppressed Exculpatory Evidence in Violation of Her Rights under Brady.** .................................. 12

**II.  MS. HARRIS' CLAIM THAT SHE WAS COERCED INTO CONFESSING, IN VIOLATION OF HER FIFTH AND FOURTEENTH AMENDMENT RIGHTS, IS BOTH TIMELY AND CLEARLY ESTABLISHED.** ................................... 14

    **A.  Ms. Harris' Coerced Confession Claim is Timely.** ................................... 14

    **B.  Ms. Harris Properly Sets Forth a Coercive Interrogation Claim in Count II and Police Defendants Are Not Shielded by Qualified Immunity.** ............ 17

**III.  DEFENDANT BARTIK WAS PERSONALLY INVOLVED IN COERCING MS. HARRIS INTO GIVING A KNOWINGLY FALSE AND FABRICATED CONFESSION.** ......................................................................................... 22

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................. 18

*Andrews v. Burge*, 660 F. Supp. 2d 868 (N.D. Ill. 2009) .............................................. 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 8

*Bianchi v. McQueen,* 2014 U.S. Dist. LEXIS 22736 (N.D. Ill. Feb. 24, 2014) .............. 11

*Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996) ............................................................ 16

*Boyd v. City of Chi.,* 2014 U.S. Dist. LEXIS 113757 (N.D. Ill. Aug. 6, 2014) ............ 11, 12

*Britton v. Maloney,* 196 F.3d 24 (1st Cir. 1999) ........................................................... 9

*Brown v. Mississippi,* 297 U.S. 278 (1936) ............................................................... 17, 18

*Cannon v. Burge*, 2006 U.S. Dist. LEXIS 4040 (N.D. Ill. J. Feb. 2, 2006) .................... 13

*Castillo v. Zuniga*, 2002 U.S. Dist. LEXIS 4261 (N.D. Ill. Mar. 14, 2002) .................. 10

*Chavez v. Martinez*, 538 U.S. 760 (2003) ................................................................. 17, 20

*Devereaux v. Abbey,* 263 F.3d 1070 (9th Cir. 2001) .................................................... 10

*Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008) .................................................. 9

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) ...................................................... 9, 11

*Fox v. De Soto*, 489 F3d 227 (6th Cir. 2007) ............................................................... 9

*Fox v. Hayes,* 04-7309, Doc. No. 588, p. 23 ................................................................ 20

*Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010) ................................................ 1, 10, 11, 20

*Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2000) ......................................................... 13

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) .......................................................... 9

*Heck v. Humphrey*, 512 U.S. 477 (1994) ................................................................... 14

*Hill v. City of Chi.*, 2007 U.S. Dist. LEXIS 40211 (N.D. Ill. May 10, 2007)........................ 15, 19

*Hobbs v. Cappelluti,* 899 F. Supp. 2d 738 (N.D. Ill. 2012) ......................................... 19

*Holland v. McGinnis,* 963 F. 2d 1044 (7th Cir. 1992)................................................... 18

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........................................................................... 22

*Howard v. City of Chi.*, 2004 U.S. Dist. LEXIS 21537 (N.D. Ill. Oct. 22, 2004) ................. 13, 16

*Ienco v. City of Chi.*, 286 F.3d 994 (7th Cir. 2002) ....................................................... 13

*Jacobs v. Siller*, 215 F.3d 758 (7th Cir. 2000)................................................................ 18

*Johnson v. Village of Riverdale*, 192 F. Supp. 2d 874 (N.D. Ill 2002)......................................... 16

*Jones v. City of Chi.*, 856 F.2d 985 (7th Cir. 1988) ........................................................ 13

*Julian v. Hanna*, 732 F.3d 842 (7th Cir. 2013)............................................................... 12

*Koh v. Graf,* 2013 U.S. Dist. LEXIS 136341 (N.D. Ill. 2013) ..................................... 19

*Landstrom v. Illinois DCFS*, 892 F.2d 670 (7th Cir. 1990) ......................................... 18

*Limone v. Condon,* 372 F.3d 39 (1st Cir. 2004) ......................................................... 10

*Lynumn v. Illinois*, 372 U.S. 528 (1963)....................................................................... 18

*Mack v. Klotza,* 769 F.3d 517 (7th Cir. 2014) ...................................................... 15, 16

*Manning v. Miller*, 355 F.3d, 1028 (7th Cir. 2004) ..................................................... 9

*McCann v. Manglialardi*, 337 F.3d 782 (7th Cir. 2003) ......................................... 10, 11

*Miller v. Fenton,* 796 F.2d 598 (3d Cir. 1986) ............................................................. 19

*Miranda v. Arizona*, 384 U.S. 436 (1996) ................................................................... 18

*Moore v. Burge*, 2014 U.S. App. LEXIS 21530 (7th Cir. Nov. 13, 2014) ..................... 16

*Newsome v. McCabe*, 256 F.3d 750 (7th Cir. 2001) ...................................... 10, 13, 17

*Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2002)..................................................... 13

*Novitsky v. City of Aurora*, 491 F.3d 1244 (10th Cir. 2007)........................................... 9

*Orange v. Burge*, 2005 U.S. Dist. LEXIS 7234 (N.D. Ill. Mar. 30, 2005) ............................ 13, 16

*Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. 2004) ...................................................... 13, 16

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................................. 18

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) .............................................................. 12

*Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123 (2d Cir. 1997) ..................................................... 10

*Rogers v. Richmond,* 365 U.S. 534 (1961) ................................................................................... 19

*Rollins v. Willett*, 2014 U.S. App. LEXIS 20147 (7th Cir. Oct. 21, 2014) ................................. 16

*Santiago v. Walls*, 599 F.3d 749 (7th Cir. 2010) .......................................................................... 8

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................................... 18

*Saunders v. City of Chi.*, 2014 U.S. Dist. LEXIS 94249 (N.D. Ill. Jul. 11, 2014) .............. 9, 11, 12

*Scott v. City of Chi.*, 2010 U.S. Dist. LEXIS 52 (N.D. Ill. Jan. 4, 2010) ...................................... 15

*Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006) ................................ 13, 17, 19, 21

*Spano v. N.Y.,* 360 U.S. 315 (1959) ............................................................................................. 19

*Sparing v. Village of Olympia Fields*, 266 F.3d 684 (7th Cir. 2001) ........................................... 18

*Tillman v. Burge*, 813 F. Supp. 2d 946 (N.D. Ill. 2011) .................................................... 13, 14, 15

*U.S. v. Lochmondy,* 890 F.2d 817 (6th Cir. 1989) ....................................................................... 10

*U.S. v. Tingle*, 658 F.2d 1332 (9th Cir. 1981)............................................................................... 21

*Viilo v. Eyre*, 547 F.3d 707 (7th Cir. 2008) ................................................................................. 18

*Walden v. City of Chi.*, 391 F. Supp. 2d 660 (N.D. Ill. 2005)...................................................... 15

*Wallace v. City of Chi.* 440 F.3d 421 (7th Cir. 2006) .................................................................. 14

*Wallace v. Kato*, 549 U.S. 384 (2007) .................................................................................. 14, 15

*Whitlock v. Bruegemann*, 682 F.3d 567 (7th Cir. 2012) ........................................................... 9, 11

*Wiley v. City of Chicago*, 361 F.3d 994 (7th Cir. 2004) ................................................................ 9

iv

*Williams v. Liberty*, 461 F.2d 325 (7th Cir. 1972) ........................................................................ 18

*Wilson v. Lawrence Cnty.,* 260 F.3d 946 (8th Cir. 2001) ............................................................. 10

*Wood v. Kessler*, 323 F.3d 872 (11th Cir. 2003) ........................................................................... 9

*Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir. 2000) ................................................................... 8

**Statutes**

735 ILCS 5/2-702 ........................................................................................................................... 1

FED. R. CIV. P. 8(a)(2) ................................................................................................................... 8

## INTRODUCTION

"The central event underlying this case evokes what is surely every parent's most visceral fear." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). In the midst of Plaintiff Nicole Harris' unthinkable trauma, unexpectedly and tragically losing her four-year old son Jaquari, Chicago Police detectives embroiled her in a whole new nightmare – they falsely accused her of his murder and set in motion her wrongful conviction for the death of her own beloved child. Harris, who has now been exonerated and received a Certificate of Innocence under 735 ILCS 5/2-702, brings this action against the City of Chicago, certain of its officers and others responsible for the nightmare they inflicted: a nightmare that took away her ability to grieve Jaquari's loss with her family and that caused her to endure eight long years of unjust and undeserved imprisonment for a crime she did not commit.

In an effort to avoid answering for the harm they inflicted, defendants Robert Bartik, Demosthenes Balodimas, Robert Cordaro, John J. Day, James Kelly, Michael Landando, Anthony Landando, and Randall Wo, joined by the City of Chicago, have moved under Rule 12(b)(6) to dismiss Harris' federal claims and have asked the Court to deny its exercise of supplemental jurisdiction over the remaining claims. *See* Doc. Nos. 44, 55 (the "Police Defendants' Motions").[1] Harris responds here to both motions and demonstrates that each should be rejected.

---

[1] Where Harris has asserted viable individual federal claims, her *Monell* claim (Count III) is cognizable as well.

1

## SUMMARY OF FACTUAL ALLEGATIONS[2]

### A. Jaquari Dancy's Death on May 14, 2005

In May 2005, Nicole Harris, a recent college graduate, was living with her five-year-old son Diante, her four-year-old son Jaquari, and the boys' father, Sta-Von Dancy in Chicago. She was working as a psychiatric rehabilitation service coordinator for Winston Manor Nursing Home. Compl., ¶12. On May 14, 2005, while Ms. Harris was doing laundry at a nearby laundromat, her youngest son Jaquari was playing in his room, on the bunk bed that he shared with his brother. *Id.* ¶¶13,16-17. Tragically, he wrapped a loose fitted sheet elastic band from the top bunk around his neck, and he accidentally choked himself to death. *Id.* ¶¶16-17.

While Ms. Harris was returning from the laundromat, Mr. Dancy discovered Jaquari lying in a prone position with the elastic band wrapped around his neck. *Id.* ¶¶18-19. Dancy unwrapped the band and ran outside with Jaquari in his arms to find Harris and look for help. *Id.* ¶20. When Harris saw Dancy holding a lifeless Jaquari in his arms, she became hysterical. *Id.* ¶21. Ms. Harris and Mr. Dancy ultimately called 911 and an ambulance took Jaqauri to the hospital. *Id.* ¶¶ 22-24. At the hospital, Harris and Dancy were soon informed that the doctors had stopped treatment, and that Jaquari had died. *Id.* at ¶¶25-26. Harris cried out in anguish, shock and grief. *Id.* ¶27. Overcome with shock and grief at the loss of their son, neither Harris nor Darcy was able to stand. *Id.*

Less than an hour after Harris learned that her baby had died, Defendant Chicago Police Detectives Wo and Day began questioning her at the hospital about Jaquari's death. They told her she should come to the police station so they could ask her and Dancy more questions. *Id.* at ¶¶ 28-29. Harris was transported to Area 5 Police Headquarters with her son Diante. *Id.* ¶30.

---

[2] In the interest of brevity, the facts presented here are limited to those relevant to these motions. The role of the County Defendants, for example, is more thoroughly discussed in the opposition to their motion.

**B.  Ms. Harris' Twenty-Eight Hour Interrogation**

**1.  Ms. Harris' Interrogation at Area 5 Police Headquarters**

Over the course of more than 28 hours at Area 5, Harris was subjected to acts of physical abuse and intimidation, repeatedly threatened with the loss of her liberty and with the loss of her remaining child, taunted and called grotesque names, subjected to false accusations; refused permission to speak with an attorney; and deprived of food and sleep.  *Id.* ¶31. As a result, the Police Defendants coerced her into making false incriminating statements and giving a false videotaped confession, both of which were fabricated by the Police Defendants, and both of which falsely implicated her in intentionally causing Jaquari's death. *Id.*

Harris was questioned and confronted by several Police Defendants starting at 9 p.m. the day Jaquari died, and in front of her five-year old son Diante. *Id.* ¶¶32-34. During this interrogation, Harris related the events of the day, including her attempt to fix a phone cord in her apartment that had loose wires. *Id.* ¶35. At one point during the interrogation, Harris and Diante attempted to leave the room, but a detective directed them to "stay put." *Id.* ¶36. Harris did not feel free to leave, nor was she allowed to leave. *Id.*

While Harris was being interrogated, two of the Defendants Officers traveled to her home, where they found the phone cord Harris had described.  They removed it from the home. *Id.* ¶¶38-39.  Shortly thereafter, Police Defendants falsely claimed that Harris "spontaneously confessed" to killing Jaquari using the phone cord to strangle him. Defendants Officers memorialized this fabricated phone cord confession in official police reports.  *Id.* ¶¶40-41.

At midnight, Diante was removed from Harris' custody at Area 5.  *Id.* ¶¶45-46. After Diante was taken away, Harris was subjected to an increasingly hostile interrogation in a different interrogation room from where she was first questioned. *Id.* ¶¶47,51. When she arrived

3

at the entryway to the new room, Defendant Noradin shoved her into the room, stated "You're under arrest for murdering your F'g son," pushed her onto a bench and handcuffed her arm to a bar over the bench. *Id.* ¶52. Noradin continued to verbally assault Harris, claiming he knew she had killed her son with the phone cord. *Id.* ¶53. While so restrained, several Police Defendants continually questioned, badgered, and yelled at Harris. *Id.* ¶54.

In tears, Harris consistently told Police Defendants that she had nothing to do with Jaquari's death. *Id.* ¶55. Police Defendants accused Harris of lying, mocked her, and accused her of not crying "real tears." *Id.* ¶56. Harris asked for an attorney, but Police Defendants refused her request, telling her she did not need counsel, she needed to cooperate. *Id.* ¶57. Eventually, Harris was uncuffed and Police Defendants left her alone in the room, locking the door behind them. *Id.* ¶58. She was given no food or water for hours. *Id.* ¶62. At one point when Harris had to use the bathroom, she pounded on the locked interrogation room door for an hour before someone finally responded. *Id.* ¶¶62-63. Harris was kept in that interrogation room the entire night and was unable to sleep. *Id.* ¶65. Prior to these interrogations, no Police Defendant advised Harris of her Miranda rights. *Id.* ¶66.

### 2. Evidence Exonerating Ms. Harris of Jaquari's Death

On March 15, 2005 at 9 a.m., Cook County Medical Examiner Dr. John Scott Denton conducted an autopsy and ruled out the phone cord as the cause of Jaquari's death. *Id.* ¶¶ 68-69. Instead, he determined that the elastic bed sheet band was the cause, and he so informed Police Defendants. *Id.*

While Harris was interrogated at Area 5 early May 15, 2005, her son Diante was questioned by Ale Levy of the Children's Advocacy Center. *Id.* ¶¶47-48. During Diante's interview, which was observed by Defendant Wo, Diante said that: (1) he saw Jaquari playing a

4

Spiderman game in their bedroom; (2) he saw Jaquari wrap the elastic band from the top bunk sheet around his neck; and (3) he could not help Jaquari. *Id.* ¶¶47-49. Defendant Wo, in collaboration with his co-Defendants, deliberately omitted Diante's exculpatory statements from the Official Cleared and Closed Supplementary Police Report. *Id.* ¶50. Instead, in an effort to exclude or discredit Diante as a witness to his brother's death, these Defendants wrote only that Diante said he was sleeping when Jaquari died. *Id.*

### 3. The Polygraph Examination and the Fabricated Confession

On May 15, 2004, after Harris had been in custody for more than 15 hours, she was taken to another police station where Defendant Bartik administered a polygraph examination on her. *Id.* ¶¶70-72. Throughout the test, Harris maintained her innocence. *Id.* ¶73. Afterwards, Bartik began to intimidate and berate Harris, telling her she was "pissing" him off and that she was lying, and accusing her of "acting like a monster." *Id.* ¶74. He falsely informed Harris that the polygraph exam results had indicated that she was lying. *Id.* Harris protested that she was telling the truth and again requested an attorney. *Id.* ¶75. Bartik refused her request, telling her an attorney would tell her not to talk to the police, which would force Police Defendants "to give the stuff to the state, and then they're just going to slam" her. *Id.* ¶¶75-76.

Another Defendant Detective soon joined Bartik, telling Harris that he was "sick and tired" of her "lying," and that he had been on the case all night long. *Id.* ¶77. He jabbed Harris in the shoulder. *Id.* ¶78.

Bartik asked Harris if she wanted him to turn the case over to the State and spend the rest of her life behind bars. *Id.* ¶78. He berated her, told her she was acting like a monster, and insisted she needed to cooperate with them by telling them what they wanted her to say. *Id.* At

this point, Harris was in a state of exhaustion, grieving, crying, and fearing for her future and her life. *Id.* ¶79.

Other Police Defendants then entered the polygraph examination room and repeated that if she did not cooperate with them she was going to spend the rest of her life behind bars. *Id.* at ¶80. Bartik then outlined the Police Defendants' false and fabricated theory of what happened, telling Harris that she had gotten angry and "pulled [the band] down [from the bed sheet] and put it around Jaquari's neck" . . . "four or five times." *Id.* ¶81. Despite this aggressive interrogation, Harris maintained her innocence for hours, "just crying and crying" and "shaking [her] head." *Id.* ¶83. Eventually, while suffering from the extreme shock and stress of losing her child and after enduring over 20 hours of interrogation and abuse, Harris was so tired, scared, and physically and emotionally drained that she finally agreed to go along with the story manufactured by Bartik and the other Police Defendants. *Id.* ¶84.

Harris was then transported back to Area 5 where Defendant Cordaro laid out the version of events that Harris was supposed to tell the Assistant State's Attorney (ASA); Cordaro repeatedly forced Harris to recite the story several times to him to ensure she would properly recite it to the ASA. *Id.* ¶¶86-87,91. Shortly after 1:00 a.m., on May 16, 2005, after nearly twenty-eight hours in police custody Harris gave a videotaped statement in which she falsely confessed to killing Jaquari, regurgitating the details the Police Defendants had provided to her. *Id.* ¶99. Ms. Harris was and is completely innocent of Jaquari's death. The confession she gave was fabricated by Police Defendants. *Id.* ¶100.

Police Defendants memorialized Harris' false confession in official reports that omitted any mention that it had resulted from coercion and fabrication. *Id.* ¶101. These false official reports were presented to the trial prosecutors and were relied upon in order to secure Harris'

wrongful charging, prosecution, conviction and imprisonment. *Id.*

Prior to testifying at Harris' motion to suppress hearing and later at trial, Bartik and other Police Defendants falsely informed the prosecuting trial attorneys that neither they nor the other Officers had physically or psychologically coerced Harris into giving a false and fabricated confession. *Id.* ¶¶102-103, 106. Bartik and others deliberately withheld the fact that *they created the fabricated confession* that Harris had ultimately repeated. *Id.* ¶103. At the motion to suppress hearing, Bartik falsely testified that Harris had spontaneously and voluntarily admitted to the murder, and he denied that he or anyone else had physically or psychologically coerced her into giving a false and fabricated videotaped statement. *Id.* ¶104.

Bartik and other Police Defendants all testified against Harris at her criminal trial. *Id.* ¶105. The confession was presented as the only incriminating evidence against her, and it provided the sole basis for her murder conviction. *Id.* ¶109. Without the individual Defendants' coercive interrogation and fabrication of her confession, Harris would not have been prosecuted or convicted of the murder of Jaquari. *Id.* Harris was subsequently sentenced to 30 years imprisonment. *Id.* ¶110.

**C. Ms. Harris' Exoneration on the Basis of Innocence**

In October 2012, the United States Court of Appeals for the Seventh Circuit overturned Harris' conviction, holding that the trial court's exclusion of Diante's exculpatory testimony was reversible error. *Id.* ¶114.[3] On February 25, 2013, Harris was released from prison, and on June 17, 2013, the Cook County State's Attorney dismissed all charges against her. *Id.* ¶¶116-17. On January 25, 2014, Harris was found innocent of the charges and was finally granted a Certificate of Innocence by the Circuit Court of Cook County. *Id.* ¶118.

---

[3] Because Diante had been precluded from testifying at Harris' trial, he was unable to testify that he saw Jaquari wrap the elastic band around his own neck or offer other exculpatory evidence. Compl., ¶108.

As a result of the actions of the individual Defendants, Harris suffered immensely: she was wrongly imprisoned for over eight years, denied the ability to fully mourn the loss of her son Jaquari, and lost the sustained contact with her only remaining child Diante, during his formative years. *Id.* ¶¶117,120,121.

## ARGUMENT

To state a claim upon which relief can be granted, a complaint need only contain "a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2). The plaintiff is not required under the Rules to make "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 678 (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To determine whether a plaintiff has met this standard, the court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (*quoting Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)). Harris' complaint easily satisfies this pleading standard.

## I. MS. HARRIS' COMPLAINT STATES A CLAIM FOR VIOLATION OF HER FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL.

### A. Police Defendants Violated Ms. Harris' Due Process Right When They Fabricated Her Confession and Other Evidence to Wrongfully Convict Her.

Count I of Harris' complaint alleges that Police Defendants violated her due process right to a fair trial by fabricating a false confession that was used against her. *See* Compl., ¶¶41-42, 81,87-88,92,96,100-01,103,106-107,123-28. Police Defendants accuse Harris of attempting to

"conceal her true intentions" to pursue a 4th Amendment-based claim for federalized malicious prosecution — a claim that is barred by *Wiley v. City of Chicago*, 361 F.3d 994 (7th Cir. 2004). Harris' "true intention," however, is to allege the due process claim she brought and sufficiently pled.[4]

It is well established that law enforcement officers violate a person's 14th Amendment due process right to a fair trial when they fabricate incriminating evidence which is subsequently used at trial to wrongfully convict the person. *See e.g., Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014) (*Fields II*); *Whitlock v. Bruegemann*, 682 F.3d 567, 575 (7th Cir. 2012) (plaintiff has "right" not to have police officer manufacture evidence against him); *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("There was and is no disputing that [fabricating evidence] violates clearly established constitutional rights"); *Manning v. Miller*, 355 F.3d, 1028, 1033 (7th Cir. 2004) (officers "who create false evidence" and "fail to tell the prosecuting attorneys" that they did so commit actionable due process violation); *Halsey v. Pfeiffer*, 750 F.3d 273, 279 (3d Cir. 2014) ("a police officer who fabricates evidence [a confession] against a criminal defendant to obtain his conviction violates the defendant's constitutional right to due process of law"); *Saunders v. City of Chi.*, 2014 U.S. Dist. LEXIS 94249, 18 (N.D. Ill. Jul. 11, 2014) (allegations that confessions were fabricated set forth viable due process claim); *Castillo v. Zuniga*, 2002

---

[4] For the sake of the record, Ms. Harris contends that she should also be permitted to pursue a Fourth Amendment malicious prosecution claim. Most circuits hold that such a claim states a valid cause of action. *See, e.g., Novitsky v. City of Aurora*, 491 F.3d 1244 (10th Cir. 2007); *Fox v. De Soto*, 489 F3d 227, 237 (6th Cir. 2007) (same); *Wood v. Kessler*, 323 F.3d 872, 881 (11th Cir. 2003); *Britton v. Maloney,* 196 F.3d 24, 28-30 (1st Cir. 1999). Although *Wiley* precludes such a claim here, Harris seeks to preserve that claim here, pending possible consideration of the issue in the U.S. Supreme Court.

U.S. Dist. LEXIS 4261, 28-29 (N.D. Ill. Mar. 14, 2002) (police officers may be held liable for constitutional violation by fabricating confession used against plaintiff at his trial).[5]

Harris' due process claim for evidence fabrication falls squarely within the precedent of *Fields*, *Whitlock*, *Halsey*, *Dominguez*, *Manning*, and the other cases cited herein. Harris alleges that Police Defendants fabricated her confession by coercing her to claim that she killed her son. Harris alleges that Police Defendants constructed the motive, telling her to say that she was angry with Jaquari. *Id.* ¶81. She specifically alleges they manufactured the precise manner in which she was to have committed the crime by instructing her to claim that she pulled the elastic band from the bed sheet and put it around her son's neck "four or five times." *Id.* ¶81. She alleges Police Defendants memorialized this false confession in official police reports which they tendered to the trial prosecutors, and that these reports caused her to be prosecuted and tried for the murder of her son. *Id.* ¶¶101-09. The confession was the only incriminating evidence introduced at trial and was the sole basis of her murder conviction. *Id.* ¶109. After eight years of incarceration stemming from her wrongful conviction, Harris has finally been exonerated on the basis of her actual innocence. *Id.* ¶¶114, 116-118, 120-21. These allegations plainly suffice to state a claim for a due process violation.

Citing *Newsome v. McCabe*, 256 F.3d 750 (7th Cir. 2001) (*Newsome I*) *Fox*, 600 F.3d at 841 and *McCann v. Manglialardi*, 337 F.3d 782 786 (7th Cir. 2003), Police Defendants argue that evidence fabrication claims are precluded because of the ability to pursue malicious

---

[5] *See also Limone v. Condon,* 372 F.3d 39, 45 (1st Cir. 2004) (fabricating evidence and framing individuals "necessarily violate[s] due process"); *Wilson v. Lawrence Cnty.,* 260 F.3d 946, 954 (8th Cir. 2001) ("If officers use false evidence, including false testimony, to secure a conviction, the defendant's due process is violated."); *Devereaux v. Abbey,* 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997) ("a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable . . .[violation of due process.]"); *U.S. v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989).

prosecution claims in state court. (Police Defs' Memo at 6). None of these cases, however, supports such a claim. In *Newsome* and *McCann*, the Court did not address whether fabrication of evidence constitutes a due process violation. Moreover, in *McCann,* the plaintiff had waived any claim that the defendant officers were liable for manufacturing evidence. *Id.* at 786, 788-90.[6] In *Fox,* the alleged fabricated evidence -- plaintiff's false confession -- was never introduced against him at a trial because the charges were dismissed. *Id.* at 825, 832. Thus, he was never wrongfully convicted, a crucial factor that precluded his ability to bring a due process claim on the basis of fabricated evidence as held in *Saunders*, 2014 U.S. Dist. LEXIS 94249 at 15, *Boyd v. City of Chi.,* 2014 U.S. Dist. LEXIS 113757, 9 (N.D. Ill. Aug. 6, 2014) and *Bianchi v. McQueen,* 2014 U.S. Dist. LEXIS 22736, 42-43 (N.D. Ill. Feb. 24, 2014). *Fox* is further distinguished because the Court there did not even find that the officers had manufactured a false confession. Rather, the Court found that the plaintiff had created his own "implausible" version of events with the hope that at a later date it would be revealed he was coerced into falsely confessing. *Fox*, 600 F.3d at 831. Unlike the circumstances in *Fox*, Harris alleges that Police Defendants themselves manufactured the details of her false confession. Compl., ¶¶ 81, 87-88, 100-01, 103, 106-107, 123-28.

While acknowledging that the Seventh Circuit's recent decisions in *Fields II* and *Whitlock* recognize the viability of evidence fabrication claims, the Police Defendants nevertheless argue the cases do not control because as panel decisions, they cannot overrule *Newsome.* (Police Defs' Memo at 7). But the Court in *Saunders* rejected this very argument, ruling that *Fields II* and *Whitlock* did not overrule Seventh Circuit precedent but instead, are to be read in "harmony" with the rulings in *Newsome*, *McCann, Fox,* and *Julian v. Hanna*, 732 F.3d

---

[6] The plaintiff there also pled guilty prior to trial which distinguishes that case from this one.

842 (7th Cir. 2013). *See Saunders*, 2014 U.S. Dist. LEXIS 94249 at 15; *see also Boyd,* 2014 U.S. Dist. LEXIS 113757 at 11.

The Police Defendants similarly misplace reliance on *Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) in arguing that Harris' allegations do not state a fabrication claim because even if her confession was coerced, it was not fabricated. (Police Defs' Memo at 8-9). In *Petty*, a *witness* was coerced into falsely identifying the plaintiff as a shooter in a murder case. There, the plaintiff's fabrication claim was doomed because the plaintiff failed to present any evidence that the defendant officers knew the witness' statements were false, or that the police "created evidence that they knew to be false." *Id.* at 417,423.

The allegations in *Petty* are in stark contrast to Harris' allegations here. Harris alleges that Police Defendants knew that she did not kill Jaquari because they knew that Diante, her other son, had witnessed Jaquari accidentally suffocate himself. Compl., ¶¶49-50. Further, the Police Defendants willfully ignored Harris' repeated assertions of her innocence. *Id.* ¶¶61,73, 83. The facts are even more grave here, where Harris alleges that the Police Defendants were bent on framing her for murder, initially attempting to fabricate an incriminating statement *via* an alleged "spontaneous confession" that she had killed her son with a phone cord, and then changing course when the plausibility of this statement was ruled out by the medical examiner. *Id.* ¶¶38-43,68-69. Harris has alleged ample facts to support that Police Defendants knowingly fabricated the false evidence in this case.

**B. Ms. Harris Has a Viable Claim That Police Defendants Suppressed Exculpatory Evidence in Violation of Her Rights under *Brady*.**

Harris sets forth a viable *Brady* violation in Count I, alleging that the Police Defendants have a pattern of engaging in unconstitutional practices, of both fabricating confessions and coercing suspects into giving incriminatory statements, and that the Police Defendants

deliberately withheld these facts from the trial prosecutors and Court. *See* Compl, ¶¶ 82,111-12, 125.[7] The Seventh Circuit has squarely recognized the exculpatory nature of such evidence and its basis in an actionable due process *Brady* claim. *See Jones v. City of Chi.*, 856 F.2d 985 (7th Cir. 1988); *Newsome I* and *Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2002) (*Newsome II*); *Ienco v. City of Chi.*, 286 F.3d 994 (7th Cir. 2002); *see also Tillman v. Burge*, 813 F. Supp. 2d 946, 961 (N.D. Ill. 2011); *Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. 2004); *Cannon v. Burge*, 2006 U.S. Dist. LEXIS 4040 (N.D. Ill. J. Feb. 2, 2006); *Howard v. City of Chi.*, 2004 U.S. Dist. LEXIS 21537, 28-29 (N.D. Ill. Oct. 22, 2004); *Orange v. Burge*, 2005 U.S. Dist. LEXIS 7234, 34-35 (N.D. Ill. Mar. 30, 2005). Clearly, as in *Tillman, Patterson*, *Howard* and *Orange*, a crucial component of the suppressed information here is that the Police Defendants coerced and fabricated Harris' inculpatory statements as part of a pattern and practice of coercing and fabricating statements of suspects.

Relying on *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2000) and *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006), Police Defendants argue that Harris' knowledge of the circumstances of her own interrogation requires the dismissal of her *Brady*. Defendants' argument misses the mark. In those cases, plaintiffs did not allege defendants engaged in a pattern and practice of coercing suspects and fabricating false confessions which were then deliberately withheld from prosecuting trial attorneys and the Court. Here, of course, Harris alleges precisely that: both that a pattern of illegal conduct occurred *and* that she was unaware of such a pattern from the course of her own interrogation. The Police Defendants failure to

---

[7] Harris should also be permitted to pursue a 14th Amendment claim for the *Brady* violation she suffered when the Defendants withheld from the trial prosecutors their actions of physically and psychologically coercing her into giving a false confession.  Although *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2000) and *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) preclude such a claim in this Circuit, it is Harris' intention to preserve that claim in this case, pending possible consideration of the issue in the United States Supreme Court.

disclose this pattern constitutes an actionable *Brady* violation. *See Tillman*, 813 F. Supp. 2d at 962.

## II. MS. HARRIS' CLAIM THAT SHE WAS COERCED INTO CONFESSING, IN VIOLATION OF HER FIFTH AND FOURTEENTH AMENDMENT RIGHTS, IS BOTH TIMELY AND CLEARLY ESTABLISHED.

### A. Ms. Harris' Coerced Confession Claim is Timely.

Count II of Harris' complaint alleges a claim *both* for the violation of her 5th and 14th Amendment rights against self-incrimination *and* for violating her 14th Amendment substantive due process right not to have been convicted based upon a physically and psychologically coercive interrogation that was shocking to the conscience. *See* Compl., ¶¶129-32. The Police Defendants argue that this claim is untimely under *Wallace v. City of Chi.* 440 F.3d 421, 429 (7th Cir. 2006), *aff'd, Wallace v. Kato,* 549 U.S. 384 (2007). That argument does not bear up under scrutiny and must be rejected.

According to the Police Defendants, Harris' coerced confession claim accrued at the time of her interrogation. (Police Defs' Memo at 10). Since the present suit was not filed until 2014, the Police Defendants contend that it is time-barred. This argument completely ignores the rule of *Heck v. Humphrey*, 512 U.S. 477, 484 (1994), that claims that would necessarily impugn the validity of a conviction do not accrue until the conviction has been set aside. Plaintiff's 5th and 14th Amendment coerced confession claim is just such a cause of action. *Wallace*, a case the Police Defendants cited (but only at the Seventh Circuit level), held that *Heck* does not govern a 4th Amendment claim for false arrest. The plaintiff in *Wallace* did not bring a claim for a coerced confession under the 5th and/or 14th Amendment. Instead, he brought a claim for false arrest alleging a 4th Amendment violation, which the U.S. Supreme Court ruled accrued at the time of the plaintiff's illegal detention and terminated at the point "when he appeared before the

examining magistrate and was bound over for trial." *Wallace*, 549 U.S. at 392. Thus, the constitutional violation was complete before the plaintiff was convicted and sentenced and was wholly independent of that conviction and sentence. Since the plaintiff's 4th Amendment claim would therefore not "impugn" the validity of his conviction, the accrual of the claim did not depend upon the setting aside of the plaintiff's wrongful conviction. *Id.* at 397.

Harris' coerced confession claim is different. Her claim is that the individual Defendants coerced her confession by physical and psychological abuse *and used the coerced confession to convict her of a crime she did not commit.* That claim is inextricably intertwined with her conviction and, necessarily, impugns the validity of the conviction because the coerced confession was the only piece of incriminating evidence introduced against her at trial. It is completely distinguishable from the false arrest claim in *Wallace* and, as many decisions (both before and after *Wallace*) have recognized, coerced confession claims cannot accrue until the plaintiff's conviction has been set aside. *See, e.g., Mack v. Klotza,* 769 F.3d 517, 530-31 (7th Cir. 2014) (plaintiff's 5th Amendment claim was barred by *Heck* because it would imply the invalidity of his conviction and sentence); *Tillman*, 813 F. Supp. 2d at 969-70 (holding *Wallace's* accrual rule does not trump *Heck*'s bar where plaintiff's conviction rested largely upon an alleged coerced conviction); *Scott v. City of Chi.*, 2010 U.S. Dist. LEXIS 52, 3-4 (N.D. Ill. Jan. 4, 2010) (5th Amendment claims including coerced confession still controlled by *Heck*); *Andrews v. Burge*, 660 F. Supp. 2d 868, 880-81 (N.D. Ill. 2009) ("I accept that proof of coercion and coaching of a confession would necessarily impugn the validity of the conviction…"); *Hill v. City of Chi.*, 2007 U.S. Dist. LEXIS 40211, 5-6 (N.D. Ill. May 10, 2007) (coerced confession claims does not accrue until a conviction is vacated); *Walden v. City of Chi.*, 391 F. Supp. 2d 660, 676 (N.D. Ill. 2005) (coerced confession claim would have impugned the validity of

15

defendant's conviction); *Orange*, 2005 U.S. Dist. LEXIS at 19-23 (coerced confession claim would have impugned validity of conviction because it was essentially the only evidence against defendant); *Patterson,* 328 F. Supp. 2d at 897 (same); *Howard,* 2004 U.S. Dist. LEXIS 21537 at 19-21 (same); *Johnson v. Village of Riverdale*, 192 F. Supp. 2d 874, 875 (N.D. Ill 2002) (same).

The Seventh Circuit recently relied on *Wallace* in *Moore v. Burge*, 2014 U.S. App. LEXIS 21530, 3-4 (7th Cir. Nov. 13, 2014) to find that the plaintiffs' claims of torture during their confessions were not blocked by *Heck.* Although the Seventh Circuit did not specify in *Moore* which of the claims there were not barred by *Heck*, it is appropriately interpreted based on prior precedent as a ruling limited to 4th Amendment claims involving allegations of excessive force – and not 5th and 14th Amendment coerced confession claims such as that raised by Harris here. *See Mack,* 769 F.3d at 530-31 (5th Amendment claims that impugn validity of a conviction or sentence are barred by *Heck*).

In *Moore*, the Court ruled that the decisions in *Wallace*, *Rollins v. Willett*, 2014 U.S. App. LEXIS 20147 (7th Cir. Oct. 21, 2014) and *Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996) involving 4th Amendment claims of unreasonable search and seizure would also serve to bar the plaintiff' claims that they were tortured during their interrogations "because that [police] misconduct is actionable whether or not a suspect confesses, and whether or not any statement is used in evidence at trial." *Moore*, 2014 U.S. App., LEXIS 21530 at 3-4. There is ample precedent that establishes that claims of excessive force under the 4th Amendment accrue at the time the force occurs and are not dependent on whether any evidence is obtained or subsequently introduced against a plaintiff in criminal proceedings or at trial. The same cannot be said for 5th Amendment coerced confession claims. A 5th Amendment claim only lies where the alleged incriminatory statement is introduced against the criminal defendant in a criminal proceeding.

*See Chavez v. Martinez*, 538 U.S. 760, 767 (2003) ("statements compelled by police interrogations of course may not be used against a defendant at trial, *see Brown v. Mississippi,* 297 U.S. 278, 286...(1936), but it is not until their use in a criminal case that a violation of the *Self-Incrimination Clause* occurs," (internal citations omitted, emphasis added)); *Sornberger*, 434 at 1024-25 (After *Chavez*, 5th Amendment violation cannot provide basis for § 1983 liability without use of suspect's statements against him in "criminal case."); *see also*, *Newsome,* 256 F.3d at 752 (claims involving violations at trial are postponed by *Heck).* In the context of this well settled authority, *Moore* cannot be read as supporting the argument that Harris' coerced confession claims began upon her interrogation.

Harris' 5th and 14th Amendment claim in Count II is inextricably bound with the criminal proceedings against her. The coerced confession constituted the only incriminating evidence against her at trial and, thus, furnished the basis for her illegal imprisonment over the course of the following eight years. Unlike the claim at issue in *Wallace,* there is no conceivable way that a ruling in her favor on the coerced confession claim could fail to impugn the validity of her conviction. Thus, Count II is therefore timely.

## B. Ms. Harris Properly Sets Forth a Coercive Interrogation Claim in Count II and Police Defendants Are Not Shielded by Qualified Immunity.

Harris' right under the 5th and 14th Amendments to be free from a coerced confession, as well as her 14th Amendment substantive due process right to be free from an interrogation that shocks the conscience, were clearly established at the time of her 2005 interrogation. Police Defendants' argument that they are entitled to qualified immunity because the contours of these claims were not yet established then must fail.

A police officer is not entitled to qualified immunity when, pursuant to plaintiff's factual allegations, the officer violated a plaintiff's clearly established constitutional right, *i.e.,* when it

17

would be clear to a reasonable officer that his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001); *Viilo v. Eyre*, 547 F.3d 707 (7th Cir. 2008). The qualified immunity defense is not a license to violate constitutional rights without recourse or an excuse to turn a blind eye to the requirements of the law. *Sparing v. Village of Olympia Fields*, 266 F.3d 684 (7th Cir. 2001).

A right is clearly established when there is a controlling decision issued by the Supreme Court or the Seventh Circuit that establishes the right in question. *Jacobs v. Siller*, 215 F.3d 758, 767 (7th Cir. 2000). Likewise, qualified immunity must be rejected if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). Rejection of a claim of qualified immunity does not require a prior case that is precisely on all fours on the facts and law involved. *Landstrom v. Illinois DCFS*, 892 F.2d 670, 676 (7th Cir. 1990).

There is no question as of 2005, that a person's 5th Amendment right is violated when she is denied access to an attorney after requesting to speak with one and is then compelled to give an incriminating statement. *Miranda v. Arizona*, 384 U.S. 436 (1996); *accord Williams v. Liberty*, 461 F.2d 325, 328 (7th Cir. 1972). It is likewise axiomatic that a physically coerced confession, whether by physical force or threats of physical force, violates a person's 5th and 14th Amendment rights. *See, e.g. Brown v. Mississippi*, 297 U.S. 278 (1936) (conviction based on a false confession coerced by physical violence violates due process); *Holland v. McGinnis,* 963 F. 2d 1044, 1050 (7th Cir. 1992). It is also well established that psychological coercion, including threats to a person's liberty and family violates a person's right to be free from giving a coerced confession. *See, e.g. Lynumn v. Illinois*, 372 U.S. 528, 533 (1963) (confession coerced when police told female suspect that she was in jeopardy of losing welfare benefits and custody

of her children); *Rogers v. Richmond,* 365 U.S. 534, 543 (1961) (confession coerced when police threatened to take suspect's wife into custody if he did not confess); *Spano v. N.Y.,* 360 U.S. 315, 323 (1959) (confession coerced when officer, a close friend of defendant, told defendant that officer would get in trouble if defendant did not confess); *see also Sornberger,* 434 F. 3d at 1024-25; *Miller v. Fenton,* 796 F.2d 598, 603 (3d Cir. 1986) ("an involuntary confession may result from psychological, as well as physical, coercion."); *see also Koh v. Graf,* 2013 U.S. Dist. LEXIS 136341 (N.D. Ill. 2013); *Hobbs v. Cappelluti,* 899 F. Supp. 2d 738 (N.D. Ill. 2012) (plaintiff states coerced confession claim under 5th Amendment based on failure to give Miranda warnings, denial of counsel and use of unjust violence); *Hill,* 2009 U.S. Dist. LEXIS at 24 ("a reasonable public official interrogating a criminal suspect would have recognized that coercing a confession by abusive language and physical contact, along with coaching the suspect as to details of the confession, clearly violates the suspect's constitutional right against self-incrimination").

There is ample Supreme Court and Seventh Circuit precedent demonstrating that the Police Defendants' egregious misconduct during Harris' interrogation violated her clearly established 5th and 14th Amendment rights. Specifically, Harris alleges that the Police Defendants did not provide *Miranda* warnings prior to her interrogations, physically assaulted and intimidated her when they pushed, shoved, and repeatedly jabbed her, menacingly yelled at her, called her names and swore at her during her interrogation. *E.g.,* Compl., ¶¶31,52,77,89. The Police Defendants also repeatedly intimidated and berated her, and threatened that if she failed to cooperate with them she would spend her life behind bars, thereby depriving her of the ability to raise her other son, Diante. *Id.* ¶¶74,81,84. Moreover, Police Defendants interrogated her over the course of 28 hours, saw her crying throughout the interrogation, and knew that she was in the

throes of grief and severe mental anguish from the unexpected and tragic loss of her four year old son. *Id.* ¶¶ 26-27,83,84,87,99. The Police Defendants also refused to provide her access to counsel, despite her repeated requests to speak with one. *Id.* ¶¶31,57,66,75-76. There is no question, in light of *Miranda, Brown*, *Holland*, *Lynumn, Rogers*, and *Spano* – all pre 2005 opinions - that the Police Defendant were on notice that their misconduct as alleged in the complaint violated Harris' 5th and 14th Amendment rights.

Police Defendants disingenuously cite to *Chavez* to argue that "the contours" of Harris' coercive interrogation claim have not yet been established. The Court in *Chavez* did not rule on whether that plaintiff's interrogation, while being treated in a hospital for a gunshot wound, was coercive under the 5th Amendment, instead finding the right was not implicated because the incriminating statement obtained was never used to initiate any criminal proceedings against the plaintiff. *Id.* at 772-73. The plaintiff's claim that his interrogation violated his substantive due process right was remanded for further proceedings.[8]

Police Defendants also misstate the holding in *Fox* to argue that Harris' allegations fail to set forth a clearly established constitutional violation regarding her interrogation. (*See* Police Defs' Memo at 13-14.) The Seventh Circuit did *not* find as a matter of law in *Fox* that the plaintiff had failed to set forth sufficient facts to find there was a constitutional violation with respect to his interrogation. Rather, the Court refused to decide whether Fox's interrogation violated his substantive due process rights because the plaintiffs "never presented to the jury their theory that the defendants' interrogation tactics shock[ed] the conscience." *See id.* at 841. The plaintiff in *Fox did not* assert his 5th Amendment right was violated. *Id.; see also Fox v. Hayes,* 04-7309, Doc. No. 588, p. 23 (jury instructions).

---

[8] Further, the Police Defendants' arguments notwithstanding, a majority of the Supreme Court did not find that the plaintiff's interrogation claim in *Chavez* failed to shock the conscience. (*See* Police Defs' Memo at 13.)

Police Defendants concede, however, that in *Sornberger*, the Seventh Circuit found that the plaintiff's evidence suggesting she was coercively interrogated in violation of her 5th Amendment right could survive summary judgment. There, the plaintiff presented evidence that over the course of her interrogation she was never given *Miranda* warnings, refused access to an attorney, yelled at, falsely told that she had been implicated in the crime, and threatened with the loss of her children. *Id.* at 1011-12. Police Defendants strain to distinguish the case, however, by noting that it was decided *after* Harris' 2005 interrogation and therefore cannot have put the Police Defendants on notice for purposes of qualified immunity. In so arguing, they ignore the Seventh Circuit's reliance on the Supreme Court 1963 decision in *Lynumn*, its 1961 decision in *Rogers* and its 1959 decision in *Spano*, each of which was discussed in *Sornberger*. Defendants' arguments notwithstanding, the contours of Harris' 5th Amendment claim were clearly established long before *Sornberger.*

It was also patently obvious that the Police Defendants' coercive interrogation of Harris similarly violated her 14th Amendment substantive due process rights. The Police Defendants' 28-hour physical and psychological interrogation of Harris began almost instantaneously after she learned of her child's death; included physical and psychological intimidation, name-calling and ridicule; and even the threatened loss of her only remaining child. Such "interrogation" of a grieving mother certainly shocks the conscience. *See U.S. v. Tingle*, 658 F.2d 1332, 1336 (9th Cir. 1981) (mother's incriminating statement was "patently coercive" when officers threatened the mother with prison time thereby losing the opportunity to raise her two-year old child, unless she confessed; the court noted "the relationship between parent and child embodies a primordial and fundamental value of our society. When law enforcement officers deliberately prey upon the maternal instinct and inculcate fear in a mother that she will not see her child in order to elicit

21

'cooperation,' they exert the 'improper influence'"); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (although earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding.).

### III. Defendant Bartik Was Personally Involved in Coercing Ms. Harris into Giving a Knowingly False and Fabricated Confession.

Bartik directly and actively coerced Harris into giving a knowingly false confession which he personally manufactured during the course of his interrogation of her. He is therefore personally liable for his constitutional violations.

During Bartik's interrogation of Harris, he dismissed her pleas of innocence; he lied to her by falsely claiming she had failed the polygraph examination administered by him; he called her ugly vicious names and accused her of lying about her innocence; he refused to provide her access to an attorney despite her requests to speak with one; he failed to intervene when he witnessed one of the Defendant Detectives jab her in the shoulder; and he threatened that if she refused to cooperate and tell them what they wanted to hear, she would spend the rest of her life behind bars. *See* Compl., ¶¶ 73-79. As specifically alleged, Bartik was the first of the individual defendants to manufacture the false confession and force feed it to Harris. *Id.* ¶81. It was only the end of Bartik's particular psychologically abusive and coercive interrogation of Harris that she finally gave in and began to go along with the false confession manufactured by Bartik and the other Police Defendants. *Id.* ¶84.

Police Defendants argue that Harris' factual allegations are inconsistent because she claims that Bartik manufactured her confession, even though she did not give the confession until the following day. (Police Defs' Memo at 15.) But Police Defendants deliberately ignore and mischaracterize key allegations of Harris' complaint. Harris contends that she finally

succumbed to the Police Defendants' coercion and went along repeating the false confession at the end of her interrogation with Bartik. *Id.* ¶84. She further alleges that Bartik testified at her motion to suppress hearing and at her criminal trial that he had witnessed her confess to the crime. *Id.* ¶¶102-104,106. The fact that Harris did not give a videotaped version of the false confession until 1 a.m. on March 16, 2005, approximately 11 hours after she was interrogated by Bartik neither negates is inconsistent with the fact that she finally caved to the pressure and began to go along with the false confession with Bartik. *Id.* ¶¶ 34,70,99. This Court is surely aware that in many wrongful conviction cases involving false confessions, the accused was forced to confess to multiple people on multiple occasions. Likewise, here, Harris' complaint alleges that Bartik both coerced her into confessing and that he was directly responsible for fabricating her confession. Because he was personally involved in participating in constitutional violations of Harris' rights, he is a proper defendant in this case.

## CONCLUSION

For the foregoing reasons, this Court should enter an order denying the Police Defendants' motion to dismiss. Further, because Ms. Harris has plead viable 5th and 14th Amendment violations in Count I and II, the City of Chicago's motions to dismiss should be denied as well.

Respectfully submitted,

**NICOLE HARRIS**

By: /s/ Joey L. Mogul
    One of her attorneys

Janine L. Hoft, Joey L. Mogul, and Jan Susler
People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60642
(773) 235-0070

Nicole N. Auerbach, Stuart Chanen, and Margot Klein
Valorem Law Group
35 E. Wacker Dr., Suite 3000
Chicago, Illinois 60601
(312) 676-5460

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
357 E. Chicago Avenue
Chicago, Illinois  60611
(312) 503-4808

Attorneys for Plaintiff Nicole Harris

Dated: December 11, 2014