# EXHIBIT 15

**To**
**PLAINTIFF NICOLE HARRIS'S MOTION TO COMPEL DISCOVERY**
**RESPONSES FROM THE CITY OF CHICAGO**

**November 2, 2015**

**Case No. 1:14-cv-4391**

| ADDENDUM TO:<br>General Order 92-1 | DATE OF ISSUE<br>3 July 1992 | EFFECTIVE DATE<br>4 July 1992 | ADDENDUM NO<br>7 |
|---|---|---|---|
| SUBJECT<br>ABUSED AND NEGLECTED CHILD OFFENSES | | DISTRI-BUTION<br>C | RESCINDS |

I.  PURPOSE

This addendum:

A.  continues Department policy for handling abused and neglected child offenses.

B.  sets forth pertinent sections and definitions from the Abused and Neglected Child Reporting Act, Illinois Revised Statutes, Chapter 23, Section 2053, 2054 and 2057.

C.  continues procedures and requirements for the preliminary and follow-up investigations of cases involving abused and neglected children.

II. POLICY

In all cases of child abuse or neglect, the primary concern of the Department is to safeguard the child's emotional and physical well-being. All members will maintain a sensitive approach in handling these situations to minimize the trauma inherent in child abuse and neglect cases.

III. STATEMENT OF THE LAW

The Abused and Neglect Child Reporting Act (Chapter 23, Section 2051, IRS)

Definitions (Section 2053)

"As used in this Act unless the context otherwise requires:

"Child" means any person under the age of 18 years, unless legally emancipated by reason of marriage or entry into a branch of the United States armed services.

"Department" means the Illinois Department of Children and Family Services.

"Local law enforcement agency" means the police of a city, town, village or other incorporated area or the sheriff of an unincorporated area or any sworn officer of the Illinois Department of State Police.

"Abused child" means a child whose parent or immediate family member, or any person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent:

a.  inflicts, causes to be inflicted, or allows to be inflicted upon such child physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function;

b.  creates a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function;

c.  commits or allows to be committed any sex offense against such child, as defined in the Criminal Code of 1961, as amended,[1] and extending those definitions of sex offenses to include children under 18 years of age;

d.  commits or allows to be committed an act or acts of torture upon such child; or

e.  inflicts excessive corporal punishment.

CITY0000023

"Neglected child" means any child whose parent or other person responsible for the child's welfare withholds or denies nourishment or medically indicated treatment including food or care denied solely on the basis of the present or anticipated mental or physical impairment as determined by a physician acting alone or in consultation with other physicians or otherwise does not provide the proper or necessary support or medical or other remedial care recognized under State law as necessary for a child's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter; or who is abandoned by his or her parents or other person responsible for the child's welfare; or who is a newborn infant whose blood or urine contains any amount of a controlled substance as defined in subsection (f) of Section 102 of the Illinois Controlled Substances Act[2] or a metabolite thereof, with the exception of a controlled substance or metabolite thereof whose presence in the newborn infant is the result of medical treatment administered to the mother or the newborn infant. A child shall not be considered neglected or abused for the sole reason that such child's parent or other person responsible for his or her welfare depends upon spiritual means through prayer alone for the treatment or cure of disease or remedial care as provided under Section 4 of this Act.[3] A child shall not be considered neglected or abused solely because the child is not attending school in accordance with the requirements of Article 26 of The School Code, as amended.[4]

"Child Protective Service Unit" means certain specialized State employees of the Department assigned by the Director to perform the duties and responsibilities as provided under Section 7.2 of this Act.[5]

"Person responsible for the child's welfare" means the child's parent; guardian; foster parent; any person responsible for the child's welfare in a public or private residential agency or institution; any person responsible for the child's welfare within a public or private profit or not for profit child care facility; or any other person responsible for the child's welfare at the time of the alleged abuse or neglect, or any person who came to know the child through an official capacity or position of trust, including but not limited to health care professionals, educational personnel, recreational supervisors, and volunteers or support personnel in any setting where children may be subject to abuse or neglect.

"Temporary protective custody" means custody within a hospital or other medical facility or a place previously designated for such custody by the Department, subject to review by the Court, including a licensed foster home, group home, or other institution; but such place shall not be a jail or other place for the detention of criminal or juvenile offenders.

"An unfounded report" means any report made under this Act for which it is determined after an investigation that no credible evidence of abuse or neglect exists.

"An indicated report" means a report made under this Act if an investigation determines that credible evidence of the alleged abuse or neglect exists.

"An undetermined report" means any report made under this Act in which it was not possible to initiate or complete an investigation on the basis of information provided to the Department.

"Subject of report" means any child reported to the central register of child abuse and neglect established under Section 7.7 of this Act[6] and his or her parent, guardian or other person responsible who is also named in the report.

"Perpetrator" means a person who, as a result of investigation, has been determined by the Department to have caused child abuse or neglect."

[1]Chapter 38, ¶ 1-1 et seq.
[2]Chapter 56½, ¶ 1102.
[3]Paragraph 2054 of this chapter.
[4]Chapter 122, ¶ 26-1 et seq.
[5]Paragraph 2057.2 of this chapter.
[6]Paragraph 2057.7 of this chapter.

2

CITY0000024

IV. PERSONS REQUIRED TO REPORT – MEDICAL PERSONNEL – PRIVILEGED COMMUNICATIONS – TRANSMITTING FALSE REPORT

"Any physician, resident, intern, hospital, hospital administrator and personnel engaged in examination, care and treatment of persons, surgeon, dentist, dentist hygienist, osteopath, chiropractor, podiatrist, substance abuse treatment personnel, Christian Science practitioner, coroner, medical examiner, emergency medical technician, crisis line or hotline personnel, school personnel, educational advocate assigned to a child pursuant to The School Code, truant officers, social worker, social services administrator, domestic violence program personnel, registered nurse, licensed practical nurse, director or staff assistant of a nursery school or a child day care center, recreational program or facility personnel, law enforcement officer, registered psychologist and assistants working under the direct supervision of a psychologist, psychiatrist, or field personnel of the Illinois Department of Public Aid, Public Health, Mental Health and Developmental Disabilities, Corrections, Human Rights, Rehabilitation Services, or Children and Family Services, supervisor and administrator of general assistance under The Illinois Public Aid Code,[2] probation officer, or any other foster parent, homemaker or child care worker having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department.

Whenever such person is required to report under this Act in his capacity as a member of the staff of a medical or other public or private institution, school, facility or agency, he shall make a report immediately to the Department in accordance with the provisions of this Act and may also notify the person in charge of such institution, school, facility or agency or his designated agent that such report has been made. Under no circumstances shall any person in charge of such institution, school, facility or agency, or his designated agent to whom such notification has been made, exercise any control, restraint, modification or other change in the report or the forwarding of such report to the Department. The privileged quality of communication between any professional person required to report and his patient or client shall not apply to situations involving abused or neglected children and shall not constitute grounds for failure to report as required by this Act. In addition to the above persons required to report suspected cases of abused or neglected children, any other person may make a report if such person has reasonable cause to believe a child may be an abused child or a neglected child.

Any person who enters into employment on and after July 1, 1986 and is mandated by virtue of that employment to report under this Act, shall sign a statement on a form prescribed by the Department, to the effect that the employee has knowledge and understanding of the reporting requirements of this Act. The statement shall be signed prior to commencement of the employment. The signed statement shall be retained by the employer. The cost of printing, distribution, and filing of the statement shall be borne by the employer. The Department shall provide copies of this Act, upon request, to all employers employing persons who shall be required under the provisions of this Section to report under this Act.

Any person who knowingly transmits a false report to the Department commits the offense of disorderly conduct under subsection (a)(7) of Section 26-1 of the 'Criminal Code of 1961'.[3] Any person who violates this provision a second or subsequent time shall be guilty of a Class 4 felony.

Any person who knowingly and willfully violates any provision of this Section, other than a second or subsequent violation of transmitting a false report as described in the preceding paragraph, shall be guilty of a Class A misdemeanor.

A child whose parent, guardian or custodian in good faith selects and depends upon spiritual means through prayer alone for the treatment or cure of disease or remedial care may be considered neglected or abused, but not for the sole reason that his parent, guardian or custodian accepts and practices such beliefs.

A child shall not be considered neglected or abused solely because the child is not attending school in accordance with the requirements of Article 26 of The School Code, as amended.[4]"

[1]Chapter 122, ¶ 1-1 et seq.
[2]Chapter 23, ¶ 1-1 et seq.
[3]Chapter 38, ¶ 26-1.
[4]Chapter 122, ¶ 26-1 et seq.

CITY0000025

V.    **PROCEDURES**

A.    The officer who makes initial contact with an abused or neglected child will:

1.    ensure that emergency medical attention, if required, is immediately obtained.

2.    ensure that the appropriate area Violent Crimes and Youth Division units are notified when the investigation indicates that any child is:

   a.    physically injured, other than accidentally; or

   b.    seriously abused, e.g., physically chained to a bed, or forced to eat or drink noxious materials or liquids; or

   c.    seriously neglected, e.g., starved (gross malnutrition); or

   d.    sexually molested or a victim of any act which contributes to the sexual delinquency of the child (e.g. child pornography); or

   e.    injured mentally or emotionally to such a degree that the child threatens suicide, appears severely disturbed, etc.; or

   f.    left without adult supervision for such a period of time and/or under such conditions that would endanger the welfare of the child; or

   g.    denied necessary medical care by a parent or guardian; or

   h.    denied necessary support by a parent or guardian or other remedial care recognized under state law as necessary for his well-being; or

   i.    deceased as the result of other than obviously natural or accidental causes.

B.    The preliminary investigating officer will:

1.    record the name of the notified detective in the appropriate box of the proper case report.

2.    record the name of the notified youth officer in the box provided for youth officer notification (first watch will notify Youth Division Headquarters) and advise the youth officer of the:

   a.    type of case

   b.    condition of child

   c.    location of child (in home, hospital, police station)

   d.    conditions under which the child was found

   e.    status of other children in the home.

   NOTE: In incidents where it is discovered that the child is the victim of sexual abuse by a family member or a caretaker in an organizational or institutional setting, the preliminary investigator will make the notification to the Youth Division as soon as possible and preferably from the scene prior to taking any further investigative action.

3.    indicate any instructions received from the youth officer in the narrative section of the proper case report, and

4.    in the "extra copies required" box, request two copies be sent to the affected area youth unit.

5.    request the services of an evidence technician when photographs would have evidentiary value, or when other evidence is present.

4

CITY0000026

C.    The investigating member of the Detective Division will:

    1.    notify the appropriate area headquarters youth unit via PAX or Bell telephone when an abused or neglected child offense is discovered while conducting another investigation and notify the Communication Operations Section and give the location of occurrence for proper Department notification and recording of the incident.

    2.    coordinate any follow-up investigation with the Youth Division when an abused or neglected child offense involves both divisions.

D.    Youth Division

    1.    When the Youth Division is notified of, or discovers an abused or neglected child offense (including sex) in which a child has been hospitalized or is the victim of any serious physical injury or neglect, the youth officer will:

        a.    immediately notify the Illinois Department of Children and Family Services Hot Line in Springfield, Illinois (telephone 1-800-252-2873) for 24 hour service and

        b.    submit a Child Abuse Investigation/Placement Report (CPD-24.133) to the agency within 24 hours of the incident. Written reports and notifications will be made by the assigned youth officer in all abused or neglected child offenses.

    2.    In addition, when the abused or neglected child incident is discovered by the Youth Division, the youth officer will notify:

        a.    the Communication Operations Section and give the location of occurrence for proper Department notifications and recording of the incident.

        b.    the Violent Crimes Unit of the affected Detective Division Area.

        c.    the State's Attorney's Office in instances of child sexual abuse when there is more than one victim.

    3.    The Youth Division will inform the Detective Division of any developments in investigations requiring a reclassification of an offense.

    4.    The Youth Division will cooperate with appropriate agencies interested in supplying protective or social services. For example: The Mental Health Division of the Chicago Board of Health (City of Chicago, Bureau of Mental Health - 744-8033 - Monday thru Friday - 0800-1700 hours) provides psychiatric help for child victims of sexual assault and their parents. The Board of Health will accept cases referred by the Youth Division with the following exceptions:

        a.    Persons who can afford private psychotherapy.

        b.    Persons who are under the active supervision of any court.

        c.    Retarded persons who are limited in their ability to benefit from psychotherapy.

        d.    Persons unwilling or unable to cooperate with mental health workers.

        e.    Children under five years of age (However, the parents of these children can receive advice and therapy).

*Matt L. Rodriguez*

Superintendent of Police

91-071   JVD

CITY0000027

| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| General Order 93-3 | 27 September 2002 | 1 October 2002 | 5B |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| SPECIAL SITUATIONS | C | Addendum 5, Addendum 5A, AM Nos. 95-011753, 96-004801, 9' 004977, and 02-002133 |

I. PURPOSE

This addendum identifies certain special situations and sets forth procedures for their investigation and processing.

II. SPECIAL SITUATIONS

    A.    Indebtedness

        1.    Members who incur just debts are expected to liquidate such debts within a reasonable period of time.

        2.    Wages of public employees are not immune from garnishment.

        3.    Any member receiving a complaint of indebtedness, other than a complaint of indebtedness to the City of Chicago, will inform the creditor reporting such indebtedness that an adequate remedy for a creditor is now provided by law.

        4.    Complaints of indebtedness to the City will be processed pursuant to the provisions of the Department directive entitled "Indebtedness to the City of Chicago."

    B.    Arrest Warrants and Judicial Non-Traffic Summons for Department Members

        1.    A warrant clerk will, when preparing an application for a warrant against a Department member:

            a.    follow the procedures outlined in the Department directive entitled "Judicial Non-Traffic Summons."

            b.    ascertain if a Complaint Register number has been obtained.

            c.    immediately notify a supervisory member in instances where a Complaint Register number has not previously been obtained.

            d.    accompany the complainant to court and inform the judge that the person against whom the complaint is being filed is a member of the Chicago Police Department and that the matter is being investigated by the Department.

            e.    submit a brief report of the circumstances to the Office of Professional Standards or Internal Affairs Division, as appropriate.

        2.    When a member assigned to serve a warrant determines that the person named in the warrant is a member of the Department, the member will notify his or her supervisor who, in turn, will notify the Office of Professional Standards. The Complaint Register number assigned by the Office of Professional Standards will be recorded on the Arrest Report (CPD-11.420).

        3.    Whenever a member of the Department is subjected to a physical arrest by the Chicago Police Department for other than a traffic or

CITY0000054

conservation offense, the case will be set for a court hearing within five days after the date of arrest.

4. Whenever a member of the Department is subjected to a physical arrest for a traffic or conservation offense, the case will be set for a court hearing in accordance with existing Department directives.

C. The Polygraph

1. When a polygraph examination is deemed necessary, the complainant will be requested to take a polygraph examination first.

2. If the complainant does not take the polygraph exam, the accused police officer will not be requested to take a polygraph exam.

3. If the complainant takes the polygraph exam and the results indicate deception, the accused officer may be requested to take a polygraph exam covering those issues wherein the examiner determines that the complainant is truthful.

4. When the polygraph is used, the accused member will be advised, in writing 24 hours prior to the administering of the tests, of any questions to which the Department will request an answer.

5. If the officer under investigation requests to take a polygraph exam, the officer may do so. However, an officer shall not be disciplined for refusal to take a polygraph exam, and the results of the polygraph exam shall not be admissible as evidence in proceedings before the Police Board or in any proceedings where the officer may appeal to the Police Board, unless by Illinois or Federal Court decision or Illinois Statute such evidence becomes admissible before the Police Board.

D. Arrestees Who Resist, Obstruct, Assault or Commit Battery of a Department Member

When a person is arrested for resisting, obstructing, assault and/or battery of a Department member, members will additionally refer to the Department directive entitled "Use of Force Guidelines" and follow the investigative and reporting procedures established in that directive.

E. Allegations of Impairment, Involving the Operation of a Vehicle - On or Off Duty

1. Allegations of impairment involving the operation of a vehicle include driving while under the influence of alcohol or a combination of alcohol and drugs.

2. The meaning of the term "drugs" will include but not be limited to cannabis as defined in 720 ILCS 550/3 and controlled substances as defined in Chapter 720, Article II of the Illinois Compiled Statutes, or as amended.

3. In every instance when a complainant or a sworn member makes an allegation against a Department member relating to impairment while operating a motor vehicle, in addition to complying with the provisions of the addendum to this directive entitled "Specific Responsibilities," the procedures outlined below will be followed.

a. The responsible command or supervisory member will:

(1) obtain a Complaint Register number.



CITY0000055

    (2)    ensure that a To-From-Subject report is obtained from each member having knowledge of the circumstances surrounding the complaint.

    (3)    prepare a To-From-Subject report summarizing the preliminary investigation.

b.    Accused members will be requested to read and sign a Notification of Charges/Allegations (CPD-44.115) to acknowledge that they have received a written copy of the specific allegations made against them.

c.    The incident will be investigated in accordance with the provisions of the Department directive entitled "Driving While under The Influence-Implied Consent" and any other related directives (e.g., "Traffic Crash Investigations").

d.    When the accused member has complied with all the provisions (e.g., Alcohol/Drug Influence Report (CPD-22.118), breath test) of the Department directive entitled "Driving While Under The Influence — Implied Consent," it will not be necessary to repeat these procedures in the administrative phase of the investigation. In these cases, the investigating member will photocopy the completed form. The words "Administrative Phase" will be inserted in the DUI Citation Number section of the Alcohol/Drug Influence Report photocopy and noted as an attachment to the administrative phase of the CR file.

4.    The responsible command or supervisory member will advise the accused member when the criminal segment of the preliminary investigation has been terminated, regardless of whether or not the accused member is subsequently charged with a violation of 625 ILCS 5/11-501. When the accused member has not completed or has refused to comply with any of the tests required in the investigation of allegations of Driving While Under the Influence of Alcohol, Drugs or a Combination Thereof-Implied Consent (625 ILCS 5/11-501), as applicable, the following mandatory procedures will be required under Administrative Proceedings.

a.    The accused member will be:

    (1)    presented with the Administrative Proceedings Rights form (CPD-44.105) before being asked the questions in the "Interview" section of the Alcohol/Drug Influence Report or any other questions which would tend to prove or disprove the allegation.

    (2)    ordered to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcohol/Drug Influence Report.

    (3)    ordered to complete the "Standardized Field Sobriety Tests," the results of which will be recorded on the Alcohol/Drug Influence Report.

        (a)    The investigating member will:

            i)    use a separate Alcohol/Drug Influence Report for this administrative phase.

            ii)    insert the words "Administrative Phase" in the DUI Citation Number section (top center) of the Alcohol/Drug Influence Report.

CITY0000056

      iii) write "DNA" (Does Not Apply) over the Court Information section in the top right hand corner of the Alcohol/Drug Influence Report.

      iv) write the CR number in the Traffic Court/Records Unit Control Number section in the lower right hand corner of the Alcohol/Drug Influence Report.

(b) Standardized Field Sobriety Tests will be administered by a sworn member at least one rank above the rank of the member being examined. In those instances when the accused member is a supervisory member, the Standardized Field Sobriety Tests will be conducted by the watch commander of the district of occurrence. If the circumstances require the presence of an exempt member, this member will be responsible for signing the report to indicate that his or her assessment of the accused member's condition is basically consistent with that of the examiner.

(4) ordered to answer the questions in the "Interview" section of the Alcohol/Drug Influence Report.

(5) ordered to submit to a breath test, the results of which will be entered into the "Breath Test" section of the Alcohol/Drug Influence Report.

(6) ordered to submit a urine specimen if physically incapable of taking a breath test and not hospitalized, if the results of the breath test are inconclusive, or if the results of the breath test are inconsistent with the degree of impairment or the allegation focuses upon drugs. Once a decision is made by the responsible command or supervisory member to have the accused member submit a urine specimen, no action pertaining to the collection of the urine specimen will be initiated until after the Internal Affairs Division has been notified. Urine specimen containers can be obtained from the Internal Affairs Division on the 2nd and 3rd watches by calling Pax 0610 and on the 1st watch by calling Pax 0301.

b. The urine specimen will be:

(1) collected in a manner that will preserve the dignity of the accused member and ensure the integrity of the sample.

(2) collected in the presence of the investigating supervisor only if the supervisor is of the same sex as the accused member. When the supervisor is not of the same sex as the accused member, arrangements will be made to have a sworn member of the same sex as the accused member witness the collection of the urine specimen. The responsible command or supervisory member will submit a To-From-Subject report which identifies the sample collection site, the date and time of the collection, the identity of the witness to the collection, and any other circumstances pertaining to the investigation.

CITY0000057

(3) turned over to a member of the Internal Affairs Division who will assume the responsibility for ensuring that the urine specimen is properly secured in accordance with established division-level standard operating procedures, pending laboratory processing.

c.  If the accused member refuses to provide a urine specimen or has refused to complete or comply with any tests required in conjunction with the administrative segment of the investigation, a violation of the Department Rules and Regulations, "Disobedience of an Order or Directive Whether Written or Oral," will be added to the administrative charges against the accused member.

d.  All completed reports and forms relating to the incident will be distributed in accordance with the Department directive entitled "Driving While Under the Influence-Implied Consent" and/or the addendum to this order entitled "Reporting and Review Procedures," as applicable.

F.  Allegations of Impairment, Not Involving the Operation of a Vehicle - On or Off Duty

1.  Allegations of impairment, not involving the operation of a vehicle include:

a.  Alcohol Intoxication.

Alcohol intoxication means that a person's mental or physical functioning is substantially impaired as a result of the use of alcohol.

b.  Being under the Influence of Drugs.

Drugs include but are not limited to the following - cannabis as defined in 720 ILCS 550/3 and controlled substances as defined in Chapter 720, Article II of the Illinois Compiled Statutes, or as amended.

c.  Being under the Influences of a Combination of Alcohol and Drugs.

2.  Whenever a sworn member or complainant makes an allegation against a Department member relating to impairment not involving the operation of a vehicle, the procedures outlined below will be followed.

a.  The responsible command or supervisory member will:

(1) obtain a Complaint Register number.

(2) ensure that a To-From-Subject report is obtained from each member having knowledge of the circumstances surrounding the complaint.

(3) prepare a To-From-Subject report summarizing the investigation.

b.  The accused member will be requested to read and sign a Notification of Charges/Allegations (CPD-44.115) to acknowledge that he or she has received a written copy of the specific allegations made against him or her and will be:



(1) presented with the Administrative Proceedings Rights form (CPD-44.105) before being asked the questions in the "Interview" section of the Alcohol/Drug Influence Report or any other questions which would tend to prove or disprove the allegation.

(2) ordered to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcohol/Drug Influence Report.

(3) ordered to complete the Standardized Field Sobriety Tests, the results of which will be recorded on the Alcohol/Drug Influence Report.

 (a) The investigating member will:

  i) use a separate Alcohol/Drug Influence Report for this administrative phase.

  ii) insert the words "Administrative Phase" in the DUI Citation Number section (top center) of the Alcohol/Drug Influence Report.

  iii) write "DNA" (Does Not Apply) over the Court Information section in the top right hand corner of the Alcohol/Drug Influence report.

  iv) write the CR Number in the Traffic Court/Records Unit Control Number section in the lower right hand corner of the Alcohol/Drug Influence Report.

 (b) The Standardized Field Sobriety Tests will be administered by a sworn member at least one rank above the rank of the member being examined. In those instances when the accused member is a supervisory member, the Standardized Field Sobriety Tests will be conducted by the watch commander of the district of occurrence. If the circumstances require the presence of an exempt member, this member will be responsible for signing the report to indicate that his or her assessment of the accused member's condition is basically consistent with that of the examiner.

(4) ordered to answer the questions in the "Interview" section of the Alcohol/Drug Influence Report.

(5) ordered to submit to a breath test, except when the allegation focuses exclusively on drugs, the results of which will be recorded in the "Breath Test" section of the Alcohol/Drug influence Report.

(6) ordered to submit a urine specimen if physically incapable of taking a breath test and not hospitalized, or if the results of the breath test are inconclusive, or if the results of the breath test are inconsistent with the degree of impairment or the allegation focuses upon drugs. Once a decision is made by the responsible command or supervisory member to have the accused member submit a urine specimen, no action pertaining to the collection of the urine specimen will be initiated until after the

_Disciplinary Procedures,_

Internal Affairs Division has been notified. Urine specimen containers can be obtained from the Internal Affairs Division on the 2nd and 3rd watches by calling Pax 0610 and on the 1st watch by calling Pax 0301.

c. The urine specimen will be:

(1) collected in a manner that will preserve the dignity of the accused member and ensure the integrity of the sample.

(2) collected in the presence of the investigating supervisor only if the supervisor is of the same sex as the member. When the supervisor is not of the same sex as the accused member, arrangements will be made to have a sworn member of the same sex as the accused member witness the collection of the urine specimen. The responsible command or supervisory member will submit a To-From-Subject report which identifies the sample collection site, the date and time of the collection, the identity of the witness to the collection, and any other circumstances pertaining to the investigation.

(3) turned over to a member of the Internal Affairs Division who will assume the responsibility for ensuring that the urine specimen is properly secured in accordance with established division-level standard operating procedures, pending processing by a medical laboratory.

d. If the accused member refuses to provide a urine specimen or has refused to complete or comply with any tests required in conjunction with the administrative segment of the investigation, a violation of the Department Rules and Regulations (e.g., disobedience of an order or directive whether written or oral) will be added to the administrative charges against the accused member.

e. All completed reports and forms relating to the incident will be distributed in accordance with the procedures established in the addendum to this order entitled "Reporting and Review Procedures."

G. Allegations of Miscellaneous Drug Related Activity - On or Off Duty

1. Allegations of miscellaneous drug related activity include but are not limited to a member's:

a. unauthorized involvement with a person or enterprise engaged in the illegal use, sale, delivery, manufacture, purchase, or possession of drugs.

NOTE: For the purpose of this order, the meaning of the words "person" and "enterprise" will be understood to be that of the definitions provided in Chapter 725, Act 175, Section 3, of the Illinois Compiled Statutes.

b. illegal sale, delivery, manufacture, purchase, possession, or use of drugs.

2. Whenever an allegation against a Department member concerning any of the above categories of conduct is received, the responsible command or supervisory member will obtain a Complaint Register number.

CITY0000060

3.    The Complaint Register investigation and the preliminary investigation of all criminal charges, where applicable, will be conducted in conformance with existing Department procedures.

4.    Whenever the results of the preliminary criminal investigation indicate reasonable grounds to believe that the accused member is involved in illegal drug related activity, or upon completion of the initial stages of an administrative investigation which indicates reasonable grounds to believe that the accused member is personally using illicit drugs or is personally misusing legally prescribed or dispensed medications, the accused member will be required to submit a urine specimen in accordance with the procedures established in Item II-E-4-b of this addendum.

H.    Allegation of Misconduct for a Member Striking a Citizen with an Object

Whenever an allegation of misconduct for a member striking a citizen with an object is made, the watch commander will ensure that:

1.    an evidence technician is requested to inventory the item(s) allegedly used.

2.    the assigned evidence technician hand-carries the inventoried item(s) to the Forensic Services Section.

3.    OPS is notified and provided with the applicable inventory numbers.

4.    the member reports to Operations Command, if necessary, to obtain temporary replacement of the affected item (e.g., flashlight, baton, handgun).

I.    Repeated Minor Infractions

Department members who have repeated minor infractions will, in addition to any disciplinary action, be processed in accordance with the Department directive entitled "Personnel Concerns."

J.    Civil Suits Against Department Members

Allegations against Department members contained in a civil complaint will be handled in accordance with the Department directive entitled "Disseminating Information in Civil and/or Criminal Legal Actions and in Civil Suits Against Department Members." However, if the complaint alleges conduct which would be a violation of Department rules, regulations, or directives and has not been the subject of a previous Complaint Register investigation, a Complaint Register number will be obtained.

K.    Verbal Abuse

1.    A complaint of verbal abuse against a Department member, which includes the use of profane, insolent, or disrespectful language, will require the obtaining of a Complaint Register number to record the incident and facilitate an inquiry as to its validity.

2.    The manner of speaking as well as the choice of words must be considered in determining whether or not a member has verbally abused a citizen.

3.    Whenever an allegation of verbal abuse is the only allegation made, in addition to complying with the applicable provisions of this order, the procedures outlined below will be followed.

CITY0000061

      a.    The supervisor assigned to the Complaint Register investigation will record his findings on a Summary Report Digest form (CPD-44.112A).

      b.    The unit commanding officer will review the Summary Report Digest form and forward the report through channels to the Internal Affairs Division.

L.    Orders of Protection Against Sworn Members

Orders of Protection are court issued by a judge directing a "respondent" (the accused) to perform certain acts or to refrain from committing certain acts. Effective 1 January 1996, a member who is a respondent in an order of protection, issued on or after that date, may be ordered by the court to surrender the member's duty firearm(s) and the member's non-duty related firearms as one of the remedies listed on a "plenary" (permanent) order [725. ILCS 5/112A-14 (b) (14.5); effective January 1, 1996]. A plenary order of protection is for a stated period not to exceed two years. Usually, before a plenary order can be issued, an emergency order of protection must be entered and a hearing date set to examine the "petitioner" (the accuser) under oath to ascertain whether there is any "danger of the illegal use of firearms" by the respondent. The following procedures are applicable to any order of protection issued by either the criminal or civil courts.

1.    When a member is served with a Notice to Appear or is otherwise notified or made aware of an order of protection (regardless of the source), where the member is the "respondent," or if the member receives notice that the petitioner has sought modification and reopening of a "current" order of protection, the member will:

      a.    immediately prepare a To-From-Subject report indicating the date and time the member was served or became aware of the existence of or modification to the order of protection, and also indicate the date and time of any future court appearance as listed on any document received or of which the member is aware. In addition, the member will list the CR number and date of incident of any pending CR investigation, if known by the member.

      b.    submit the report, with copies of all documents, to the member's watch commander/ watch operation lieutenant for review and forwarding.

2.    The watch commander/watch operation lieutenant will review and sign the report and immediately forward the original report, with copies of all documents, to the General Counsel, Office of the Superintendent, and forward additional copies to the Assistant Deputy Superintendent, IAD, the Chief Administrator of OPS, and to the member's unit commanding officer of exempt rank to be retained in unit files.

3.    OPS will, upon receipt of the report, review its records to determine if a CR number has been issued against the member for the incident that precipitated the issuance of the order of protection. If a CR number has not been initiated, OPS will review the order of protection and all documents and issue a CR number. Both IAD and OPS will maintain a file of all current orders of protection (including expiration date) issued against Department members for access by supervisory personnel.

4.    Designated members from IAD and OPS will appear in court for the hearing on the indicated date and time.

CITY0000062

a. Should a plenary order of protection be issued by the judge at that hearing which includes as a remedy, "the prohibition of firearm possession", the IAD representative will:

    (1) if the hearing is held in criminal court, request the assistant state's attorney to provide the Department with a copy of the plenary order of protection. If the hearing is held in civil court, the IAD representative will request the petitioner's attorney to provide a copy of the plenary order of protection.

    (2) deliver to the member a copy of a Notification of Duty Restrictions (CPD-44.301) instructing the member to surrender the member's duty and non-duty firearms as directed by the court. Unless some other timetable is provided for in a court order, the member will be ordered to immediately surrender their firearms to the IAD representative at the Evidence and Recovered Property Section.

    (3) contact the Field Inquiry Section of the Records Division to obtain a listing of all firearms registered to the member.

    (4) inventory the firearms in accordance with the Department directive entitled "Firearms Taken Into Custody or Turned In." The notation "Police Officer's Weapon - Do Not Mark or Destroy" will be entered in the "Comments" field on the Recovery screen of the eTrack application. On the Classification screen, the action "Hold for Investigation" will be checked and the star number of the person assigned to the investigation entered in the appropriate box. Multiple firearms may be entered on a single property inventory. The IAD representative will provide the member with the owner's/citizen copy of the inventory.

    (5) provide the member with written notification directing the member to report to the Personnel Division to surrender his or her star, shield and I.D. card and to receive information concerning the disposition of duty status.

b. Immediately following the hearing, the designated member from OPS will prepare a To-From-Subject report to the Superintendent of Police summarizing all available information from the case file and the hearing.

c. If a "prohibition of firearm possession" remedy is not included in the plenary order of protection, the IAD representative will still request a copy of the order from the court to be included in the member's case file.

d. Nothing in this order precludes the Superintendent from exercising his or her prerogative to immediately suspend or reassign a member, based on the circumstances of each individual case.

5. If a member is subject to an order of protection issued in another state, the member will submit a To-From-Subject report outlining the circumstances as prescribed in Item II-L-1 of this addendum. OPS will investigate the circumstances and will obtain a CR number, if appropriate.

CITY0000063

6.    If at some future date, a member receives a written court order, issued by a judge, that allows the member to possess firearms, the member will prepare a To-From-Subject report to the member's commanding officer, attaching a copy of that order. The watch commander/watch operations lieutenant will forward the report as directed in Item II-L-2 of this addendum.

7.    The Evidence and Recovered Property Section will not release an officer's firearms inventoried pursuant to Item II-L of this addendum without the express written authorization of IAD.

## III. ADMONISHMENTS

A supervisor or command officer, or any member acting in such capacity, may exercise the prerogative of immediate correction or admonishment of a subordinate whenever the nature or circumstances of an incident do not warrant a reprimand or disciplinary action. If the application of immediate correction or admonishment is not effective, i.e., the conduct of the member indicates a repetitive pattern of irregularities, the procedures contained in the addendum to this dierctive entitled "Summary Punishment" will be followed.

## IV. DEPARTMENT MEMBERS UNDER INVESTIGATION BY ANY OUTSIDE LAW ENFORCEMENT AGENCY

A.    A Department member who is under investigation by any outside law enforcement agency, or having knowledge that another member is under investigation by any law enforcement agency, whether or not that member has been contacted by that agency, will immediately submit a To-From-Subject report of the information, in triplicate, to his or her unit commanding officer.

B.    The unit commanding officer will immediately forward the original copy of the report to the Chief Administrator, Office of Professional Standards, and a copy to the Assistant Deputy Superintendent, Internal Affairs Division. A copy will also be retained in unit files.

Superintendent of Police

| Indicates new or revised material.

00-148 LMT

CITY0000064

8.10     ENTERING STOP ORDERS

A stop order is a flag placed in the wanted person file or identification record file that causes notification to an investigative unit when a specific individual is arrested.

A.    A stop order will be requested by the detective when an offender has been identified and a warrant has been obtained for his arrest.

B.    A stop order will be obtained when a suspect has been identified but insufficient evidence exists to obtain a warrant, and the suspect is being sought for interrogation, a line-up or other investigation.

C.    The detective requesting the stop order will, for each person wanted:

1.    complete a Stop Order or Cancellation Request form (CPD-31.961) in triplicate.

2.    present the completed forms to the unit commanding officer through the sergeant along with:

a.    a copy of the original case report;

b.    a Supplementary Report that explains how the wanted person was involved in the crime;

c.    copies of all executed complaint forms and warrant, if obtained;

d.    a photo of the wanted person;

e.    a copy of the wanted person's Criminal History Sheet (CPD-31.903);

f.    a copy of any other related documents.


8.11     ADMISSIONS, CONFESSIONS, AND WRITTEN STATEMENTS

A.    Because courts and juries review the details of the interrogation process to establish the credibility of the confession, detectives must document the circumstances of every confession or admission.

1.    The detective will include in a Supplementary Report:

815

a.   the name of the person who obtained the confession;

b.   the identification of all persons present during the statement;

c.   the date and time the statement was given;

d.   the specific location where the statement was taken;

e.   that the person in custody was treated humanely and provided with proper food, shelter, and, if required, medical treatment; and

f.   a description of any exercise of the arrestee's right to communicate with an attorney and a family member by making a reasonable number of phone calls.

2.   Detectives will provide ample detail in their reports to furnish the assistant state's attorney with sufficient information to counteract any motion to suppress a confession or admission.

B.   Detectives will not take written statements in any investigation unless advised to do so by an assistant state's attorney, or unless directed to do so by a Department supervisor. In exceptionally cleared homicide cases, however, detectives will take written statements from witnesses whose information is essential in determining the correct status of the case.

816

CITY0000261



# BUREAU OF TECHNICAL SERVICES
## FORENSIC SERVICES DIVISION
### Standard Operating Procedure

<u>Polygraph Unit Operations</u>

The polygraph examination should be viewed as an investigative aid during criminal and/or other investigations conducted by the Chicago Police Department and not as a substitute for a thorough investigation.

The policy of the Forensic Services Division is that the Polygraph Unit is an additional investigative service that is made available to various department units and members who have the responsibility for investigative follow-up and/or are responsible for its case presentation in court, hearings, etc.

A.   Polygraph Unit hours of operation

    1.   Monday through Friday, 0900 to 2100 hours.

    2.   The Polygraph Unit can be made available beyond normal operation hours
        a)   depending on the needs of an investigation,
        b)   by authorization of the on-duty watch commander or the Commander of the Forensic Services Section,
        c)   and/or case evaluation and availability by an examiner assigned to the Polygraph Unit.

B.   Unit Facilities



    1.   The Polygraph Unit is located at 1121 S. State Street in the 5th floor Annex of Police Headquarters.
    2.   Requesting officers will bring examination subjects to the front desk and check in (unless other arrangements have been made with the examiner).
    3.   The Polygraph Unit telephone numbers are: Centrex 312-747-5523, PAX 0284 and FAX 312-747-9623. These numbers are available on a 24 hour basis.

C.   Requesting Officers

    1.   Polygraph examinations are available for any department members who are assigned to a criminal investigation, the follow-up and case presentation, or any investigative matter deemed necessary by the department and authorized by an exempt rank.
    2.   The investigating officer or assisting officer must accompany the subject to the polygraph unit examination facility and be available during the polygraph examination.
    3.   In certain instances when the investigating officer cannot personally accompany the subject to the Polygraph Unit examination facility, the officer will directly provide case information to the examiner administering the test and be available by telephone for additional case information during testing.

-44-



4.   Should attempt to provide the testing examiner with all case reports, photographs and other case information prior to testing.

Unit Examination Guidelines

A.   Subject Suitability

Some subjects may not be suitable candidates for polygraph examinations at the time of request. The suitability of the subject will be left to the discretion of the examiner.

1.   Examples of subjects who may not be suitable for a polygraph examination at the time of request:

a)   sex crime victims
b)   pregnant females
c)   subjects with chronic medical/mental disorders
d)   subjects who may be fatigued, impaired from the abuse of drugs/alcohol, impaired due to medical use/non-use of prescription medication, or otherwise physically impaired from taking a polygraph examination at the time of request,
e)   relatives of homicide/death victims may not be suitable for a polygraph examination on the same day the incident occurred.



B.   Examinations

The polygraph examiner will be responsible for any specific test questions and/or test construction depending on the case situation.

C.   Juveniles

Polygraph examinations of juveniles may be conducted. The following conditions should be considered.

1.   Due to the nature of the investigation, the suitability of a juvenile for a polygraph examination will be left to the discretion of the examiner.
2.   Written permission has been obtained from the juvenile's parent or guardian.
3.   The Youth Division has been notified.
4.   The parent or guardian must accompany the juvenile to the Polygraph Unit testing facility.

D.   Non-English speaking subjects/hearing impaired

Polygraph examinations may be administered to non-speaking individuals or those individuals who have a hearing disability. This determination will be left to the discretion of the examiner.



-45-

CITY0001448



1. Initial preference for a non-English speaking interpreter would be a court certified interpreter (sworn or civilian).
2. If conditions do not allow for a court certified interpreter, a department member, preferably independent of the investigation, may be considered.
3. Friends, acquaintances, business associates/co-workers, relatives of the examinee should not be used for this purpose.
4. Individuals who are hearing impaired have been considered for polygraph examinations. The Chicago Police Department has on staff a court certified interpreter in sign language (PAX 0301, Centrex 312-747-6301).
5. After conferring with the Polygraph Unit, the responsibility of acquiring an interpreter for a polygraph examination is left to the requesting officer.

Unit Record Procedures

A. Record Division Numbers

1. All polygraph examinations (reports, charts, etc.) Will be issued an RD number.
2. It will be the responsibility of the requesting officer to provide the necessary RD number prior to the completion of the polygraph examination.
3. If, at the time of request, no RD number has been assigned to a particular investigation:

   a) Youth Division "Hot Line" investigation,
   b) Intelligence Unit confidential investigation, etc.,
   a general non-criminal case report will be completed by the requesting officer.

B. The following are reports utilized by the Polygraph Unit:
1. Polygraph Case Review (CPD 33.500)
2. Polygraph Examiner's Worksheet (CPD 33.501)
3. Polygraph Subject Consent (CPD 33.503)
4. Supplementary Report (CPD 11.411A)

Outside Agency Requests

Requests by other law enforcement agencies for polygraph examinations to be conducted by the Polygraph Unit should adhere to the following:

A. The agency should coordinate any efforts for department use of polygraph examinations with



a department liaison (department investigative unit for purposes of reports and required RD numbers).

B. The matter under investigation should be of a criminal nature.



C. The subject of the examination should not be a member of the requesting agency (such as internal investigations

-46-

Page 5 of 10
Page: 5/10
From: 13127466754
JAN-09-2015 03:07
Fax From StreamCenter
CITY0001449



D.  The scheduling of an examination should not conflict with requests from members of the Chicago Police Department.

E.  Department members requests' take priority and may cancel or reschedule examinations by outside agencies.

F.  The on-duty watch commander and/or Commander of the Forensic Services Division will be notified and approve such requests.

polygraph
02 November 1998





-47-

CITY0001450

# BUREAU OF DETECTIVES
# FORENSIC SERVICES DIVISION
## Standard Operating Procedure

**Polygraph Unit Operations**

## I. PURPOSE

    A.    Establishes the Forensics Service Division policy with regards to the use of the polygraph unit.

    B.    Provides guidelines and responsibilities for personnel assigned to the Polygraph unit.

    C.    Identifies reports utilized by the Polygraph unit.

    D.    Specifies criteria for the suitability of polygraph subjects.

## II. POLICY

    The polygraph examination should be used as an investigative aid during criminal and/or other investigations conducted by the Department and **NOT** as a substitute for a thorough investigation.

    The policy of the Forensic Services Division is that the Polygraph Unit is a service made available to various Department units who have the responsibility for investigative follow-up and/or are responsible for its case presentation in court.

## III. POLYGRAPH UNIT OPERATIONS

    A.    Polygraph Unit hours of operation

        1.    Monday through Friday, 0900 to 2100 hours.

        2.    The Polygraph Unit can be made available beyond normal operation hours:

            a)    depending on the needs of an investigation, with authorization of the on duty watch commander of the Forensic Services Division.

            b)    dependent on the availability of a polygraph examiner.

    B.    Unit Facilities

        1.    The Polygraph Unit is located at the 1350 W. Jackson, in Room 217.

        2.    The Polygraph Examination will normally be conducted at the location where the requester is assigned.

        3.    The Polygraph will be requested by contacting the Mobile Crime Laboratory Desk at (312) 746-6740 or PAX 4071.

    C.    Requesting Officers

1

CITY0001451

1. Polygraph examinations are available for any department member who is either assigned to a criminal investigation, the follow-up and case presentation, or any investigative matter deemed necessary by the department and authorized by a member of exempt rank.

2. The investigating officer or assisting officer is available during the polygraph examination. The investigating officer or assisting officer will directly provide case information to the examiner administering the test and be available during the examination.

3. The investigating officer should attempt to provide the polygraph examiner with all case reports, photographs and other case information prior to the examination.

## IV. Unit Examination Guidelines

### A. Subject Suitability

Some subjects may not be suitable candidates for polygraph technique at the time of the examination. The acceptability of the subject for the polygraph technique will be determined by the polygraph examiner.

1. Examples of subjects who may not be suitable for a polygraph examination at the time of request:

   a) sex crime victims
   b) women who are pregnant.
   c) subjects with chronic medical/mental disorders
   d) Subjects who may be fatigued or impaired from the abuse of drugs/alcohol; impaired due to medical use/non-use of prescription medication, or otherwise physically impaired.

### B. Examinations

The polygraph examiner will be responsible for any specific test questions and/or test construction depending on the case situation.

### C. Juveniles

Polygraph examinations of juveniles may be conducted. The following conditions should be considered.

1. No polygraph examination will be administered to any person less than thirteen years of age. As a general rule, polygraph examinations will not be administered to persons under the age of fifteen years of age unless extenuating circumstances exist. The final determination will be left with the individual examiner as to whether or not a polygraph examination will be administered.

2. Written permission has been obtained from the juvenile's parent or guardian.

3. The parent or guardian **must** accompany the juvenile to the Polygraph Unit

2

CITY0001452

testing facility.

4.   The Area SVU Unit has been notified and a Youth Investigator has arrived at the polygraph facility prior to the administering of a polygraph examination.

D.   Non-English speaking subjects/hearing impaired

Polygraph examinations may be administered to non-speaking individuals or those individuals who have a hearing disability. This determination will be left to the discretion of the examiner.

1.   The responsibility of acquiring an interpreter for a polygraph examination is left to the requesting officer.

2.   Initial preference for a non-English speaking interpreter would be a Department certified interpreter (sworn or civilian).

3.   If conditions do not allow for a court certified interpreter, a department member, preferably independent of the investigation, may be considered.

4.   Friends, acquaintances, business associates/co-workers, relatives of the examinee should not be used for this purpose.

5.   Individuals who are hearing impaired have been considered for polygraph examinations. The Operations Command Unit has on staff a court certified interpreter in sign language (PAX 0301, BELL 312-745-6300).

## V.   Unit Record Procedures

A.   Record Division Numbers

1.   All polygraph examinations (reports, charts, etc.) will be issued an RD and Event number.

2.   It will be the responsibility of the requesting officer to provide the necessary RD and Event number prior to the completion of the polygraph examination.

3.   If, at the time of request, no RD number has been assigned to a particular investigation:

a)   Youth Division "Hot Line" investigation,

b)   Intelligence Unit confidential investigation, a general non-criminal case report will be completed by the requesting officer.

B.   The following are reports utilized by the Polygraph Unit:

1.   Polygraph Subject Consent (CPD 33.503)

2.   Polygraph Case Review (CPD 33.500)

3.   Polygraph Examiner's Worksheet (CPD 33.501)

4.   Supplementary Report (CPD 11.411A)

## VI. Outside Agency Requests

Requests by other law enforcement agencies for polygraph examinations should adhere to the following:

3

CITY0001453

A.    The agency should coordinate any efforts for department use of polygraph examinations with a department liaison (department investigative unit for purposes of reports and required RD and Event numbers).

B.    The matter under investigation should be of a criminal nature.

C.    The subject of the examination should not be a member of the requesting agency (such as internal investigations)

D.    The scheduling of an examination should not conflict with requests from members of the Chicago Police Department.

E.    The on-duty Watch Commander and/or Commander of the Forensic Services Division will be notified and approve such requests.

Polygraph
01 December 2011

CITY0001454



| **GENERAL ORDER** | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| | 15 July 2005 | 18 July 2005 | 05-01 |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| DIGITAL RECORDING OF HOMICIDE INTERROGATIONS | C | |

**RELATED DIRECTIVES General Order:** Interrogations, Field and Custodial, Processing Persons Under Department Control, Processing of Juveniles and Minors **Under Department** Control, Preliminary Investigations, Traffic Crash Investigation, **Department Special Order:** Eavesdropping Devices.

## I.  PURPOSE

This directive:

A.  informs Department members of Public Act 93-0206 of the State of Illinois which requires the electronic recording of custodial interrogations of arrestees suspected in homicide investigations.

B.  establishes the policy and procedures of the Chicago Police Department to comply with the Public Act 93-0206 of the State of Illinois.

## II.  POLICY

A.  All interrogations of suspects in a homicide investigation will be digitally recorded using Department-issued equipment.

B.  All persons suspected of a homicide will be transported directly to the appropriate Detective Division Area Center for processing.

## III.  CONFLICT RESOLUTION

In the event that the information in this directive conflicts with a provision of any other Department directive, this directive will take precedence.

## IV.  DEFINITIONS

A.  **Custodial Interrogation:** An interrogation in which a reasonable person would consider themselves in custody and questions asked during the interrogation are reasonably likely to elicit an incriminating response.

B.  **Electronic Recording:** A motion picture, audiotape, videotape, or digital recording.

C.  **Place of Detention:** A building or police station that is a place of operation for a municipal police department, county sheriff department, or other law-enforcement agency where adults may be held in connection with criminal charges or where juveniles may be held for allegations of delinquency. For adult arrestees, a courthouse is not considered a place of detention for the purposes of this order.

D.  **Unrecorded Statement:** A statement during a custodial interrogation that is not electronically recorded.

## V.  GENERAL INFORMATION

A.  Public Act 93-0206 of the State of Illinois (HB 223) requires the electronic recording of custodial interrogations of arrestees suspected in homicide investigations. This must be implemented beginning 18 July 2005.

B.  Interrogations of arrestees who are suspected of the following crimes will be recorded:

1.  First Degree Murder.

2.  Second Degree Murder.

CITY0001455

3. Involuntary Manslaughter.

4. Reckless Homicide.

5. A Driving Under the Influence charge that resulted in a death.

6. Drug Induced Homicide.

NOTE: These charges include Intentional Homicide of an Unborn Child, Voluntary Manslaughter of an Unborn Child, Involuntary Manslaughter of an Unborn Child, and Reckless Homicide of an Unborn Child.

C. Interrogations of juvenile arrestees (under the age of 17) are required to be recorded if at the time of the commission of the offense they could be charged with the offenses enumerated in Item V-B. Department members will follow the procedures in the Department directive entitled "Processing of Juveniles and Minors Under Department Control."

D. Electronic recording of homicide interrogations does not violate the eavesdropping statute (720 ILCS 5/14-3) and therefore the suspect's consent is not required.

E. Any unrecorded statement made during a custodial interrogation will be presumed inadmissable unless this presumption is overcome by a preponderance of the evidence that the statement was reliable and voluntary. The totality of the circumstances surrounding the unrecorded statement will determine whether or not it is admissible.

F. Exceptions to the inadmissibility of unrecorded statements are:

1. spontaneous statements not made in response to questioning;

2. statements made in response to routinely asked questions during the processing of the arrestee;

3. statements that are made out of the boundaries of the State Illinois;

4. a statement made in open court during any criminal or juvenile proceeding;

5. a statement made at a time when members of the Chicago Police Department who are involved in the custodial interrogation were not aware a death has in fact occurred;

6. electronic recording of the custodial interrogation was not feasible;

7. there is an electronic recording of the arrestee's request that his statement not be electronically recorded;

8. a voluntary statement made by the arrestee has a bearing on the credibility of the arrestee as a witness.

G. The five detective areas, Homan Square, and the Polygraph Unit have interview rooms that are equipped with surveillance cameras and microphones in locations allowing video and audio surveillance of the entire room.

H. A control panel is mounted on the wall just outside each interview room. The control panel allows the detective assigned to the investigation/ interrogation to activate and deactivate the recording of all activities in the room.

CITY0001456

I.    A control room is located at the five detective areas, Homan Square, and the Polygraph Unit. The control room allows for the monitoring of the audio and video from each interview room within the unit with a surveillance camera and microphone.

J.    Each of the five detective areas is equipped with a portable digital recording kit. The purpose of the portable digital recording kit is to record, with the approval of the watch commander of the Homicide/Gangs/Sex Crimes unit, custodial interrogations that occur outside of the digitally equipped interrogation rooms. A Department member who uses a portable digital recording kit must use a new cassette or video for recording.

K.    The only Department member that can view a permanently stored interrogation recording is a detective assigned. The exceptions to this are:

1.    Department members assigned to Detective Division- Central Investigations Unit(Unit 606),Cold Case Squad;

2.    Traffic specialists assigned to the Major Accident Investigation Section, if the homicide is of a vehicular category;

3.    A Department member granted a Video Exempt role; or

4.    A Department member who:

    a.    needs to acquire access to a digital recording created by that Department member while assigned to that unit, and

    b.    has received written permission from the Chief of Detectives.

## VI. RESPONSIBILITIES

A.    Arresting/Transporting Officer

1.    Department Members taking an individual into custody or accepting custody from other officers will follow the procedures outlined in Department directive entitled "Restraining Arrestees." Members will be responsible for the safety and security of the arrestee.

2.    A thorough search of the arrestee suspected of a homicide will be conducted in accordance with established Department procedures.

3.    Members will transport an arrestee in a vehicle equipped with a protective divider or request a squadrol as soon as possible for transportation to the Area Center Headquarters where the homicide occurred.

4.    Transporting officers will transport the arrestee suspected of a homicide **directly** to the Homicide/Gangs/Sex Crimes Unit of the Area Center Headquarters where the homicide occurred and will:

    a.    immediately notify the watch commander of the Homicide/Gangs/Sex Crimes Unit of the appropriate Area Center Headquarters that the arrestee is suspected of a homicide; and

    b.    ensure the detective assigned by the watch commander takes custody of the arrestee prior to being placed in the interview room.

        NOTE: If the arrestee needs immediate medical care, Department members will follow the procedures in the Department directive entitled "Processing Persons Under Department Control."

CITY0001457

5. As soon as the situation allows, the arresting officer will proceed to the detention facility to ensure that all required arrest documents are properly completed and the Arrest Report (CPD- 11.420 or CPD- 11.420c) is presented to the district watch commander in charge of the detention facility.

6. The arresting officer will immediately telephone the desk sergeant of the district of occurrence and, if different, the desk sergeant of the district of arrest. The arresting officer will report the name and address of the arrestee, probable charges, and Area Center Headquarters the arrestee is being detained. The desk sergeant will notify his or her district watch commander.

7. A Department member need not refrain from engaging in conversation including interrogation as to the facts of the crime with a suspect who has indicated a willingness to talk either at the scene or on direct route to the area. However, a Department member shall inform the arrestee of Miranda rights where required and, further, shall refrain from initiating a custodial interrogation for the purpose of usurping the legal requirement to record such interrogations and shall refrain from extending the interrogation beyond the time it takes to transport the subject directly to the appropriate Area Center Headquarters.

    a. Once in the Area, the transporting officers shall refrain from all interrogations. The Department member will inform the detective assigned to the homicide investigation/interrogation of any statement made by the arrestee when the detective takes custody of the arrestee or in a reasonable amount of time after the arrival. The transporting officer will document such statement in a Supplementary Report (CPD- 11.411).

    b. In cases in which a Standardized Field Sobriety Test is appropriate, these tests **are allowed** to be performed by a Department member at the scene.

    c. When a death in fact has occurred in traffic-related cases and there is a possibility of Reckless Homicide or Aggravated Driving Under the Influence charges, the following reports shall be filled out as indicated:

        (1) Alcohol/Drug Influence Report (CPD-22.118). The arresting officer will fill out the first page and the first part of the second page up until the section marked "Interview." The "Interview" section will be filled out by the detective assigned to the homicide investigation/interrogation who must record the interrogation. The detective will sign the Alcohol/Drug Influence Report at the bottom of the second page below the arresting officer's signature.

        (2) Driver's Crash Statement (CPD-22.111). The detective assigned to the homicide investigation/interrogation will complete this report and must record the interrogation.

B. Detective assigned to the homicide investigation/interrogation

The detective assigned by the watch commander of the Homicide/Gangs/Sex Crimes Unit to the investigation/interrogation of the arrestee suspected of a homicide will take custody of the arrestee from the transporting officer and:

1. before the arrestee enters the interview room, activate the digital recording system.

*Digital Recording of Homicide Investigations*

CITY0001458

2. be responsible for initiating and maintaining the digital recording of the arrestee during the time in the interview room.

C. Watch Commander of the Homicide/Gangs/Sex Crimes Unit of the Appropriate Area Center Headquarters

When a Department member brings an arrestee suspected of a homicide to the Area Center Headquarters, the watch commander of the Homicide/Gang/Sex Crimes Unit will:

1. assign a detective to the homicide investigation/interrogation of the arrestee,

2. ensure the digital recording device is activated by the assigned detective before the arrestee is placed into the interview room, and;

3. ensure the detective assigned to the investigation/interrogation take custody of the arrestee from the transporting officer and place the arrestee into the interview room.

D. The Superintendent of Police

The Superintendent of Police will determine which Department members will be granted a Video Exempt role to access the digital video system on I-CLEAR.

## VII. PROCEDURES WHEN DIGITALLY RECORDING

A. The detective assigned to the investigation/interrogation of an arrestee suspected of a homicide will follow the technical procedures in the manual entitled "Detective's Guide to Digital Recording of Homicide Interviews" to operate the system.

B. The system will not be turned off after an arrestee suspected of a homicide is placed into the interview room while the arrestee remains in the room. In addition, the equipment will remain on during short breaks when the arrestee leaves the room when practical.

C. Equipment will be turned off if:

1. the arrestee is placed in a different room;

2. the arrestee is returned to the lock-up;

3. the interrogation is concluded.

D. The detective assigned to the homicide investigation/interrogation may, in his or her discretion, turn off the recording equipment during a break in which the arrestee is removed from the interview room if the detective determines that it is impractical to continue running the equipment (i.e. a lengthy break for multiple lineups).

E. The arrestee **is not required** to be told that he or she is being recorded. Anyone other than a homicide suspect or a Department member who will be recorded while in the interview room must be told by the detective assigned to the investigation/interrogation he or she is being recorded.

F. When an attorney is admitted into the interrogation room to confer with his or her client, the detective assigned to the investigation will:

*Digital Recording of Homicide Investigations*

5

1. inform the attorney that the digital recording equipment is activated;

2. escort the attorney to the control box for the interview room, supply the attorney with the attorney switch key and instruct him or her how to block the audio and video portion using the key;

3. when the attorney is finished, ensure that he or she unblocks the a and video portion of the digital recording system; and

4. retrieve the key to the system from the attorney.

VIII. PROCEDURES AFTER THE INTERROGATION

A. The digital video recording of the interrogation is not available to be permanently stored in the I-CLEAR system immediately after recording. The transfer will take about five to twenty-four hours after the equipment is deactivated.

B. In cases where Felony Review approves charges, the following procedure will be completed prior to the detective assigned to the homicide investigation/interrogation's tour of duty. In all interrogations where no charge is placed, the detective assigned to the investigation/interrogation must complete the following procedure within three days:

   1. access the I-CLEAR system, follow the directions in the manual entitled "Detective's Guide to Digital Recording of Homicide Interviews," and input the following data:

      a. Record Division Number,

      b. Category,

      c. The information on the arrestee who was digitally recorded, and

      d. The information on every Department member that interrogated th arrestee during the digital recording. The detective that inputting the information must enter his or her informa n first.

   2. click the blue button to permanently store the data enumerated in VIII-B-1.

      NOTE: The only Department member who can update permanently stored interrogation data is a member granted a Video Exempt role, the Department member who stored the video, or a Department member who is enumerated in VIII-B-1-d.

IX. PROCEDURES FOR CREATING A COPY OF THE INTERROGATION

A. An authorized detective who requires a copy of all of or a portion of an interrogation for a legitimate, lawful police purpose will follow the procedures in the manual entitled "Detective's Guide to Digital Recording of Homicide Interviews" to operate the system.

B. There are only two discs that can be utilized to create a copy of an interrogation:

   1. DVD + RW (Digital Video Disc and Rewritable)

   2. DVD + R (Digital Video and Recordable)

*Digital Recording of Homicide Investigations*

CITY0001460

C. Any such copy of interrogations will be clearly marked "unofficial police document" on the image of the copy. Copies of interrogations are to be only used in an official police capacity. Department members who are authorized to produce copies of an interrogation and improperly utilize it will be disciplined according to current Department procedures and guidelines.

D. Copies will be retained and archived consistent with procedures established by the Chief of Detectives.

Philip J. Cline

05-098 BBO

Superintendent of Police

*gital Recording of Homicide Investigations*

7

CITY0001461