# EXHIBIT 11

**To**
**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS**
**REQUIRING DENIAL OF THE CITY'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**

**March 15, 2016**

**Case No. 14-CV-4391**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-04391 |
| | ) | |
| CITY OF CHICAGO, Chicago Police | ) | Hon. John W. Darrah |
| Officers ROBERT BARTIK, #3078; | ) | |
| DEMOSTHENES BALODIMAS, | ) | |
| #21204, ROBERT CORDARO, #20680, | ) | |
| JOHN J. DAY, #20926, JAMES M. | ) | Hon. Mag. Susan E. Cox |
| KELLY, #21121, MICHAEL | ) | |
| LANDANDO, #20417, ANTHONY | ) | |
| NORADIN, #21252, and RANDALL | ) | |
| WO, #20232; Assistant Cook County | ) | |
| State's Attorneys ANDREA GROGAN | ) | |
| and LAWRENCE O'REILLY; and the | ) | |
| COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANT CITY OF CHICAGO'S
### RESPONSES TO NICOLE HARRIS' FIRST SET OF REQUESTS TO ADMIT

Defendant City of Chicago (the "City"), by its attorneys, Greenberg Traurig, LLP,

responds and objects to Plaintiff's Requests to Admit ("Requests") as follows:

### OBJECTIONS AND RESPONSES TO REQUESTS TO ADMIT

**REQUEST NO. 1**: Admit that in 2005, the Chicago Police Department ("CPD") detective
assigned to an investigation by a sergeant had the lead responsibility for the investigation
process.

**RESPONSE**: The City objects to the terms "lead responsibility" and "investigation process" as

vague, rendering response to this Request impossible without speculation.

Subject to and without waiving this objection, the City admits that in 2005 a detective

assigned to an investigation by a sergeant generally had responsibility for investigating a case.

Answering further the City states that it cannot admit or deny if such a detective had "lead responsibility for the investigation process" because those terms and labels are not ordinarily used by the City. The City denies any remaining allegations not specifically answered herein.

**REQUEST NO. 2**: Admit that in 2005, the CPD supervisor assigned to an investigation was responsible for ensuring the timely and comprehensive progression of the investigation.

**RESPONSE**: The City objects to the terms "CPD supervisor," "responsible" and "timely and comprehensive progression" as vague, rendering response to this Request impossible without speculation.

Subject to and without waiving this objection, the City admits that any supervisor with specific responsibilities over a case had oversight responsibilities related to that investigation. The City denies any remaining allegations not specifically admitted herein.

**REQUEST NO. 3**: Admit that in May 2005, the first objective of a CPD Detective's investigative efforts was to determine if a crime actually occurred.

**RESPONSE**: The City objects to Request No. 3 because it is vague and improperly characterizes all police investigations as occurring in a strictly sequential and linear manner. The City further objects because this Request is impossible to answer in a general, generic fashion because the importance of any phase of an investigation varies depending on the facts of the case. For these reasons, the City denies this Request. The City admits that it is important for detectives in an investigation to determine if a crime occurred.

**REQUEST NO. 4**: Admit that in May 2005 a detective was required to submit all General Progress Reports written during a shift (or a "tour of duty") before the end of that shift.

**RESPONSE**: Deny.

**REQUEST NO. 5**: Admit that in 2005, CPD homicide detectives were required to conduct all investigations of criminal incidents impartially and objectively.

**RESPONSE**: Admit.

**REQUEST NO. 6**: Admit that not all of the detectives assigned to the Jaquari Dancy death/homicide investigation conducted the investigation impartially and objectively.

**RESPONSE**: Deny.

**REQUEST NO. 7**: Admit that in 2005, CPD homicide detectives were required to thoroughly document relevant information discovered during the investigation.

**RESPONSE**: The City objects to Request No. 7 as vague to the term "thoroughly document" rendering response to this Request impossible without speculation.

Subject to and without waiving this objection, the City admits that CPD detectives were required to use their best reasonable efforts to document what they understood at the time, without the benefit of hindsight, to be relevant information to the criminal investigation, as opposed to a civil lawsuit that may or may not be filed years later. The City denies any facts and/or inferences not specifically admitted herein.

**REQUEST NO. 8**: Admit that not all of the detectives assigned to the Jaquari Dancy death/homicide investigation thoroughly documented relevant information discovered during the investigation.

**RESPONSE**: Deny.

**REQUEST NO. 9**: Admit that in 2005, CPD homicide detectives were required to record and preserve relevant information as fully and accurately as possible during the course of their investigation.

**RESPONSE**: The City objects to Request No. 9 as vague as to the phrases "preserve" and "as fully and accurately as possible," rendering response to this Request impossible without speculation.

Subject to and without waiving this objection, the City admits that CPD detectives were required to use their best reasonable efforts to document what they understood at the time, without the benefit of hindsight, to be relevant information to the criminal investigation, as opposed to a civil lawsuit that may or may not be filed years later. The City denies any facts and/or inferences not specifically admitted herein.

**REQUEST NO. 10**: Admit that not all of the detectives assigned to the Jaquari Dancy death/homicide investigation recorded and preserved relevant information as fully and accurately as possible during the course of their investigation.

**RESPONSE**: The City objects to Request No. 10 as vague as to the terms "recorded and preserved," "as fully and accurately as possible" and "all of the detectives assigned" rendering response to this Request impossible without speculation. The City further objects to the inference that all of the detectives who worked on the Jaquari Dancy homicide investigation were required to "record" anything, as the City understands those terms.

Subject to and without waiving these objections, the City denies that detectives who worked on the Jaquari Dancy homicide investigation used or applied less than reasonable efforts to document their investigation. The City denies all remaining facts and inferences not specifically admitted herein.

**REQUEST NO. 11**: Admit that in May 2005, a detective conducting an interview or interrogation of a homicide suspect in a CPD room was required to inform the suspect of her right to remain silent.

**RESPONSE**: The City objects to Request No. 11 because it seeks a legal conclusion.

Subject to and without waiving this objection, the City admits that the right to remain silent is part of the Miranda warnings. The City denies all remaining facts and inferences not specifically admitted herein.

**REQUEST NO. 12**: Admit that the detectives assigned to the Jaquari Dancy death/homicide investigation did not inform Ms. Harris prior to her first alleged confession/spontaneous statement of her right to remain silent.

**RESPONSE**: Admit.

**REQUEST NO. 13**: Admit that in May 2005, a homicide suspect's statement to detectives that she no longer wanted to answer questions was an invocation of her right to remain silent.

**RESPONSE**: The City objects to Request No. 13 because it seeks a legal conclusion.

Subject to and without waiving this objection, the City denies Request No. 13.

**REQUEST NO. 14**:   Admit that in May 2005, a detective conducting an interview or interrogation of a homicide suspect in a CPD room was required to inform the suspect of her right to speak with an attorney.

**RESPONSE**:  The City objects to Request No. 14 because it seeks a legal conclusion.

Subject to and without waiving this objection, the City admits that the right to speak with an attorney is part of the Miranda warnings.  The City denies all remaining facts and inferences not specifically admitted herein.

**REQUEST NO. 15**:  Admit that the detectives assigned to the Jaquari Dancy death/homicide investigation did not inform Ms. Harris of her right to speak with an attorney on May 14, 2005 or at any time before her polygraph examination on May 15, 2005.

**RESPONSE**:  The City objects to Request No. 14 as overly broad because every detective who worked on the Jaquari Dancy homicide investigation did not have a reason or opportunity to advise Harris of her right to speak with an attorney on May 14, 2005 or at all times before her polygraph examination on May 15, 2005.

Subject to and without waiving the foregoing objections, the City denies Request No. 15.

**REQUEST NO. 16**:   Admit that in May 2005, a detective conducting an interview or interrogation of a homicide suspect in a CPD room was required to inform the suspect of her right to speak with family members.

**RESPONSE**:  The City objects to Request No. 16 because it is vague as to whether the term "was required" refers to a constitutional requirement or some other type of requirement and further objects to the extent that it requests a legal conclusion.

Subject to and without waiving these objections, the City denies that there is a constitutional right for a homicide suspect to speak with family members.  The City denies all remaining facts or inferences not specifically admitted herein.

**REQUEST NO. 17**:  Admit that the detectives assigned to the Jaquari Dancy investigation did not inform Ms. Harris of her right to speak with a family member.

**RESPONSE**: The City objects to the extent this Request misstates the law in that there is no constitutional right to speak with a family member in connection with criminal proceedings, and further objects to the extent that it requests a legal conclusion.

Subject to and without waiving these objections, the City admits that it did not inform Harris of her "right" to speak with a family member because no such right exists. The City denies all remaining facts and inferences not specifically admitted herein.

**REQUEST NO. 18**: Admit that in May 2005 a detective conducting an interview or Interrogation of a homicide suspect was required to honor the suspect's right to make a reasonable number of phone calls to the suspect's attorney.

**RESPONSE**: The City objects to Request No. 18 because it is vague as to time frame and seeks a legal conclusion. Subject to and without waiving these objections, the City admits that detectives must cease questioning once a suspect of a crime invokes her right to counsel. The City denies all remaining facts and inferences not specifically admitted herein.

**REQUEST NO. 19**: Admit that the detectives assigned to the Jaquari Dancy death/homicide investigation did not honor Ms. Harris's right to make a reasonable number of phone calls to her attorney.

**RESPONSE**: The City objects to Request No. 19 because it is vague as to whether the "right" referred to is a constitutional right or some other type of right. The City further objects to Request No. 19 because it incorrectly presumes that Plaintiff requested a phone call to her attorney and presumes an erroneous legal conclusion. *See State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1145 n.2 (7th Cir. 1983) (no Sixth Amendment right for suspect to place phone call to attorney or family members prior to initiation of criminal proceedings).

Subject to and without waiving these objections, the City denies Request No. 19.

**REQUEST NO. 20**: Admit that in May 2005, a detective conducting an interview or interrogation of a homicide suspect was required to honor the suspect's right to make a reasonable number of phone calls to a family member.

**RESPONSE**:  The City objects to Request No. 20 because it is vague as to whether the term "right" is a constitutional right or some other type of right.

Subject to and without waiving this objection, the City denies that a homicide suspect has a constitutional right to speak with a family member and therefore denies Request No. 20.

**REQUEST NO. 21**:  Admit that the detectives assigned to the Jaquari Dancy death/homicide investigation did not honor Ms. Harris's right to make a reasonable number of phone calls to a family member.

**RESPONSE**:  The City objects to Request No. 21 because it is vague as to whether the term "right" is a constitutional right or some other type of right.

Subject to and without waiving this objection, the City admits that in May 2005 suspects generally were permitted to make a reasonable number of phone calls, and further admits that what was "reasonable" varied depending on the facts and circumstances of the investigation. The City denies that a homicide suspect has a constitutional right to make phone calls to a family member.  The City denies any remaining facts or inferences not specifically admitted herein.

**REQUEST NO. 22**:  Admit that in May 2005 a detective conducting an interview or interrogation of a homicide suspect was required to honor the suspect's right to make a reasonable number of phone calls to a person of the suspect's choosing.

**RESPONSE**:  The City objects to Request No. 22 because it is vague as to whether the terms "was required" and "right" refer to a constitutional requirement or some other type of requirement.

Subject to and without waiving this objection, the City admits that in May 2005 suspects generally were permitted to make a reasonable number of phone calls, and further admits that what was "reasonable" varied depending on the facts and circumstances of the investigation. The City denies that a homicide suspect has a constitutional right to make phone calls to a person of the suspect's choosing.  The City denies any remaining facts or inferences not specifically admitted herein.

**REQUEST NO. 23**:  Admit that the detectives assigned to the Jaquari Dancy death/homicide investigation did not honor Ms. Harris's right to make a reasonable number of phone calls to a person of her choosing.

**RESPONSE**:  The City objects to Request No. 23 because it is vague as to whether the term "right" refers to a constitutional right or some other type of right.

Subject to and without waiving this objection, the City admits that in May 2005 suspects generally were permitted to make a reasonable number of phone calls, and further admits that what was "reasonable" varied depending on the facts and circumstances of the investigation. The City denies that a homicide suspect has a constitutional right to make phone calls to a person of the suspect's choosing.  The City denies any remaining facts or inferences not specifically admitted herein.

**REQUEST NO. 24**:  Admit that in May 2005, a detective who wrote a report about a confession was required to provide a description of any exercise of the arrestee's right to communicate with an attorney.

**RESPONSE**:  The City objects to Request No. 24 because it is vague as to the term "report," as to whether the term "right" refers to a constitutional right, and because it presumes an erroneous legal conclusion.

Subject to and without waiving these objections, the City admits that the Detective Division Standard Operating procedures state, "The detective will include in a Supplementary Report a description of any exercise of the arrestee's right to communicate with an attorney and a family member by making a reasonable number of phone calls."  The City denies any remaining facts or inferences not specifically admitted herein.

**REQUEST NO. 25**:  Admit that the detectives who wrote reports about Ms. Harris's alleged confessions did not provide a description of any exercise of Ms. Harris's right to communicate with an attorney.

**RESPONSE**:  The City objects to the term "description" as vague rendering response to this Request impossible without speculation.  The City further objects to use of the term "alleged

confessions" on the ground that there is unrefuted evidence that Harris confessed to murdering her son Jaquari Dancy.

Subject to and without waiving these objections, the City denies Request No. 25.

**REQUEST NO. 26**: Admit that in May 2005, a detective who wrote a report about a confession was required to provide a description of any exercise of the arrestee's right to communicate with a family member.

**RESPONSE**: The City objects to Request No. 26 because it is vague as to the term "report," is vague as to whether the term "right" refers to a constitutional right, and because it presumes an erroneous legal conclusion.

Subject to and without waiving these objections, the City admits that the Detective Division Standard Operating procedures state, "The detective will include in a Supplementary Report a description of any exercise of the arrestee's right to communicate with an attorney and a family member by making a reasonable number of phone calls." The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 27**: Admit that the detectives who wrote reports about Ms. Harris's alleged confessions did not provide a description of any exercise of Ms. Harris's right to communicate with a family member.

**RESPONSE**: This Request is vague as to the term "reports" rendering response to this Request impossible without speculation. The City objects to this Request as assuming facts not in evidence. Moreover, this Request is vague because it does not specify whether it refers to a constitutional right or some other type of requirement.

Subject to and without waiving this objection, the City denies that Harris asked to communicate with a family member, and therefore admits that the detectives documenting their interviews with Harris did not include a description of Harris' request to communicate with a family member. The City denies any remaining facts or inferences not specifically admitted herein.

**REQUEST NO. 28**: Admit that in May 2005 a detective who wrote a report about a confession or admission was required to document the circumstances of the confession or admission and include in a Supplementary Report:

    (1)    The name of the person who obtained the confession;

    (2)    The identification of all persons present during the statement;

    (3)    The date and time the statement was given;

    (4)    The specific location where the statement was taken;

    (5)    That the person in custody was treated humanely and provided with proper food, shelter, and if required, medical treatment; and

    (6)    A description of the arrestee's right to communicate with an attorney or a family member by making a reasonable number of phone calls.

**RESPONSE**: The City objects to Request No. 28 because it is vague as to the term "was required" because it does not specify whether it refers to a constitutional requirement or some other type of requirement. The City further objects to Request No. 28 because it does not separately state each matter as required by Fed. R. Civ. P. 36(a)(2).

Subject to and without waiving these objections, the City admits that Request No. 28 substantially conforms with what is set forth in the Detective Division Standard Operating Procedures section 8.11. The City denies all remaining facts and inferences not specifically admitted herein.

**REQUEST NO. 29**: Admit that detectives who wrote reports about Ms. Harris's alleged confessions or admissions did not document the circumstances of the confessions or admissions and include in a Supplementary Report:

    (1)    The name of the person who obtained the confession;

    (2)    The identification of all persons present during the statement;

    (3)    The date and time the statement was given; The specific location where the statement was taken;

    (4)    That Ms. Harris was treated humanely and provided with proper food, shelter, and if required, medical treatment; and

    (5)    A description of Ms. Harris's right to communicate with an attorney or a family member by making a reasonable number of phone calls.

**RESPONSE**: The City objects to Request No. 29 because it does not separately state each matter as required by Fed. R. Civ. P. 36(a)(2). The City further object because subpart (5) is

vague as to whether the term "right" refers to a constitutional right or some other type of right and also presumes erroneous legal conclusions.

Subject to and without waiving these objections, the City denies Request No. 29, subparts (1) through (4). As to subpart (5), the City denies that Plaintiff asked to communicate with an attorney or family member. The City denies any remaining facts or inferences not specifically admitted herein.

**REQUEST NO. 30**: Admit that before contacting Felony Review, an assigned detective must:

    a.    Gather and review all available evidence,
    b.    Determine what additional information is necessary and obtainable to support the felony charge, and
    c.    Initiate steps to gather that additional evidence.

**RESPONSE**: The City objects to Request No. 30 because it does not separately state each matter as required by Fed. R. Civ. P. 36(a)(2). The City further objects because it is vague as to whether the term "must" refers to a constitutional requirement or some other type of requirement.

Subject to and without waiving these objections, the City admits that Request No. 30 substantially conforms with what is set forth in the Detective Division Standard Operating Procedures section 8.8(C). The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 31**: Admit that in May 2005, a detective who took an admission/confession was required to document in a Supplementary Report that the person who gave the confession was treated humanely

**RESPONSE**: The City objects because it is vague as to whether the term "was required" refers to a constitutional requirement or some other type of requirement.

Subject to and without waiving these objections, the City admits that Detective Division Standard Operating Procedures section 8.11(A)(1)(e) requires detectives to document that a

person that provided a confession was treated humanely. The City denies that the Standard

Operating Procedure referenced requires detectives to use the word "humanely" in a report. The

City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 32**: Admit that neither Detectives Noradin, Balodimas, Landando, nor any Chicago police officer or detective prepared a Supplementary Report documenting that Ms. Harris was treated humanely with respect to the statement Detectives Noradin, Balodimas, and Landando claim Ms. Harris made on May 15, 2005, at 12:45 a.m.

**RESPONSE**: Deny.

**REQUEST NO. 33**: Admit that neither Detectives Noradin, Day, nor any Chicago police officer or detective prepared a Supplementary Report documenting that Ms. Harris was treated humanely with respect to Ms. Harris's alleged confession on May 15, 2005, at 4:00 p.m.

**RESPONSE**: Deny.

**REQUEST NO. 34**: In May 2005, a detective who took an admission/confession was required to document in a Supplementary Report a description of the person who informed the confessor of his or her right to communicate with an attorney and family members by making a reasonable number of calls to each.

**RESPONSE**: Deny.

**REQUEST NO. 35**: Admit that with respect to the statement Detectives Noradin, Balodimas and Landando claim Ms. Harris made on May 15, 2005, at 12:45 a.m., neither Detectives Noradin, Balodimas, Landando, nor any Chicago police officer or detective prepared a Supplementary Report documenting a description of the person who informed Ms. Harris of her right to communicate with an attorney and family members by making a reasonable number of calls to each.

**RESPONSE**: The City objects to Request No. 35 to the extent that it is vague as to the term

"right" because it is unclear whether the request is referring to a constitutional right or something

else. The City further objects to the extent that Request No. 35 calls for a legal conclusion.

Subject to and without waiving these objections, the City denies that the Supplementary

report does not identify the individual that provided Plaintiff with her Miranda warnings, and

denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 36**: Admit that with respect to Ms. Harris's alleged confession on May 15, 2005, at 4:00 p.m., neither Detectives Noradin, Day, nor any Chicago police officer or detective

prepared a Supplementary Report documenting a description of the person who informed Ms. Harris of her right to communicate with an attorney and family members by making a reasonable number of calls to each.

**RESPONSE**: The City objects to Request No. 36 to the extent that it is vague as to the term "right" because it is unclear whether the request is referring to a constitutional right or something else. The City further objects to the extent that Request No. 36 calls for a legal conclusion.

Subject to and without waiving these objections, the City denies that the Supplementary report does not identify the individual that provided Plaintiff with her Miranda warnings on May 15, 2005, at approximately 4:00 PM., and denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 37**: Admit that in May 2005, the detective assigned an investigation was required to submit to a supervisor no later than ten days after receiving the assignment, a copy of the original case report with either the required information entered in the supplementary section of that report, or with the required information entered into a Supplementary Report.

**RESPONSE**: The City objects to Request No. 37 to the extent that it is vague as to the term "required" because it is unclear whether the request is referring to a constitutional requirement or something else. The City objects to Request No. 37 because without a definition of "required information," the request is unintelligible. The City further objects to the extent that Request No. 37 seeks a legal conclusion.

Subject to and without waiving these objections, the City admits that Detective Division Standard Operating Procedures section 8.3(L) somewhat resembles the facts sought in Request No. 37 but the request is too vague to permit the City to truthfully admit or deny it. To the extent that Request No. 37 is referring to anything else, the City denies.

**REQUEST NO. 38**: Admit that Detective Day did not submit to a supervisor no later than ten days after receiving the assignment a copy of the original case report with either the required information entered in the supplementary section of that report, or with the required information entered into a Supplementary Report.

- 13 -

**RESPONSE**: The City objects to Request No. 38 to the extent that it is vague as to the term "required" because it is unclear whether the request is referring to a constitutional requirement or something else. The City objects to Request No. 38 because without a definition of "required information," the request is unintelligible. The City further objects to the extent that Request No. 38 seeks a legal conclusion.

Subject to and without waiving these objections, the City admits that Detective Division Standard Operating Procedures section 8.3(L) somewhat resembles the facts sought in Request No. 38 but the request is too vague to permit the City to truthfully admit or deny it. To the extent that Request No. 38 is referring to anything else, the City denies.

**REQUEST NO. 39**: Admit that Detective Wo did not submit to a supervisor no later than ten days after receiving the assignment a copy of the original case report with either the required information entered in the supplementary section of that report, or with the required information entered into a Supplementary Report.

**RESPONSE**: The City objects to Request NO. 39 to the extent that it is vague as to the term "required" because it is unclear whether the request is referring to a constitutional requirement or something else. The City objects to Request No. 39 because without a definition of "required information," the request is unintelligible. The City further objects to the extent that Request No. 39 seeks a legal conclusion.

Subject to and without waiving these objections, the City admits that Detective Division Standard Operating Procedures section 8.3(L) somewhat resembles the facts sought in Request No. 39 but the request is too vague to permit the City to truthfully admit or deny it. To the extent that Request No. 39 is referring to anything else, the City denies.

**REQUEST NO. 40**: Admit that the primary assigned detective to a felony investigation was responsible for ensuring the clear and closed supplementary report was accurate and submitted to the supervisors in the case.

**RESPONSE**: The City denies that there is always a "primary assigned detective" to a felony investigation and denies that the "assigned detective" or "primary" detective cannot change during the course of the investigation. The City admits the remainder of Request No. 40.

**REQUEST NO. 41**: Admit that Defendant Detective Wo did not ensure that the Cleared and Closed Supplementary Report regarding the Jaquari Dancy death/homicide investigation was accurate.

**RESPONSE**: Deny.

**REQUEST NO. 42**: Admit that Defendant Detective Day did not ensure that the Cleared and Closed Supplementary Report regarding the Jaquari Dancy death/homicide investigation was accurate.

**RESPONSE**: Deny.

**REQUEST NO. 43**: Admit that Defendant Detective Noradin did not ensure that the Cleared and Closed Supplementary Report regarding the Jaquari Dancy death/homicide investigation was accurate.

**RESPONSE**: Deny.

**REQUEST NO. 44**: Admit that Defendant Detective Kelly did not ensure that the Cleared and Closed Supplementary Report regarding the Jaquari Dancy death/homicide investigation was accurate.

**RESPONSE**: Deny.

**REQUEST NO. 45**: Admit that the Defendant Detectives did not preserve all relevant information in the Cleared and Closed Supplementary Report of the investigation regarding the death of Jaquari Dancy.

**RESPONSE**: Deny.

**REQUEST NO. 46**: Admit that in 2005, CPD detectives were required to transcribe relevant information from General Progress Reports ("GPRs") into either a case report or a Supplementary Report.

**RESPONSE**: The City objects to Request No. 46 because it is vague as to whether the term "required" refers to a constitutional requirement or some other type of requirement. Subject to and without waiving this objection, the City admits that Request No. 46 substantially conforms

with what is set forth in the Detective Division Standard Operating Procedures section 18.3(C)(2). The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 47**: Admit that Defendant Wo did not transcribe all relevant information from the GPRs into the Cleared and Closed Supplementary Report of the investigation regarding the death of Jaquari Dancy.

**RESPONSE**: Deny.

**REQUEST NO. 48**: Admit that Defendant Day did not transcribe all relevant information from the GPRs into the Cleared and Closed Supplementary Report of the investigation regarding the death of Jaquari Dancy.

**RESPONSE**: The City denies that Defendant Day transcribed any information from the GPRs into the Cleared and Closed Supplementary Report written by Defendant Wo relating to the investigation of the homicide of Jaquari Dancy.

**REQUEST NO. 49**: Admit that Defendant Noradin did not transcribe all relevant information from the GPRs into the Cleared and Closed Supplementary Report of the investigation regarding the death of Jaquari Dancy.

**RESPONSE**: The City denies that Defendant Noradin transcribed any information from the GPRs into the Cleared and Closed Supplementary Report written by Defendant Wo relating to the investigation of the homicide of Jaquari Dancy.

**REQUEST NO. 50**: Admit that Defendant Kelly did not transcribe all relevant information from the GPRs into the Cleared and Closed Supplementary Report of the investigation regarding the death of Jaquari Dancy.

**RESPONSE**: The City denies that Defendant Kelly transcribed any information from the GPRs into the Cleared and Closed Supplementary Report written by Defendant Wo relating to the investigation of the homicide of Jaquari Dancy.

**REQUEST NO. 51**: Admit that in 2005, the Unit Commander for detectives was responsible for ensuring that all detectives were in compliance with the Department's General Orders, Special Orders, and Standard Operating Procedures.

**RESPONSE**: The City admits that in 2005, all supervisors in the Detective Division, including Unit Commanders, were responsible for ensuring that all detectives under their supervision were

in compliance with the Department's General Orders, Special Orders, and Standard Operating

Procedures. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 52**: Admit that in 2005, the Unit Commander in the Detective Division was responsible for ensuring that all detectives were in strict compliance with the Department's General Orders, Special Orders, and Standard Operating Procedures.

**RESPONSE**: The City admits that in 2005, all supervisors in the Detective Division, including

Unit Commanders, were responsible for ensuring that all detectives under their supervision were

in compliance with the Department's General Orders, Special Orders, and Standard Operating

Procedures. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 53**: Admit that in 2005, the CPD Homicide Division was required to notify the CPD Youth Division (or request that the Communication Operations Section notify the Youth Division) of all homicides of individuals under the age of 17.

**RESPONSE**: The City denies that there was a Homicide Division in 2005, and on that basis

denies Request No. 53.

**REQUEST NO. 54**: Admit that at no time did the CPD Youth Division ever conduct a follow-up investigation into the death of Jaquari Dancy.

**RESPONSE**: The City objects to the term "follow up investigation" as vague.

Subject to and without waiving this objection, the City admits that the CPD Youth

Division did not conduct a "follow-up investigation," as the City understands that term, after

Harris confessed to the murder of her son, Jaquari Dancy, and was charged with first degree

murder.

**REQUEST NO. 55**: Admit that the CPD Area 5 had the capability to record interrogations as of May 14-16, 2005.

**RESPONSE**: The City objects to the phrase "capability to record interrogations" as vague

because it is unclear whether the request is referring to whether the interview rooms were

equipped with operative cameras after July 18, 2005, the effective date of General Order 05-01

(Electronically Recorded Interrogations) or if it refers to the theoretical possibility that a video

camera could have been obtained from some unidentified location and utilized to record an interrogation.

Subject to and without waiving these objections, the City denies Request No. 55.

**REQUEST NO. 56**: Admit that on or about May 16, 2005, Nicole Harris complained to Assistant State's Attorney ("ASA") Grogan of the verbal abuse and coercive interrogation tactics that she suffered at the hands of Area 5 Detectives.

**RESPONSE**: Deny.

**REQUEST NO. 57**: Admit that on or about May 16, 2005, Nicole Harris complained to ASA O'Reilly of the verbal abuse and coercive interrogation tactics that she suffered at the hands of Area 5 Detectives.

**RESPONSE**: Deny.

**AMENDED REQUEST NO. 58**: Admit that at no time from May 16, 2005 until Ms. Harris filed her Complaint in this case on June 12, 2014, did CPD created a Complaint Register ("CR") or assign a CR number with respect to the Area 5 Detectives' verbal abuse and coercive interrogation tactics about which Ms. Harris complained on May 15 and 16, 2005.

**RESPONSE**: The City admits that it did not assign a CR number or initiate an investigation into Harris' complaint until she submitted a complaint to the Internal Affairs Division on October 23, 2014. The City denies that any Chicago Police Department detective subjected Harris to verbal abuse or coercive interrogation tactics or that Harris complained about any verbal abuse or coercive interrogation tactics on May 15 and May 16, 2005. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 59**: Admit that no CR was created or CR number assigned with respect to the verbal abuse and coercive interrogation tactics that Nicole Harris suffered at the hands of Area 5 Detectives until Ms. Harris sued the detective defendants in 2014.

**RESPONSE**: Request No. 59 has been withdrawn by Plaintiff's counsel and therefore the City will not respond to this Request.

**REQUEST NO. 60**: Admit that no CPD officer or detective asked Dinajia Arnold whether she had witnessed Jaquari Dancy accidentally asphyxiate himself.

**RESPONSE**: The City admits that no CPD officer or detective asked Dinajia Arnold whether "she had witnessed Jaquari Dancy accidentally asphyxiate himself" in those exact words, and further admits that the CPD obtained relevant information from Dinajia Arnold based on what she saw, heard and observed. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 61**: Admit that no CPD officer or detective asked Dinajia Arnold whether she had witnessed Nicole Harris strangle Jaquari Dancy.

**RESPONSE**: The City admits that no CPD officer or detective asked Dinajia Arnold whether "she had witnessed Nicole Harris strangle Jaquari Dancy" in those exact words, and further admits that the CPD obtained relevant information from Dinajia Arnold based on what she saw, heard and observed. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 62**: Admit that no CPD officer or detective asked Dinajia Arnold whether she had witnessed anyone strangle Jaquari Dancy.

**RESPONSE**: The City admits that no CPD officer or detective asked Dinajia Arnold "whether she had witnessed anyone strangle Jaquari Dancy" in those exact words, and further admits that the CPD obtained relevant information from Dinajia Arnold based on what she saw, heard and observed. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 63**: Admit that no CPD officer or detective interviewed any of Nicole Harris' neighbors other than Dinajia Arnold and Alexis Fulton in connection with the Jaquari Dancy death/homicide investigation.

**RESPONSE**: Admit.

**REQUEST NO. 64**: Admit that no CPD officer canvassed the Blue Kangaroo Laundromat in connection with the Jaquari Dancy death/homicide investigation.

**RESPONSE**: This Request is vague as to the term "canvassed" rendering response to this Request impossible without speculation.

Subject to this objection, the City denies Request No. 64.

- 19 -

**AMENDED REQUEST NO. 65**: Admit that from May 14-16, 2005, in connection with the Jaquari Dancy death/homicide investigation, no CPD detective or officer investigated whether there was any surveillance video at or near the Blue Kangaroo Laundromat, by which Plaintiff means: investigated whether there was any video equipment inside or outside of the Blue Kangaroo Laundromat that would have shown Ms. Harris entering and/or exiting the Blue Kangaroo Laundromat and/or the time that she entered or exited.

**RESPONSE**: The City made a reasonable inquiry into the subject matter of request 65 and presently lacks knowledge or information sufficient to truthfully admit or deny request 65.

**REQUEST NO. 66**: Admit that no CPD officer has ever been given a polygraph examination in the context of a criminal investigation from May 2000 to the present.

**RESPONSE**: The City objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence and because it is unduly burdensome. In addition, the City objects to this request because it is actually an interrogatory question masquerading as a request for admission. It is not possible for the City to readily admit or deny this request based upon the evidence available to it.

Subject to and without waiving these objections, the City states that it is without sufficient information to admit or deny this Request, but cannot at this time identify a specific police officer who was subjected to a polygraph examination in connection with a criminal proceeding. Answering further, the City has no policy prohibiting polygraphing police officers in connection with criminal proceedings.

**REQUEST NO. 67**: Admit that the Clear and Closed Supplementary Report states that the Reporting Detectives for the purposes of the Clear and Closed Supplementary Report were Detectives Noradin, Kelly, Day, and Wo.

**RESPONSE**: The City admits that the conclusion of the Cleared Closed Supplementary Report (page 15 of 15) states, "Report of: Det. A Noradin #21252, Det. J. Kelly #21121, Det. J. Day #20926, Det. R. Wo #20232." The City denies that every shorthand reference of "R/Dets" contained in the Cleared Closed Supplementary Report refers to all four of the detectives listed at the end of the report. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 68**:  Admit that the Clear and Closed Supplementary Report indicates that the Reporting Detectives contacted the Cook County State's Attorney's Office Felony Review Unit at 8 p.m. on May 15, 2005 to request an ASA be assigned to this investigation.

**RESPONSE**:  Admit.

**REQUEST NO. 69**:  Admit that Reporting Detectives contacted the Cook County State's Attorney's Office Felony Review Unit at 8 p.m. on May 15, 2005 in order for Nicole Harris to be charged with the murder of Jaquari Dancy.

**RESPONSE**:  The City admits that the CPD contacted the Cook County State's Attorney's Office Felony Review Unit at 8:00 p.m. on May 15, 2005 in order to request that Felony Review evaluate whether charges should be brought against Nicole Harris for murdering her son Jaquari Dancy.  The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 70**:  Admit that in 2005, Chicago Police Detectives were responsible for abiding by the Chicago Police Detective Division Standard Operating Procedures, which had a copyright date of 1988.

**RESPONSE**:  Admit.

**REQUEST NO. 71**:  Admit that none of the individual defendants ever inspected Nicole Harris to determine if there was any blood or other bodily fluid on her person or clothes.

**RESPONSE**:  The City objects to the term "inspected" as vague.  Subject to and without waiving that objection, the City admits Request No. 71.

**REQUEST NO. 72**:  Admit that no member of the Chicago Police Department contacted any members of Nicole Harris or Sta-von Dancy's family to determine if they had any knowledge whether either Nicole Harris of (*sic*) Sta-von Dancy physically abused their children.

**RESPONSE**:  The City admits that because Nicole Harris confessed to murdering her son multiple times, CPD did not contact any members of Nicole Harris' or Sta-von Dancy's family to determine if they had any knowledge whether either Nicole Harris of Sta-von Dancy physically abused their children.  The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 73**:  Admit that no member of the Chicago Police contacted any of Diante or Jaquari Dancy's school or day care officials or employees to determine if they had any knowledge that either Nicole Harris of (*sic*) Sta-von Dancy physically abused their children.

**RESPONSE**: The City admits that because Nicole Harris confessed multiple times to murdering her son, CPD did not contact any of Diante or Jaquari Dancy's school or day care officials or employees to determine if they had any knowledge that either Nicole Harris or Sta-von Dancy physically abused their children. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 74**: Admit that no member of the Chicago Police Department tried to determine a precise time of death for Jaquari Dancy.

**RESPONSE**: The City objects to Request No. 74 to the extent that it implies that it is the role of any member of the Chicago Police Department to make a scientific determination regarding a precise time of death. Subject to and without waiving these objections, the City denies Request No. 74.

Dated: January 15, 2016

_____
One of the Attorneys for Defendant,
CITY OF CHICAGO

John F. Gibbons (Attorney No. 6190493)
Tiffany S. Fordyce (Attorney No. 235063)
Kyle L. Flynn (Attorney No. 6312817)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
T: (312) 456-8400
F: (312) 456-8435
gibbonsj@gtlaw.com
fordycet@gtlaw.com
flynnk@gtlaw.com

## CERTIFICATE OF SERVICE

I, Kyle L. Flynn, certify that on January 15, 2016, true and correct copies of the **DEFENDANT CITY OF CHICAGO'S RESPONSES TO NICOLE HARRIS' FIRST SET OF REQUESTS TO ADMIT,** served by email and U.S. Mail, postage pre-paid, upon the following parties in the case:

| | |
|---|---|
| J. Samuel Tenenbaum<br>Bluhm Legal Clinic<br>357 East Chicago Avenue<br>Chicago, IL 60611 | Joey L. Mogul<br>Janine L. Hoft<br>Janis M. Susler<br>People's Law Office<br>1180 N. Milwaukee<br>Chicago, IL 60622 |
| Margot Klein<br>Nicole Nehama Auerbach<br>Stuart Jay Chanen<br>Valorem Law Group<br>35 East Wacker Drive<br>3000<br>Chicago, IL 60601 | Andrew M. Hale<br>Avi T. Kamionski<br>Jennifer Bitoy<br>Shneur Z. Nathan<br>Hale Law LLC<br>53 W. Jackson Blvd.<br>Suite 330<br>Chicago, IL 60604 |

Kyle Flynn