# EXHIBIT 20

To
**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS REQUIRING DENIAL OF THE CITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**March 15, 2016**

**Case No. 14-CV-4391**

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN FOR THE DISTRICT OF ILLINOIS
EASTERN DIVISION

NICOLE HARRIS,                    )
                                  )
         Plaintiff,               )
                                  )
    vs.                           )    No. 14 CV 4391
                                  )
CITY OF CHICAGO, et al.,          )
                                  )
         Defendants.              )

      The videotaped deposition of ROBERT CORDARO, pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Carmella T. Fagan, C.S.R., R.P.R., Notary Public within and for the County of Cook and State of Illinois, at 1180 North Milwaukee Avenue, Third Floor, in the City of Chicago, Cook County, Illinois, commencing at 10:17 a.m. on the 30th day of November, 2015.

191

Page 27

```
 1   weapon?
 2        A.     Yes, ma'am.
 3        Q.     And when did you retire from the
 4   Chicago Police Department?
 5        A.     November 2010.
 6        Q.     Between November 2010 and two years
 7   ago, were you employed in any other capacity?
 8        A.     No, ma'am.
 9        Q.     Okay.  When did you first become a
10   Chicago police officer?
11        A.     28 January 1980.
12        Q.     And that particular date is when you
13   graduated from the academy, or what's the
14   significance of that particular date?
15        A.     The day I started.
16        Q.     So the day you started work as a
17   police officer?
18        A.     That's correct, ma'am.  The day I
19   entered the -- the academy.
20        Q.     The day you entered the academy?
21        A.     That's correct.
22        Q.     Back then, how long was the academy
23   training?
24        A.     I remember January through May, we
```
                                191

Page 200

1    A.    No.

2    Q.    Have you ever reported another officer
3 for what you considered an improper interrogation?

4    A.    No.

5    Q.    And have you ever supported an
6 officer's version of events against a private
7 citizen?

8    A.    I don't know what you mean by that.
9 Can you please ex --

10    Q.    Have you ever been called upon to
11 support an officer's version of events contrary to
12 what a citizen has stated?

13    A.    Sure.  Yes, I have.

14    Q.    And has the converse ever happened?
15 Have you ever been called to support a private
16 citizen's version that was contrary to an officer's?

17    A.    I've never been called for it.  No.

18    Q.    Have you ever advised a citizen to
19 make a complaint against an officer?

20    A.    No.

21    Q.    Have you ever known an officer to be
22 disciplined for an improper interrogation?

23    A.    No.

24    Q.    In your mind, do you believe an

Page 204

1  original penmanship or handwriting.
2      Q.     Okay.  So there wasn't anything that
3  you needed to write on the Xerox copy to identify it
4  as a copy?
5      A.     That's correct.
6      Q.     And drawing your attention to 12A,
7  there's a -- there's the word "Draft" written on the
8  front and back of that general progress report.  Have
9  you ever seen a general progress report with such a
10 designation of "Draft"?
11     A.     No, I have not.
12     Q.     Can you think of any reason why
13 somebody would write "Draft" on a general progress
14 report like that?
15     A.     I cannot --
16     MR. HALE:  I'm just going to object to lack of
17 foundation.
18     MS. HOFT:  I'm sorry.  What was your
19 objection?
20     MR. HALE:  Lack of foundation.
21     MS. HOFT:  Okay.
22 BY MS. HOFT:
23     Q.     But you've never seen a GPR designated
24 "Draft" like that?

191

Page 205

1        A.      I have not.

2        Q.      Okay. Do you recognize the
3 handwriting of the "Draft" written?

4        A.      I do not, ma'am.

5        Q.      And I believe you've already testified
6 that you didn't receive any information as to any
7 Victim-Sensitive Interview or as to any statements
8 made by a Diante Dancy?

9        A.      I did not. That's correct.

10       Q.      And if you had been made aware that a
11 five-year-old child was in the room when the
12 four-year-old child's body was found, would you
13 consider that important -- an important fact to know
14 in the investigation?

15       A.      I think you'd like to know it. Yes.

16       Q.      And would you also like to know what
17 the five-year-old would state about what he knew or
18 what he saw or observed?

19       A.      I agree.

20       Q.      And would you also like to -- would it
21 be pert --

22       MR. HALE: You can put -- just listen to her
23 questions. Just put that -- you can put that
24 down (indicating)

191