# EXHIBIT 22

**To**
**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS**
**REQUIRING DENIAL OF THE CITY'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**

**March 15, 2016**

**Case No. 14-CV-4391**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-04391 |
| | ) | |
| CITY OF CHICAGO, Chicago Police | ) | Hon. John W. Darrah |
| Officers ROBERT BARTIK, #3078; | ) | |
| DEMOSTHENES BALODIMAS, | ) | |
| #21204, ROBERT CORDARO, #20680, | ) | |
| JOHN J. DAY, #20926, JAMES M. | ) | Hon. Mag. Susan E. Cox |
| KELLY, #21121, MICHAEL | ) | |
| LANDANDO, #20417, ANTHONY | ) | |
| NORADIN, #21252, and RANDALL | ) | |
| WO, #20232; Assistant Cook County | ) | |
| State's Attorneys ANDREA GROGAN | ) | |
| and LAWRENCE O'REILLY; and the | ) | |
| COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### CITY OF CHICAGO'S SECOND SUPPLEMENTAL RESPONSES TO NICOLE HARRIS' AMENDED THIRD SET OF REQUESTS TO ADMIT

Defendant City of Chicago (the "City"), by its attorneys, Greenberg Traurig, LLP,

responds and objects to Plaintiff's Amended Third Set of Requests to Admit ("Requests") as

follows:

### RESPONSES TO AMENDED REQUESTS TO ADMIT

**AMENDED REQUEST NO. 1**: Admit that in 2013, the United States Seventh Circuit Court of
Appeals vacated the murder conviction of Nicole Harris for murdering her son Jaquari.

**RESPONSE**: The City objects to this Request as requests for admissions that are duplicative of

other discovery taken do not serve the purpose of Rule 36(a). If there is no expectation that a

request will narrow or eliminate issues for trial because a position has already been stated in

clear terms, the request is improper. Subject to and without waiving the foregoing objection, the City admits Request No. 1.

**AMENDED REQUEST NO. 2**:  Admit that in 2013, the Cook County State's Attorney's Office dismissed the indictment against Nicole Harris for murdering her son Jaquari.

**RESPONSE**:  The City objects to this Request as requests for admissions that are duplicative of other discovery taken do not serve the purpose of Rule 36(a). If there is no expectation that a request will narrow or eliminate issues for trial because a position has already been stated in clear terms, the request is improper. Subject to and without waiving the foregoing objection, the City admits Request No. 2.

**AMENDED REQUEST NO. 3**:  Admit that in January 2014, the Chief Judge of the Circuit Court of Cook County, Criminal Division awarded Nicole Harris a Certificate of Innocence.

**RESPONSE**:  The City objects to this Request as requests for admissions that are duplicative of other discovery taken do not serve the purpose of Rule 36(a). If there is no expectation that a request will narrow or eliminate issues for trial because a position has already been stated in clear terms, the request is improper. Subject to and without waiving the foregoing objection, the City admits Request No. 3.

**REQUEST NO. 4**:  Admit that the Cook County State's Attorney's Office did not oppose the Court's award of a Certificate of Innocence to Nicole Harris.

**RESPONSE**:  The City objects to this Request as requests for admissions that are duplicative of other discovery taken do not serve the purpose of Rule 36(a). If there is no expectation that a request will narrow or eliminate issues for trial because a position has already been stated in clear terms, the request is improper. Subject to and without waiving the foregoing objection, the City admits Request No. 4.

**REQUEST NO. 5**:  Admit that Nicole Harris is innocent of the murder for which she was convicted.

**RESPONSE**: The City objects to this Request because it is vague as to the term "innocent' in that it is unclear whether Harris is asking the City to admit that Harris is actually innocent, or if this Request is duplicative of Request No. 4 and is asking if Harris has judicially been declared innocent pursuant to an unopposed Certificate of Innocence.

Subject to and without waiving the foregoing objection, The City denies Request No. 5.

**REQUEST NO. 6**: Admit that from January 1, 1989 to March 31, 2015, the Circuit Court of Cook County vacated the convictions of the 43 individuals identified in Exhibit A, who one or more Chicago Police Department ("CPD") detectives claimed had confessed to the crime charged against the individual.

**RESPONSE**: The City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. *Robinson v. Stanley*, Case No. 06 C 5158, 2009 WL 3233909 at *2 (N.D. Ill. 2009). Further, responding to this Request would require the City to rely upon documents and facts extraneous to the Request, which is considered improper. *Vergara v. City of Waukegan*, 2007 WL 3334501, at *2 (N.D. Ill. Nov. 6, 2007).

**REQUEST NO. 7**: Admit that from January 1, 1989 to March 31, 2015, the Cook County State's Attorney's Office or the Office of the Special Prosecutor Stuart Nudelman moved to vacate the convictions of 43 individuals identified in Exhibit A, who one or more Chicago Police Department ("CPD") detectives claimed had confessed to the crime charged against the individual.

**RESPONSE**: The City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. The City further objects because this Request would require the City to rely upon documents and facts extraneous to the Request.

Subject to and without waiving the foregoing objections, the City admits that from January 1, 1989 to March 31, 2015, the Cook County State's Attorney's Office or the Office of the Special Prosecutor moved to vacate the convictions of the following individuals:

| | | | |
|---|---|---|---|
| James Andrews | David Bates | Eric Caine | Miguel Castillo |
| Carl Chatman | Michael Evans | David Fauntleroy | Lewis Gardner |
| Nicole Harris | Madison Hobley | Stanley Howard | Melvin Jones |
| Ronald Jones | Ronald Kitchen | Eric Kittler | James Kluppelberg |
| Calvin Ollins | Leroy Orange | Deon Patrick | Aaron Patterson |
| Paul Phillips | Harold Richardson | Lafonso Rollins | Michael Saunders |
| Terrill Swift | Daniel Taylor | Vincent Thames | Michael Tillman |
| Wayne Washington | Stanley Wrice | Dan Young | |

The City has made reasonable inquiry into this Request and the information known or readily obtainable by the City is insufficient to enable the City to admit or deny the remainder of this Request. Thus, the City is unable to admit or deny this Request as it lacks sufficient information and knowledge, and on that basis denies same.

**AMENDED REQUEST NO. 8**: Admit that from the 43 individuals identified in Exhibit A, the Chief Judge of the Circuit Court of Cook County Criminal Division awarded that Certificates of Innocence be issued to at least 14 of them.

**RESPONSE**: The City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. The City further objects because this Request would require the City to rely upon documents and facts extraneous to the Request.

Subject to and without waiving the foregoing objections, The City admits that the Circuit Court of Cook County Criminal Division granted Certificates of Innocence to the following individuals:

| | | | |
|---|---|---|---|
| Carl Chatman | Nicole Harris | Ronald Kitchen | Deon Patrick |
| Paul Phillips | Harold Richardson | Michael Saunders | Terrill Swift |

- 4 -

Daniel Taylor          Vincent Thames          Michael Tillman

The City has made reasonable inquiry into this Request and the information known or readily obtainable by the City is insufficient to enable the City to admit or deny the remainder of this Request. Thus, the City is unable to admit or deny this Request as it lacks sufficient information and knowledge, and on that basis denies same.

**REQUEST NO. 9**:  Admit that of the 43 individuals identified in Exhibit A, 37 are African-American, five are Latino, and one is Caucasian.

**RESPONSE**:  The City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. The City further objects because this Request would require the City to rely upon documents and facts extraneous to the Request.

The City has made reasonable inquiry into this Request and the information known or readily obtainable by the City is insufficient to enable the City to admit or deny this Request. Thus, the City is unable to admit or deny this Request as it lacks sufficient information and knowledge, and on that basis denies same.

**REQUEST NO. 10**:  Admit that of the 43 individuals identified in Exhibit A, 28 were under the age of 25 at the time of the CPD interrogation that led to their respective wrongful convictions.

**RESPONSE**:  The City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. The City further objects because this Request would require the City to rely upon documents and facts extraneous to the Request.

The City has made reasonable inquiry into this Request and the information known or readily obtainable by the City is insufficient to enable the City to admit or deny the Request. Thus, the City is unable to admit or deny this Request as it lacks sufficient information and knowledge, and on that basis denies same.

**REQUEST NO. 11**: Admit that Nicole Harris is African-American and was 23 years old at the time of the interviews and interrogations regarding the Jaquari Dancy death/homicide investigation.

**RESPONSE**: The City objects to this Request as not likely to lead to the discovery of admissible evidence ("Irrelevant").

Subject to and without waiving said objection, the City admits Request No. 11.

**AMENDED REQUEST NO. 12**: Admit that between March 2013, when the *Chicago Tribune* article attached as Exhibit B was published about CPD's Polygraph Unit, and November 2, 2015, when the article was attached to a motion in this case, the City of Chicago did not undertake any investigation into whether:

(1)    CPD's polygraph unit and its polygraphers acted improperly to obtain confessions.

**RESPONSE**: The City objects to the terms "CPD's polygraph unit and its polygraphers" "undertake," "investigation," "improperly" and "obtain confessions" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City denies Request No. 12(1).

(2)    CPD's polygraph unit and its polygraphers falsely told test takers (aka subjects) that they had failed the polygraph exam when in fact the exam indicated that those test takers were being truthful.

**RESPONSE**: The City objects to the terms "CPD polygraph unit and its polygraphers," "undertake" and "investigation" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.    Subject to and without waiving the foregoing objections, the City denies Request No.  12(2).

(3)    CPD's polygraph unit and its polygraphers acted improperly to obtain confessions by interrogating subjects before administering the polygraph exam.

**RESPONSE**: The City objects to the terms "CPD polygraph unit and its polygraphers" "undertake," "investigation," "improperly" and "obtain confessions" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects to this Request as vague as to the terms "CPD's polygraph unit." Subject to and without waiving the foregoing objections, the City denies Request No. 12(3).

(4)  CPD's polygraph unit and its polygraphers had a custom or rule in place that no polygraph result was ever reviewed by a second examiner.

**RESPONSE**: The City objects to the terms "undertake," "investigation," "custom" and "rule" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City admits Request No. 12(4).

(5)  the lack of requirement that that a CPD polygrapher's results be reviewed by a second examiner or by a supervisor violated national polygraphy industry group standards.

**RESPONSE**: The City objects to the terms "undertake," "investigation," and "national polygraphy industry group standards" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City admits Request No. 12(5).

(6)  CPD's Polygraph Unit had no continuing education requirements for its polygraphers.

**RESPONSE**: The City objects to the terms "undertake" and "investigation," in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects to the extent that this Request assumes facts not in evidence

in that neither the State of Illinois nor the Illinois Department of Financial or Professional Regulations requires that persons certified under the state of Illinois as licensed polygraph examiners be subject to any specific continuing education requirements. Subject to and without waiving the foregoing objections, the City admits Request No. 12(6).

(7)     the lack of a requirement that the CPD Polygraph Unit have continuing education requirements for its polygraphers violated national polygraphy industry group standards.

**RESPONSE**:  The City objects to the terms "undertake," "investigation," "violated" and "national polygraphy industry group standards" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.  Subject to and without waiving the foregoing objections, the City admits Request No. 12(7).

(8)     CPD's Polygraph Unit and its polygraphers made audio or video recordings of only a small fraction of the polygraphs that they administered.

**RESPONSE**:  The City objects to the terms "undertake," "investigation" and "small fraction" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.  The City further objects because this Request does not specify a temporal scope for when audio or video recordings of polygraphs took place, rendering response to this Request impossible without speculation.  The City also objects as the CPD Polygraph Unit, pursuant to Illinois law, was not required to record polygraphs prior to July, 2005.  Subject to and without waiving the foregoing objections, the City admits Request No. 12(8).

(9)     the lack of a requirement that the CPD Polygraph Unit record all polygraphs that it administered violated national polygraphy industry group standards.

**RESPONSE**:  The City objects to the terms "undertake," "investigation" and "national polygraphy industry group standards" in that said terms are subject to multiple interpretations,

rendering response to this Request impossible without speculation. The City further objects because this Request does not specify a temporal scope for when recordings of polygraphs took place, rendering response to this Request impossible without speculation. The City also objects as the CPD Polygraph Unit, pursuant to Illinois law, was not required to record polygraphs prior to July, 2005. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

    (10)    CPD's Polygraph Unit and its polygraphers did not use numerical scoring of polygraph examinations until 2012.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "numerical scoring" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that this Request is predicated on the assumption that all CPD polygraphers did not use numerical scoring until 2012. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation, but denies that "CPD's Polygraph Unit and its polygraphers" did not use numerical scoring of polygraph examinations until 2012.

    (11)    the decision not to use numerical scoring of polygraph examinations prior to 2012 violated national polygraphy industry group standards.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "numerical scoring" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that this Request is predicated on the assumption that all CPD polygraphers did not use numerical scoring until 2012. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation, but denies that "CPD's Polygraph Unit and its polygraphers" did not use numerical scoring of polygraph examinations until 2012.

(12)   CPD's Polygraph Unit and its polygraphers conducted polygraph exams in a language other than the test taker's native tongue.

**RESPONSE**:  The City objects to the terms "undertake," "investigation" and "native tongue" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.  The City further objects on the ground that the Request assumes facts not in evidence in that subjects may choose to take polygraph examinations in languages in which they are conversant or fluent even if that is not the subject's first or "native" language. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

(13)   the decision to conduct polygraph exams in a language other than the test taker's native tongue violated national polygraphy industry group standards.

**RESPONSE**:  The City objects to the terms "undertake," "investigation" and "native tongue" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.  The City further objects on the ground that the Request assumes facts not in evidence in that subjects may choose to take polygraph examinations in languages in which they are conversant or fluent even if that is not the subject's first or "native" language. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

(14)   CPD's Polygraph Unit and its polygraphers were not required to have their work reviewed by a supervisor.

**RESPONSE**:  The City objects to the terms "undertake," "investigation" and "reviewed" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.  Subject to and without waiving the foregoing objections, the City admits Request No. 12(14).

(15)    CPD polygraphers were required under state law to take notes of pre-test interviews.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "notes" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that this Request calls for a legal conclusion. In addition, the City further objects that this Request does not include a temporal scope, rendering response to this Request without speculation. The City also objects on the ground that this Request is predicated on the assumption that CPD polygraphers were required under state law to take notes of pre-test interviews; rather, the CPD polygraphers were subject to the requirements of 68 IL ADC 1230.130. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

(16)    CPD polygraphers were required under state law to take notes of pre-test interviews, but repeatedly failed to do so.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "notes" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that this Request calls for a legal conclusion. In addition, the City further objects that this Request does not include a temporal scope, rendering response to this Request without speculation. The City also objects on the ground that this Request is predicated on the assumption that CPD polygraphers were required under state law to take notes of pre-test interviews or that they failed to take notes of pre-test interviews; rather, the CPD polygraphers were subject to the requirements of 68 IL ADC 1230.130. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

- 11 -

(17)    Officer Bartik had obtained confessions from suspects by berating them, threatening them, and lying to them.

**RESPONSE**:  The City objects to the terms "undertake" and "investigation" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.  Subject to and without waiving the foregoing objections, the City denies Request No. 12(17).

(18)    the CPD had made a decision to ignore one or more national polygrapher industry group standards.

**RESPONSE**:  The City objects to the terms "undertake," "investigation" and "made a decision to ignore" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.   Subject to and without waiving the foregoing objections, the City admits Request No. 12(18).

(19)    the CPD had made a decision to ignore one or more national polygrapher industry group standards, and if so, who within CPD made that decision.

**RESPONSE**:  The City objects to the terms "undertake," "investigation" and "made a decision to ignore" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.  The City further objects to this Request as being compound.  Subject to and without waiving the foregoing objections, the City admits Request No. 12(19).

(20)    the CPD had made a decision to ignore one or more national polygrapher industry group standards, and if so, who within CPD made that decision, and whether that person was authorized to make that decision.

**RESPONSE**:   The City objects to the terms "undertake," "investigation" and "made that decision" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.  The City further objects to this Request as being

- 12 -

compound. In addition, the City objects that this Request is an interrogatory to which the City cannot admit or deny without providing additional explanation in contravention to Rule 36. Subject to and without waiving the foregoing objections, the City admits Request No. 12(20).

(21)   the use of polygraphs was an appropriate investigative tool in criminal cases.

**RESPONSE**:   The City objects to the terms "undertake," "investigation" and "appropriate investigative tool" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.   Subject to and without waiving the foregoing objections, the City admits Request No. 12(21).

(22)   the use of polygraphs was a valuable investigative tool in criminal cases.

**RESPONSE**:   The City objects to the terms "undertake," "investigation" and "valuable investigative tool" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.   Subject to and without waiving the foregoing objections, the City admits Request No. 12(22).

(23)   the use of polygraphs and testimony of polygraphers in criminal cases was not an asset to criminal prosecutions, but a liability.

**RESPONSE**:   The City objects to the terms "undertake," "investigation" and "not an asset to criminal prosecutions" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.   Subject to and without waiving the foregoing objections, the City admits Request No. 12(23).

(24)   the fact that the City had paid millions of dollars in damages in polygraph-related civil rights cases.

**RESPONSE**: The City objects to this Request as it calls for information protected by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving the foregoing objections, the City denies Request No. 12(24).

**AMENDED REQUEST NO. 12(a)**: Admit that between March 2013, when the *Chicago Tribune* article attached as Exhibit B was published about CPD's Polygraph Unit, and November 2, 2015, when the article was attached to a motion in this case, CPD did not undertake any investigation into whether:

(1)     CPD's polygraph unit and its polygraphers acted improperly to obtain confessions.

**RESPONSE**: The City objects to the terms "CPD's polygraph unit and its polygraphers" "undertake," "investigation," "improperly" and "obtain confessions" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City denies Request No. 12(a)(1).

(2)     CPD's polygraph unit and its polygraphers falsely told test takers (aka subjects) that they had failed the polygraph exam when in fact the exam indicated that those test takers were being truthful.

**RESPONSE**: The City objects to the terms "CPD polygraph unit and its polygraphers," "undertake" and "investigation" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.     Subject to and without waiving the foregoing objections, the City denies Request No. 12(a)(2).

(3)     CPD's polygraph unit and its polygraphers acted improperly to obtain confessions by interrogating subjects before administering the polygraph exam.

**RESPONSE**: The City objects to the terms "CPD polygraph unit and its polygraphers" "undertake," "investigation," "improperly" and "obtain confessions" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without

speculation. The City further objects to this Request as vague as to the terms "CPD's polygraph unit." Subject to and without waiving the foregoing objections, the City denies Request No. 12(a)(3).

    (4)    CPD's polygraph unit and its polygraphers had a custom or rule in place that no polygraph result was ever reviewed by a second examiner.

**RESPONSE**: The City objects to the terms "undertake," "investigation," "custom" and "rule" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(4).

    (5)    the lack of requirement that that a CPD polygrapher's results be reviewed by a second examiner or by a supervisor violated national polygraphy industry group standards.

**RESPONSE**: The City objects to the terms "undertake," "investigation," and "national polygraphy industry group standards" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(5).

    (6)    CPD's Polygraph Unit had no continuing education requirements for its polygraphers.

**RESPONSE**: The City objects to the terms "undertake" and "investigation," in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that the Request assumes facts not in evidence in that neither Illinois nor the Illinois Department of Financial and Professional Regulations requires that persons certified under the state of Illinois as a licensed polygraph

examiner be subject to any specific continuing education requirements. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(6).

(7) the lack of a requirement that the CPD Polygraph Unit have continuing education requirements for its polygraphers violated national polygraphy industry group standards.

**RESPONSE**: The City objects to the terms "undertake," "investigation," "violated" and "national polygraphy industry group standards" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(7).

(8) CPD's Polygraph Unit and its polygraphers made audio or video recordings of only a small fraction of the polygraphs that they administered.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "small fraction" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects because this Request does not specify a temporal scope for when audio or video recordings of polygraphs took place, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(8).

(9) the lack of a requirement that the CPD Polygraph Unit record all polygraphs that it administered violated national polygraphy industry group standards.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "national polygraphy industry group standards" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects because this Request does not specify a temporal scope for when recordings of polygraphs took place, rendering response to this Request impossible without speculation. The City also objects

as the CPD Polygraph Unit, pursuant to Illinois law, was not required to record polygraphs prior to July, 2005. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

     (10)    CPD's Polygraph Unit and its polygraphers did not use numerical scoring of polygraph examinations until 2012.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "numerical scoring" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that this Request is predicated on the assumption that all CPD polygraphers did not use numerical scoring until 2012. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation, but denies that "CPD's Polygraph Unit and its polygraphers" did not use numerical scoring of polygraph examinations until 2012.

     (11)    the decision not to use numerical scoring of polygraph examinations prior to 2012 violated national polygraphy industry group standards.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "numerical scoring" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that this Request is predicated on the assumption that all CPD polygraphers did not use numerical scoring until 2012. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation, but denies that "CPD's Polygraph Unit and its polygraphers" did not use numerical scoring of polygraph examinations until 2012.

     (12)    CPD's Polygraph Unit and its polygraphers conducted polygraph exams in a language other than the test taker's native tongue.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "native tongue" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that the Request assumes facts not in evidence in that subjects may choose to take polygraph examinations in languages in which they are conversant or fluent even if that is not the subject's first or "native" language. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

    (13)    the decision to conduct polygraph exams in a language other than the test taker's native tongue violated national polygraphy industry group standards.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "native tongue" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that the Request assumes facts not in evidence in that subjects may choose to take polygraph examinations in languages in which they are conversant or fluent even if that is not the subject's first or "native" language. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

    (14)    CPD's Polygraph Unit and its polygraphers were not required to have their work reviewed by a supervisor.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "reviewed" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(14).

    (15)    CPD polygraphers were required under state law to take notes of pre-test interviews.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "notes" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that this Request calls for a legal conclusion. In addition, the City further objects that this Request does not include a temporal scope, rendering response to this Request without speculation. The City also objects on the ground that this Request is predicated on the assumption that CPD polygraphers were required under state law to take notes of pre-test interviews; rather, the CPD polygraphers were subject to the requirements of 68 IL ADC 1230.130. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

     (16)    CPD polygraphers were required under state law to take notes of pre-test interviews, but repeatedly failed to do so.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "notes" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects on the ground that this Request calls for a legal conclusion. In addition, the City further objects that this Request does not include a temporal scope, rendering response to this Request without speculation. The City also objects on the ground that this Request is predicated on the assumption that CPD polygraphers were required under state law to take notes of pre-test interviews or that they failed to take notes of pre-test interviews; rather, the CPD polygraphers were subject to the requirements of 68 IL ADC 1230.130. Subject to and without waiving the foregoing objections, the City admits that it did not undertake an investigation.

     (17)    Officer Bartik had obtained confessions from suspects by berating them, threatening them, and lying to them.

**RESPONSE**: The City objects to the terms "undertake" and "investigation" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City denies Request No. 12(a)(17).

      (18)    the CPD had made a decision to ignore one or more national polygrapher industry group standards.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "made a decision to ignore" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(18).

      (19)    the CPD had made a decision to ignore one or more national polygrapher industry group standards, and if so, who within CPD made that decision.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "made a decision to ignore" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects to this Request as being compound. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(19).

      (20)    the CPD had made a decision to ignore one or more national polygrapher industry group standards, and if so, who within CPD made that decision, and whether that person was authorized to make that decision.

**RESPONSE**: The City objects to the terms "undertake," "investigation" and "made that decision" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation. The City further objects to this Request as being compound. In addition, the City objects that this Request is an interrogatory to which the City

cannot admit or deny without providing additional explanation in contravention to Rule 36. Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(20).

(21)    the use of polygraphs was an appropriate investigative tool in criminal cases.

**RESPONSE**:    The City objects to the terms "undertake," "investigation" and "appropriate investigative tool" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.    Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(21).

(22)    the use of polygraphs was a valuable investigative tool in criminal cases.

**RESPONSE**:    The City objects to the terms "undertake," "investigation" and "valuable investigative tool" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.    Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(22).

(23)    the use of polygraphs and testimony of polygraphers in criminal cases was not an asset to criminal prosecutions, but a liability.

**RESPONSE**:    The City objects to the terms "undertake," "investigation" and "not an asset to criminal prosecutions" in that said terms are subject to multiple interpretations, rendering response to this Request impossible without speculation.    Subject to and without waiving the foregoing objections, the City admits Request No. 12(a)(23).

(24)    the fact that the City had paid millions of dollars in damages in polygraph-related civil rights cases.

**RESPONSE**:    The City objects to this Request as it calls for information protected by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving the foregoing objections, the City denies Request No.  12(a)(24).

- 21 -

**AMENDED REQUEST NO. 12(b)**: Admit that between March 2013, when the *Chicago Tribune* article attached as Exhibit B was published about CPD's Polygraph Unit, and November 2, 2015, when the article was attached to a motion in this case, the Independent Police Review Authority ("IPRA") did not undertake any investigation into whether:

    (1)    CPD's polygraph unit and its polygraphers acted improperly to obtain confessions.

**RESPONSE**: Admit.

    (2)    CPD's polygraph unit and its polygraphers falsely told test takers (aka subjects) that they had failed the polygraph exam when in fact the exam indicated that those test takers were being truthful.

**RESPONSE**: Admit.

    (3)    CPD's polygraph unit and its polygraphers acted improperly to obtain confessions by interrogating subjects before administering the polygraph exam.

**RESPONSE**: Admit.

    (4)    CPD's polygraph unit and its polygraphers had a custom or rule in place that no polygraph result was ever reviewed by a second examiner.

**RESPONSE**: Admit.

    (5)    the lack of requirement that that a CPD polygrapher's results be reviewed by a second examiner or by a supervisor violated national polygraphy industry group standards.

**RESPONSE**: Admit.

    (6)    CPD's Polygraph Unit had no continuing education requirements for its polygraphers.

**RESPONSE**: Admit.

    (7)    the lack of a requirement that the CPD Polygraph Unit have continuing education requirements for its polygraphers violated national polygraphy industry group standards.

**RESPONSE**: Admit.

(8)     CPD's Polygraph Unit and its polygraphers made audio or video recordings of only a small fraction of the polygraphs that they administered.

**RESPONSE**: Admit.

(9)     the lack of a requirement that the CPD Polygraph Unit record all polygraphs that it administered violated national polygraphy industry group standards.

**RESPONSE**: Admit.

(10)    CPD's Polygraph Unit and its polygraphers did not use numerical scoring of polygraph examinations until 2012.

**RESPONSE**: Admit.

(11)    the decision not to use numerical scoring of polygraph examinations prior to 2012 violated national polygraphy industry group standards.

**RESPONSE**: Admit.

(12)    CPD's Polygraph Unit and its polygraphers conducted polygraph exams in a language other than the test taker's native tongue.

**RESPONSE**: Admit.

(13)    the decision to conduct polygraph exams in a language other than the test taker's native tongue violated national polygraphy industry group standards.

**RESPONSE**: Admit.

(14)    CPD's Polygraph Unit and its polygraphers were not required to have their work reviewed by a supervisor.

**RESPONSE**: Admit.

(15)    CPD polygraphers were required under state law to take notes of pre-test interviews.

**RESPONSE**: Admit.

    (16)    CPD polygraphers were required under state law to take notes of pre-test interviews, but repeatedly failed to do so.

**RESPONSE**: Admit.

    (17)    Officer Bartik had obtained confessions from suspects by berating them, threatening them, and lying to them.

**RESPONSE**: Admit.

    (18)    the CPD had made a decision to ignore one or more national polygrapher industry group standards.

**RESPONSE**: Admit.

    (19)    the CPD had made a decision to ignore one or more national polygrapher industry group standards, and if so, who within CPD made that decision.

**RESPONSE**: Admit.

    (20)    the CPD had made a decision to ignore one or more national polygrapher industry group standards, and if so, who within CPD made that decision, and whether that person was authorized to make that decision.

**RESPONSE**: Admit.

    (21)    the use of polygraphs was an appropriate investigative tool in criminal cases.

**RESPONSE**: Admit.

    (22)    the use of polygraphs was a valuable investigative tool in criminal cases.

**RESPONSE**: Admit.

    (23)    the use of polygraphs and testimony of polygraphers in criminal cases was not an asset to criminal prosecutions, but a liability.

**RESPONSE**: Admit.

    (24)    the fact that the City had paid millions of dollars in damages in polygraph-related civil rights cases.

**RESPONSE**: Admit.

**AMENDED REQUEST NO. 13**: Admit that between November 2013, when the *Chicago Tribune* article attached as Exhibit B was published and November 2, 2015, when the article was attached to a motion in this case, neither the City of Chicago nor the CPD undertook any investigation into the matters reported in that article.

**RESPONSE**: Irrelevant. The City objects to the terms "investigation" and "matters" as vague, rendering response to this Request impossible without speculation. Also, the City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. *Robinson v. Stanley*, Case No. 06 C 5158, 2009 WL 3233909 at *2 (N.D. Ill. 2009). Further, responding to this Request would require the City to rely upon documents and facts extraneous to the Request, which is considered improper. *Vergara v. City of Waukegan*, 2007 WL 3334501, at *2 (N.D. Ill. Nov. 6, 2007).

**AMENDED REQUEST NO. 13(a)**: Admit that between November 2013, when the *Chicago Tribune* article attached as Exhibit B was published and November 2, 2015, when the article was attached to a motion in this case, the Independent Police Review Authority ("IPRA") did not undertake any investigation into the matters reported in that article.

**RESPONSE**: Irrelevant. The City objects to the terms "investigation" and "matters" as vague, rendering response to this Request impossible without speculation. Also, the City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. *Robinson v. Stanley*, Case No. 06 C 5158, 2009 WL 3233909 at *2 (N.D. Ill. 2009). Further, responding to this Request would require the City to rely upon documents and facts extraneous to the Request, which is considered improper. *Vergara v. City of Waukegan*, 2007 WL 3334501, at *2 (N.D. Ill. Nov. 6, 2007).

**AMENDED REQUEST NO. 14**: Admit that on December 8 or 9, 2015, Chicago Mayor Rahm Emanuel admitted there is a code of silence in the Chicago Police Department.

**RESPONSE**: The City objects on the ground that this Request is not likely to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, the City admits that on December 8 or 9 2015, Emanuel opined that there is a code of silence that exists among police officers. The City denies all facts and inferences not specifically admitted herein.

**REQUEST NO. 15**: Admit that Chicago Mayor Rahm Emanuel is a final policy maker for purposes of *Monell* for the City of Chicago and Chicago's Police Department.

**RESPONSE**: Deny.

**AMENDED REQUEST NO. 16**: Admit that on December 8 or 9, 2015, Chicago Mayor Rahm Emanuel admitted that the code of silence that exists in the Chicago Police Department has existed since before 2005.

**RESPONSE**: Deny.

**AMENDED REQUEST NO. 17**: Admit that on December 8 or 9, 2015, Chicago Mayor Rahm Emanuel admitted that there is a culture within the Chicago Police Department in which its officers act above the law.

**RESPONSE**: The City admits that Emanuel stated on December 8 or 9, 2015 "You are asked to uphold the law, not act like you're above the law. And your job is, if you see something and say nothing, you're adding to a culture, and it's about a colleague, I understand that, but there's professional standards."

**AMENDED REQUEST NO. 18**: Admit that on December 8 or 9, 2015, Chicago Mayor Rahm Emanuel admitted that the City of Chicago needs a system to deal with the bad officers who are undermining the police department and its work.

**RESPONSE**: The City admits that on December 8 or 9, 2015 Emanuel stated "And when an officer and a colleague acts wrongly and we have a culture where you're permissive, it undermines your work as a good officer. And we have good officers in the Police Department. But when you have an officer who is breaking the law, undermining the law, you have a responsibility to make sure that does not happen."

**AMENDED REQUEST NO. 19**: Admit that in the case of *Obrycka v. Abbate*, a jury in the Northern District of Illinois found that in 2007, the City of Chicago had a widespread custom or practice of failing to investigate its officers when they engaged in misconduct.

**RESPONSE**: This Request is not likely to lead to the discovery of admissible evidence. The City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. The City further objects because responding to this Request would require the City to rely upon documents and facts extraneous to the Request.

Subject to and without waiving the foregoing objections, the City has made reasonable inquiry into this Request and the information known or readily obtainable by the City is insufficient to enable the City to admit or deny this Request. Thus, the City is unable to admit or deny this Request as it lacks sufficient information and knowledge, and on that basis denies same.

**AMENDED REQUEST NO. 19(a)**: Admit that in the case of *Obrycka v. Abbate*, a jury in the Northern District of Illinois found that in 2007, the City of Chicago had a widespread custom or practice of failing to discipline its officers when they engaged in misconduct.

**RESPONSE**: This Request is not likely to lead to the discovery of admissible evidence. The City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. The City further objects because responding to this Request would require the City to rely upon documents and facts extraneous to the Request.

Subject to and without waiving the foregoing objections, the City has made reasonable inquiry into this Request and the information known or readily obtainable by the City is insufficient to enable the City to admit or deny this Request. Thus, the City is unable to admit or deny this Request as it lacks sufficient information and knowledge, and on that basis denies same.

**AMENDED REQUEST NO. 19(b)**: Admit that in the case of *Obrycka v. Abbate*, a jury in the Northern District of Illinois found that in 2007 there existed a code of silence among Chicago police officers.

- 27 -

**RESPONSE**: This Request is not likely to lead to the discovery of admissible evidence. The City objects as the Request seeks information not properly sought by a Request for Admission pursuant to Rule 36, and is not narrowing the issues to be resolved at trial. The City further objects because responding to this Request would require the City to rely upon documents and facts extraneous to the Request.

Subject to and without waiving the foregoing objections, the City has made reasonable inquiry into this Request and the information known or readily obtainable by the City is insufficient to enable the City to admit or deny this Request. Thus, the City is unable to admit or deny this Request as it lacks sufficient information and knowledge, and on that basis denies same.

Dated: March 14, 2016

One of the Attorneys for Defendant,
CITY OF CHICAGO

John F. Gibbons (Attorney No. 6190493)
Tiffany S. Fordyce (Attorney No. 235063)
Kyle L. Flynn (Attorney No. 6312817)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
T: (312) 456-8400
F: (312) 456-8435
gibbonsj@gtlaw.com
fordycet@gtlaw.com
flynnk@gtlaw.com

## CERTIFICATE OF SERVICE

I, Kyle L. Flynn, certify that on March 14, 2016, true and correct copies of the **CITY OF CHICAGO'S SECOND SUPPLEMENTAL RESPONSES TO NICOLE HARRIS' AMENDED THIRD SET OF REQUESTS TO ADMIT,** served by email and U.S. Mail, postage pre-paid, upon the following parties in the case:

J. Samuel Tenenbaum
Bluhm Legal Clinic
357 East Chicago Avenue
Chicago, IL 60611

Joey L. Mogul
Janine L. Hoft
Janis M. Susler
People's Law Office
1180 N. Milwaukee
Chicago, IL 60622

Margot Klein
Nicole Nehama Auerbach
Stuart Jay Chanen
Valorem Law Group
35 East Wacker Drive
3000
Chicago, IL 60601

Andrew M. Hale
Avi T. Kamionski
Jennifer Bitoy
Shneur Z. Nathan
Hale Law LLC
53 W. Jackson Blvd.
Suite 330
Chicago, IL 60604

Kyle Flynn