# EXHIBIT 31

To
**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS REQUIRING DENIAL OF THE CITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**March 15, 2016**

**Case No. 14-CV-4391**

1

```
 1           IN THE DISTRICT COURT OF THE UNITED STATES
 2              FOR THE NORTHERN DISTRICT OF ILLINOIS
 3                         EASTERN DIVISION
 4
 5    DONNY MCGEE,                    )
                    Plaintiff,        )
 6                                    )
                    -vs-              )    No.  04 C 6352
 7                                    )
      CITY OF CHICAGO, CHICAGO POLICE )
 8    DETECTIVE FARLEY, CHICAGO       )
      POLICE DETECTIVE LENIHAN, and   )
 9    CHICAGO POLICE OFFICER BARTIK,  )
                                      )
10                  Defendants.       )
11
12           Deposition of OFFICER ROBERT BARTIK, taken
13    before NICOLE C. JONES, C.S.R., and Notary Public,
14    pursuant to the Federal Rules of Civil Procedure for
15    the United States Courts pertaining to the taking of
16    depositions for the purpose of discovery, at Suite
17    100, 312 North May Street, Chicago, Illinois,
18    commencing at 10:15 a.m., on the 26th day of May,
19    2005.
20
21
22
23
24
```

COPY

1  shown up. And once the lawyer showed up, they said
2  come on down, there is a lawyer back there and they
3  took him back.
4      Q  What other reasons?
5      A  That's it.
6      Q  Where in the record did you make note of the
7  fact that he was physically unable to take a
8  polygraph examination, if any place?
9      MR. GREEN: I would object.
10     THE WITNESS: I didn't. I believe I testified to
11 it.
12     MR. LOEVY:  Q  In court?
13     A  Yes.
14     Q  Yes, but in the police station did you
15 create any record to indicate that Donny McGee was
16 physically unable to take the polygraph examination?
17     A  No.
18     Q  And isn't it your normal practice if someone
19 is unable to physically take a polygraph
20 examination, that you create some written record of
21 that?
22     A  No.
23     Q  And after he confessed to the murder were
24 you absolutely convinced that he was telling the

1  truth about the murder?

2  A  Yes.

3  Q  And so, therefore, there was no reason to
4  confirm whether he was telling the truth or not by
5  giving him a polygraph, is that correct?

6  MR. GREEN: I would object to form of the
7  question.

8  THE WITNESS: Are you saying, Counsel, that the
9  reason why I did not administer a polygraph
10 examination to Donny McGee was because he was too
11 shaken?

12 MR. LOEVY: Q  Well, I just listed the reasons
13 you gave.

14 A  The reason why I did not give Donny McGee a
15 polygraph examination was because the issue was
16 whether or not he murdered Ethel Perstlen, and he
17 told me he did.

18 Q  And you believed him?

19 A  Yes.

20 Q  Had anybody in the whole history of your
21 career ever given you a false confession?

22 A  I don't believe so.

23 Q  In the course of your career as a Chicago
24 police officer have you ever heard of anyone giving

1  a -- Strike that.

2  In the course of your career as a Chicago
3  police officer have you ever heard the accusation of
4  fabricated confessions?

5  MR. GREEN: I'm going to object to the form. Go
6  on.

7  THE WITNESS: Not until I was delivered these
8  papers by your office, Counsel.

9  MR. LOEVY: Q This is the first time you ever
10 heard of a fabricated confession, is that correct?

11 A Yes.

12 Q You know the difference between a false
13 confession and a fabricated confession, don't you?

14 MR. GREEN: I would object to form.

15 MR. LOEVY: Q Do you know the difference
16 between a false confession and a fabricated
17 confession?

18 A Yes, sir.

19 Q Now, how many times in the history of your
20 career and the polygraph, as a polygraph examiner,
21 have you had a subject in the room, had the room,
22 had the person confess to a crime, and, therefore,
23 did not administer the polygraph examination?

24 A I don't know.

1   polygraph examination to Lee Murphy that he had
2   confessed?
3       A   Yes.
4       Q   And if someone confesses, am I correct in
5   saying it's your understanding that you don't have
6   to administer a polygraph exam, is that correct?
7       A   It makes the polygraph unnecessary at that
8   point, yes.
9       Q   After you had the conversation with
10  Donny McGee that you just testified to -- Do you
11  want to go back through those questions or do you
12  remember?
13      A   That's fine, yes.
14      Q   You remember where you were because we
15  digressed a little bit?
16      A   Yes.
17      Q   After he gave you that information you left
18  the office, is that correct?
19      A   Yes.
20      Q   And did you tell McGee to sit down or did
21  you leave him standing?
22      A   As he was talking to me, he was sitting.
23      Q   He never got out of his chair?
24      A   No.

1  Q But do they make the decision whether or not
2 to administer a polygraph examination or is it your
3 decision whether or not to administer a polygraph
4 exam?
5  MR. GREEN: I would object to form and
6 speculation.
7  MR. LOEVY: Q I want to know whose decision was
8 it not to proceed with the polygraph exam?
9  A I don't think there was a discussion. They
10 said there's a lawyer, let's go.
11  Q You were going to administer the polygraph
12 examination right up until the point that it was
13 announced that McGee had a lawyer, is that correct?
14  A No.
15  MR. GREEN: I object to speculation.
16  MR. LOEVY: Q So it was sometime before that
17 that you made the decision not to administer a
18 polygraph exam?
19  A Yes.
20  Q When was that decision made that you were
21 not going to conduct a polygraph?
22  A When he confessed to the murder.
23  Q And who made that decision after the
24 confession to the murder that there was going to be

1    no polygraph exam?

2        MR. GREEN:  I would object to the question as

3    asked and answered and to the form of the question.

4        THE WITNESS:  I don't believe there was a

5    conscious decision of whether or not -- I mean, once

6    he confessed to the murder, there was no need for

7    the polygraph.

8        MR. LOEVY:  Q  Was there an unconscious

9    decision?

10       MR. GREEN:  I would object to form.

11       THE WITNESS:  It just never happened.  I wasn't

12   going to administer a test.  It wasn't necessary.

13   He was there to determine whether he did it.  He

14   came in and he confessed.

15       MR. LOEVY:  Q  None of the detectives said to

16   you, Officer Bartik, don't administer a polygraph

17   exam, is that correct?

18       A    That is correct.

19       Q    You never said to either of the detectives,

20   I'm not going to administer a polygraph exam, is

21   that correct?

22       A    That is correct.

23       Q    Could you have administered a polygraph

24   examination after the confession if you had chosen