# EXHIBIT 39

**To**
**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS**
**REQUIRING DENIAL OF THE CITY'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**

**March 15, 2016**

**Case No. 14-CV-4391**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-4391 |
| | ) | |
| CITY OF CHICAGO, Chicago Police Officers | ) | Judge John W. Darrah |
| ROBERT BARTIK, DEMOSTHENES | ) | |
| BALODIMAS, ROBERT CARDARO, | ) | |
| JOHN J. DAY, JAMES M. KELLY, MICHAEL | ) | |
| LANDANDO, ANTHONY NORADIN, and | ) | |
| RANDALL WO, Assistant Cook County State's | ) | |
| Attorneys ANDREA GROGAN and LAWRENCE | ) | |
| O'REILLY, and the COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF NICOLE HARRIS' ANSWERS TO DEFENDANT
CITY OF CHICAGO'S SECOND SET OF INTERROGATORIES**

Plaintiff Nicole Harris answers Defendant City of Chicago's Second Set of Interrogatories as follows:

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      Plaintiff objects to Defendant City of Chicago's proposed definition of the word "you" because it purports to include attorneys and thus purports to include within its scope a request for information that is protected from discovery by the attorney-client privilege and/or work-product doctrine.

2.      Plaintiff objects to Defendant City of Chicago's proposed definitions and instructions to the extent they seek to impose any greater or different obligation on Plaintiff in responding to these interrogatories than those set forth in the Federal Rules of Civil Procedure and corresponding Local Rules.

1

# RESPONSES

**1.     Plaintiff contends in Count III of her Complaint, paragraph 134, that the "actions of Bartik, Balodimas, Cordaro, Day, Kelly, Landando, Noradin and Wo, as alleged (in her Complaint), were done pursuant to one or more interrelated de facto policies, practices and/or customs of the Defendant City of Chicago." Please describe all evidence upon which Plaintiff relies to support this contention, and identify all documents which support this contention.**

<u>**ANSWER:**</u> Plaintiff objects to this interrogatory as premature given that none of the Defendants has even answered Plaintiff's Complaint.   Plaintiff further objects to this interrogatory to the extent that it asks Plaintiff to identify evidence and documents upon which Plaintiff "relies to support this contention," and thus purports to include within its scope a request for information that is protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiving her objections, Plaintiff states that since 1989, the Cook County State's Attorney's Office and/or Judges of the Cook County Criminal Court have exonerated 42 individuals who had been charged and convicted based primarily (and in some cases exclusively) on the defendants' illegally-obtained, coerced confessions.   In addition to these 42 exonerations, 19 additional individuals were coerced into confessions that resulted in criminal charges, but which did not result in a wrongful conviction – either because the confession was thrown out by a Circuit Court judge or because the trier of fact concluded that the confession had been coerced.

In one such case, the person who confessed was in a Chicago Police Department lock-up at the time of the confession.   In another, the person who confessed was severely developmentally disabled.   In another, the two defendants were 7 and 8 years old respectively.   In 2001, the Chicago Tribune exposed the practice of Chicago Police Department Detectives coercing confessions, and notwithstanding the Tribune expose, the Chicago Police Department promoted all six of the detectives identified as regularly coercing false confessions from vulnerable individuals.

2

Comparing these 61 known coerced confessions to known coerced confessions from outside of Chicago, demonstrates among other things that the Chicago Police Department had a *de facto* custom, policy, and practice of encouraging, supporting, and condoning its Detectives and Officers to coerce confessions from innocent people in order to obtain convictions in cases that were not otherwise being solved.

Further, the City of Chicago has more proven coerced confessions than the states of California, Texas, Florida, Michigan, Pennsylvania, Louisiana, Alabama, and Georgia combined.

| State | False Confession |
|---|---|
| Chicago | 61 |
| State of New York | 29 |
| State of Illinois outside of Chicago | 17 |
| West Virginia | 8 |
| California, Texas, and Virginia (each) | 7 |
| Florida, Michigan, Nebraska, Pennsylvania, Wisconsin (each) | 6 |
| Louisiana, Mississippi, North Carolina, Oklahoma (each) | 5 |
| Indiana, Missouri (each) | 4 |
| Massachusetts | 3 |
| Alabama, Arizona, Connecticut, Georgia, Maryland, Ohio, Oregon, Tennessee (each) | 2 |
| Colorado, Iowa, Kansas, Kentucky, New Jersey, Nevada, Utah (each) | 1 |

3

Further responding, Plaintiff refer Defendants to the National Registry of Exonerations (https://www.law.umich.edu/special/exoneration/Pages/about.aspx), which lists dozens of cases in which Chicago Police Department officers coerced false statements from suspects in order to obtain their prosecutions and convictions. In addition, Plaintiff states that the following individuals were wrongfully convicted as a result of false confessions coerced by Chicago Police Department officers:

**Lavelle Burt**: Coerced by Chicago Police Detective Donald Burton and other officers into falsely confessing to the 1985 murder of Charles Gregory, Burt was prosecuted and subject to trial after two witnesses were manipulated and coerced by the police into falsely identifying Bert as the perpetrator, and despite physical evidence implicating the victim's mother in the shooting. The charges against Burt were later dismissed after the victim's grandmother gave Judge Ronald Himel, who presided over Burt's criminal trial, information further implicating the victim's mother in Gregory's death.

**Ronald Jones:** Chicago Police instigated the prosecution of Jones after Police Detectives coerced him into falsely confessing to the 1985 rape and murder of Debra Smith. Jones was beaten into making this false confession and maintained his innocence throughout trial. Jones was exonerated based on DNA testing that definitively eliminated him as the source of the semen found at the crime scene. In 1999, prosecutors dropped the charges against Jones.

**Hubert Geralds, Jr:** Chicago Police instigated the prosecution of Geralds for the murder of six women based on Geralds' coerced confession obtained in police custody, and despite scant evidence tying Geralds to any of the murders. In 2000, Geralds was exonerated of one of the murders based on DNA evidence linking the crime to a serial killer. Geralds remains imprisoned

for the other five murders.

**Marcellius Bradford:** Then-17-year-old Bradford falsely confessed and falsely implicated three other young men in the 1986 rape and murder of Lori Roscetti in Chicago. All four defendants were convicted, and all four were later exonerated by DNA evidence. The convictions were caused in part by false forensic testimony on the part of a Chicago Police crime lab analyst, which the defendants' DNA expert characterized as a scientific fraud. Bradford and his co-defendants were exonerated in 1998 when DNA results linked two other men to the crime.

**Calvin Ollins, Larry Ollis, and Omar Sanders:** Bradford's co-defendants, implicated by the false confession of Bradford, above.

**Miguel Castillo:** Despite having an alibi – he was in jail for an unrelated burglary at the time the murder supposedly took place – Castillo was convicted the murder of his neighbor based solely on a fabricated confession. The confession, which Castillo maintains was a complete fabrication, was preceded by physical beatings by Chicago investigators, and followed his arrest based merely on a tip by a different suspect in the murder. Castillo was ultimately exonerated. Prosecutors dropped the charges against Castillo in 2001 and he was pardoned on the basis of his innocence in 2003.

**Eric Kittler:** Chicago Police instigated the prosecution of then-15-year-old Kittler for the murder of a grocer in Hyde Park in 1997. Kittler was tried and convicted as an adult, based solely on his coerced and fabricated confession. In 2001, Kittler's conviction was vacated by the Illinois Appellate Court, which found that the police lacked probable cause to arrest Kittler; on retrial, Kittler was acquitted.

**Robert Gayol, Edar Duarte Santos, Omar Aguirre, and Luis Ortiz:** Chicago Police instigated the prosecution Gayol, Santos, Ortiz, Aguirre, and another individual, Ronnie Gamboa,

5

for the 1997 torture-murder of Sindulfo Miranda in Logan Square. Gayol, Ortiz and Aguirre were wrongfully convicted of the crime based on the perjurious testimony of a police informant and the false confession of Aguirre, obtained by police coercion. Santos pled guilty on the promise of a reduced sentence. Gamboa was acquitted at trial. Ultimately, the FBI and the U.S. Attorney's Office in Chicago developed evidence showing that the murder was one of a series of drug-related kidnappings committed by nine members of the Latin Kings street gang, who were charged in December 2002. That same year, the charges against all four men were vacated.

**Madison Hobley:** Chicago Police instigated the prosecution of Hobley for the 1987 arson-related murder of seven individuals. Hobley was convicted and sentenced to death based on his coerced confession, which was obtained by Chicago Police Officers, including the infamous Commander Jon Burge, who were all later shown to have engaged in the systematic torture of African-American suspects held in their custody. Governor George Ryan granted Hobley a pardon in 2002, stating that Madison Hobley had been convicted on the basis of flawed evidence.

**Stanley Howard:** Chicago Police instigated the prosecution of Howard for a 1984 murder based on Howard's confession, which was obtained under coercion by Area 2 Detectives, later implicated in the systematic torture of African-American suspects in their custody. Following his arrest, Howard told a paramedic who examined him at the Cook County Jail that his confession had been beaten out of him. The paramedic noted bruises and abrasions on Howard's left leg and chest. On January 10, 2003, Governor George Ryan granted a pardon to Howard based on innocence.

**Leroy Orange:** Chicago Police instigated the prosecution of Orange for four 1984 murders, based primarily on Orange's confession. Orange contended his confession had been

6

extracted by 12 hours of interrogation and intermittent torture, including beating, suffocation, and electroshock at the hands Area 2 officers. Orange's appeal was pending when Governor Ryan granted Orange a full pardon based on innocence on January 10, 2003.

**Aaron Patterson:** Chicago Police instigated the prosecution of Patterson for the 1989 murders of an elderly couple, based on Patterson's confession to the crime, which was extracted through torture by Chicago Police Detectives. Patterson was later convicted and sentenced to death. Governor George Ryan granted Patterson a pardon based on innocence in 2003.

**Eric Caine:** Chicago Police instigated the prosecution of Caine for the murder of an elderly couple after he and his co-defendant, Aaron Patterson, were tortured by Chicago police into confessing to the crime. Caine was later convicted and sentenced to natural life in prison. Caine's conviction was overturned in 2011.

**Lafonso Rollins:** Chicago Police instigated the prosecution of Rollins for a series of rapes and robberies of four elderly women committed in 1993. Rollins, who has a learning disability, was coerced into confessing by Chicago Police. The charges against Rollins were vacated by the Cook County Circuit Court in 2004 after DNA evidence excluded him as the perpetrator.

**Harold Hill and Dan Young, Jr:** Chicago Police instigated the prosecutions of Hill and Young for the 1990 rape and murder of a 39-year old woman who had been doused with gasoline and set afire. Hill and Young were arrested only after Chicago Police detectives John Halloran and Kenneth Boudreau, both suspected of a series of incidents of police misconduct, coerced a confession from another young man who also implicated Hill and Young in the murder. Hill and Young were then themselves physically beaten into confessing to the crime. Hill and Young's convictions were vacated in 2005 when DNA evidence from hair found at the crime scene and

cellular material from the victim's fingernails exonerated them.

**Robert Wilson:** Chicago Police instigated the prosecution of Robert Wilson for the 1997 attempted murder of a nurse, based on Wilson's confession which had been coerced from him in police custody, and the victim's identification of Wilson which had been manipulated by the investigating officers. Wilson's conviction was vacated in 2006 when the victim recanted her identification and proclaimed Wilson's innocence.

**Ronald Kitchen and Marvin Reeves**: Chicago Police instigated the prosecution of Kitchen and Reeves for the 1988 arson-related murder of five people, based upon Kitchen's tortured confession to the crime and the unreliable testimony of a habitual police informant who received benefits in exchange for his testimony at trial, a fact that was concealed from both Kitchen and Reeves' defense counsel. Kitchen and Reeves' convictions were overturned in 2009 after a re-investigation by the Illinois Attorney General's Office.

**Michael Tillman**: Chicago Police instigated the prosecution of Tillman for the 1986 murder of Betty Howard, based on Tillman's coerced confession obtained under torture by Chicago Police Detectives working for Commander Jon Burge. Tillman's co-defendant, Steven Bell, was also tortured into confessing to the murder. Two weeks later, the true perpetrator of the crime was arrested, but police refused to drop the charges against Tillman and Bell. The charges against Tillman were eventually vacated after the special prosecutor appointed to address the police torture scandal, Stuart Nudelman, re-investigated Tillman's case.

**Harold Richardson, Michael Saunders, Terrill Swift, and Vincent Thames**: Chicago Police instigated the prosecution of Richardson, Saunders, Swift, Thames, and another teenage boy, Jerry Fincher, for the murder of Nina Glover, based upon the coerced confessions of each of the teenagers. Fincher's confession was later suppressed in a pre-trial hearing after the judge

8

found that it was obtained by coercion. The charges against Fincher were then dismissed. No physical evidence connected any of the teenagers to the crime, and DNA testing done at the time of prosecution excluded each of them as the perpetrators. Despite the lack of evidence, police and prosecutors pursued the charges, and Richardson, Saunders, Swift, and Thames were each convicted on the basis of their coerced confessions. The four had their convictions overturned in late 2011, and in 2012, prosecutors decided not to re-try the case.

It is well established that Chicago Police Department Commander Jon Burge, and those working under his command at Areas 2 and 3, tortured confessions from scores of suspects in their custody over a period of over 20 years. *See, e.g., United States v. Burge*, 711 F.3d 803, 806 (7th Cir. 2013) ("Former Chicago Police Commander Jon Burge presided over an interrogation regime where suspects were suffocated with plastic bags, electrocuted until they lost consciousness, held down against radiators, and had loaded guns pointed at their heads during rounds of Russian roulette. The use of this kind of torture was designed to inflict pain and instill fear while leaving minimal marks."); *United States ex rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999) ("It is now common knowledge that in the early to mid-1980s Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions."). Evidence of the Burge torture scandal, as well as the Chicago Police Department and City of Chicago's failure to supervise and discipline the officers involved, includes the following:

1.　　Findings of numerous courts. *See, e.g., Hinton v. Uchtman*, 395 F.3d 810, 82–23 (7th Cir. 2005) ("a mountain of evidence indicates that torture was an ordinary occurrence at the Area Two station of the Chicago Police Department") (Wood, J., concurring); *People v. Wilson*, 116 Ill. 2d 29, 41–42 (1987); *People v. Patterson*, 192 Ill. 2d 93, 106-110 (2000); *People v. King*,

192 Ill. 2d 189, 198–99 (2000); *People v. Banks*, 192 Ill. App. 3d 986, 990–94 (1st Dist. 1989); *People v. Bates*, 267 Ill. App. 3d 503, 504–07 (1st Dist. 1994); *People v. Cannon*, 293 Ill. App. 3d 634, 640–42 (1st Dist. 1997); *People v. Clemon*, 259 Ill. App. 3d 5, 9–11 (1st Dist. 1994).

2.      The report submitted in 1990 by Michael Goldston and Francine Sanders of the City of Chicago's Office of Professional Standards, finding that systematic abuse of suspects had occurred at Area 2 under Jon Burge's supervision, and that Area 2 command personnel were aware of and condoned the abuse.

3.      Jon Burge's dismissal from the Chicago Police Department in 1993 upon the Police Board's finding that he abused Andrew Wilson at Area 2, as well as the suspension of two other detectives for the failure to stop or report Burge's abuse.  *See* Memorandum Opinion on Appeal from Discharge Order Before the Police Board (Cir. Ct. Ck. Cty.).

4.      The fact that between 1982 and 1986, every complaint of misconduct against Area 2 detectives for abusing suspects in their custody was held unsustained, and not a single detective was disciplined for abusing suspects.

5.      The officially expressed concern of the United Nations Committee Against Torture regarding "the limited investigation and lack of prosecution in respect of the allegations of torture perpetrated in . . . the Chicago Police Department." *See* U.N. Committee Against Torture, *Conclusions and Recommendations of the Committee Against Torture: United States of America*, ¶ 25, U.N. Doc. CAT/C/USA/CO/2 (July 25, 2006).

6.      The findings of the Special Prosecutor appointed by the Circuit Court of Cook County that that there were "many cases" in which it was reasonable to believe that African American men had been abused by Burge and officers under his command.  *See* Edward J. Egan & Robert D. Boyle, *Report of the Special State's Attorney* 16 (2006). Egan and Boyle found

10

roughly half of the complainants in the 140 cases of alleged torture that they reviewed had presented credible claims of abuse. Egan and Boyle concluded that because Burge was guilty of systematic abuses, it "necessarily follows that a number of those serving under his command recognized that if their commander could abuse persons with impunity, so could they." *Id*. These high ranking officials included Chicago Police Department Superintendent Richard Brzeczek, who served from 1980 to 1983, during the period of time that Andrew Wilson was arrested and tortured at Area 2. Brzeczek testified before the Special Prosecutors that he left Jon Burge in charge of the Violent Crimes section of Detectives at Area 2, knowing that Andrew Wilson had been abused under Burge's supervision and control.

7.     The conviction of Burge in the United States District Court in 2010 for falsely denying under oath that torture had occurred under his command, Burge's sentence to a four-and-a-half-year term of federal imprisonment, and the affirmance of that conviction by the United States Court of Appeals for the Seventh Circuit, which described the record of Burge's trial:

> [T]he witnesses at trial detailed a record of decades of abuse that is unquestionably horrific. The witnesses described how they were suffocated with plastic bags, electrocuted with homemade devices attached to their genitals, beaten, and had guns forced into their mouths during questioning. Burge denied all allegations of abuse, but other witnesses stated that he bragged in the 1980s about how suspects were beaten in order to extract confessions. Another witness testified that Burge told her that he did not care if those tortured were innocent or guilty, because as he saw it, every suspect had surely committed some other offense anyway.

*United States v. Burge*, 711 F.3d at 808.

8.     The creation of the Illinois Torture Inquiry and Relief Commission (TIRC) by the Illinois Torture Inquiry and Relief Commission Act, passed by the General Assembly and signed into law by Governor Pat Quinn in 2009, for the purpose of providing hearings to the hundreds of victims who claimed to have been tortured by Burge and his subordinates while in police custody.

11

In addition, Plaintiff incorporates the testimony of Defendant Paladino, who testified in a deposition in the matter of *Swift v. City of Chicago et al.*, Case No. 12-L-012995 (Cir. Ct. Ck. Cty.), that over the course of his career he could recall no officer who was reprimanded or otherwise disciplined for abusing or coercing a suspect.

Furthermore, Defendant Bartik has a documented history of failing to adhere to reasonable practices and standards in the administration of polygraphs. He has been accused of fabricating false confessions, coercing suspects into giving confessions and making false statements regarding the administration of polygraph examinations in a series of cases including but not limited to those involving Robert Robinson, Donny McGee, Lamar Blount, Danny Lanza, Lee Murphy, Larry Scott, Anteleto Jones, Michael Banks, Rory Cook, Steve Williams, and Johnny Fulton.

Plaintiff's investigation continues.

**2.     Plaintiff contends in Count III of her Complaint, paragraph 134, that the "actions of Bartik, Balodimas, Cordaro, Day, Kelly, Landando, Noradin and Wo, as alleged (in her Complaint), were done pursuant to one or more interrelated de facto policies, practices and/or customs of the Defendant City of Chicago." Please identify all persons who support your contention.**

**ANSWER:**     See Plaintiff's Answer to Interrogatory No. 1 above, which is incorporated fully herein.

**3.     Plaintiff contends in Count III of her Complaint, paragraph 135, sub-point "a", that the City of Chicago through its "Police Department, Police Superintendents, Police Board, Mayors, City Council and/or the Corporation Counsel's Office" had the following de facto policy, practice and/or custom: "conducting physically, psychologically or otherwise illegal or improperly coercive interrogations of witnesses, suspects and arrestees in order to obtain confessions and wrongful convictions." Please describe all evidence upon which Plaintiff relies to support this contention, identify all documents which support this contention, and identify all persons who support your contention.**

**ANSWER:**     See Plaintiff's Answer to Interrogatory No. 1 above, which is incorporated

fully herein.

       **4.**     **Plaintiff contends in Count III of her Complaint, paragraph 135, sub-point "b", that the City of Chicago through its "Police Department, Police Superintendents, Police Board, Mayors, City Council and/or the Corporation Counsel's Office" had the following de facto policy, practice and/or custom: "manufacturing, fabricating, or using improper suggestive tactics to obtain false statements from suspects or witnesses." Please state all evidence upon which Plaintiff relies to support this contention, identify all documents which support this contention, and identify all persons who support your contention.**

       <u>**ANSWER:**</u>   See Plaintiff's Answer to Interrogatory No. 1 above, which is incorporated

fully herein.

       **5.**     **Plaintiff contends in Count III of her Complaint, paragraph 135, sub-point "c", that the City of Chicago through its "Police Department, Police Superintendents, Police Board, Mayors, City Council and/or the Corporation Counsel's Office" had the following de facto policy, practice and/or custom: "filing false reports, and giving false statements and testimony about interrogations and confessions and fabricating or constructing parts of or whole confessions; suppressing exculpatory evidence concerning interrogations and confessions; pursuing wrongful prosecutions and obtaining false imprisonments on the basis of confessions obtained during these interrogations; denying suspects their right to full and fair access to the courts; denying individuals the right to counsel; and otherwise covering up the true nature of these interrogations and confessions." Please state all evidence upon which Plaintiff relies to support this contention, identify all documents which support this contention, and identify all persons who support your contention.**

       <u>**ANSWER:**</u>   See Plaintiff's Answer to Interrogatory No. 1 above, which is incorporated

fully herein.

       **6.**     **Plaintiff contends in Count III of her Complaint, paragraph 135, sub-point "d", that the City of Chicago through its police department have the following de facto policy, practice and/or custom: "failing to videotape the interrogation or questioning of suspects, arrestees, and witnesses, from beginning to end, particularly in the circumstances set forth above." Please state all evidence upon which Plaintiff relies to support this contention, identify all documents which support this contention, and identify all persons who support your contention.**

       <u>**ANSWER:**</u>   See Plaintiff's Answer to Interrogatory No. 1 above, which is incorporated

fully herein.

       **7.**     **Plaintiff contends in Count III of her Complaint, paragraph 135, sub-point "e", that the City of Chicago through its police department have the following de facto**

policy, practice and/or custom: "failing to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who are repeatedly accused of abuse and/or psychological coercion of suspects and witnesses, wrongful imprisonments, malicious prosecutions and wrongful convictions; making false reports and statements attributed to suspects and witnesses, and/or of physically, psychologically or otherwise illegally, improperly or coercively questioning or interrogating witnesses, suspects and arrestees." Plaintiff further contends that "among those the City failed to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control was Defendant Bartik who was repeatedly accused of psychologically coercing suspects and/or fabricating inculpatory statements." Please state all evidence upon which Plaintiff relies to support these contentions, identify all documents which support these contentions, and identify all persons who support your contention.

**ANSWER:** See Plaintiff's Answer to Interrogatory No. 1 above, which is incorporated

fully herein.

**8.** Plaintiff contends in Count III of her Complaint, paragraph 135, sub-point "f", that the City of Chicago through its police department had the following de facto policy, practice and/or custom: "perpetuating, encouraging and condoning the police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs a-e above, whereby police officers refused to report or otherwise covered-up instances of police misconduct, and/or fabricated, suppressed and destroyed evidence of which they were aware of, despite their obligation under the law and police regulations to report. This code of silence caused police officers either to remain silent or to give false and misleading information during official investigations and Grand Jury proceedings in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges. The code of silence also caused police officers to perjure themselves in criminal cases where they and their fellow officers coercively interrogated a suspect, arrestee or witness, or falsely arrested, imprisoned and/or prosecuted a criminal defendant." Please state all evidence upon which Plaintiff relies to support these contentions, identify all documents which support these contentions, and identify all persons who support your contention.

**ANSWER:** Plaintiff objects to this interrogatory as premature given that none of the

Defendants has even answered Plaintiff's Complaint. Plaintiff further objects to this

interrogatory to the extent that it purports to include within its scope a request for information

that is protected by the attorney-client privilege and/or the work product doctrine in that it asks

Plaintiff to identify evidence and documents which "support" her contentions. Subject to and

without waiving her objections, Plaintiff directs Defendants to *Obrycka v. City of Chicago*, 07 C

14

2372, 2012 WL 601810, at *1 (N.D. Ill. Feb. 23, 2012) (denying summary judgment on "code of silence" claim); *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 599 (N.D. Ill. Nov. 13, 2012) (judgment entered on jury verdict finding code of silence by, between, and among the Chicago Police Department); *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 599 (N.D. Ill. Dec. 20, 2012) (denying Chicago Police Department's motion to vacate the jury's "code of silence" finding). *See also Obrycka v. City of Chicago*, 07 C 2372 (amicus brief of the University of Chicago Mandel Legal Aid Clinic and Northwestern University School of Law MacArthur Justice Center).

Former Chicago Police Superintendent Martin, former O.P.S. Director Fogel, former Mayor Richard M. Daley, and former O.P.S. Director Shines have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, yet neither they nor their successors have acted to eliminate the code or to counteract its impact on police discipline, the use of excessive force, the fabrication of evidence and false arrests and prosecutions.

Recently, two Chicago Police Officers filed a lawsuit for violation of their First Amendment rights and the Illinois Whistleblower Protection Act Statute, alleging an ongoing code of silence so pervasive that they were harassed, threatened, ostracized, and retaliated against by other officers, including supervisors, after they reported illegal conduct of a group of officers. *See Spalding v. City of Chicago*, No. 12-cv-08777 (N.D. Ill.).

*See also* Plaintiff's Answer to Interrogatory No. 1 above, which is incorporated fully herein. Plaintiff's investigation continues.

**9.    Identify all individuals who you intend to call at trial to testify that the City has engaged in any policy or practice resulting in a constitutional violation as described more fully in *Monell v. Dept. of Soc. Svcs. of the City of New York*.**

15

**ANSWER:**    Plaintiff objects to this interrogatory as premature under the Rules and especially so given that none of the Defendants has even answered Plaintiff's Complaint.  Subject to and without waiving her objections, Plaintiff states that she has not yet determined which witnesses she will call to testify at trial regarding this claim.  Further answering, Plaintiff states that her investigation continues and she will seasonably supplement this Answer, and/or identify her list of witnesses who will testify at trial on or before the date that the Court sets for the parties to do so.

**10.    Pursuant to Fed. R. Civ. P. 26(a)(2), if Plaintiff intends to call expert witnesses at trial relating to any of her claims made against the City of Chicago, please state:**

      **a.    the full name and address of each expert witness, the subject matter upon which each expert witness is to opine and/or testify;**

      **b.    each expert witnesses' conclusions and opinions and the grounds therefore; and**

      **c.    each expert witnesses' qualifications and curriculum vitae or resume.**

**ANSWER:**    Plaintiff objects to this interrogatory as premature under the Rules and especially so given that none of the Defendants has even answered Plaintiff's Complaint.  Subject to and without waiving her objections, Plaintiff states she has not yet determined the expert witnesses she will call to testify with respect to her claims against the City.  Further answering, Plaintiff states that her investigation continues and she will seasonably supplement this Answer, and/or identify her list of witnesses who will testify at trial on or before the date that the Court sets for the parties to do so.

16

Dated:  April 29, 2015                              /s/ Stuart Chanen

One of Nicole Harris' Attorneys

Stuart Chanen
Nicole Auerbach
Margot Klein
Valorem Law Group
35 E. Wacker Dr., Ste. 3000
Chicago, Illinois 60601
(312) 676-5460
stuart.chanen@valoremlaw.com
nicole.auerbach@valoremlaw.com
margot.klein@valoremlaw.com

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
357 E. Chicago Avenue
Chicago, Illinois 60611
(312) 503-4808
s-tenenbaum@law.northwestern.edu

Janine L. Hoft
Joey L. Mogul
Jan Susler
People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60642
(773) 235-0070
joeymogul@aol.com
jsusler@gmail.com
janinehoft@aol.com

***Counsel for Plaintiff Nicole Harris***

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

NICOLE HARRIS,                                    )
                                                  )
                  Plaintiff,                      )
                                                  )
        v.                                        )    Case No. 14-cv-4391
                                                  )
CITY OF CHICAGO, Chicago Police Officers          )    Honorable Judge John W. Darrah
ROBERT BARTIK, #3078, DEMOSTHENES                 )
BALODIMAS, #21204, ROBERT CARDARO,                )
#20690, JOHN J. DAY, #20926, JAMES M.             )
KELLY, #21121, MICHAEL LANDANDO,                  )
#20417, ANTHONY NORADIN, #21252, and              )
RANDALL WO, #20232; Assistant Cook County         )
State's Attorneys ANDREA GROGAN and               )
LAWRENCE O'REILLY, and the                        )
COUNTY OF COOK,                                   )
                                                  )
                  Defendants.                     )

## VERIFICATION

    I, **Nicole Harris**, verify that the foregoing answers to **Defendant City of Chicago's Second Set of Interrogatories** are true and correct to the best of my memory to date, knowledge and information and belief, based both on my personal knowledge and on information supplied by others that I am informed and believe to be true and correct.

Dated: 5-1-15

**NICOLE HARRIS**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-4391 |
| | ) | |
| CITY OF CHICAGO, Chicago Police Officers | ) | Judge John W. Darrah |
| ROBERT BARTIK, DEMOSTHENES | ) | |
| BALODIMAS, ROBERT CARDARO, | ) | Magistrate Judge Susan E. Cox |
| JOHN J. DAY, JAMES M. KELLY, MICHAEL | ) | |
| LANDANDO, ANTHONY NORADIN, and | ) | |
| RANDALL WO, Assistant Cook County State's | ) | |
| Attorneys ANDREA GROGAN and LAWRENCE | ) | |
| O'REILLY, and the COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

TO:     See attached Service List.

I, Stuart Chanen, an attorney, hereby certify that on May 1, 2015, a true and correct copy

of **PLAINTIFF NICOLE HARRIS' VERIFICATION TO DEFENDANT CITY OF**

**CHICAGO'S SECOND SET OF INTERROGATORIES** was served by electronic and by

U.S. mail to the following attorneys of record on the attached service list.


  /s/Stuart J. Chanen
Stuart J. Chanen
***One of Nicole Harris' Attorneys***

## <u>SERVICE LIST</u>

<u>Counsel for City of Chicago:</u>
Kyle L. Flynn (flynnk@gtlaw.com)
Tiffany S. Fordyce (fordycet@gtlaw.com)
John F. Gibbons (gibbonsj@gtlaw.com)
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
(312) 476-5126
(312) 899-0329 (fax)

<u>Counsel for County of Cook:</u>
Lisa Meador (lisa.meador@cookcountyil.gov)
Thomas Nowinski (thomas.nowinski@cookcountyil.gov)
Cook County State's Attorney Office
50 West Washington Street
Chicago, IL 60602
(312) 603-3369
(312) 603-5735 (fax)

<u>Counsel for Officers:</u>
Andrew M. Hale (ahale@ahalelaw.com)
Avi T. Kamionski (akamionski@ahalelaw.com)
Shneur Nathan (snathan@ahalelaw.com)
Jennifer Bitoy (jbitoy@ahalelaw.com)
Andrew M. Hale & Associates, LLC
53 W. Jackson Blvd.
Suite 1757
Chicago, IL 60604
(312) 341-9646
(312) 341-9656 (fax)