**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICOLE HARRIS, Plaintiff,

vs.

CITY OF CHICAGO, et al., Defendants.

No. 14 C 4391
Chicago, Illinois
March 2, 2016
9:39 A.M.

TRANSCRIPT OF PROCEEDINGS - Motion
BEFORE THE HONORABLE SUSAN E. COX, Magistrate Judge

APPEARANCES:

For the Plaintiff: VALOREM LAW GROUP
35 East Wacker Drive, Suite 3000
Chicago, Illinois 60601
BY: MS. MARGOT KLEIN

For Defendant City: GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
BY: MS. TIFFANY S. FORDYCE

For the Individual Defendants: HALE LAW LLC
53 West Jackson Boulevard, Suite 334
Chicago, Illinois 60604
BY: MR. AVI T. KAMIONSKI
(Appearing telephonically)

PAMELA S. WARREN, CSR, RPR
Official Court Reporter
219 South Dearborn Street
Room 2342
Chicago, Illinois 60604
(312) 408-5100

**NOTE: Please notify of correct speaker identification. FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS UNINTELLIGIBLE.**

(Proceedings held in open court:)

THE CLERK: 14 C 4391, Harris versus City of Chicago.

And we do have Mr. --

THE COURT: Yes.

THE CLERK: -- Kamionski on the phone.

THE COURT: Yes. Yes, I know.

Go ahead and enter your appearances.

MS. FORDYCE: Good morning, your Honor. Tiffany Fordyce on behalf of the City of Chicago.

MS. KLEIN: Good morning. Margot Klein on behalf of the plaintiff Nicole Harris.

THE COURT: Good morning.

MR. KAMIONSKI: Avi Kamionski on behalf of the individual defendants.

THE COURT: Okay. Good morning to you, sir.

Well, why don't -- why don't we begin with you, Ms. Klein. Why don't you summarize for me what's happened up to this point.

MS. KLEIN: Sure. So the last time we were before you, about two weeks ago, you had -- we were seeking responses to two document requests, and those requests were issued to the City of Chicago.

THE COURT: Uh-huh.

MS. KLEIN: One of those requests, with regard to the pre-test confessions, was also issued to defendant Bartik. At

the time we were before the Court, we had already had a meet and confer, the result of which was that counsel for the individual defendants would -- Mr. Kamionski, who had also represented Mr. Bartik in the previous case --

THE COURT: Uh-huh.

MS. KLEIN: -- he had agreed to produce the documents regarding the 111 pre-test confessions. He then changed his mind, and that's his right, he changed his mind, so we filed our motion.

Short -- upon the filing of the motion, he came up with another compromise, and that was, we'll give you the list of the names of the 111, and if any of those have produced CRs or lawsuits, we'll give you that information as well.

And we were here in court that day. We did not think that was sufficient. He argued his position. I don't know that -- the city didn't challenge that, and that was the position your Honor accepted. So you gave them two days to produce.

THE COURT: Uh-huh.

MS. KLEIN: What we got the next day was a list of 145 names, no explanation, no contact information, no nothing, just names. And some of those names are names like Juan Rivera. Right? So there is not much that we can do with those names.

Additionally, and more troublesome, is that we received no CRs and no lawsuits because counsel for the

individual defendants disclosed on that day, after some immediate emails back and forth, that there are none to disclose.

So we said, okay, this is a problem. Judge Cox isn't going to like that. He went back to his -- he said, he'll check. That's fine. He went and checked and said, you know what, I'll produce Donnie McGee. Maybe he should be on the list.

You will recall that Donnie McGee is the plaintiff in the lawsuit that -- from which this testimony --

THE COURT: Uh-huh.

MS. KLEIN: -- regarding 111 pre-test confessions is taken.

So that's what gets us to today. When we were before you last time, you had advised that if there was an issue, we could come back. And, unfortunately, there is an issue. Putting aside the fact that we think the compromise was -- (unintelligible) really how it was and really yielded nothing, the fact is this motion is directed against the city and the individual officers. It was only Mr. Kamionski's compromise that we took way back in January as a means of kind of moving this thing along.

Now where we are is both 30(b)(6) of the defendants -- excuse me -- of the city's polygraph people have been taken. We have got a response to summary judgment due in

mid March.

And, by the way, one of the arguments argued there is that we don't have enough information with regard to complaints against Mr. Bartik in the polygraph unit because the 16 CRs that we have obtained in the five lawsuits -- I think it is five that we have obtained -- aren't enough. So I don't quite get how we can develop our claim when we're prevented from discovering even the most basic information about it.

Our position has been from the getgo that our Monell claim is premised on an abuse of the polygraph process. It doesn't matter whether the -- Mr. Bartik was successful in obtaining a confession pre test or post test. That's not our argument. I don't understand the logic of the distinction like that. It was only a means of getting sort of a temporary compromise.

But we don't have time for that anymore. We have got the summary response due in two weeks, and we have got a fact discovery cutoff.

MS. FORDYCE: If I could speak to one issue, and I think Mr. Kamionski is going to take the lead. Just with respect to the CRs, the city has produced every CR that was filed against Bartik and every CR that has ever been filed -- well, I don't know about ever -- but within the time period of the request against any member of the polygraph unit.

So just to be clear, to the extent was there a

complaint out there, that has been produced. There was nothing left to give them with respect to CRs and Bartik and the polygraph unit.

MS. KLEIN: And that's precisely my point, that's the case prior to the hearing on the motion last time.

THE COURT: Sir?

MR. KAMIONSKI: Sure. I think, you know, we -- we had said to do the compromise prior to coming to court. We came to court, and I am -- we have already litigated this issue with the Court. And your Honor thought it was right to give them -- to see if anybody in these pre-test complaints -- the list of names was only ordered by the Court so that they could confirm it against their list of exonerees to see if he was on that list of exonerees that the Court was going through last time. And so the list was provided so that he could verify whether they were on the list or they were not on the list.

Now Mrs. Harris is already deposed. And, again, we went through these arguments already with the Court, and the Court already found that the issue of pre test -- Ms. Harris is not making any allegations of anything wrong in the pre test.

THE COURT: But I was -- but I will tell you right now, I was wrong. I read your summary judgment response, and I read over the plaintiff's complaint, and the Monell is claim is broader than the Court believed it to be. So the compromise, you know, was an attempt to -- you know, to arbitrate a

discovery dispute which, you know, I have had many. And I gave you the benefit of the doubt.

But the fact of the matter is you're making an argument on the Monell claim that directly implicates this evidence. You can't do that. You can't make an argument to a district judge saying, well, you know, they can't establish this evidence, and then say -- then turn around in my court and say, but they can't have the evidence because it is not relevant.

The Monell claim doesn't draw the distinction. And I made a mistake -- and I will say quite frankly. You don't hear judges saying this every day, so everybody listen up, I made an error. I should have ordered you to produce all of them. I shouldn't have drawn the distinction between pre test and post test because the plaintiff hasn't drawn that distinction in the Monell claim. And you're defending the Monell claim based on the fact that there is not enough evidence being developed in order to establish a pattern and policy.

So I don't know how you can take these inconsistent positions. To argue in this court that this evidence isn't relevant and then to argue before Judge Darrah that they -- that you should get judgment on this because there isn't enough evidence seems to me to be completely inconsistent.

MR. KAMIONSKI: My --

THE COURT: -- so --

MR. KAMIONSKI: My point is that there is no -- none of the individuals on this list make any complaints. So the Monell claim -- they're -- they are not going to be able to develop any evidence that any of these people were improperly treated at all by Bartik --

THE COURT: They are asking.

MR. KAMIONSKI: -- because nobody complained.

THE COURT: Well, the fact that nobody --

MR. KAMIONSKI: And --

THE COURT: Wait a minute. Then your argument rests on the premise because nobody complained there can't be anything wrong, is that what you are saying?

MR. KAMIONSKI: How are they going to prove there is anything wrong?

THE COURT: Well --

MR. KAMIONSKI: The person is not saying there is anything wrong.

THE COURT: -- they will -- they can start -- you can start by handing over the evidence with respect to the polygraph unit with -- regarding Mr. Bartik, both pre test and post -- post test. The distinction that I drew last time, in an effort to broker a compromise, was -- was in error, frankly. I should have ordered you to produce it all, and I order it now.

I have read your brief.

MS. KLEIN: Thank you, Judge.

THE COURT: The motion is granted.

MS. KLEIN: Does that go -- I'm sorry for --

THE COURT: That's okay.

MS. KLEIN: That go as to both? We had two document requests that were pending. And that goes as to both?

THE COURT: Yes.

MS. KLEIN: And what sort of turn around time can we have because --

THE COURT: They have this evidence.

MS. KLEIN: Well, I know that counsel for the individual -- for Mr. Bartik has some of the evidence. The evidence he spoke of in -- originally spoke of was as to 111. The list that --

THE COURT: Yeah, I don't know how --

MS. KLEIN: -- we got was 145.

THE COURT: -- it got to be 145. There is no explanation that I have heard why the number jumped from 111 to 145.

MR. KAMIONSKI: In the -- in the McGee litigation, this packet of documents that was turned over, concerns pre-test polygraph documents. There is no scoring on any of these documents. It is just someone who came to the polygraph pre -- pre -- and did not get polygraphed either because they

confessed or for some other reason.

So that is a -- that was -- that packet of documents was called the 111 confessions.

THE COURT: I see.

MR. KAMIONSKI: Because that's what they were referred to.

And so I just turned over, in an abundance of caution, the names of everybody in that packet of documents that I had.

THE COURT: Well, now you're going to turn over the packet of documents that you have that you haven't shared with the plaintiff because it is relevant on the Monell claim.

MS. FORDYCE: And, Judge, just to be clear --

THE COURT: And since you have that and you have had it for some time, I don't see why this production should take very long, right?

MR. KAMIONSKI: That's correct.

THE COURT: Yeah. All you have to do is copy it. So you can produce it by the close of business tomorrow.

MS. KLEIN: Thank you.

MR. KAMIONSKI: Okay.

THE COURT: Okay.

MS. KLEIN: I think there is one open issue that Mr. Kamionski has alluded to, and that deals with the raw data with regard to the test results. I don't know what was gathered in McGee. Our request did ask for that information.

THE COURT: I don't see any reason why that shouldn't be turned over. It is part of the evidence with respect to these individuals.

MS. KLEIN: Right.

MR. KAMIONSKI: And just -- there is no raw data because the people -- there is a document that I have -- were not given polygraphs. Because everything happened before there was a test, so there was no test. So I have no polygraph data to give.

THE COURT: With respect to those individuals, correct?

MR. KAMIONSKI: Correct. So when their motion to --

THE COURT: Why don't we make it really clear. You'll produce everything that you have with respect to this 145 people.

MR. KAMIONSKI: Sure.

THE COURT: Okay.

MS. KLEIN: And the motion is also pending. The requests were directed to the city as well. So to the --

THE COURT: Well, to the extent the city possesses the documents.

MS. KLEIN: Right.

THE COURT: I mean, I just don't know.

MS. FORDYCE: I need to look at the request.

And can I address one issue on the Monell claim too?

Sorry.

THE COURT: What do you need to say?

MS. FORDYCE: Well, just as respect to the premise of the Monell claim, I mean, the plaintiff has the burden of proving that the city is on notice for systemic widespread pattern and practice of a constitutional violation. From the city's perspective, to the extent the polygraph examination took place, and let's just say for the sake of the argument it was done improperly, if there was no complaint filed, it can't bubble up to the city such that the city is on notice. So I --

THE COURT: Well, I guess I don't really agree with that fundamentally. I don't think that the complaint is the only way a city can be on notice of systemic abuse in a unit. Okay? That -- I think that you're -- that's a very -- that's a very narrow way of looking at this issue.

And so to the extent you're making that argument on relevance, your objection is overruled.

MS. FORDYCE: Okay.

THE COURT: The information is going to be produced. How it impacts this claim going forward is a decision for the district judge. And if he decides the case -- that claim should be tried ultimately to a jury, it does not address the relevance question.

MS. FORDYCE: Okay. I just wanted to --

THE COURT: Yeah. It is a fine point, but I guess I

say -- I guess what I am saying is I don't accept that that's the only way the city could have notice.

MS. FORDYCE: Okay. And then with respect to the production of the documents -- I understand your Honor's order. If Mr. Kamionski is in possession of these documents, then I understand the quick turn around time, to the extent he has them.

I need to go back and look at these requests. And if they are asking for something that's -- I mean, this whole meet and confer, this whole discussion has been premised on the McGee documents. If there is something beyond that that's technically responsive to this request, I can't gather that --

THE COURT: Well, I don't know --

MS. FORDYCE: -- by the close of business tomorrow.

THE COURT: -- what that would be.

MS. KLEIN: Well, I would say for (unintelligible) and not (unintelligible) the case --

THE COURT: Yeah.

MS. KLEIN: -- because we do have the two requests. And I may -- opposing counsel defense's, she -- I don't think she was on the first meet and confer --

THE COURT: Right.

MS. KLEIN: -- where we talked about all of the documents supporting confessions --

THE COURT: Route.

MS. KLEIN: -- Mr. Bartik has purported to obtain.

And then Mr. Kamionski came up with this proposal as a first step.

That was in January. These discovery requests were just served in December. I understand that it takes time for the city to produce documents. But we're facing a March 15th summary judgment opposition deadline.

THE COURT: Right.

MS. KLEIN: So --

MS. FORDYCE: I'm not saying that I am not going to expedite and do my best, but I'm just -- and I don't even know, to be perfectly honest, without looking at the documents and looking at our -- you know, thousands of pages of production, that there is anything left for us to give them after these McGee documents are turned over.

All I'm saying is if there is something, I can't honestly represent to the Court that I am going to be able to pull that by the end of the day tomorrow.

THE COURT: Well, you better do your best. I mean, as Ms. Klein points out, these document requests have been -- have been outstanding for some time. And you have obviously reviewed them and compared them to what the city -- to the documents that are in the city's possession. So I'm not really sure I understand what you are saying.

MS. FORDYCE: I -- I am saying that to the

extent -- and I don't know that this is true because I don't have the document requests in front of me. But to the extent this order is going to encompass polygraph documents that are not having to do with these pre-test confessions that were already pulled and -- I mean, I have been on some of these meet and confers, and all --

THE COURT: Well, you know the -- you know who the -- you know what the universe is though, right? I mean, where would these documents be?

MS. FORDYCE: Well, I -- his -- within the polygraph unit and potentially within warehouses.

THE COURT: So --

MS. FORDYCE: So I am not saying we can't find them --

THE COURT: Well, then, you know what, then don't -- you know, don't tell me you can't do something until you know you can't do it.

MS. FORDYCE: All right.

THE COURT: The Court -- you know, what you mean -- what we're talking about maybe I can, maybe I can't, this is a waste of my time. Do your best.

MS. FORDYCE: I will do my best.

THE COURT: Okay. If there is a problem, talk to Ms. Klein. She's not an unreasonable person. If you tell her, look, I can produce X, Y, and Z by this date, but I'll have to go back to a warehouse, whatever, and I'll do that, and I can

get that by next week, I think she's going to be reasonable.

MS. FORDYCE: Okay.

THE COURT: But -- so I'm not going to deal with the what ifs.

MS. FORDYCE: Okay.

THE COURT: The order will say what it says. You'll negotiate with Ms. Klein if you need an extension. If Ms. Klein is, in your view, unreasonable in her response, then you can bring it back to me. Though I beg you to try to work this little bit out. Okay?

MS. FORDYCE: I certainly will. I just didn't want your Honor next time I'm in here to say that I hid something. And I'm trying to be as forthright as I can.

THE COURT: Well, when have I said that in previous hearings?

MS. FORDYCE: There has been many accusations about us not being forthright with this Court through the course of discovery disputes, and I just want to put all my cards on the table.

THE COURT: Well, I'll put all my cards on the table. I think that's a gross distortion of the record.

MS. FORDYCE: Okay.

THE COURT: Thank you.

MS. KLEIN: Thank you.

(Which concluded the proceedings.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital-recording system.

***/s/Pamela S. Warren*** March 16, 2016
Official Court Reporter Date
United States District Court
Northern District of Illinois
Eastern Division