UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| NICOLE HARRIS, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 14-cv-4391 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| CITY OF CHICAGO, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicole Harris filed an eight-count Complaint, alleging various claims stemming from her arrest and subsequent conviction for the murder of her son, which was overturned by the Seventh Circuit Court of Appeals. Defendant City of Chicago has filed a Motion to Bifurcate Plaintiff's *Monell* Claim and to Stay Discovery and Trial on Those Claims [162]. For the reasons discussed below, Defendant's Motion [162] is granted.

## BACKGROUND

On May 14, 2005, Plaintiff's son Jauqari died after accidentally wrapping an elastic band around his neck. Plaintiff alleges that, after twenty-seven hours of intermittent questioning, she was coerced into giving a false confession to the murder of her son. Plaintiff was charged with murder and moved to suppress her confession, but the motion was denied. Plaintiff was convicted and sentenced to thirty years' imprisonment. In October 2012, the Seventh Circuit overturned Plaintiff's conviction. On June 17, 2013, the Cook County State's Attorney dismissed all charges against Plaintiff. Plaintiff was granted a Certificate of Innocence, pursuant to 735 Ill. Comp. Stat. 5/2-702.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 42, a court may order a separate trial of one or more issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). A district court has "considerable discretion to order the bifurcation of a trial." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

## ANALYSIS

Defendant City of Chicago argues that Plaintiff's *Monell* claim should be separated from the remaining claims and stayed. The City offered to stipulate to an entry of judgment against the City for compensatory damages and attorney's fees if the finder of fact finds that any of the individual defendant police officers violated Plaintiff's constitutional rights as alleged in the Complaint. The judgment would be entered against the City regardless of whether any Defendant Police Officer is found not personally liable because they are entitled to qualified immunity. Plaintiff brings claims for deprivation of the right to fair trial, wrongful conviction, and coercive interrogation pursuant to § 1983, as well as various state-law claims. Pursuant to *Monell*, Plaintiff alleges that the City of Chicago had deficient policies and practices that caused the constitutional violations. Plaintiff alleges the following *de facto* policies, practices, and customs:

> a) conducting physically, psychologically or otherwise illegal or improperly coercive interrogations of witnesses, suspects and arrestees in order to obtain confessions and wrongful convictions;
>
> b) manufacturing, fabricating, or using improper suggestive tactics to obtain false statements from suspects or witnesses;
>
> c) filing false reports, and giving false statements and testimony about interrogations and confessions and fabricating or constructing parts of or whole confessions; suppressing exculpatory evidence concerning interrogations and

2

confessions; pursuing wrongful prosecutions and obtaining false imprisonments on the basis of confessions obtained during these interrogations; denying suspects their right to full and fair access to the courts; denying individuals the right to counsel; and otherwise covering up the true nature of these interrogations and confessions;

d) failing to videotape the interrogation or questioning of suspects, arrestees, and witnesses, from beginning to end, particularly in the circumstances set forth above;

e) failing to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who are repeatedly accused of abuse and/or psychological coercion of suspects and witnesses, wrongful imprisonments, malicious prosecutions and wrongful convictions; making false reports and statements attributed to suspects and witnesses, and/or of physically, psychologically or otherwise illegally, improperly or coercively questioning or interrogating witnesses, suspects and arrestees. Among those the City failed to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control was Defendant Bartik who was repeatedly accused of psychologically coercing suspects and/or fabricating inculpatory statements;

f) perpetuating, encouraging and condoning the police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs a-e above, whereby police officers refused to report or otherwise covered-up instances of police misconduct, and/or fabricated, suppressed and destroyed evidence of which they were aware of, despite their obligation under the law and police regulations to report. This code of silence caused police officers either to remain silent or to give false and misleading information during official investigations and Grand Jury proceedings in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges. The code of silence also caused police officers to perjure themselves in criminal cases where they and their fellow officers coercively interrogated a suspect, arrestee or witness, or falsely arrested, imprisoned and/or prosecuted a criminal defendant.

(Compl. ¶ 135.)

Bifurcation may be appropriate if "the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (citation omitted). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Id.*

"There is no question that a district court has the discretion to sever a *Monell* claim against a municipality from claims against individual police officers and stay litigation of the *Monell* claim until the rest of the case is resolved." *Medina v. City of Chicago,* 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000).

Defendant argues that bifurcation of the *Monell* claim is in the best interests of efficiency and judicial economy. Plaintiff responds that there will be a second trial on the *Monell* claim because municipal liability does not depend on a finding of officer liability. "[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)) (emphasis in original). In order to determine whether an inconsistent verdict could arise, courts must look at "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Thomas*, 604 F.3d at 305.

The nature of the alleged constitutional violations, fabricating a confession and coercing Plaintiff into making that confession, depends on the individual officers' actions. *See Taylor v. Kachiroubas*, 2013 WL 6050492, at *4 (N.D.Ill. Nov. 15, 2013) ("Here, however, the actions of the individual officers in collecting and fabricating evidence against [plaintiffs] are the source of the alleged harm to the plaintiffs, and any 'policy' exerted harm through those actions, not independently of them."). Similarly, the policy of filing false reports and actively covering up illegal interrogations and confessions depends on the actions of individual police officers. The alleged harm to Plaintiff was not caused by any *de facto* policies independent of any officer's actions; thus, a constitutional violation by an individual officer must be found before the City

may be held liable under the *Monell* claims. *See Claxton v. City of Chicago, Illinois*, 2015 WL 5304630, at *1 (N.D. Ill. Sept. 9, 2015) ("The alleged harm to Plaintiffs was not caused independently by these alleged City policies but rather through the Officer Defendants' actions, and thus the Officer Defendants must first be found liable before the City may be held liable on Plaintiffs' *Monell* claims.").

As to the defenses set forth, *i.e.* qualified immunity, the Seventh Circuit clarified the holding in *Thomas*:

> We specifically noted that the situation would differ if the officers were acquitted based on a defense of good faith, because there is still an argument that the city's policies caused the harm, though the officer was acting in good faith. Here, there was no constitutional violation, therefore no municipal liability.

*Matthews v. City of E. St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). In this case the City has offered to waive a qualified immunity defense for the purposes of municipal liability. As to the failure-to-train policies, the Seventh Circuit has stated specifically that "there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007); *see also Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) (holding a municipality cannot be liable under *Monell* for a failure to train when there is no underlying constitutional violation by an employee). For any of the alleged *de facto* policies, individual violations of Plaintiff's constitutional rights would be required for municipal liability. Therefore, disposition of the individual claims will practically end the litigation, and separation would promote judicial economy. *See Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) (". . . stipulation and stay of the *Monell* suit in this case achieved the goal of avoiding unnecessary complexity and effort.").

Defendant City of Chicago also argues that bifurcating the *Monell* claim would significantly reduce the possibility of prejudice to the individual Defendants. "When weighing the competing equities under Rule 42(b), prejudice is the Court's most important consideration." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 621 (N.D. Ill. 2000). There is a clear danger of prejudice to the individual defendants from the finder of fact hearing evidence on several instances of alleged misconduct that those defendants were not involved in. Plaintiff counters that any risk of such prejudice can be mitigated by limiting instructions. *Giles v. Ludwig*, 2013 WL 6512683, at *2 (N.D. Ill. Dec. 6, 2013) (". . . potential prejudice that might arise from a unitary trial can be mitigated through the use of limiting instructions, motions *in limine*, and the Rules of Evidence."). Plaintiff also argues that she will be prejudiced by bifurcation by being forced to wait to pursue her *Monell* claims but does not say how she would be prejudiced. Even with the mitigating factor of limiting instructions and other methods, "the individual defendants could face unusual difficulty in distinguishing their own acts that allegedly violated Plaintiff's constitutional rights from evidence that would be introduced to support claims against the [City]." *Demouchette v. Dart*, 2011 WL 679914, at *10 (N.D. Ill. Feb. 16, 2011). Prejudice also favors bifurcating the *Monell* claims.

In a previous opinion, this Court stated some of the advantages of bifurcating *Monell* claims, which are: the disposition of individual claims ending litigation; allowing an earlier disposition of the case through bypassing of discovery; and removing potentially unfair prejudice against the officers at trial. *Lopez v. City of Chicago*, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002). Here, as discussed above, the disposition of the individual claims will essentially end the litigation. Additionally, the offer of judgment would remove the risk to Plaintiff of

having to prove the *Monell* claim. The parties dispute the effect on discovery, but at least some discovery is outstanding.

This Court in *Lopez* also stated some of the disadvantages to bifurcation: the possibility of a second trial if individual defendants are entitled to qualified immunity; the possible dispute of payment from a municipal defendant arguing that the individual defendant was not acting within the scope of its employment; and a finding of liability against individual public employees, as compared to a finding of liability against a municipality, may decrease the likelihood of the municipality's acting to prevent future violations. *Lopez*, 2002 WL 335346, at *2-*3. However, given the City's offer of entry of judgment as set out above, none of the disadvantages are present here. There is no possibility of a second trial. If any Defendant has violated Plaintiff's rights, judgment will enter against the City. The offer of judgment by the City effectively waives the argument that any individual defendant was not acting within the scope of their employment. As to the final disadvantage, the limited consent to entry of judgment would enter a judgment against the City, albeit without admitting Plaintiff's *Monell* allegations.

Bifurcation would prevent prejudice against the individual Defendants, promote judicial economy, and would not prejudice Plaintiff.

## CONCLUSION

Defendant City of Chicago's Motion to Bifurcate Plaintiff's *Monell* Claim and to Stay Discovery and Trial on Those Claims [162] is granted.

Date:     June 14, 2016

JOHN W. DARRAH
United States District Court Judge