**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NICOLE HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14-cv-4391 |
| v. ) | |
| ) | Judge John W. Darrah |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF MOTION *IN LIMINE* NO. 23
MOTION TO BAR DEFENDANT'S
PROPOSED REBUTTAL EXPERT KATHLEEN FALLER**

Plaintiff Nicole Harris, by her undersigned attorneys, asks this Court to enter an order barring Defendants' alleged expert rebuttal witness Kathleen Faller from testifying at trial to rebut the opinions of Plaintiff's psychiatrist expert Dr. Robert Galatzer-Levy. She is not qualified to render the opinions she offers as they are outside the realm of the expertise she claims to have, and therefore are not based on reliable science, knowledge or expertise; her opinions do not rebut any opinion of Plaintiff's expert; and her testimony improperly encroaches on decisions that the jury is more than capable and best suited to make. Accordingly, Faller's proposed opinions and testimony are inadmissible under Fed. R. Evid. 702.

**BACKGROUND**

Within hours of learning of the death of her four-year-old son Jaquari on May 15, 2005, Police Defendants interrogated Ms. Harris with increasing hostility over approximately 28 hours, refused her requests for counsel, forced her to take a lie detector test which they then lied about, fabricated and hid evidence, manipulated witnesses, and ultimately threatened and coerced her

1

into giving a false and fabricated confession that she had killed her own child. That coerced and fabricated confession led to Ms. Harris's wrongful conviction and nearly eight years of unjust imprisonment. Ms. Harris brings this action against Police Defendants and the City of Chicago as a result.

After Jaquari's death, Ms. Harris's then-five-year-old son Diante told the police, DCFS, and a forensic examiner from the Children's Advocacy Center (CAC) that he had witnessed Jaquari wrap a loose elastic band from a fitted bedsheet around his neck – but the criminal court, applying an incorrect burden unchallenged by her criminal defense counsel, found Diante incompetent to testify. *See Harris v. Thompson*, 698 F.3d 609, 620 (7th Cir. 2012). In connection with her post-conviction challenge, Diante was interviewed by child psychiatrist Dr. Robert Galatzer-Levy. Dr. Galatzer-Levy offered opinions in 2006 as to Diante's mental status and competency to recount his observations based on what the Seventh Circuit called his "thorough" competency assessment. *Id.* at 619.[1]

In support of her claims here, Ms. Harris offers the opinions of Dr. Galatzer-Levy as to Diante's ability to distinguish truth from falsehood, mental status and competency to recount his observations at the times in which he reported that his brother Jaquari had accidentally killed himself. (Exh. A. Galatzer-Levy Rpt.) Dr. Galatzer-Levy opined that Diante was able to distinguish truth from a lie and clearly articulate what he observed surrounding his brother's death, and that his sequencing of events was typical for a child of his age. (*Id.*) *Harris*, 698 F.3d 609 n. 4. He further opines that his findings about Diante's ability to tell the truth and to express himself regarding Jaquari's death appear consistent with the findings of the forensic examination of Diante that was conducted by CAC the day after Jaquari died, and was observed and reported on by

---

[1] The Seventh Circuit discussed Galatzer-Levy's interview of Diante at length in its 2012 decision. *See Harris*, 698 F.3d 609.

Defendant Officer Wo. (*Id.* ¶¶ 27, 28.)[2]

A. **Kathleen Faller's Report and Proffered Testimony.**

The Police Defendants seek to call social worker and professor Kathleen Faller as a rebuttal witness to Plaintiff's expert witness Dr. Robert Galatzer-Levy. Faller proposes three opinions related to Dr. Galatzer-Levy:

(1) that his "forensic interviews" of Diante did not meet the standards in existence at the time of the interviews; (2) that it was acceptable for the CAC forensic interviewer who interviewed Diante the day following Plaintiff's arrest not to record by video or audio her interview and to rely on Defendant Officer Wo's notes as documentation; and (3) that Dr. Galatzer-Levy erroneously concluded that Diante had witnessed his brother Jaquari's death and that Jaquari caused his own death. (Exh. B, Faller Rpt.)[3]

None of these opinions, however, is in fact rebuttal material. Rather, Faller's opinions simply seek to buttress Police Defendants' arguments, and to do so by offering opinions on matters beyond her own claimed expertise and within the province of the jury. Plaintiff thus seeks to bar Faller from testifying.

B. **The Legal Standard for the Admissibility of Expert Opinions Under FED. R. EVID. 702, 403 and *Daubert*.**

Pursuant to the Fed R. Evid. 702 and the principles articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a District Court serves as the "gatekeeper" to assess whether there is satisfactory evidence that an expert's testimony is sufficiently reliable. *Dhillon v. Crown Control Corp.*, 269 F.3d 865, 869 (7th Cir. 2001).

Federal Rule of Evidence 702 states:

---

[2] Galatzer-Levy notes in his report that his forensic psychiatric interview of Diante was recorded, consistent with then current best practices in the field. (*Id.* ¶ 6.)
[3] Plaintiff did not depose Faller.

3

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

The rule adopts the analysis of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and is "designed to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005).

When determining whether a witness is qualified as an expert, the Court is to "compar[e] the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (quoting *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)).

When determining whether proffered expert testimony is sufficiently reliable, a court must assess the reliability of the science or expertise on which the testimony is based. In order to do so, a court may consider "(1) whether the proffered testimony can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Dhillon,* 269 F.3d at 869 (*citing Daubert*, 509 U.S. at 593-94).

In order for expert testimony to be deemed sufficiently reliable under Fed. R. Evid. 702 and *Daubert*, there also must be a showing that the science or expertise on which the opinion is based is applicable to facts of the case. *Nimely v. City of New York*, 414 F.3d 381, 397-98 (2d Cir. 2005)

(reliability requires a showing of a sufficiently rigorous analytical connection between the methodology and conclusions drawn by the expert). Expert testimony is inadmissible where underlying data, methodology or studies are inadequate to support the conclusions reached. *Id.* at 396-97. "A supremely qualified expert cannot waltz into a courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "A court may conclude that there is simply too great an analytical gap between the data and opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Fed. R. Evid. 702 also requires that the expert's proposed testimony will "assist" the trier of fact. *Lewis*, 561 F.3d 698, 705 (7th Cir. 2009). An expert's opinion does not provide assistance where the testimony encroaches on the competence of the jury. "[A]n expert . . . must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *Dhillon*, 269 F.3d at 869 (*quoting Ancho v. Pentek Corp.* 157 F.3d 512, 519 (7th Cir. 1998)). A trial court has broad discretion to exclude expert testimony that is within the common sense or everyday knowledge of jurors. *Ancho*, 157 F.3d at 518

The Police Defendants, as the proponents of Faller's testimony, have the burden of establishing that her opinions are admissible under the standards delineated in Fed. R. Evid. 104(a), 702 and the *Daubert. See Lewis*, 561 F. 3d at 705. Defendants must provide sufficient evidence to establish the opinions are admissible by a preponderance of evidence. *Id.*

**C.    Faller lacks the Qualifications to Make Rebuttal Opinions Concerning Diante's Competency to Testify.**

Purporting to rebut Dr. Galatzer-Levy's psychiatric evaluation and opinion that Diante was

5

competent to testify at Ms. Harris's 2005 criminal trial,[4] Faller opines that his interviews with Diante did not comport with "forensic interview standards." (Faller Rpt. at 7-8.)

Faller is not qualified to opine on whether Dr. Galatzer-Levy conducted an appropriate psychiatric forensic interview. She is a social worker – not a medical doctor or psychiatrist. Her curriculum vitae indicates that she is licensed by the state of Michigan as a "clinical and macro social worker." (Faller Rpt. at 3, 39.) Furthermore, her curriculum vitae reflects that the focus of her academic career in social work is in child sexual abuse – a topic which is wholly unrelated to this litigation.

Dr. Galatzer-Levy, on the other hand, is a licensed physician, certified by the Board on Professional Standards of the American Psychoanalytic Association, and, *inter alia*, a clinical professor of Psychiatry and Behavioral Neuroscience at the University of Chicago. (Galatzer-Levy Rpt. ¶ 2.) Galatzer-Levy is a child, adolescent and adult psychiatrist with extensive experience in providing forensic psychiatric evaluations of children for the courts, as well as with extensive peer-reviewed publications in his field. (Galatzer-Levy Rpt. ¶ 2; Exh. C, Galatzer-Levy dep. at 35:11-36:01.) He has been qualified as an expert witness by numerous courts state and federal courts. (*Id.* ¶ 3.)

Faller, on the other hand, conducts social research on forensic interviews with children who have been or are suspected to have been sexually assaulted. (Faller Rpt. at 1.) To the extent her opinions are not conclusory, but are based on standards within her social work field, they bear no import here because Dr. Galatzer-Levy did not conduct a social work forensic interview of

---

[4] Notably, the Seventh Circuit not only found that the trial court's exclusion of Diante's "critical exculpatory evidence . . . was arbitrary and disproportionate to the truth-seeking and reliability concerns advanced by witness competency restrictions," but also that had certain "simple and obvious steps [been taken] . . . it is reasonably likely that Diante would have been deemed competent." *Harris*, 698 F.3d at 612.

Diante, and there is no hint of any child sexual abuse. Rather, Dr. Galatzer-Levy's interviews with Diante were "conducted using methods that are widely accepted in the field of *psychiatry*" and "in a manner consistent with current (and then current) professional views regarding the forensic *psychiatric* interviewing of children." (Galatzer-Levy Rpt. ¶¶5, 9 (emphasis added); Exh. C at p. 45:05-07 ("I combined the guidelines of the American Academy of Child and Adolescent Psychiatry and the American Academy of Psychiatry and the Law.").) Additionally, his opinions, he clearly states, "are provided with a reasonable degree of *psychiatric* certainty." (Galatzer-Levy Rpt. ¶1 (emphasis added).) Furthermore, Dr. Galatzer-Levy's forensic psychiatric interviews of Diante were designed to evaluate his competency to testify in a court proceeding. (*Id.* ¶¶ 5, 7, 20, 26.) Faller's CV reveals nothing related to competency evaluations in any of her professional work. She clearly lacks the qualifications to rebut Dr. Galatzer-Levy's opinions that Diante was competent to testify as a witness.

An expert who is not qualified in the relevant field does not meet *Daubert* standards and her opinions should be barred. *Gayton*, 593 F.3d at 617; *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). The Court's task is not to determine whether Faller is generally qualified as a social worker, but rather, whether she has the relevant expertise to reliably offer the particular opinions she forwards here. *See Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015). Courts in this District routinely bar the proffered testimony of witnesses on matters beyond their subject matter expertise. *See, e.g., Pantaleo v. Hayes*, No. 08-CV-6419, 2013 WL 5213690 at *3, 2013 U.S. Dist. LEXIS 132530 (N.D. Ill. Sept. 17, 2013) (granting motion to bar testimony of Ph.D. about whether a medical emergency existed or whether use of force was appropriate, *inter alia*, because she was not a medical doctor or a police officer); *Moore v.*

*P&G-Clairol, Inc.*, 781 F. Supp. 2d 694, 704 (N.D. Ill. 2011) (granting motion to bar testimony of Ph.D. chemist, *inter alia*, because he lacked training and background in psychology or other fields related to consumer interpretation of hair dye warning instructions). As the Seventh Circuit recently reminded, the focus "is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question." *Gayton,* 593 F.3d at 617 (7th Cir. 2010) (internal quotations omitted). Faller lacks education or experience sufficient to reliably opine on the specific issue of forensic psychiatric examination or professional standards related to the same. The Court should therefore bar Faller from testifying.

**D.     Faller's Opinions Regarding the Adequacy of Wo's Notes on the CAC Interview are not Rebuttal Opinions.**

As set forth above, Dr. Galatzer-Levy opines that recording his interview of Diante was consistent with then current best practices in the profession. (Galatzer-Levy Rpt. ¶ 6.) In comparison, he notes that CAC did not record its interview, but rather relied on Officer Wo's handwritten notes which he says are "woefully deficient." As purported rebuttal, Faller opines that it was acceptable for the CAC interviewer not to record by video or audio her interview and to rely on Defendant Wo's notes as documentation. This opinion is inadmissible at trial.

First, Faller's "rebuttal" opinion is not really rebuttal at all. An expert rebuttal report is to "contradict or rebut evidence" disclosed in the initial expert report. Fed. R. Civ. P. 26(a)(2)(D)(ii). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). Rebuttal opinions that merely support an argument but that do not contradict, impeach or defuse the impact of an adverse party's evidence are impermissible. *See, e.g., Lott v. ITW Equip. Grp., LLC*, No. 10-CV-1686, 2013 WL 372881 at *21 (N.D. Ill. July 15, 2013).

Second, Faller's premise is mistaken. She incorrectly states the Dr. Galatzer-Levy's "report states that then (2005) and now accepted child forensic interviewing practices requires such interviews to be videotaped (Galatzer-Levy Report paragraph 6)." (Faller Rpt. ¶3.) However, the cited paragraph of Dr. Galatzer-Levy's report does not say that at all. Rather, it says:

> Consistent with current professional views about forensic interviews of children and with then current professional views about forensic interviews of children, and best practices in the field, I videotaped entirely both interviews of Diante as had been my practice for three years, where permitted by the parents and by the court. I videotaped my interviews whenever possible because note-taking can be alarming to some children and because only by recording the interview can I accurately and completely capture the exact words and expression of the child interviewee. In the kinds of evaluations I am often called upon to make, children's lives and their family's lives may be in the balance and it is absolutely critical that I not make any recommendations to the court based on misinformation caused by the frailty of my memory, my inadequacies as a note-taker, or other factors that might limit the accuracy of the information provided to the court about what the child may have said or communicated. Studies have shown that when trained interviewers attempt to reconstruct the substance of interviews of children from memory or even from notes taken during the interview, they often make critical mistakes, including transposing the voice of the speaker (attributing a comment made by the interviewer to the interviewee and vice versa) and other mistakes that can alter the substance of what the child said.

(Galatzer-Levy Rpt. ¶ 6.) The plain text of the report makes clear that Dr. Galatzer-Levy is referring to his own practice in conducting psychiatric forensic interviews.

Dr. Galatzer-Levy's report does not say, as Faller incorrectly suggests, that in 2005 video recording was required. Likewise his report does not say that it was "unacceptable" not to video record. Rather, he opines that video recording as he did was a best practice, and he critiques Wo's handwritten notes as being deficient in comparison. (*Id.* ¶¶ 6, 28.) As Galatzer-Levy testified:

> The notes do not note the context of the interview, the information provided to the child, the – they failed to describe the questions asked of the child; they do not attempt to record verbatim what the child has said; their brevity in comparison to what I believe was the duration of the interview would indicate that they omit a

9

> great deal; and some of the notes themselves simply don't make sense. [...] I would want to see what the child was told about the nature of the interview, including who the interviewer was, for what purpose the interview was being used. [...] Or an indication that that information was not provided to the child.

(Exh. C at 59:15-60:02.)

Because Faller's opinions about documenting the CAC interview do not rebut any opinion offered by Dr. Galatzer-Levy, they are not proper rebuttal opinions, and should be barred.

Similarly, Faller's opinion on the adequacy of Wo's notes are improper and inadmissible. Faller's opinion here is not grounded in any professional principal, but rather is simply an attempt to bolster the credibility of a fact witness, former CAC forensic examiner Ale Levy. Faller reaches her conclusion about Wo's notes by citing to Ms. Levy's deposition testimony in which she claimed that it was her normal practice to review an officer's notes of her interviews. (Faller Rpt. at 14). An expert may not opine on the weight of evidence or the credibility or truthfulness of witnesses. *See, e.g., Wells v. City of Chicago*, No., 09 CV 1198, 2012 WL 116040 at *10 (N.D. Ill. Jan. 16, 2012) (barring expert from rendering determination to be made by jury); *Davis v. Duran*, 277 F.R.D. 362, (N.D. Ill. June 10, 2011) (barring witness from usurping jury function of weighing evidence and making credibility determination).

Expert testimony is admissible if it "concerns a matter beyond the understanding of an average person, assists the jury in understanding facts at issue, or puts the facts in context," and is thus helpful to a jury. *United States v. Welch*, 368 F.3d 970, 974 (7th Cir. 2004). On the other hand, expert testimony is not to be admitted if it usurps the jury's function. *United States v. Farrell*, 563 F.3d 364, 377-78 (8th Cir. 2009) (expert improperly commented on witness credibility, strength of prosecution's case, and jury's role); *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006) (proper to bar expert testimony regarding whether certain conduct

constituted excessive force, as jury could make that determination on its own without assistance); *Dahlin v. Evangelical Child & Family Agency*, 2002 WL 31834881 at *3, 2002 U.S. Dist. LEXIS 24558, (N.D. Ill. Dec. 18, 2002) (expert who merely "dr[ew] inferences from the evidence," barred as jury could make those inferences without assistance of expert); *Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 949-50 (N.D. Ill. 2010).

The jury, after hearing from Ale Levy, can determine whether they think Wo's notes of her interview of Diante are accurate and complete. There is no need for expert testimony on this point. Because her opinion invades the province of the jury and would therefore not be helpful to them, this Court should bar Faller from testifying.

**E.    Faller Lacks the Qualifications to Make Rebuttal Opinions Concerning Diante's Observations.**

While purporting to rebut Dr. Galatzer-Levy's opinion that Diante truthfully and competently reported that he witnessed Jaquari kill himself, Faller agrees with Galatzer-Levy that Diante understood the difference between truth and a lie, and agrees with him that there is no evidence that Diante was coached to say what he did, and goes on to conclude based on a review of other evidence in the record that Dr. Galatzer-Levy simply got it wrong.   Faller is not qualified to render this opinion, nor is it appropriate for a proffered expert to declare what evidence in the record represents.

Faller is not a psychiatrist and is not qualified to "second guess" Dr. Galatzer-Levy's opinions which were made to a reasonable degree of psychiatric certainty assessing Diante's abilities to witness and to report in the forensic psychiatric interview what he saw on the day of his brother's accidental death. In arriving at his opinions, Dr. Galatzer-Levy reviewed the literature regarding competency and psychiatric interviewing techniques (Galatzer-Levy Rpt. ¶ 4) and

11

conducted interviews of Diante in conformity with professional views of forensic psychiatric interviewing of children. (*Id.* ¶9.) Whether Diante was capable of expressing himself and did express himself, concerning events surrounding his brother's death cannot be rebutted by Faller, as she lacks the requisite qualifications to opine about psychiatric matters. *See, e.g.*, *Ammons*, 368 F.3d at 816; *Moore*, 781 F. Supp. 2 at 704; *Davis*, 277 F.R.D. at 372 (proffered expert with background in police practice and procedures but who lacked training or experience in ballistics, forensic medicine or pathology, barred from testifying about bullet wound trajectories, based on lack of qualifications).

Additionally, Faller may not be proffered to tell the jury how to evaluate evidence or to opine that Dr. Galatzer-Levy is not credible. Such testimony invades the province of the jury, as the court found in *Sullivan v. Alcatel-Lucent USA, Inc*., No. 12 CV 7528, 2014 WL 3558690, 2014 U.S. Dist. LEXIS 97011 at *19 (N.D. Ill. July 17, 2014):

> It is a fundamental premise of the trial system that "determining the weight and credibility of witness testimony ... 'belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' " *Davis [v. Duran*, 277 F.R.D. 362], 277 F.R.D. at 370 (quoting *United States v. Scheffer*, 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)). "[A]n expert witness may not usurp the jury's function to weigh evidence and make credibility determinations." *United States v. Farrell*, 563 F.3d 364, 377 (8th Cir. 2009).

*Accord Jordan v. City of Chicago*, No. 08 CV 6902, 2012 WL 88158 at * 4, 2012 U.S. Dist. LEXIS 3473 at *12 (N.D. Ill Jan. 11, 2012).

Because Faller is not qualified to render opinions about Dr. Galatzer-Levy's psychiatric opinions or his forensic psychiatric examination, and because she may not impugn the credibility of another expert witness, the Court should find that her opinions are not admissible.

**CONCLUSION**

For these reasons, Plaintiff Nicole Harris respectfully requests that this honorable Court grant her motion in limine, enter an order barring Kathleen Faller from testifying at trial, and order any other relief that is just and equitable given the circumstances

Dated:   January 6, 2017                    Respectfully submitted,

/s/ Jan Susler
One of Nicole Harris' Attorneys

Janine L. Hoft
Joey L. Mogul
Jan Susler
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070

Nicole N. Auerbach
Stuart J. Chanen
Margot Klein
Valorem Law Group
35 E. Wacker Dr., Suite 3000
Chicago, IL 60601
(312) 676-5460

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
357 E. Chicago Ave.
Chicago, IL 60611
(312) 503-4808

Counsel for Plaintiff Nicole Harris