**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14-cv-4391 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION IN LIMINE NO. 22
MOTION *IN LIMINE* TO BAR
DEFENDANT'S PROPOSED REBUTTAL POLYGRAPH EXPERT JOHN PALMATIER**

Plaintiff Nicole Harris, by her undersigned attorneys, asks this Court to enter an order barring the testimony of Defendants' alleged rebuttal polygraph expert witness John Palmatier. His opinions improperly encroach upon decisions the jury is more than capable of making and which they are best suited to make; his opinions usurp the province of the Court; they are outside the realm of the expertise he claims to have, and therefore are not based on reliable science, knowledge or expertise; and one of his opinions does not rebut the underlying opinion of Plaintiff's expert. Accordingly, Palmatier's proposed opinions and testimony are inadmissible under Fed. R. Evid. 702.

**BACKGROUND**

Within hours of learning of the death of her four-year-old son Jaquari on May 15, 2005, Police Defendants interrogated Ms. Harris with increasing hostility over approximately 28 hours, refused her requests for counsel, forced her to take a lie detector test which they then lied about, fabricated and hid evidence, manipulated witnesses, and ultimately threatened and coerced her

1

into giving a false and fabricated confession that she had killed her own child. That coerced and fabricated confession led to Ms. Harris' wrongful conviction and nearly eight years of unjust imprisonment. Ms. Harris brings this action against Police Defendants and the City of Chicago as a result.

In support of her claims, Ms. Harris offered the opinions of psychology professor and licensed polygraph examiner Charles R. Honts, Ph. D., who reviewed physiological data and other materials associated with the polygraph examination that Defendant Bartik administered on Ms. Harris on May 15, 2005. Among other things, Professor Honts opines that a polygraph examination should not have been administered on Ms. Harris that day because of three specific factors: (1) her four-year-old son had died under unknown circumstances less than 24 hours earlier; (2) her five-year-old son had been taken away from her hours earlier by the State; and (3) she had not had adequate sleep under adequate conditions. (Exh. A, Honts Rpt. ¶15.) Professor Honts opines that these circumstances rendered Ms. Harris unsuitable for polygraph testing. (*Id.*) Honts further opines that the questions asked of Ms. Harris during her 2005 polygraph examination were deficient and did not meet the then-standards of practice, and that the visual inspection method used by Defendant Bartik to analyze her answers (a.k.a. "global scoring") was not only deficient and out of compliance with the then-standards of practice, but had been widely discredited in the profession by that time. (*Id.* ¶16.) Had the then-standard-of-the-profession analysis (a.k.a. "Utah Scoring System" of numerical scoring) been applied to Ms. Harris' examination, he opines, an outcome of "truthful" regarding the relevant questions would have resulted, (*id.* ¶18), while Bartik arrived at the erroneous opinion that the exam was "inconclusive."

2

**A.      John Palmatier's Report and Proffered Testimony.**

The Police Defendants seek to discredit Professor Honts' opinions with the proffered opinions of polygraph examiner John Palmatier.  Rather than meeting Honts' opinions on their merits, however, Palmatier improperly lobs character attacks at Honts, opines on matters that belong to the jury and the Court, and offers sweeping opinions that are beyond any of his claimed subject matter expertise.   He should not be permitted to so testify.

Palmatier offers three central conclusions. First, although he agrees with Professor Honts that the "polygraph examination administered to Nicole Harris on May 15, 2005 was conducted under difficult conditions," he opines that the "conditions  . . . certainly did not preclude an attempt to do so." (Exh. B, Palmatier Rpt. at 9.) Second, he opines that Defendant Bartik's opinion that Harris' examination results were "inconclusive" was proper (an opinion which he in any event elsewhere refutes) (*Id.* at 5, 9).  Third, while he acknowledges that he has "long admired Professor Honts (*sic*) contribution to the assessment of credibility," he "believe[s]" that "many of [his] opinions are 'AT BEST' nothing more than hyperbolic conjecture, and should be distrusted if not outright discarded." (*Id*. (emphasis in original)).

To buttress these opinions, Palmatier offers what he calls "observations," but which are actually assumptions and opinions beyond the professional bailiwick of a polygraph examiner, and invasive of the province of the jury and the Court. To this end, Palmatier offers: (1) criticism of Honts' use of the term "actually innocent subjects," (*id.* ¶1(b)); (2) criticism of   Honts' review of Ms. Harris' polygraph examination based on his irrelevant opinion that law enforcement officers often do not have the "luxury of waiting for more optimal circumstances" for a polygraph exam (*id.* ¶3(c)); (3) disagreement with any scoring of the examination that shows Ms.

3

Harris was truthful, and not inconclusive as Bartik had claimed; and (4) three wild speculations about Honts' opinions: first, that Honts had never looked at Ms. Harris' examination results; second, that he is "so inexperienced" that he could not offer a valid assessment; and third, that Honts lied. (*Id.* ¶¶4(a), 5, 8(b) and 8(9)).

None of these opinions is properly forwarded and none may be found admissible. As discussed further below, they are based in raw speculation, are improper opinions on witness credibility, and they unabashedly invade both the province of the Court as gatekeeper and that of the jury as finders of fact.

**B.      The Legal Standard for the Admissibility of Expert Opinions Under Fed. R. Evid. 702, 403 and *Daubert*.**

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), govern the admission of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The District Court acts as a gatekeeper regarding expert testimony, making sure "that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert,* 509 U.S. at 589. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or

4

education with the subject matter of the witness's testimony." *Gayton v. McCoy,* 593 F.3d 610, 617 (7th Cir. 2010) (quoting *Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir. 1990)). In other words, the focus "is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question." *Id.* (Internal quotations omitted).

The Police Defendants, as the proponents of Palmatier's testimony, have the burden of establishing that his opinions are admissible under the standards delineated in Fed. R. Evid. 104(a), 702 and the *Daubert.* *See Lewis v. CITGO Petroleum Corp.*, 561 F. 3d 698, 705 (7th Cir. 2009). Defendants must provide sufficient evidence to establish the opinions are admissible by a preponderance of evidence. *Id.*

C. **Palmatier's Opinion on Examination Circumstances Does Not Rebut Any Opinion Offered by Professor Honts.**

As mentioned above, Palmatier purports to rebut Professor Honts' opinions by concluding that although the circumstances of Ms. Harris' polygraph examination were "difficult," they did not preclude a proper examination. (*Id.* at 9.) This opinion, however, does not actually rebut anything Honts said. Quite to the contrary, Honts determined that the physiological data underlying Ms. Harris' examination (*i.e.*, the raw polygraph charts) was of sufficient quality to be evaluated using a numerical scoring analysis, despite the impropriety of the circumstances surrounding the examination. What's more, it was upon this conclusion that Professor Honts was able to conduct, and did conduct, a substantive numerical scoring analysis of Ms. Harris' examination. (Honts Rpt. ¶¶ 9-11, 17.2].

The purpose of an expert rebuttal report is to "contradict or rebut evidence" disclosed in

the initial expert report. Fed. R. Civ. P. 26(a)(2)(D)(ii). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). *See also Butler v. Sears Roebuck & Co.*, Case No. 06-CV-7023, 2010 WL 2697601 at *1, 2010 U.S. Dist. LEXIS 67377 (N.D. Ill. July 7, 2010) (rebuttal reports should be limited to contradicting or rebutting evidence on the same subject matter identified by another party). Rebuttal opinions that merely support an argument, but that do not contradict, impeach or defuse the impact of an adverse party's evidence are impermissible. *See, e.g., Lott v. ITW Equipment Grp., LLC*, Case No. 10-CV-1686, 2013 WL 372881 at *21 (N.D. Ill. July 15, 2013).

Defendants chose not to retain and disclose their own polygraph examination expert. Rather, they disclosed Palmatier as a rebuttal expert only. Because Palmatier's opinions about the circumstances under which Ms. Harris was examined do not actually contradict any opinions offered by Honts, they should be barred.

**D.      Palmatier May Not Testify as to Professor Honts' Qualifications.**

As mentioned above, Palmatier improperly critiques Plaintiff's polygraph expert Professor Honts' qualifications. Notably, Professor Honts is imminently qualified to offer the opinions disclosed by Plaintiff. (*See* Honts Rpt. at C.V.) His knowledge, skill, experience and training readily equip him to offer his opinions here. *See* Fed. R. Evid. 702. He earned a Ph.D. in Psychology in 1986 and has been employed since 1995 as a full Professor of Psychology. He is a licensed polygraph examiner and has not only practiced extensively as a polygraph examiner, but has also led both basic and continuing education, including to government agencies and in various countries, in the areas of polygraph, law enforcement, and psychology. (*Id.* ¶2.) As set

6

forth in detail in the C.V. attached to his report, he has done research on interrogations and confessions among other things, and has published many peer-reviewed scientific papers, book chapters and training materials on polygraphs. (*Id.* ¶2.2-2.5.) He has also frequently presented papers at scientific and professional meetings. (*Id.* ¶2.3.) In addition, he maintains a private consulting practice, and has frequently testified as an expert witness about police polygraph examination. (*Id.* ¶2.4, and C.V.)

But even more importantly, it is improper for Defendants to offer Palmatier to opine on the qualifications of Professor Honts. The determination of whether an expert is qualified to render opinion testimony is one made by the Court, *not* by a rebuttal witness (or any expert witness for that matter). *See, e.g., Daubert*, 509 U.S. at 589; *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable.").

In *Frerck v. Pearson Educ., Inc.*, No. 11 CV 5319, 2014 WL 477419 at * 3-4, 2014 U.S. Dist. LEXIS 14622 *12-13 (N.D. Ill. Feb. 6, 2014), the Court rejected a proffered witness's attempt to criticize the pedigree of the opposing party's witness on precisely this ground. Finding that the determination of an expert's qualifications is a decision for the Court in accordance with Fed. R. Evid. 702, the Court plainly held: "It is not proper content for an expert report." *Id.* (citing *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012); *see also Underhill v. Coleman Co.*, No. 12-CV-129, 2013 WL 5399941 at *2-3, 2013 U.S. Dist. LEXIS 138576 (S.D. Ill. Sept. 23, 2013) (striking expert's opinions about opposing expert's qualifications).

Palmatier's biased characterization of Honts' expertise and his irrelevant opinions as to whether Honts is qualified to testify have no business in a rebuttal expert report. (*See* Palmatier

7

Rpt. ¶ 8(d).) To the extent Police Defendants offer Palmatier only to critique Honts' expertise, it undermines this Court's gatekeeper role. Palmatier should be barred from testifying on this basis.

### E. Palmatier Should Not be Permitted to Testify as to Honts's Credibility and/or Trustworthiness.

Palmatier similarly should be barred from presenting character attacks and improper opinions on the credibility and/or trustworthiness of Professor Honts. Palmatier explains his differing conclusions from Honts as to Ms. Harris' polygraph examination on three speculative attack grounds: (1) that Honts did not perform a full review; (2) that Honts is insufficiently experienced; and (3) that Honts' conclusions are "a lie." (Palmatier Rpt. ¶4(a).) Each of these "observations" is patently improper in an expert report, and Palmatier should not be permitted to offer testimony that so clearly invades the province of the jury.

Proposed experts are routinely barred from opining on the weight of evidence or the credibility or truthfulness of witnesses. *See, e.g., Wells v. City of Chicago*, No. 09 CV 1198, 2012 WL 116040 at *10 (N.D. Ill. Jan. 16, 2012) (barring expert from rendering determination to be made by jury); *Davis v. Duran*, 277 F.R.D. 362, (N.D. Ill. June 10, 2011) (barring witness from usurping jury function of weighing evidence and making credibility determination). In *Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 CV 7528, 2014 WL 3558690, 2014 U.S. Dist. LEXIS 97011 at *19 (N.D. Ill. July 17, 2014), the Court similarly addressed an expert who sought to pass judgment on the credibility of the opponent's expert, explaining:

> It is a fundamental premise of the trial system that "determining the weight and credibility of witness testimony ... 'belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'" *Davis [v. Duran*, 277 F.R.D. 362], 277 F.R.D. at 370 (quoting *United States v. Scheffer*, 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413

> (1998)). **"[A]n expert witness may not usurp the jury's function to weigh evidence and make credibility determinations**." *United States v. Farrell*, 563 F.3d 364, 377 (8th Cir. 2009).

*Id.* (emphasis added); *accord Jordan v. City of Chicago*, No. 08 CV 6902, 2012 WL 88158 at * 42012 U.S. Dist. LEXIS 3473 at *12 (N.D. Ill. Jan. 11, 2012). Under no circumstances should Palmatier be permitted to opine on Honts' credibility.

Because the law on this point is so clear, Defendants may seek to buttress Palmatier's credibility determination by suggesting his experience as polygraph examiner enables him to opine on credibility, but this too must be rejected. Palmatier does not even try to support what are ultimately character attacks on Honts with anything other than speculation. Nowhere does he mention employing any tool of his profession to reach his conclusions – they are simply that: unsupported conclusions. Even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant." *Clark v. Takata Corp.,* 192 F.3d 750, 759 n. 5 (7th Cir. 1999.) Because it is improper for Palmatier to assess Honts' credibility, and because Defendants cannot support it, Palmatier should be barred from testifying on this basis.

**F.     Palmatier should be Barred from Testifying on Police Practices.**

Despite the fact that he was disclosed solely as a rebuttal polygraph witness, Palmatier opines that in law enforcement, "[I]nvestigators often do not have the luxury of waiting for more optimal circumstances for the administration of a polygraph exam." (Palmatier Rpt. ¶3(c).) Because he is not a police practices expert, and was certainly not disclosed as one by Defendants, and because he was not even disclosed as a rebuttal witness to Plaintiff's own police practices expert, Palmatier should not be permitted to opine on the practices of the police here.

9

According to his own report and CV, Palmatier does not hold himself out to be an expert in police practices. (*See id.*) His latest position related to law enforcement, which ended more than 16 years ago in 2000, was not as an investigator, but rather as a polygraph examiner. (*Id.*) Because he lacks sufficient expertise to reliably opine on the investigative practices of the police, he should not be permitted to testify about whether police investigators "can" wait to conduct polygraph exams until the subject is in suitable condition for such testing.

An expert who is not qualified in the relevant field does not meet *Daubert* standards and his opinions should be barred. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (expert must be qualified in relevant field). *See also Pantaleo v. Hayes*, No. 08-CV-6419, 2013 WL 5213690 at *3, 2013 U.S. Dist. LEXIS 132530 (N.D. Ill. Sept. 17, 2013) (barring Ph.D. from testifying about whether medical emergency existed or whether use of force was appropriate, *inter alia*, because she was neither medical doctor nor police officer); *Moore v. P&G-Clairol, Inc.*, 781 F. Supp. 2d 694, 704 (N.D. Ill. 2011) (barring Ph.D. chemist, *inter alia*, because he lacked training and background in psychology or other fields related to consumer interpretation of hair dye warning instructions).

In considering the proffered testimony, the Court's focus "is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question." *Gayton,* 593 F.3d at 617 (7th Cir. 2010) (Internal quotations omitted). Palmatier's qualifications do not equip him to opine on police practices, or to buttress his positions with conclusions about the same. The Court should therefore bar this Palmatier opinion.[1]

---

[1] Moreover, whether law enforcement may often wait for "more optimal circumstances" in

G.    **Palmatier Should Not be Permitted to Opine on the "Lawfulness" of Recording Polygraph Examinations or Terminology Acceptable to the Court**.

In purporting to rebut Professor Honts' criticism that Ms. Harris' polygraph examination was not recorded, Palmatier opines that "under General Orders of the Chicago Police Department, in effect at that time, it would have been unlawful for any polygraph examiner or police officer to bring in his own personal recording equipment." (Palmatier Rpt. ¶8(b).) Not only is this offered opinion speculative, but it is speculation on an irrelevant matter that even if relevant, would be one determined by the jury.

First, whether it was proper to record the examination is irrelevant because Defendant Bartik, the polygraph examiner who administered the exam on Ms. Harris, testified that he was never aware of any Chicago Police Department policy prohibiting him from recording a polygraph exam, and that no one ever instructed him that he could not make such a recording. (Exh. C., Bartik Dep. at 119.) Second, it is the role of the judge, not a rebuttal expert witness, to instruct the jury on the law, and it is the role of the jury to apply those principles of law to the facts in evidence. *Jimenez v. City of Chicago,* 732 F. 3d 710, 721 (7th Cir. 2013). Palmatier may not offer opinions to the jury on what is and is not against the law.

In another inappropriate usurpation of the Court's role, Palmatier critiques Honts' use of

---

which to administer a polygraph examination, or whether it is indeed a "luxury," are red herrings here where it is undisputed that Police Defendants *did not wait*, but rather administered Ms. Harris's polygraph examination within 24 hours of her son Jaquari's death in contradiction to the City of Chicago's own written regulation on subject suitability. *See, e.g.,* Dkt. 173-27 at p. 10 ¶ A. Further, contrary to his own rebuttal expert's opinion, Defendant Bartik testified that "the results would have been probably more reliable" if the police had waited a day or longer to conduct Ms. Harris's polygraph examination. (Exh. C, Bartik Dep. at 238:21-22.) Bartik similarly testified that he had no reason not to suggest to the defendants that they had better try conducting a polygraph on her when she wasn't so close in time to the death of her son. (*Id.* at 240:16-241:02.)

the term "actually innocent subjects," and offers his opinion that "in this context [it is] prejudicial," and that his "experience shows that reference to testimony as truthful or deceptive would more likely be tolerated by the Bench." (Palmatier Rpt. ¶1(b).)

At the threshold, this is a case where the plaintiff has been adjudicated "actually innocent." *See* 735 ILCS 5/2-702(h). But even if it Ms. Harris had not already obtained her Certificate of Innocence, Palmatier should not be permitted to testify on the propriety of the term "actually innocent" or its palatability to the Court. According to his own C.V., he is neither a lawyer nor a judge, nor is there any evidence that he has any training or other experience upon which to reliably formulate such an opinion.

"In a trial there is only one legal expert – the judge." *Pivot Point Int'l, Inc. v. Charlene Prods. Inc*., 932 F. Supp. 220, 225 (N.D. Ill. 1996); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). If an expert were to testify about his interpretation of the law, he would usurp the judge's role. The role of a witnesses is not to instruct the jury as to the law; that is the role of the judge. *Panter v. Marshall Field & Co.*, 646 F.2d 271, 294 n.6 (7th Cir. 1981). "Clearly, an opinion that purports to explain the law to the jury trespasses on the trial judge's exclusive territory." *United States v. Lupton*, 620 F.3d 790, 800 (7th Cir. 2010); *Clintec Nutrition Co. v. Baxa Corp*., No. 94 CV 7050, 1998 WL 560284 at *9 1998 U.S. Dist. LEXIS 13541 (N.D. Ill. Aug. 26, 1998) ("Legal conclusions are not admissible because they are not helpful to the trier of fact"). Palmatier should be barred from offering irrelevant opinions that do not help the jury.

## CONCLUSION

For all the foregoing reasons, Plaintiff Nicole Harris respectfully requests that this honorable Court grant her motion in limine, enter an order barring John Palmatier's testimony at trial, and order any other relief that is just and equitable given the circumstances.

Dated:   January 6, 2017

Respectfully submitted,

/s/ Jan Susler
One of Nicole Harris' Attorneys

Janine L. Hoft
Joey L. Mogul
Jan Susler
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070

Nicole N. Auerbach
Stuart J. Chanen
Margot Klein
Valorem Law Group
35 E. Wacker Dr., Suite 3000
Chicago, IL 60601
(312) 676-5460

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
357 E. Chicago Ave.
Chicago, IL 60611
(312) 503-4808

Counsel for Plaintiff Nicole Harris