# Exhibit B



# SLATTERY ASSOCIATES INC.

FIRM FOUNDATIONS ARE BUILT ON THE TRUTH

## POLYGRAPH EXAMINATION/EXPERT REVIEW

March 29, 2016

Avi T. Kamionski, Esq.
**HALE LAW LLC**
53 W. Jackson Blvd., Ste. 330
Chicago IL 60604

**RE:** Polygraph Examination of Nicole Harris Conducted by Robert Bartik and Review by Charles Honts, PhD

**REQUEST:**

Review both the polygraph examination conducted for Nicole Harris by Robert Bartik, a member of the Chicago Police Department, on May 15, 2005, and the evaluation of that exam conducted by Charles Honts, PhD whose findings were summarized in a report dated January 29, 2016. My hourly rate is $300 per hour for review of documents and $2500 per day for deposition or trial testimony. In addition, counsel is responsible for all out-of-pocket travel and expenses.

**MY QUALIFICATIONS:**

A current and complete copy of my Professional Vitae is included as Attachment 1. This document provides a summary of my education, private sector, civilian law enforcement, and military experience in addition to other related activities. Previously as a sworn law enforcement officer, and then transitioning into applied science, my interests for more than 32 years have focused on the instrumental assessment of credibility, primarily the polygraph, and those sciences related to this endeavor.

During the 16 years I was a member of the Michigan State Police Forensic Science Division (now retired); I became probably the only PhD police officer/polygraph Examiner in the United States. During that tenure I conducted approximately 3,760 assessments routinely addressing subjects such as, but not limited to, rape, robbery, and murder, in addition to acquiring expertise in the assessment of factitious disorders (e.g., malingering / Munchausen / Munchausen by proxy), while also serving as a clinical resource to departmental psychologists and the Tri-County (Ingham/Eaton/Clinton) Community Mental Health Board Clinical Director, Dr. Gilbert W. Derath.

Following my retirement in 2000, I moved to Beijing, China where I became a scientist with the Chinese Academy of Sciences charged primarily with the teaching and review of assessments conducted by new examiners and, on occasion, conducting assessments for the Ministry of Public Security, China's National Police Force. Since returning to the United States in 2003, I have become a Consultant and Contractor conducting 6,796 documented assessments providing pre-employment screening (3,730) services to several government entities, in addition to Specific Issue assessments (3,070) for private, public, and government entities addressing the full breadth of human behavior; the last homicide assessment I conducted was late the evening of March 10, 2016, for the Miami-Dade Police Department, Homicide Bureau.

Concurrent with my day-to-day responsibilities as a Consultant, I continue to address scientifically substantive issues related to the assessment of credibility. For example, in 2003 the National Academy of Science noted that perhaps the most glaring deficiency at that time, as yet unaddressed by those interested in the instrumental assessment of credibility, was its lack of a theoretical base, concluding that:

**SLATTERY ASSOCIATES INC.**   DATE: March 29, 2016                                   PAGE 2

POLYGRAPH REVIEW:   Robert Bartik and Charles Honts, PhD

> The bulk of polygraph research can accurately be characterized as *atheoretical* [italics and emphasis added]. The field includes little or no research on a variety of variables and mechanisms that link deception or other phenomena to the physiological responses measured in polygraph tests (p. 102).[1]

In January 2015, I became the first scientist to address the National Academy of Science criticism with the acceptance and, after three rounds of peer review, publication of two papers[2] in the International Journal of Psychophysiology, which concluded a five-year review of the relevant scientific literature, and the first meaningful step in many decades addressing an issue that in large part continues to be ignored by my peers in academia.

INFORMATION:

On or about May 15, 2005, Nicole Harris was administered a polygraph examination at the request of Chicago Police Department detectives regarding the death of her son (Jaquari Dancy) the previous day.  That examination was administered by Chicago Police Officer Robert Bartik whose opinion was that the examination was inconclusive.

Jan Susler, the attorney representing Ms. Harris in a civil action against the City of Chicago, several detectives, and Officer Bartik, retained Dr. Charles Honts, a prolific researcher and Psychology Professor at Boise State University (Idaho), to conduct "a quality control review" of the polygraph examination[3] conducted by Officer Bartik.  It was requested that a second "quality control review" be conducted to review not only Officer Bartik's examination, but also the review submitted by Dr. Honts.

MATERIALS REVIEWED:

1. Copies of the documents and charts (i.e., the physiological recordings) generated by Officer Robert Bartik during the polygraph examination of Nicole Harris on May 15, 2005.

2. The Quality Control Review Report dated January 29, 2016, submitted by Charles R Honts, PhD.

3. A complete copy of the deposition of Robert Bartik taken on November 24, 2015.

4. A complete copy of the deposition of Charles R Honts, PhD taken on March 10, 2016.

---

[1] National Research Council (2003).  The polygraph and lie detection.  Washington, DC: Committee to Review the Scientific Evidence on the Polygraph, Division of Behavioral and Social Sciences and Education, National Academies Press.  Retrieved from website http://www.nap.edu/openbook.php?record_id=10420

[2] Palmatier, J.J.  & Rovner, L.I. (2015a).  Credibility Assessment: Preliminary Process Theory, the Polygraph Process, and Construct Validity.  International Journal of Psychophysiology, 95, 3-13.  DOI:10.1016/j.ijpsycho.2014.06.001.

Palmatier, J.J.  & Rovner, L.I. (2015b).  Rejoinder to commentary on Palmatier and Rovner (2015): credibility assessment: Preliminary Process Theory, the Polygraph Process, and Construct Validity.  International Journal of Psychophysiology, 95, 31-34.  DOI:10.1016/j.ijpsycho.2014.11.009.

[3] The term "psychophysiological detection of deception examination" has long been used to describe primarily polygraph examinations.  With the advent of new technologies a more appropriate term, perhaps arguably, is the instrumental assessment of credibility.

**SLATTERY ASSOCIATES INC.**   DATE: March 29, 2016                                      PAGE 3

POLYGRAPH REVIEW:   Robert Bartik and Charles Honts, PhD

5.  The materials reviewed by Charles R Honts, PhD identified in his Attachment B.

6.  Winstrom declaration dated March 28, 2016.

STANDARDS OF REVIEW:

The standard of review for polygraph examinations is directed by, and derived from, the relevant empirical research literature, which is published in peer reviewed scientific journals, professional writings, and presented at professional training seminars, colloquium, and through peer interaction.  Consequently, the chapter and publications[4] referenced by Dr. Honts, along with other references, were used for this review.

OBSERVATIONS:

1.  *Footnote 1, Page 4 of 19* – I concur with Dr. Honts that the Automatic Centering Mode used for the collection of electrodermal activity is less than optimal.  However, Dr. Honts continues and offers the reader more than one "Red Herring" in his narrative regarding the Automatic Centering Mode, which factually "DID NOT" undermine the scientific validity of the examination administered to Ms. Harris, or the opinion rendered by Officer Bartik.  The following discrepancies are noted.

    a.  The Automatic Centering Mode is "NOT" a feature of only "old analog instruments".  It is in fact, a feature of all modern computerized polygraphs systems as well.  This fact was verified first by contacting a technical representative from the Stoelting (polygraph) Instrument Company (J. Park, personal communication, March 25, 2016), and then contacting an individual familiar with the Lafayette, Limestone, and Axciton polygraph systems.

    b.  The term "actually innocent subjects" used to denote status is an error, and in this context prejudicial.  Although academics routinely intermix the terms innocent and guilty, with truthful and deceptive in their research, a polygraph examination is factually conducted to determine whether an individual has resident within his/her mind a significant memory regarding some specific issue.  In this context, an examinee is deemed "truthful" if greater physiological responses are elicited by the asking of comparison questions compared to the asking of relevant questions and "deceptive" if the opposite is true.  After more than 42 years in the Criminal Justice System, experience shows that reference to testimony as truthful or deceptive would more likely be tolerated by the Bench.

    c.  The reference to "Horvath, F.  (2002) An experimental comparison of the psychological stress evaluator and the galvanic skin respond is detection of deception.  Polygraph, 31, 135-134" is both improperly cited[5], which factually may be nothing more than a typographic error.  However, a complete read of this study, did not find words suggesting that: "choosing that [Automatic Centering] mode introduced a high-pass, short time constant, filter into the circuit and eliminated much of the rise time and recovery time information from the electrodermal tracing, see, Horvath…."

    d.  Dr. Honts asserts that: "thus running the electrodermal channel in the Automatic Centering Mode selectively biases the test against actually innocent individuals".  There is to my knowledge, no empirical evidence that would support this assertion.  The Automatic Centering

---

[4] Raskin DC, Honts CR.  The comparison question test.  In M. Kleiner (Ed.), *Handbook of polygraph testing*. London:  Academic Press, 2002; 1-49.

[5] The proper citation is: Horvath, F. (2002). An Experimental Comparison of the Psychological Stress Evaluator and the Galvanic Skin Response in Detection of Deception, *Polygraph*, 31(2), 135-144.



**SLATTERY ASSOCIATES INC.**    **DATE**: March 29, 2016    **PAGE 4**

**POLYGRAPH REVIEW:**    Robert Bartik and Charles Honts, PhD

> Mode does absolutely nothing based upon an individual's status of "innocent" (i.e., truthful) or "guilty" (i.e. deceptive).  The Automatic Centering Mode was originally created to deal with those instances when an electrodermal tracing continued to trend downward or to provide additional stability to that parameter.  In doing so, it filters a portion of the signal, but again does not do so based on status (i.e., innocent/guilty or truthful/deceptive) and, as in the examination administered to Ms. Harris, provides a valid and interpretable recording.

    e.    The recordings made by Officer Bartik using the analog instrument were, as noted by Dr. Honts, of sufficient quality to permit a scientifically valid assessment.

2.    *Paragraphs 11 & 13, Page 4 of 19* – Dr. Honts' assertion that the "Utah scoring system" is the most accurate of the numerical scoring systems is factually not true, especially when used to evaluate an examination like that administered to Ms. Harris.

    a.    Studies[6,7] comparing the Utah (UoUt) scoring system with that routinely used by Federal (DoDPI) examiners have consistently demonstrated that the accuracy of the two methods are equivocal when used to score the same number of tests (charts).  The authors of these studies concluded that, "…the differences between the UoUt and DoDPI veracity decision accuracies are likely *not due* [italics added] to the institute-specific guidelines used to assign values to physiological responses" (p. 219), and "…that decision accuracy differences reported by the UoUt and the DoDPI can be largely attributed to differences in the use of additional question series [i.e., the giving of more tests]" (p. 227).

    b.    Given the fact that the examination administered to Ms. Harris was a traditional MGQT format with three (3) tests (charts) administered, the scoring convention used for evaluation, whether the Utah scoring system, the scoring system used by Federal examiners, or another alternative scoring method (e.g., the ESS) would be expected to yield a valid assessment of the responses given by Ms. Harris during the examination administered by Officer Bartik.

    c.    Further support for this contention is found in a recent experimental (Monte Carlo) study[8] using both the Utah scoring system and the "Empirical Scoring System" (ESS)[9].  However, perhaps more important is to understand that the cutoff scores of $\pm$ 6 represent decision points and not the degree to which a person is truthful or deceptive.  A person whose physiological tracings are assessed to yield a score of +15 is not 2 ½ times more truthful than a person whose tracings yield a score of +6.  The opposite is also true of someone whose assessment yields a score of -15, in that the individual is not 2 ½ times more deceptive compared to someone scoring a -6.

---

[6] Senter, S.M., Dollins, A.B., & Krapohl, D.J. (2004). A Comparison of Polygraph Data Evaluation Conventions Used at the University of Utah and the Department of Defense Polygraph Institute.  Polygraph, 33(4), 214-222.

[7] Senter, S.M., & Dollins, A.B. (2004).  Comparison of Question Series and Decision Rules: A Replication.  Polygraph, 33(4), 223-233.

[8] Raskin, D.C., Honts, C.R., Nelson, R., & Handler, M.  (2015). Monte Carlo Estimates of the Validity of Four Relevant Question Polygraph Examinations.  Polygraph, 44(1), 1-27.

[9] Nelson, R. Handler, M. Shaw, P., Gougler, M., Blalock, B., Russell, C., Cushman, B., & Oelrich, M. (2011). Using the Empirical Scoring System, Polygraph, 40(2), 67-78.



**SLATTERY ASSOCIATES INC.**     **DATE**: March 29, 2016                                              **PAGE 5**

**POLYGRAPH  REVIEW:**     Robert Bartik and Charles Honts, PhD

3.  *Paragraphs 14, 15.1.1, 15.1.2, 15.1.3, Page 5 of 19* – Dr. Honts states: "[m]y scoring of the three repetitions of the Bartik examination questions produced a total score of +15.  In the Utah Scoring System that score indicates *truthfulness* [italics and emphasis added] to the relevant questions…"

    a.  The fact that Dr. Honts notes his score "indicates truthfulness" precludes him from claiming that the +15 score was a typographical error and in fact should have been a -15 or some other similar score.  In fact at paragraph 17.2 in his review Dr. Honts again states "… that in fact Ms. Harris examination was not inconclusive, it produced a strongly truthful result."

    b.  Dr. Honts then highlights three factors (see paragraphs: 15.1.1, 15.1.2, & 15.1.3) that the vast majority of experienced Polygraph Examiners, or a knowledgeable scientist, would expect to yield comparison scores in a minus (-), that is a deceptive direction.  These factors certainly would give an experienced examiner pause, when deciding whether an examination should be conducted, but would not preclude doing so, especially in a law enforcement environment.

    c.  In a law enforcement environment, investigators often do not have the luxury of waiting for more optimal circumstances for the administration of a polygraph exam.  For example, law enforcement officials must conduct an investigation within 48 hours of when a suspect is arrested because at that point the suspect is entitled to either be released or presented before a judge for a probable cause determination.  In addition, people who are asked to submit to a polygraph exam in a law enforcement environment have frequently experienced or witnessed something highly emotional or traumatic.  Yet polygraph examinations in these often less than optimal contexts are routinely done across the United States by local, state, and federal law enforcement officials.  I have personally done so in hundreds, if not thousands of cases.

    d.  Dr. Honts offered "NOTHING" to support his conclusion that after assessing the Nicole Harris examination conducted by Officer Bartik, it yielded a strong +15 truthful/innocent score.  Given his assertion, which in light of paragraphs 15.1.1, 15.1.2, & 15.1.3, was at best questionable, if not illogical, mandating that a detailed assessment of the Nicole Harris physiological tracings be undertaken, which I conducted as explained below.

4.  *Paragraph 14, Page 5 of 19* – A detailed assessment of the Harris examination is included as Attachment 2.  That assessment found that a scoring system used for research[10], day-to-day in actual field assessments, and is similar to the Utah Scoring System[11], yielded a score of -11, while scores derived from an analysis using the Empirical Scoring System yielded a score of -16.  Under both scoring systems this would strongly indicate that Ms. Harris, in fact, was deceptive in her responses to the four relevant questions asked during her polygraph examination.

    a.  Given these results, I believe, the idea that Dr. Honts actually achieved a +15 score cannot be explained logically within the bounds of those sciences relevant to the assessment of credibility that we have both chosen to dedicate ourselves.  I have long admired Dr. Honts contributions to the assessment of credibility, but in light of the above findings must conclude that one of the following is most probably true: (1) Dr. Honts never looked at the Harris examination and the resultant physiological tracings; (2) Dr. Honts is so inexperienced in the assessment of field data that a valid assessment was not possible, or; (3) Dr. Honts simply lied.

---

[10] Horvath, F., Palmatier, J.J., 2008. Two types of control questions and two question formats on the outcomes of polygraph examinations. J. Forensic Sci. 53 (4), 889–899. http://dx.doi.org/10.1111/j.1556-4029.2008.00775.x.

[11] Bell, B.G., Raskin, D.C., Honts, C.R., & Kircher, J.C. (1999). The Utah Numerical Scoring System, Polygraph, 28(1), 1-9.



**SLATTERY ASSOCIATES INC.**  **DATE**: March 29, 2016  **PAGE 6**

**POLYGRAPH REVIEW:**  Robert Bartik and Charles Honts, PhD

5.  *Paragraph 15 and all its subparagraphs, Pages 5-7 of 19* – In light of Dr. Honts assessment (scoring) of the Harris polygraph examination, his lack of experiential background, as witnessed by his curriculum vitae, and his testimony during the March 10, 2016 deposition, one finds little to suggest that he has any expertise in assessing whether a polygraph examination should be given in a real-world law enforcement context, or that he is competent to evaluate the data recorded in such an assessment.

  a.  Evidence for the above assertion is found in Dr. Honts Curriculum Vitae, which shows that he has never been a law enforcement officer at any level; local, state, or federal.  Second, it appears that the vast majority of his experience administering polygraph exams has been either in the preemployment realm, a laboratory, or for defense counsel. Further, when reading Dr. Honts many disparaging remarks regarding almost every action taken, and decision made by Officer Bartik, it quickly becomes apparent that the view Dr. Honts has from his ivory tower is extremely different compared to that of Officer Bartik, who at that time was in the trenches.

  b.  The demands placed on a polygraph examiner working for any law enforcement agency are substantial as s/he is routinely asked to render assessments that may be responsible for the temporary suspension of one's freedom, the possible release of a dangerous individual, in addition to the possible redirection of an agency's resources.  As it relates to the Nicole Harris polygraph examination, it is my opinion, based on my continued experience in the law enforcement polygraph setting, as well as my review of all the materials provided to me in this case, that Officer Bartik performed well within his defined responsibilities, in conducting and evaluating the results of the polygraph examination and based on the given facts, rendered an appropriate opinion.

  c.  In this context, that is a law enforcement setting, it is acceptable, common, and expected that individuals will be examined in close proximity to traumatic events, such as the injury or death of a child.  I have done so on many occasions.  In such cases, individuals are frequently held in police custody prior to an examination.  However, as noted by Dr. Honts, and accepted in the fields of polygraph and law enforcement, it must be left to the examiner to evaluate and determine whether an individual is suitable for testing.  Officer Bartik was well within his right and discretion when he decided that Ms. Harris was suitable for the conduct of a polygraph examination.  Additionally, I found nothing in my review to suggest any impropriety in Officer Bartik's decision-making, which was further evidenced by the fact that he found Stavon Dancy unsuitable for testing do to his heightened emotional state.

  d.  My opinion regarding this examination also finds evidence in the physiological data recorded on the charts.  Close examination of the data does not indicate that Ms. Harris was in an especially highted emotional state at the time of the polygraph examination.  In fact, her respiratory activity, and the somewhat subdued electrodermal and cardiovascular activity were within acceptable limits, a fact that was acknowledged by Dr. Honts, who claims that the charts were of score able quality.  If Ms. Harris was in distress, or a heightened emotional state due to being berated or screamed at by Officer Bartik, I would expect to see increased artifacts or other physiological anomalies within the data, and there is no evidence of that in any of her charts.

6.  *Paragraph 16 and all its subparagraphs, Pages 7-9 of 19* – In these paragraphs, Dr. Honts has abandoned empirical objectivity.

  a.  Dr. Honts expends a great deal of effort to disparage what he terms the "Reid Technique", that is actually an MGQT (Mixed General Question Test) format.  For my Master's thesis, I compared directly a format similar to the Utah Technique, a ZOC (Zone Comparison) format with the MGQT format.  The result of that research found no statistically significant



**SLATTERY ASSOCIATES INC.**    **DATE:** March 29, 2016                    **PAGE 7**

**POLYGRAPH REVIEW:**    Robert Bartik and Charles Honts, PhD

differences when looking at the type of format used. What was significant, was the number of false positive errors (calling a truthful person deceptive) using the type of comparison question advocated by Dr. Honts.

b.  Perhaps more important are the fallacious conclusions made in paragraph 16.3.3 regarding the 1981 research of Szucko and Kleinmuntz[12] that was later published (1984) in the Journal Nature[13]. Dr. Honts writes in an authoritative voice disparaging the method used by Officer Bartik that: "In both of those studies, published in very prominent scientific journals, the examinations were conducted at the Reid organization in Chicago. In both of those studies, very low estimates of accuracy were obtained with the actually innocent, 49% and 63%, respectively."

c.  However, what Dr. Honts fails to mention and is found in his own reference[14] used for this review, we discover at page 31 that:

   i.  The Kleinmuntz and Szucko study (1984) stands out because it embodied all of the serious methodological errors. They used only cases in which persons suspected of theft were ordered by their employers to take tests from a commercial polygraph firm, and they did not describe how they selected cases from the files of the commercial polygraph firm. In addition, they based the results on interpretations made by students in a commercial polygraph training course who were not trained in systematic methods of test interpretation, and they required the student examiners to make definite judgments of guilt or innocence on the basis of reactions to only one presentation of a single relevant question [only 12% of the data normally available in this type of assessment]. It is not surprising that their study produced low rates of accuracy. Gross violations of acceptable scientific methodology and polygraph procedures render this study totally meaningless for estimating the accuracy of standard field polygraph examinations conducted by competent examiners under appropriate conditions (p.31, 2nd paragraph).

d.  It would appear from Dr. Honts own reference that the conclusions drawn in paragraphs 16.3.3 and 16.3.4 constitute nothing more than hyperbole as they are seriously contradicted by his own writing.

e.  I believe that the true value of Dr. Honts evaluation of the Harris polygraph examination is again found in his continued writing in what he termed "The Handbook". There Dr. Honts states that:

   i.  In summary, it now seems to be generally agreed by persons doing field research in this area that useful field studies [and by logical inference field evaluations] of the

---

[12] Szucko, J.J. & Kleinmuntz, B. (1981). Statistical versus clinical lie detection. American Psychologist, 36, 488-496.

[13] Szucko, J.J. & Kleinmuntz, B. (1984). A field study of the fallibility of polygraphic lie detection, Nature, 308, 449-450.

[14] Raskin DC, Honts CR. The comparison question test. In M. Kleiner (Ed.), Handbook of polygraph testing. London: Academic Press, 2002; 1-49.

**SLATTERY ASSOCIATES INC.**    **DATE**: March 29, 2016                    **PAGE 8**

**POLYGRAPH REVIEW:**    Robert Bartik and Charles Honts, PhD

psychophysiological credibility assessment test should have all of the following characteristics[15]:

1. The resulting physiological data must be evaluated by persons trained and experienced in the field scoring techniques about which inferential statements are to be made[16]. Independent evaluations by persons who have access to only the physiological data are useful for evaluating the information content of those data. However, the decisions rendered by the original examiners probably provide a better estimate of the accuracy of polygraph tech Meeks as they are actually employed in the field (p.31, last paragraph).

2. The credibility of the subject [in this case Nicole Harris] must be determined by the information that is independent of the specific test. Confessions substantiated by physical evidence are presently the best criterion available (p.32, 1st paragraph).

7. *Paragraph 21, Page 18 of 19* – Here, Dr. Honts summarizes his belief that in using "Global Procedures", the examination conducted for Ms. Harris in 2005 "used archaic and discredited testing and scoring techniques that were no longer accepted as valid best practices of the polygraph profession." Once again, I cannot resolve the discrepancy between Dr. Honts stated opinion and his own reference.

   a. I assume that Dr. Honts offers the ASTM (American Society for Testing and Materials) standards[17], Designation: E 2000 – 98, Standard Guide for Minimum Basic Education and Training of Individuals Involved in the Detection of Deception (PDD), as an authoritative source regarding the subject addressed, which is the training of individuals conducting polygraph examinations. Those standards state at paragraph:

      i. 5.2.5 Chart Analysis including skills development in chart evaluation which must provide the student with at least an introductory knowledge of the different chart analysis procedures prominently in use by examiners today, that is Numerical Chart Scoring Procedures; *Global Procedures* [italics added]; the school may emphasize and teach a major chart analysis procedure — 45 h.

8. *Paragraph 18, Page 10 of 19* – Training and Quality Control

   a. Officer Bartik has conducted over 3,000 polygraph examinations in his career.

   b. In May of 2005, it was not the procedure of the Chicago Police Department to videotape polygraph examination or any interrogations for that matter. As such, none of the rooms in which polygraphs were conducted was set up for audio or video recording. In fact, under the General Orders of the Chicago Police Department, in effect at that time, it would have been unlawful for any polygraph examiner or police officer to bring in his own personal recording equipment. As such, Officer Bartik cannot be faulted for not recording the polygraph

---

[15] The first two characteristics are omitted as they apply to studies that include more than one subject. In Dr. Honts field evaluation of the Nicole Harris polygraph examination the focus is on a single individual.

[16] A review of Dr. Honts Curriculum Vitae finds that he has never received training in the "Reid Technique".

[17] Dr. Honts offers these standards as his "Attachment C".



**SLATTERY ASSOCIATES INC.**    **DATE**: March 29, 2016    **PAGE 9**

**POLYGRAPH REVIEW:**    Robert Bartik and Charles Honts, PhD

examination of Ms. Harris.  The mere fact that there is no video or audio tape of the exam does not render it invalid or question the validity of Officer Bartik's scoring of the charts, which after my review, I believe to be more than adequate.

c.   It is common for law enforcement polygraph examiners not to be supervised by another polygraph examiner.  During my tenure with the Michigan State Police Forensic Science Division, my direct supervisor was the Uniformed Division District Commander, then the local Crime Laboratory Commander, and then my polygraph supervisor who was 60 or more miles away, and with whom I interacted perhaps four times a year.

d.   As someone with no experience in law enforcement, any opinion rendered by Dr. Honts regarding the role of supervision in this context, or how oversight should be conducted, is at best speculation and more likely something he was told or read in a text. Law enforcement polygraph examiners are trained to conduct exams and render opinions based upon that training.  Quality control, as it is practiced by the federal government, is a luxury that local and state agencies generally cannot afford as it requires an individual to be trained as an examiner, become experienced, and then stop doing so.  Even Dr. Honts testified that he simply uses his computer scoring algorithm for quality control purposes, and does not seek the advice of other examiners.  When needed, law enforcement examiners, will often seek the advice of more experienced examiners within their relative community asking them to verify, or refute their observations.  It is my understanding that the Chicago Police Department employed more than one polygraph examiner during 2005 and during Officer Bartik's entire career. Thus, in the unusual event that a second opinion was required regarding chart interpretation, Officer Bartik could easily consult with another polygraph examiner.  If quality control is always available it may become a crutch and over time detract from an individual's ability to make independent decisions at the exact moment that a decision is needed.

**FINDINGS:**

1.   The polygraph examination administered to Nicole Harris on May 15, 2005 was conducted under difficult conditions, but conditions that certainly did not preclude an attempt to do so.

2.   Officer Robert Bartik's opinion that the polygraph examination of Nicole Harris was "Inconclusive" was both proper and a decision strongly supported by the physical evidence available.

3.   Although Dr. Honts states that his opinions are held to a reasonable degree of scientific and professional certainty, I believe that many of those opinions are "AT BEST" nothing more than hyperbolic conjecture, and should be distrusted if not outright discarded.



**SLATTERY ASSOCIATES INC.**   **DATE**: March 29, 2016

**PAGE 10**

**POLYGRAPH REVIEW:**   Robert Bartik and Charles Honts, PhD

**CONCLUSIONS/OPINION:**

After a complete review of all of the materials supplied, and a thorough assessment of the recorded physiological data, I concur with the findings of Officer Bartik that the assessment conducted for Nicole Harris on May 15, 2005 was at best "Inconclusive" and more probably Deceptive.

I hold all my opinions in this matter to a reasonable degree of scientific and professional certainty.

If you have any questions regarding my opinions or conclusions in this review, or I may be of further assistance, please contact me at your convenience.

Respectfully submitted,

John J. Palmatier, Ph.D.
Credibility Consultant

2 encl.

## PROFESSIONAL VITAE

Fall 2015

### JOHN J. PALMATIER

MIAMI-DADE OFFICE

Slattery Associates
8181 NW 154th Street, Suite 110
Miami Lakes, Florida 33016
(305) 592-7917
E-mail info@polygraphexperts.com

## EDUCATION

Ph.D.  Michigan State University, 1996
Social Science (Psychology and Criminal Justice)

M.S.  Michigan State University, 1991
Criminal Justice/Management and Evaluation

B.A.  Saginaw Valley State University, 1982
Psychology and Criminal Justice

## INITIAL POLYGRAPH TRAINING

| | |
|---|---|
| August 1983 – December 1983 (Class 83-2) | Canadian Police College, directed by the Royal Canadian Mounted Police (RCMP), Ottawa, Ontario, Canada |

## EMPLOYMENT HISTORY

**Private Sector**

| | |
|---|---|
| 2004 – Present | **Consultant/Polygraph Examiner –** conducts credibility assessments, research and provides consulting services regarding credibility and matters associated with the legal system/profession. |
| 2011 – Present | **Adjunct Professor –** teach graduate courses in credibility assessment for the National Security Affairs program and graduate courses as assigned for the PhD program at Nova Southeastern University's Criminal Justice Institute, Davie, Florida |
| 2003 – 2005 | **Adjunct Professor –** teach graduate and undergraduate courses in Criminal Justice Program.  Florida Metropolitan University, Pompano Beach, Florida |
| 2002 – (Oct 2002) | **Professor/Researcher** -- conducted basic and advanced Lie detection courses, administer Lie detection examinations, and credibility assessment research for Institute of Automation, Chinese Academy Sciences, and Beijing China. |
| 2001 - 2002 | **Professor/Researcher –** Conduct basic and advanced Lie Detection courses.  Administer Lie Detection examinations and Credibility Assessment Research for Tsinghua TongFang CO., LTD, 6 Floor, Xueyan B Building Tsinghua A University, Beijing 100084 China. |
| 2000 - 2001 | **Vice President, Integritek Systems Inc.** – Research, Development, and Training, for software designed for the assessment of credibility. |

1

| 2000 - 2001 | **Verity Consulting** – Develop, conduct and interpret credibility assessment research, administer credibility assessment examinations, provide information and testimony regarding police practices and procedures. |

## Civilian Law Enforcement

| 2003 – (Oct 2003) | **Police Officer –** Return to basic patrol officer role to reacquaint self with modern duties and responsibilities and to acquire Florida Certification as a law enforcement officer. |
| 1983 – 2000 (Retired) | **Forensic Specialist -** Polygraph Examiner (retired) - Michigan State Police First District Headquarters, Lansing, Michigan. |
| 1977 - 1983 | **Uniformed Trooper** - Michigan Department of State Police in Battle Creek and Bridgeport, Michigan. |
| 1975 - 1977 | **Detective** - Saginaw City Police Department, Saginaw, Michigan. |
| 1973 - 1975 | **Uniformed Police Officer** - Saginaw City Police Department, Saginaw, Michigan. |

## Michigan Army National Guard

| 1985 - 1997 | **Special Investigating Officer** - Department of Defense, National Guard Bureau, Civil Rights Investigator (96-97), and Headquarters Michigan National Guard, examining allegations of sexual and racial discrimination, criminal offenses, waste/fraud, and abuse. |
| 1995 - 1997 | **Assistant Chief of Staff** - Major, Headquarters Michigan National Guard. |
| 1992 - 1995 | **Team Chief and Administrative Hearings Officer** - Officer Branch, Military Personnel Office, Headquarters, Michigan National Guard. |
| 1991 - 1992 | **Operations and Training Officer** - 46th Troop Command. |
| 1990 - 1991 | **Commanding Officer** - Detachment 1, Headquarters STARC, 72nd Support Brigade. |
| 1988 - 1990 | **Intelligence Officer** - Headquarters 72nd Support Brigade. |
| 1978 - 1988 | **Aeroscout Section Leader, Operations Officer, Executive Officer, and Intelligence Officer** - D Troop 1/238 Air Cavalry and 446th Attack Helicopter Battalions. |
| 1977 - 1978 | **Communications Platoon Leader** - F CO 425 Infantry (Ranger), Infantry Officer Basic and Airborne School, Ft. Benning, Georgia. |
| 1976 - 1977 | **Weapons Platoon Leader** - B CO 1/125 Infantry. |
| 1968 - 1973 | **Active Duty Military - Electronics technician/specialist, Military Police Officer, and Military Police Investigator** - with Army Security Agency. Duty stations in Missouri, Massachusetts, Japan, Thailand, Texas, and Okinawa. |

## TEACHING EXPERIENCE

| 2012 – Present | Criminal Justice Organization and Management, Credibility Assessment – Theory, Credibility Assessment – Methods, Nova Southeastern University, Davie, Florida. |

| 2003 – 2005 | Overview of Criminal Justice System, Research writing, Interview and Interrogation, Research Methods, Graduate Level Statistics, Criminal Justice Management, Florida Metropolitan University, Pompano Beach, Florida. |
| 2001 – 2003 | Subjects related to Credibility Assessment, Criminal Investigation, and Police Procedures, Institute of Automation, Chinese Academy Sciences and Tsinghua TongFang CO., LTD Beijing, China. |
| 2000 – 2001 | Voice Analysis & Other Credibility Assessment Subjects, Integritek Systems Inc., Tampa, Florida. |
| 1991 | Introduction to the Criminal Justice System, Michigan State University, School of Criminal Justice, East Lansing, Michigan. |

## PROFESSIONAL ACTIVITIES

**Lectures**

| 2015 | **Credibility Assessment: Preliminary Process Theory, The Polygraph Process, and Construct Validity** – a presentation prepared especially for the American Polygraph Association 50th Annual Seminar/Workshop.  Chicago, Illinois |
| 2015 | **What Does Theory Suggest for Polygraph Practice** – a presentation prepared especially for the American Polygraph Association 50th Annual Seminar/Workshop.  Chicago, Illinois |
| 2014 | **Polygraph's Construct Validity** – a presentation prepared for the SLC- Association of Criminal Defense Lawyers. St. Lucie County, Ft. Pierce Florida. |
| 2014 | **Credibility Assessment: Preliminary Process Theory, The Polygraph Process, and Construct Validity** – Canadian Association of Police Polygraphist Seminar and Meeting Canadian Police College, Ottawa, Ontario, Canada |
| 2013 | **Do You Really Know Why Polygraph Works: Construct Validity and The Assessment of Credibility** – a presentation prepared especially for the American Polygraph Association 48th Annual Seminar/Workshop.  Orlando, Florida. |
| 2012 | **The Evolution of the Polygraph and Credibility Assessment in the People's Republic of China** – a presentation prepared especially for the American Academy of Forensic Sciences 64th Annual Scientific Meeting.  Atlanta, Georgia. |
| 2010 | **The Neuroscientific Basis for Credibility Assessment** – a presentation prepared especially for the American Polygraph Association 45th Annual Seminar/Workshop. Myrtle Beach, South Carolina. |
| 2010 | **The Polygraph: 多导心理生理测谎测试** – A Presentation Prepared Especially for Renmin University of China – Law School (the People's University of China) Beijing, China. |
| 2000 | **Lie Detection – Current Status/Future Directions** – Ministry of Public Security, Science and Technology, and Investigation Bureaus.  Beijing, China. |
| 2000 | **The CVSA and Voice Stress Analysis** –American Polygraph Association 35th Annual Seminar/Workshop.  Fort Lauderdale, Florida. |
| 1999 | **The CVSA and Voice Stress Analysis** – 28th Annual National Polygraph Workshop. Saginaw Valley State University, University Center, Michigan. |

1998  **Validity of the Directed Lie Control Question** – Continuing education presentation for the Michigan Association of Polygraph Examiners. Livonia, Michigan.

1996  **Survey Research Interviews: Theory and Practice** – Michigan Family Independence Agency, Office of Quality Assurance. Lansing, Michigan.

1996  **Deception in Child Abuse and Criminal Sexual Conduct Investigations** – Michigan Office of the Children's Ombudsman. Lansing, Michigan.

1995  **Factitious disorder, Malingering and Deception in Mental Health settings** – Michigan Recipient Rights Advocates Association. Ypsilanti, Michigan.

1993  **Was It A Crime?  Munchausen and Munchausen by Proxy Syndromes** – Macomb County Detectives Association. Warren, Michigan.

1992  **When The Truth Is Important: Interviewing Strategies** – International Association of Internal Auditors. East Lansing, Michigan.

1991/1992  **Credibility Assessment and The Polygraph** – University of Michigan Law School.  Ann Arbor, Michigan.

1986-1989  **Credibility Assessment and The Polygraph** – Criminal Justice courses at Michigan State University. East Lansing, Michigan.

1987  **Credibility Assessment and The Polygraph** – Cooley Law School. Lansing, Michigan.

1986-1988  **Graduate Research Assistance:** Psychophysiological Research Focusing on Credibility Assessment – School of Criminal Justice, Michigan State University. E Lansing, MI.

## Panel Discussions, Colloquia & Seminars Presented:

2012  **Continuing Advances in Cognitive Neuroscience Research, Their Relationship, and Application to Credibility Assessment in a Polygraph Context** – Seminar for members of Public Security Bureaus, Prosecutor's Offices, Public Security Police Universities, and other parties from throughout China. Nanning, People's Republic of China.

2011  **Advances in Cognitive Neuroscience Research and Their Relationship to Credibility Assessment in a Polygraph Context** – Seminars for members of Public Security Bureaus, Prosecutor's Offices, Public Security Police Universities and other parties from throughout China. Chengdu and Beijing, Xiao Tangshan, People's Republic of China.

2010  **Cognitive Neuroscience and Other Related Advances in Credibility Assessment and the Polygraph** – Seminars for members of Public Security Bureaus, Prosecutor's Office's, Public Security Police Universities and other parties from throughout China. Xiamen and Hangzhou, People's Republic of China.

2009  **Advances in Lie Detection and Credibility Assessment** – Seminars for members of Public Security Bureaus, Prosecutor's Office's, and Public Security Police Universities from throughout China. Chongqing and Guangzhou, People's Republic of China.

2008  **THE TRUTH: WHO, WHAT, WHERE, WHEN, WHY AND HOW** – a seminar presentation for the annual meeting of the Florida Lawyers Assistance, Naples Florida.

2008      **Advances in Lie Detection and Credibility Assessment** – a seminar for members of Public Security Bureaus, Prosecutor's Office's, and Public Security Police Universities from throughout China. XiangShan, Beijing, People's Republic of China.

2008      **Credibility Assessment (The Polygraph Process)** – An Introduction - presentation to the Public Defender's Office for the Florida 19th Circuit, St. Lucie County, Ft. Pierce Florida.

2008      **Anatomy of Interrogation** – CLE (Continuing Legal Education) presentation to the Miami-Dade FACDL (Florida Association of Criminal Defense Lawyers) Young Lawyers Division, Miami, Florida.

2000-2003      **Issues Related to Lie Detection and Credibility Assessment** – Colloquiums and panel discussions for Ministry of Public Security, and Prosecutor's Office's throughout China.

1997      **Scientific Advances in the Assessment of Credibility** – Colloquium and panel discussion, the Ministry of Public Security. Beijing, People's Republic of China.

1997      **Management and Supervision In American Law Enforcement Agencies** – Panel discussion, the Ministry of Public Security, Provincial Headquarters. Guiyang, Guizhou, People's Republic of China.

1997      **The Polygraph and Lie Detection in Criminal Investigations** – Seminar and panel discussion, the Ministry of Public Security, Provincial Headquarters. Guiyang, Guizhou, People's Republic of China.

1993      **Factitious Disorder, Munchausen, and Munchausen by Proxy Syndromes** – Professional Staff Organization, Tri-County Mental Health Board. Lansing, Michigan.

1991      **The Polygraph and Lie Detection in Criminal Investigations** – Seminar and panel discussion, the Ministry of Public Security, Provincial Headquarters. Hangzhou, People's Republic of China.

1991      **The Polygraph and Lie Detection: Theory and Research** – Seminar, the Beijing Yanjing Science and Technology Corporation, the Ministry of Public Security. Beijing, People's Republic of China.

1991      **The Polygraph and Lie Detection Research** – Colloquium and panel discussion. Interrogation Division, the Ministry of Public Security, Beijing, People's Republic of China.

1991      **The Polygraph and Lie Detection Research** – Colloquium and panel discussion. Beijing Forensic Institute. Beijing, People's Republic of China.

1990      **The Polygraph and Its Use In Criminal Investigations** – Colloquium and panel discussion. Tokyo Police Headquarters, Criminal Investigation Division, Tokyo, Japan.

## Expert Testimony:

2015      **Polygraph and Related Validity Issues** – Florida Supreme Court directed review of a matter before the Florida Bar, Miami, Florida.

2015      **Polygraph and Related Validity Issues** –Cynthia Potter vs. The City of Miami Gardens, Case No. 10-29849 CA 08, Federal District Court, Miami-Dade County

2013      **Polygraph and Related Validity Issues** – State of North Dakota vs. Thomas James Tepley, Case No. 08-2012-cr-03162, et al, South Central Judicial District, Burleigh County.

| 2012 | **CVSA and Related Validity Issues** – Louisiana State Senate Sub-committee hearing testimony regarding the use of the CVSA for sexual offender testing. |
|---|---|
| 2012 | **Polygraph and Related Validity Issues** – Florida Supreme Court directed review of a matter before the Florida Bar, Miami, Florida. |
| 2009 | **Polygraph and Related Validity Issues** – State of Florida vs. Andrew M. Gosciminski; Case No: 562002-CF-003515A, 19th Judicial Circuit, St. Lucie County. |
| 2008 | **Polygraph and Related Validity Issues** – State of Florida vs. James Norman Albritton Case No. 2008-CA-197, 19th Judicial Circuit, Okeechobee County. |
| 2005 | **Polygraph and Related Validity Issues** – U.S. Federal District Court, Fort Lauderdale, Florida |
| 2004 | **Polygraph and Related Validity Issues** – U.S. Federal District Court, Miami, Florida |
| 1996 | **Personnel Selection, Job Analysis, and Validity Assessment** – Michigan Department of Civil Service.  Lansing, Michigan |
| 1993 | **Statement Analysis and Credibility, Police Patrol Activities** – Michigan Department of Civil Service.  Selfridge Air National Guard Base, Mount Clemens, Michigan |
| 1993 | **Personnel and Job Performance Evaluation, Instrument Construction and Validity Issues** – Michigan Department of Civil Service.  Lansing, Michigan. |
| 1991 | **The Criminal Investigation Process** – Michigan Department of Civil Service.  Lansing, Michigan. |
| 1990 | **Munchausen's Syndrome and Munchausen Syndrome by Proxy** – Barry County Circuit Court.  Hastings, Michigan. |
| 1987 | **The Polygraph & Lie Detection** – Shiawassee County Circuit Court.  Corunna, Michigan. |

## PROFESSIONAL ORGANIZATIONS:

| 2005 – Present 1990 – 1997 | Americans Psychological Association |
|---|---|
| 2011 – Present | American Academy of Forensic Sciences. |
| 2010 – Present | Association for the Treatment of Sexual Abusers (**ATSA**) |
| 1985 – Present | American Polygraph Association. School Accreditation Revision Committee (1992-93). |
| 1983 – 1993 | Canadian Association of Police Polygraphists. |
| 1985 – 2000 | Michigan Association of Polygraph Examiners.  Member, Board of Directors. |
| 1988 – 1993 | Midwest Criminal Justice Association. |

## PAPERS PUBLISHED OR PRESENTED

Palmatier, J. J., & Rovner, L. (2015). Credibility Assessment: Preliminary Process Theory, the Polygraph Process, and Construct Validity. International Journal of Psychophysiology, 95(1), 3-13. doi:10.1016/j.ijpsycho.2014.06.001

Palmatier, J. J., & Rovner, L. (2015). Rejoinder to commentary on Palmatier and Rovner (2014): Credibility Assessment: Preliminary Process Theory, the Polygraph Process, and Construct Validity. International Journal of Psychophysiology, 95(1), 31-34. doi:10.1016/j.ijpsycho.2014.11.009

Palmatier, J.J. (2008).  Systemes d'analyse du stress dans la voix: vrais detecteurs de mensonges?  Un point de vue des Etats-Unis [English Title - Voice Stress Analysis: Questions Separating Fact from Fantasy].  Actualité Juridique Pénal (3/2008, pp. 124-127) (Text in French).

Horvath, F. & Palmatier, J.J. (2008).  Two Types of Control Questions and Two Question Formats on the Outcomes of Polygraph Examinations.  Journal of Forensic Sciences, 53(4), 889-899. doi: 10.1111/j.1556-4029.2008.00775.x

Palmatier, J.J. & Zhang, X.H. (2002, Fall).  Lie Detection In China: Where Is It and Where Is It Going.  Evidence Forum.  The Chinese Procurator Office: Publisher, Beijing, China.  (Text in Chinese).

Palmatier, J. J.  (1999, June) The CVSA: Modern Technological Innovation or "The Emperor's New Clothes"?  GP Solo and Small Firm Technical Update.  American Bar Association: Chicago, Ill.

Palmatier, J., Brandt, C., & Hunter, J. E. (1998, April).  Personality In Police Selection:  Examining Training and Job Performance Longitudinally.  Paper presented at the annual meeting of the Society of Industrial/ Organizational Psychologists, Dallas, Texas.

Palmatier, J. J. (1996). The big five-factors and hostility in the MMPI and IPI: Predictors of Michigan state trooper job performance (Doctoral dissertation, Michigan State University. School of Criminal Justice).

Kaufman, G., Smith, R., & Palmatier, J. (1994).  An Assessment of Undercover Officer Spouse/Mate Relationships. In J. T. Reese & E. Scrivner (Eds.), Law Enforcement Families: Issues and Answers (pp.  111-115). FBI Academy, Quantico, Virginia, Washington, D. C.: U. S. Government Printing Office.

Palmatier, J. J. (1991). Analysis of two variations of control question polygraph testing utilizing exclusive and nonexclusive controls (Doctoral dissertation, Michigan State University. School of Criminal Justice).

Palmatier, J.  (1989, October).  The detection of deception: A pilot study to examine within a real life context nonverbal behaviors and paralinguistic cues previously tested in the laboratory.  Paper presented at the annual meeting of the Midwest Criminal Justice Association, Chicago, Illinois.

Palmatier, J.  (1988, October).  A comparison of two techniques and two types of control questions in the physiological detection of deception.  Paper presented at the annual meeting of the Midwest Criminal Justice Association, Chicago, Illinois.

Palmatier, J.  (1988, October).  A review and analysis of social science paradigms in communication and eyewitness research.  Paper presented at the annual meeting of the Midwest Criminal Justice Association, Chicago, Illinois.

Palmatier, J.  (1987, August).  Analysis of exclusive and non-exclusive controls utilizing two variations of control question polygraph testing.  Paper presented at the annual meeting of the American Polygraph Association, Fort Worth, Texas.

## RESEARCH

The Accuracy of the Guilty Knowledge Test Compared to the Control/ Comparison Question Test Using Probable Lie and Directed Lie Comparison Questions.  Proposal accepted, data collection finished, currently conducting data analysis and interpreting results.  Beijing Police University, Ministry of Public Security, Beijing, China

A Field Study to Test the Validity and Comparative Accuracy of Voice Stress Analysis As Measured by the CVSA: In A Psychophysiological Context.  Office of Naval Research Grant No. N00014-97-1-1025, final draft of research report written and reviewed, submission to sponsoring agency.

A Longitudinal Analysis of Police Selection/Screening Procedures Using Psychological Testing.  Final Report to Department of State Police May 99.

Personality Structure and Correlates of Truth and Deception in a Psychophysiological Context.  Instruments administered data to be entered into database for further analyses.

The Validity of a Variant of Directed Lie Control Questions in a Psychophysiological Context.  Preliminary data analysis finished and results presented to Michigan Association of Polygraph Examiners November 1998.

## HONORS and AWARDS

| | |
|---|---|
| 1996 | Donald S. Leonard Award for Academic Achievement, Criminal Division, Michigan Bar Association. |
| 1983 – 2000 | Michigan State Police – Four Department Citations for professional excellence. |
| 1982 | B.A. Summa Cum Laude. |
| 1979 | Honor Graduate, Army Officer Aviator Course.  Fort Rucker, Alabama. |
| 1977 | Leadership Honor Graduate, Officer Candidate School, Michigan Military Academy. |
| 1976 | Distinguished Service Medal, Saginaw Police Department.  Saginaw, Michigan. |
| 1975 | Courageous Service Medal, Saginaw Police Department.  Saginaw, Michigan. |

**REFERENCES:**

Frank Horvath, Ph.D.
803-751-9279
Prof. Emeritus, Michigan State University
Chief, Special Studies
National Center for Credibility Assessment (NCCA)
7540 Pickens Ave.
Fort Jackson, SC   29207-6804

Leo Wisniewski Jr.
703-338-3469
Retired Deputy Assistant Director
United States Secret Service
Chief Internal Security and Investigations Division
Department of Homeland Security
Washington, DC 20528

Peter Munoz, United States Marshal
(616) 456-2438
Western District of Michigan
Federal Building
110 Michigan Avenue, N.W., Room 544
Grand Rapids, MI 49503

# Illustration of Detailed Chart Analysis Regarding the May 15, 2005 Polygraph Examination Administered to Nicole Harris by Robert Bartik



**SLATTERY ASSOCIATES INC.**

FIRM FOUNDATIONS ARE BUILT ON THE TRUTH

John J Palmatier, PhD

March 19-20, 2016

# Executive Summary

The score sheet on the right, summarizes the scores obtained conducting a "DETAILED" analysis of the examination administered to Nicole Harris by Examiner Robert Bartik on May 15, 2005.

Both methods used for scoring (analysis) are used in the field for day-to-day examinations and for peer reviewed research, see for example:

Horvath, F. & Palmatier, J.J. (2008). Two Types of Control Questions and Two Question Formats on the Outcomes of Polygraph Examinations. Journal of Forensic Sciences, 53(4), 889-899.

Nelson, R. Handler, M. Shaw, P., Gougler, M., Blalock, B., Russell, C., Cushman, B., & Oelrich, M. (2011). Using the Empirical Scoring System, Polygraph, 40(2), 67-78.

Also see:

Raskin, D.C., Honts, C.R., Nelson, R., and Handler, M. (2015). Monte Carlo Estimates of the Validity of Four Relevant Question Polygraph Examinations, Polygraph, 44(1), 1-27.



**Slattery Associates Inc.** **Polygraph Score Sheet for MGQT**

**Chart 1**

| Component | Relevant 3 | Relevant 5 | Relevant 8 | Relevant 9 | Component total |
|---|---|---|---|---|---|
| Upper Pneumo | -1 | -1 | 0 | -1 | -3 |
| Lower Pneumo | 0 | 0 | 0 | 0 | 0 |
| GSR | -1 (-2) | 0 (-2) | -1 (-2) | -1 (-2) | -3 (-8) |
| Cardio | -1 | 0 | +1 | +1 | +1 |
| Question Total | -3 (-4) | -1 (-3) | 0 (-1) | -1 (-2) | -5 (-10) |

**Chart 2**

| Component | Relevant 3 | Relevant 5 | Relevant 8 | Relevant 9 | Component total |
|---|---|---|---|---|---|
| Upper Pneumo | +1 | +1 | +1 | 00 | +3 |
| Lower Pneumo | 0 | 0 | 0 | **Artifact** | 0 |
| GSR | -1 (-2) | -2 (-2) | 0 (-2) | Question Not | -3 (-6) |
| Cardio | -1 (-1) | -1 | -1 | Scored | -3 (-3) |
| Question Total | -1 (-2) | -2 (-2) | 0 (-2) | 00 | -3 (-6) |

**Chart 3**

| Component | Relevant 3 | Relevant 5 | Relevant 8 | Relevant 9 | Component total |
|---|---|---|---|---|---|
| Upper Pneumo | -1 | -1 | -1 (0) | -1 (0) | -4 (-2) |
| Lower Pneumo | 0 | 0 | 0 | 0 | 0 |
| GSR | +2 (+2) | -1 (-2) | +2 (+2) | +1 (+2) | +4 (+4) |
| Cardio | -1 | -1 | -1 (0) | 0 | -3 (-2) |
| Question Total | 0 (0) | -3 (-4) | 0 (+2) | 0 (+2) | -3 (0) |
| **EXAM TOTALS** | **-4 (-6)** | **-6 (-9)** | **0 (-1)** | **-1 (0)** | **-11 (-16)** |

| | | Notes: |
|---|---|---|
| Upper Pneumo | -4 (-2) | Charts Scored using Traditional methods, see: Horvath, F. & Palmatier, J.J. (2008). Two Types of Control Questions and Two Question Formats on the Outcomes of Polygraph Examinations. Journal of Forensic Sciences, 53(4), 889-899. And ESS, see Nelson, R. Handler, M. Shaw, P., Gougler, M., Blalock, B., Russell, C., Cushman, B., & Oelrich, M. (2011). Using the Empirical Scoring System, Polygraph, 40(2). |
| Lower Pneumo | 0 | |
| GSR | -2 (-10) | |
| Cardio | -5 (-4) | |
| Question Total | -11 (-16) | |

8181 NW 154 Street, Suite 110, Miami Lakes, Florida 33016
Office: 305-592-7917
www.polygraphexperts.com • Email: info@polygraphexperts.com

Exam (Test) #1
(Numerically Scored)

May 15, 2005 Polygraph Examination
Administered to Nicole Harris by Robert Bartik



R3    R5    C6    R8    R9    C11

Exam (Test) #1
(Numerically Scored)



Exam (Test) #1

Compare R3 – C6

-1

-1 (-2)

-1

Total this question -3 (-4)

R3

C6



Exam (Test) #1

Compare R5 – C6

-1

0(-2)

0

Total this question  -1 (-3)

R5

C6



Exam (Test) #1

Compare R8 – C11

0

-1 (-2)

+1

Total this question  0 (-1)

R8

C11



Exam (Test) #1

Compare R9 – C11

-1

-1 (-2)

+1

Total this question  -1 (-2)

R9

C11

# Exam (Test) #2
## Acquaintance/Demonstration Test
(Not Numerically Scored)

# May 15, 2005 Polygraph Examination
# Administered to Nicole Harris by Robert Bartik



Acquaintance Test – Not Scored

Exam (Test) #3
(Numerically Scored)

May 15, 2005 Polygraph Examination
Administered to Nicole Harris by Robert Bartik



R3    R5    C6    R8    R9    C11

Exam (Test) #3
(Numerically Scored)



Exam (Test) #3

Compare R3 – C6

+1

-1 (-2)

-1 (-1)

Total this question  -1 (-2)

R3

C6



Exam (Test) #3

Compare R5 – C6

+1

-2(-2)

-1

Total this question  -2 (-2)

R5

C6



Exam (Test) #3

Compare R9 – C6





Ms. Harris moved her head, as noted by the examiner, causing an "Artifact" that should not be used for analysis.

All comparisons are given a "0".

Total this question  0 (0)

R9                                    C6

# Exam (Test) #4 (Mixed Question Test)
(Numerically Scored)

# May 15, 2005 Polygraph Examination
# Administered to Nicole Harris by Robert Bartik



R9    R5    C6    R3    C11    R8

Exam (Test) #4 (MQT)
(Numerically Scored)

Exam (Test) #4

Compare R9 – C6



-1(0)

+1(+2)

0

Total this question  0 (+2)

R9

C6



Exam (Test) #4

Compare R5 – C6

-1

-1(-2)

-1

Total this question  -3 (-4)

R5

C6



Exam (Test) #4

Compare R3 – C11

-1

+2(+2)

-1

Total this question  0 (0)

R3

C11

