IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **NICOLE HARRIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14-cv-4391 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| **CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF HARRIS' MOTION *IN LIMINE* TO LIMIT
DEFENDANTS' INQUIRY OF PLAINTIFF'S EXPERT
PROFESSOR CHARLES HONTS**

Plaintiff Nicole Harris, by and through her undersigned attorneys, asks this Court to enter an order limiting Police Defendants from introducing at trial irrelevant and unduly prejudicial evidence regarding Plaintiff's polygraph expert Professor Charles Honts, including: (1) the substance of protected communications between Professor Honts and Plaintiff's counsel, as set forth in Fed. R. Civ. P. Rule 26(b)(4)(c) and Fed. R. Evid. 502; (2) evidence regarding his former expertise on child witnesses and his research on children making false accusations and/or reliability of child eyewitness identification, about which he rendered no opinions in this matter; (3) his income from other cases in which he was retained as compared to the amount he charged in this matter; and (4) the fees he estimated to compensate him for time to comply with Defendants' overbroad subpoena. In support of her motion, Plaintiff states as follows.

**1. Communications between Professor Honts and Plaintiff's counsel are protected by Fed. R. Civ. P. 26(b)(4)(c)**

During the course of Plaintiff's polygraph expert Professor Charles Honts' deposition, defense counsel improperly asked: "Were there any discussions in your retention about

1

conducting an additional polygraph on Nicole Harris?" (Exhibit A, Charles Honts' Dep. at 149). Before Plaintiff's counsel had an opportunity to object, Professor Honts answered, "There were not." (*Id.*).

When Plaintiff's counsel immediately objected, defense counsel acknowledged he should not have so inquired (Exh. A at 149-150), because the question is improper in light of the work-product protection provided to attorneys and their experts as codified in the Fed. R. Civ. P 26(b)(4)(c).

> The Committee Notes to the applicable 2010 amendment to Rule 26 provide:
>
> Rule 26(b)(4)(c) is added to provide work-product protection for attorney-expert communications regardless of the form of the communications, whether oral, written, electronic, or otherwise. The addition of Rule 26(b)(4)(c) is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery. The protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose behalf the witness will be testifying, including any "preliminary" expert opinions. Protected "communications" include those between the party's attorney and assistants of the expert witness. The rule does not itself protect communications between counsel and other expert witnesses, such as those for whom disclosure is required under Rule 26(a)(2)(c). The rule does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine.
>
> The most frequent method for discovering the work of expert witnesses is by deposition, but Rules 26(b)(4)(B) and (C) apply to all forms of discovery. [...]
> Under the amended rule, discovery regarding attorney-expert communications on subjects outside the three exceptions in Rule 26(b)(4)(C), or regarding draft expert reports or disclosures, is permitted only in limited circumstances and by court order. A party seeking such discovery must make the showing specified in Rule 26(b)(3)(A)(ii) — that the party has a substantial need for the discovery and cannot obtain the substantial equivalent without undue hardship. It will be rare for a party to be able to make such a showing given the broad disclosure and discovery otherwise allowed regarding the expert's testimony.

Fed. R. Civ. P. 26 Adv. Co. Notes. *See also*, *Sutton v. Wexford Health Sources, Inc.*, No. No. 10

CV 8137, 2014 WL 551546 at *6, 2014 U.S. Dist. LEXIS 17611 at *22-23 (N.D. Ill. Feb. 12, 2014).

Here, the fact that Plaintiff's counsel did not ask Professor Honts to conduct an additional polygraph was a communication that does not fit within any of the exceptions to the protections afforded attorney-expert witness communications. Furthermore, Defendants have no need for such discovery and cannot make the showing specified in Rule 26(b)(3)(A)(ii) for it, nor did they make any attempt to do so. Any questioning concerning this area should be barred.[1]

Additionally, this "evidence" does not have any tendency to make any fact that is of consequence more or less probable in determining Plaintiff's claims against Defendants in this action, and is therefore not relevant under Fed. R. Evid 402. While Plaintiff does not concede there is any probative value in the fact that Plaintiff's counsel did not discuss with their expert in the course of this civil litigation the possibility of administering a polygraph to Plaintiff, should the Court determine there is any probative value, any such value is vastly outweighed by the danger that its admission would confuse the issues, mislead the jury, and create a substantial risk of unfair prejudice pursuant to Fed. R. Evid. 403. Therefore, any mention or reference to this area of inquiry should be barred.

Defendants should not be allowed to benefit from an inappropriate question which both introduces irrelevant and prejudicial issues and obviously violates the protection provided by Fed. R. Civ. P. Rule 26(b)(4)(c) and Fed. R. Evid. 502.

**2.    Defendants should be barred from adducing irrelevant and prejudicial testimony about Professor Honts' former research on child witnesses.**

Throughout discovery, Police Defendants have made clear that they will attempt to show

---

[1] Notably, Professor Honts determined that the polygraph examination administered by Defendant Bartik indicated that Ms. Harris was truthful – results that    Bartik lied about when he told Ms. Harris she had failed the polygraph test.

the jury that Plaintiff is not innocent by attempting to show that her then five-year-old son Diante was not a competent witness and therefore his exculpatory testimony – in which he indicated he observed his younger brother wrap the bed sheet elastic band around his own neck – was properly excluded at the criminal trial.

Plaintiff retained Dr. Robert Galatzer-Levy, a psychiatrist with vast experience in evaluating the competency of child witnesses, to serve as her expert on this issue. Plaintiff did *not* retain Professor Charles Honts as an expert on this topic, and Professor Honts issued no opinions related to the issue of child witnesses, as is evidenced in the opinion disclosed to Defendants. (Exh. B, Honts Rpt. and CV). Professor Honts' opinion relates solely to Defendant Bartik's polygraph examination and its role in the Defendants' alleged investigation of Ms. Harris. (*Id.*) Indeed, Professor Honts testified that he does not hold himself out to be an expert on child witnesses, as he has not kept up with the literature in this field. (Exh. A at 14-16, 111-114). However, Defendants elicited at Professor Honts' deposition that earlier in his career he conducted research which showed that in one setting, an adult like a parent could persuade a child to lie 75% of the time. (*Id.* at 113). This research has no impact on the opinions offered by Professor Honts in this litigation, and thus any questioning in this area is irrelevant and should be barred. Furthermore, a parent was not responsible for eliciting Diante's observations of his brother's death which exonerate Ms. Harris. In fact, he consistently described how his brother accidentally killed himself on three different occasions: once to Ale Levy of the Child Advocacy Center; once to Karen Wilson from the Department of Children and Family Services; and once in a court setting. Thus, this dated research is not only irrelevant or inapplicable with respect to the evidence in this case, but is also highly prejudicial and should be barred pursuant to Fed. R. Evid. 402 and 403.

The Court should therefore preclude Defendants from inquiring of Professor Honts about his inapplicable research and any testimony related thereto.

**3.     The income Professor Honts generated from work in other cases as compared to the amount he charged in this matter is inadmissible under Fed. R. Evid. 401, 402 and 403.**

At their deposition of Professor Honts, Defendants inquired about his income from other cases in which he testified as an expert witness. In particular, they inquired about his work with New York City law firm Neufeld, Scheck and Brustin, the Innocence Project in New York City, and "Northwestern." (Exh. A at 36, 39-44). Professor Honts' invoices in this case reflect more hours and greater income than in other cases (*id.* at 42-43), in part due to his work in evaluating evidence to support Plaintiff's *Monell* claims, which this Court has bifurcated from the trial set for February 13, 2017.

Even if the work here and in the previously mentioned cases were on a par, such testimony would be irrelevant. But because the quantity of hours worked in this matter – and thus Professor Honts' billable hours – exceeds the work expended in those other cases, adducing such testimony could create unfair prejudice, including suggesting to the jury that he was paid additional money in this case to provide this opinion.

This "evidence" does not have any tendency to make any fact that is of consequence more or less probable in determining Plaintiff's claims against Defendants, and is therefore not relevant under Fed. R. Evid. 401 and 402. While Plaintiff does not concede there is any probative value, should the Court determine there is probative value, any such value is vastly outweighed by the danger that its admission would confuse the issues, mislead the jury, and create a substantial risk of unfair prejudice, and should be barred pursuant to Fed. R. Evid. 403. The Court should therefore

5

exclude such evidence.

4. **The estimated cost of Professor Honts' work to comply with Defendants' overbroad documents subpoena in this matter is inadmissible under Fed. R. Evid. 401, 402 and 403.**

Police Defendants served Professor Honts with an overbroad and far-reaching documents subpoena, seeking "any and all materials on all cases identified in pages 46-51 of your CV, including but not limited to all electronic information that you have on cases in the last 10 years," "any and all billing records and time sheets directed to Northwestern (including all sub entities)," and "any and all professional publications and reports identified in your CV." (Exh. C, Honts subpoena).

When defense counsel inquired during deposition about complying with the subpoena, Professor Honts testified that it would consume a significant amount of his time to locate and produce the requested materials. Defense counsel understood that this time would be compensated, and Plaintiff's counsel offered to provide an estimate. (Exh. A, 168-170).

Following the deposition, once the estimate was provided and Professor Honts explained that he would need to contact various counsel and seek permission to disclose the requested materials, Defendants' counsel apparently decided not to further pursue the matter. (Exh. D, emails between counsel concerning compliance with Defendants' subpoena).

All questioning concerning this subpoena, the costs of responding, and Defendants' decision to abandon it should be barred. As with evidence of Professor Honts' fees on other retained cases, this "evidence" does not have any tendency to make any fact that is of consequence more or less probable in determining Plaintiff's claims against Defendants. It is therefore not relevant under Federal Rules of Evidence 401 and 402. It is also inadmissible pursuant to Fed. R.

Evid. 403. The Court should therefore exclude such evidence.

## Conclusion

For all of these reasons, Plaintiff respectfully requests that this honorable Court to enter an order granting her motion in limine and limiting Defendants' inquiry of Plaintiff's polygraph expert Professor Charles Honts accordingly.

Dated: January 6, 2017

Respectfully submitted,

/s/ Jan Susler
One of Nicole Harris' Attorneys

Janine L. Hoft
Joey L. Mogul
Jan Susler
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070

Nicole N. Auerbach
Stuart J. Chanen
Margot Klein
Valorem Law Group
35 E. Wacker Dr., Suite 3000
Chicago, IL 60601
(312) 676-5460

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
357 E. Chicago Ave.
Chicago, IL 60611
(312) 503-4808

Counsel for Plaintiff Nicole Harris