IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICOLE HARRIS,                          )
                                        )
    Plaintiff,                          )
                                        )     No. 14-cv-4391
    v.                                  )
                                        )     Judge Darrah
CITY OF CHICAGO, et al.,                )     Magistrate Cox
                                        )
    Defendants.                         )

**PLAINTIFF HARRIS' MOTION IN LIMINE TO LIMIT
DEFENDANTS' INQUIRY OF PLAINTIFF'S EXPERT
PROFESSOR CHARLES HONTS**

**EXHIBIT A**

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICOLE HARRIS,                          )
                                        )
                Plaintiff,              )
                                        )
        vs.                             )No. 1:14 CV 04391
                                        )
CITY OF CHICAGO, Chicago Police         )
Officers ROBERT BARTIK, #3078;          )
DEMOSTHENES BALODIMAS, #21204;          )
ROBERT CORDARO, #20680; JOHN J.         )
DAY, #20926; JAMES M. KELLY,            )
#21121; MICHAEL LANDANDO, #20417;       )
ANTHONY NORADIN, #21252; and            )
RANDAL WO, #20232; Assistant Cook       )
County State's Attorneys ANDREA         )
GROGAN and LAWRENCE O'REILLY; and       )
the COUNTY OF COOK,                     )
                                        )
                Defendants.             )

        The deposition of CHARLES R. HONTS, Ph.D.,

called by the Defendant Chicago Police Officers for

examination, taken pursuant to notice and pursuant to

the Federal Rules of Civil Procedure for the United

States District Courts pertaining to the taking of

depositions, taken before Monica Kim, Certified

Shorthand Reporter, Registered Professional Reporter,

and Notary Public, at 53 West Jackson Boulevard,

Suite 330, Chicago, Illinois, commencing at 9:03 a.m. on

March 10th, 2016.

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 2

1    APPEARANCES:

2          PEOPLE'S LAW OFFICE
           MS. JANIS M. SUSLER
3          1180 North Milwaukee Avenue
           Third Floor
4          Chicago, Illinois 60642
           Phone:  773.235.0070
5          E-mail: jsusler@gmail.com

6              On behalf of the Plaintiff;

7

           GREENBERG TRAURIG, LLP
8          MR. JOHN F. GIBBONS
           77 West Wacker Drive
9          Suite 3100
           Chicago, Illinois 60601
10         Phone:  312.456.8400
           E-mail: gibbonsj@gtlaw.com

11
               On behalf of the City of Chicago;
12

13         HALE LAW, LLC
           MR. AVI T. KAMIONSKI
14         53 West Jackson Boulevard
           Suite 330
15         Chicago, Illinois 60604
           Phone:  312.870.6926
16         E-mail: akamionski@ahalelaw.com

17             On behalf of the Defendants Chicago Police
               Officers Robert Bartik, #3078; Demosthenes
18         Balodimas, #21204; Robert Cordaro, #20680;
           John J. Day, #20926; James M. Kelly, #21121;
19         Michael Landando, #20417; Anthony Noradin,
           #21252; and Randal Wo, #20232.

20

21

22                   *    *    *    *    *    *

23

24

Royal Reporting Services, Inc.
312.361.8851

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 14

1    Q.    Okay.   Thanks for the clarification.

2          In addition to polygraphs and whatever other

3    issues, you've been retained over 300 times on behalf of

4    criminal defendants?

5    A.    I would say that's fair.

6    Q.    Now, of the 400 times you've been retained,

7    how many times have you been retained on the issue of

8    polygraphs?

9    MS. SUSLER:   Objection, form, the number.

10   BY THE WITNESS:

11   A.    And, again, I don't know the absolute number.

12   I could say approximately 80 percent.

13   Q.    And on the -- As to the other 20 percent, what

14   other issues are you -- have you been retained to give

15   expert opinion on?

16   A.    I have -- Child witnesses, so proper

17   interviewing and assessment of the credibility of child

18   witnesses; interrogations; false confessions; eyewitness

19   testimony; statistics.

20   Q.    Any other issues?

21   A.    I don't believe so.

22   Q.    Of the 20 percent, how much related to child

23   witnesses?

24   A.    And I'm not -- I'm just having to estimate,

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 15

1   because I don't know the answer.  I'd say of the

2   20 percent, 5 percent of the 20 perc- -- or 5 percent --

3   If we're dividing the 20 percent --

4        Q.   Correct.

5        A.   -- 5 -- 5 of that 20 -- out of 25 would be on

6   child witnesses.

7        Q.   And how about on interrogations?

8        A.   Some of those overlap, because often I talk

9   about interrogations and false confessions at the same

10  time.  Interrogations only, there's only one case I can

11  think of.  And then the others have included both

12  topics.

13       Q.   How about false confessions?

14       A.   Same thing, they overlap.  So that's -- that's

15  the majority.  I've testified twice about eyewitness

16  testimony, and the rest is going to be interrogation and

17  false confessions.

18       Q.   And how many times have you testified on

19  statistics?

20       A.   Once.

21       Q.   Do you hold yourself out to be an expert on

22  statistics?

23       A.   I certainly have the -- I mean, I'm qualified

24  to give expert testimony on statistics, yes.

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 16

1    **Q.**    And you --

2    **A.**    I was trained quantitatively.

3    **Q.**    And you hold yourself out to be an expert on

4    eyewitness testimony?

5    **A.**    I have.  I've given testimony on that.  I

6    don't seek that work at all.

7    **Q.**    And you hold yourself out to be an expert on

8    interrogations and false confessions?

9    **A.**    Yes.

10   **Q.**    And you hold yourself out to be an expert on

11   child witnesses?

12   **A.**    I felt like -- I felt that I was qualified in

13   that area at one time.  I don't do that work anymore.

14   **Q.**    Do you feel you're no longer qualified in that

15   area?

16   **A.**    Well, I -- I'm no longer current in that area.

17   There's just too much to read.

18   **Q.**    Of the total times that you've been retained

19   as an expert regarding polygraphs -- And so I guess in

20   the 80 percent of your retention work -- Of those times,

21   how many times have you been critical of a polygraph

22   exam that someone else gave?

23   **A.**    Uh-huh.  I don't -- Again, I don't know the

24   answer to that.  Over the last few years, there have

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 36

1   the Neufeld Scheck?

2       **A.**   Yes.

3           Well, when you say "consulted with," do you

4   mean retained or do you mean talked to them?  Because

5   I've talked to them informally about a number of cases.

6   I've only been -- I had formal involvement on five, and

7   not all of those I was paid on.  Two of those were

8   pro bono.

9       **Q.**   On the informal stuff -- Do you get paid on

10  any of the informal stuff?

11      **A.**   No.

12      **Q.**   So you were paid on three of the five cases?

13      **A.**   That's my recollection.

14      **Q.**   Do you recall how much money you've been paid

15  by their office?

16      **A.**   No, I don't.

17      **Q.**   Would you estimate over $50,000?

18      **A.**   No.

19      **Q.**   Would you estimate over $30,000?

20      **A.**   I would say it's between 20 and 30.

21      **Q.**   And your informal -- How often is the informal

22  discussions with them?

23      **A.**   It varies.  I'd say about once a year either

24  one of them will call me up and say, "What about this?"

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 39

1    BY THE WITNESS:

2        **A.**    I'd have to go back to my records, but it's

3    four or five now over the years.

4        **Q.**    And how many informal discussions with them?

5        **A.**    I don't recall any with them.

6        **Q.**    Did all the Northwestern cases -- Any of the

7    Northwestern cases pro bono?

8        **A.**    No.

9        MS. SUSLER:  And just for the record, I'm just

10   going to have a continuing objection to your lumping

11   everyone as "Northwestern."  But go ahead.

12   BY MR. KAMIONSKI:

13       **Q.**    Okay.  And what are the names of all the

14   Northwestern cases you worked on?

15       **A.**    I'd have to go back through my files at home

16   to tell you that, because not all of them resulted in

17   testimony.  Livers, Juan Rivera, Corethian & Bell.

18   Seems to me there was -- There was another case that I

19   worked on with them that didn't ever really go anywhere.

20   And I don't know whether I got paid anything on that one

21   at all.  I don't remember the name of it.

22            There may only be four.  The three that I've

23   mentioned are the ones that have considerable

24   involvement.  There may have been others that were just

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 40

1    brief involvement.  I don't recall the names.

2         Q.   Okay.  Other than this case and Corethian

3    Bell, have you ever been consulted on a Chicago Police

4    Department case?

5         MS. SUSLER:  Just for clarification, by "this

6    case," you mean Livers v. Schenck?

7         MR. KAMIONSKI:  No.  I'm -- No.  Livers is from

8    Nebraska.

9         THE WITNESS:  Yeah.

10   BY MR. KAMIONSKI:

11        Q.   I'm talking about the Nicole Harris case.

12   Other than Nicole Harris and Corethian & Bell --

13        MS. SUSLER:  Objection, form.

14   BY MR. KAMIONSKI:

15        Q.   Let me finish my question.  Other than

16   Corethian Bell and Nicole Harris, have you ever been

17   consulted on or retained in connection with a Chicago

18   Police Department case?

19        MS. SUSLER:  Objection, form.

20   BY THE WITNESS:

21        A.   Well, Juan Rivera is from this area.  I don't

22   know if that was Chicago PD.  I don't remember.

23        Q.   Okay.  Anything --

24        A.   Other than that, no, I don't think so.

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 41

1    **Q.**    How much money has Northwestern paid you in

2   all the work you've ever done for them?

3    MS. SUSLER:  Well, same objection about

4   characterization of "Northwestern."

5   BY THE WITNESS:

6    **A.**    I have no idea.  I just -- I really don't.

7   Much less than Neufeld Scheck & Brustin.

8    **Q.**    Less than $20,000?

9    **A.**    I would say so.

10    **Q.**    In all the cases?

11    **A.**    I think that's true.

12    **Q.**    Less than $10,000?

13    **A.**    I doubt it.  I think it would be more than

14   that, but I think it's less than 20.

15    **Q.**    Less than 20.

16    And did you give them any discounts?

17    **A.**    No.  Some of those cases go back some

18   distance, so I charged less back then but no discounts

19   really.

20    **Q.**    And in this case -- What is your hourly rate

21   in this case?

22    **A.**    $400.

23    **Q.**    Is that for everything $400 per hour no matter

24   what you do?

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 42

1      **A.**    Yes.

2      **Q.**    Other than the deposition and trial dates?

3      **A.**    Right.   Those are 4,000 a day.

4      **Q.**    And how many hours -- Have you billed -- Have

5    you billed the lawyers in this case yet?

6      **A.**    I have.

7      **Q.**    Have you been paid?

8      **A.**    One invoice has been paid, and the other one

9    hasn't yet.

10     **Q.**    And do you keep billing records like time

11   sheets?

12     **A.**    I do.

13     **Q.**    How much time have you -- have you spent on

14   this case?  You know, let me break it down.  How much

15   time did you spend on this case at the time you

16   completed your report?

17     **A.**    I'd have to look at -- I'd have to look at the

18   invoice.  I believe it was -- It was over 50 hours.  I

19   think it was 56 maybe.  I'd have to look.

20     **Q.**    So if it's -- Do you know how many hours

21   you've spent since the completion of your report on this

22   case?

23     **A.**    None.

24     **Q.**    If we're going at 56 hours times $400 an hour,

Royal Reporting Services, Inc.
312.361.8851

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 43

1  my math is $22,400.  Does that make sense that that's

2  what the bills have been to date?

3      A.    It's very close to that.  It's about 22,000.

4  It might not quite be 56 hours then, because I think it

5  was just shy of 22,000.

6      Q.    And how much of that has been paid?

7      A.    About half.

8      Q.    And for today -- You charged us for the two

9  days $8,000?

10     A.    Yes.

11     Q.    So far about $30,000 in this case?

12     A.    Yes.

13     Q.    How much time did you spend on the Matthew

14  Livers case?

15     A.    I don't remember.  It wasn't anywhere near as

16  much as this.  I don't remember.  I will guess -- I

17  don't know.  I've reviewed polygraphs by several people

18  and wrote a report and gave a deposition.  So I don't --

19  I'd have to look it up.  I don't know.  15 hours.  But

20  that's just a wild guess.

21     Q.    Plus the dep day?

22     A.    Actually, I wasn't charging by the day at that

23  time, so that was just the hours spent.  And the dep was

24  done in Boise, so it was about four hours for that.

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 44

1     **Q.**   Is that in addition to the 15?

2     **A.**   No.   That was included.   It was -- I don't

3    remember working that much on the Livers case.   Although

4    I had two -- two rounds of involvement in the Livers

5    case -- No.   I take that back.   I didn't.   I'm wrong.

6    That was not a case.   That was just -- That was all the

7    postconviction stuff with Livers.

8     **Q.**   Were you permitted to testify in Livers?

9     **A.**   No.   It settled before.

10    **Q.**   Did you testify in Corethian Bell?

11    **A.**   No.   I gave a deposition.

12    **Q.**   Do you know why you didn't testify in

13   Corethian Bell?

14    **A.**   I believe it settled as well.   Yeah.   I

15   believe that's the case.   I don't remember that I was

16   ever told.   I discovered that it had settled in reading

17   some news articles or something.

18    **Q.**   What was the issue of suitability in Livers?

19    **A.**   You know, now that I'm thinking about that

20   case, I'm not -- I'm not certain there was one that

21   was -- there was one, because that was -- that was more

22   about how the tests were run and the scoring.   I'd have

23   to go back and review my report to give you a complete

24   answer on that.

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 111

1    It was a -- It was a critique of the interview.   The

2    interview was done poorly.

3        **Q.**   Was it on video?

4        **A.**   It was.

5        **Q.**   92?

6        **A.**   92.   That was also a child witness case.

7    Again, I critiqued an interview that was recorded.   I

8    thought it was done poorly.

9        **Q.**   Do you have, like, some theories in child

10   witness interviews that you think they should be done

11   differently than adult interviews?

12       MS. SUSLER:   Objection, form.

13   BY THE WITNESS:

14       **A.**   Yes.   There are -- There are differences

15   between interviewing adults and children.   There's a --

16   There's a protocol that was developed by the federal

17   government by the National Institute of Child Health and

18   Human Development that embodies a substantial body of

19   literature about how children should be interviewed.

20            And the issue with children is that --

21   especially young children is that they're -- they're

22   much more suggestible than adults.   Although adults can

23   be suggestible as well.   And it's critical that the

24   interviewer not -- not do a leading or suggestive

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 112

1    interview.  And the other difficulty with small children

2    is to get them to produce narrative responses.

3            And so the NICHD protocol has a series of

4    techniques that are used to -- to help train the person

5    to -- the child to give you narrative responses before

6    you actually get into the issues of the case.

7        **Q.**    You conducted research on child interviews?

8        **A.**    I have a little.

9        **Q.**    And do you concur with the -- that child --

10   the child witnesses are more suggestible?

11       **A.**    Yes.

12       **Q.**    And do you find -- In your experience, do you

13   find them also easily manipulate -- not manipulated but

14   easily suggestible depending on the gravity of the

15   situation?

16       MS. SUSLER:  Objection, form.

17   BY MR. KAMIONSKI:

18       **Q.**    If it's -- Do you find -- Do you find that in

19   your research that -- that children will sometimes lie

20   if they -- if they think the event is very traumatic or

21   scary for them, for lack of a better term?

22       MS. SUSLER:  Objection, form, foundation, and

23   incomplete hypothetical.

24

Royal Reporting Services, Inc.
312.361.8851

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 113

1    BY THE WITNESS:

2        A.   I'm actually not sure what you're getting at

3    there.  The work that I did was about will children make

4    false accusations?  And we were able through a fairly --

5    a fairly simple manipulation in our laboratory to get

6    children to falsely accuse someone of stealing something

7    to a police -- a person they believed was a police

8    officer.  And we were able to get about 75 percent of

9    the children who went through our study at seven years

10   of age to make false accusations.

11       Q.   And in your study, who were the -- who were

12   the individuals that were suggesting to the kids to make

13   the false accusations?

14       A.   The person who stole the -- In some cases, it

15   was the person who stole the item.  In other cases, it

16   was a parent who was working with us as a confederate.

17       Q.   I missed it.  As a what?

18       A.   As a confederate.  So the parent was working

19   with us as part of our study.

20       Q.   The parent of that specific child?

21       A.   Yes.

22       Q.   And you found that the parent of the child was

23   able to get the child to lie?

24       A.   Yes.

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 114

1      Q.    Did you reach any conclusions why the parent

2    of the child would be able to get the child to lie?

3      A.    No.

4      Q.    And that -- And your research showed in that

5    75 percent of the time that an adult like a parent could

6    be successful in persuading their child to lie?

7      A.    Yeah, in that one setting.

8      Q.    Okay.  91?

9      A.    We talked about that case.  It's a homicide

10   case.  The -- A witness informant was --

11     Q.    Got it.

12     A.    -- was polygraphed --

13     Q.    Okay.  I've been trying to mark these off, but

14   I might have missed one.

15           Number 89.  What's a Rule 11-707?

16     A.    707 is the admissibility rule in New Mexico,

17   so that's the rule that governs the admissibility of

18   polygraphs.

19     Q.    And did you -- Were you reviewing a polygraph

20   that was conducted by the law enforcement?

21     A.    Yes.  That's the same case as 91.

22     Q.    Got it.  Okay.  87?

23     A.    87 was an eyewitness case.  It was about the

24   reliability of an eyewitness.

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 149

1    standards.  American Polygraph Association is a -- set

2    standards and accredits polygraph schools.  They publish

3    two -- They publish a magazine and a journal.  The

4    journal has now reached acceptable scientific status.

5    It's listed in the scientific indexes as a peer-reviewed

6    journal.  So it's now indexed and peer-reviewed.  And I

7    do work with them.  I'm -- I'm an associate editor of

8    their journal.  And I've spoken at APA a couple of times

9    and at APP as well, but I just don't feel a need to be a

10   member of the organizations.

11           The scientific organizations do a lot of other

12   stuff that they also provide standards in but publish a

13   lot of journals.  So both APS and APA on the psych side

14   are major contributors and supporters of scientific

15   psychology.

16       Q.   Were there any discussions in your retention

17   about conducting an additional polygraph on Nicole

18   Harris?

19       A.   There were not.

20       MS. SUSLER:  Well, objection.  Objection.  I think

21   that's privileged.

22       MR. KAMIONSKI:  I'm sorry.

23       MS. SUSLER:  Well, you know better than that.

24       MR. KAMIONSKI:  I -- Well, I -- I wasn't -- I

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 150

1   should have phrased it differently.

2       MS. SUSLER:  Move to strike the answer.

3   BY MR. KAMIONSKI:

4       Q.  Do you have a supervisor?

5       A.  At Boise State, yes.

6       Q.  What's his name?

7       A.  Roberto Refinetti.

8       Q.  Is he the head of your department?

9       A.  Yes.

10      Q.  Is he also a professor?

11      A.  He is.

12      Q.  Are you -- Do you know what the law is in

13  Illinois about the admissibility of polygraphs?

14      A.  I believe I do, but I couldn't tell you how I

15  know that.  I believe they're inadmissible here.

16      Q.  And you've -- You're aware of other states

17  it's inadmissible as well?

18      A.  Oh, yes.

19      Q.  What do you think the purpose is of polygraphs

20  in a law enforcement setting if polygraphs are not

21  admissible in court?

22      A.  They're used as a supplement to investigation

23  to make determinations about who's to believe and who

24  not.  So they are a way of narrowing your field of

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 168

1    MS. SUSLER:  I figured you did.

2    MR. KAMIONSKI:  I just want to go through my notes.

3  BY MR. KAMIONSKI:

4    Q.   We went over -- We went over, like, certain

5  things I asked you, like, if you had certain documents

6  available, easy access to them.

7    A.   Uh-huh.

8    MR. KAMIONSKI:  So sorry.  But I drafted -- We got

9  a subpoena drafted.  And I can -- to give it to you and

10 just we can -- or I can serve it or -- It's fine.  We

11 could serve it to you.  But this is a subpoena for

12 documents that we talked about today.  And there's a

13 rider detailing that.

14   Let me do this.  Let me take about five minutes, a

15 little bit more, go through my notes, and then we can

16 hopefully wrap up.  Okay?

17   MR. GIBBONS:  Would it make sense if I asked some

18 questions as you're doing that, or, Jan, do you have a

19 standing objection that he has to finish before I

20 commence?

21   MS. SUSLER:  No.  That's fine.  I'm just assuming

22 that if you're asking him to look through documents,

23 you're going to pay him for his time?

24   MR. KAMIONSKI:  Okay.

Royal Reporting Services, Inc.
312.361.8851

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 169

1      MS. SUSLER:  I mean, I don't have any objection to

2    him producing anything that he has.

3      MR. KAMIONSKI:   Perfect.

4      MS. SUSLER:  It's the materials.

5      THE WITNESS:  The cases.

6      MS. SUSLER:  All materials on all cases identified

7    in pages 46 to 51 of your CV.

8      THE WITNESS:  In the last ten years.

9      MS. SUSLER:  Billing records.

10         Yeah, yeah.

11     THE WITNESS:  So in the last ten years.

12     MS. SUSLER:  Billing records directed to

13   Northwestern, billing records directed to us, and

14   publications and reports.

15         Well, the publications and reports, I mean, if

16   they're not available to the public, then he can get

17   those to you.  But the ones that were available, I don't

18   know why he has to produce those to you.

19     MR. KAMIONSKI:  I don't mind if they're available

20   to the public, just if he could -- if someone could send

21   me e-mails like where do I find -- where do I get all

22   these?  And I can buy them online if that's what it

23   takes, to buy them online or print them offline.  I

24   don't mind doing that.  Just -- I'd like to know where

Royal Reporting Services, Inc.
312.361.8851

Nicole Harris v. City of Chicago, et al.
Deposition of Charles R. Honts, Ph.D. - Taken 3/10/2016

Page 170

1   to go.

2       MS. SUSLER:  All right.  We'll respond to this

3   after the dep.  I don't want to take up your time during

4   the dep.

5       THE WITNESS:  I will tell you that you're looking

6   at a large amount of time to get all of that together.

7       MS. SUSLER:  If you want, we can give an estimate.

8           But I don't want to take your time --

9       MR. KAMIONSKI:  Perfect.

10      MS. SUSLER:  -- during the deposition to respond to

11  the subpoena unless you want to.

12      MR. KAMIONSKI:  No.  We don't need to do that right

13  now.  I'm going to go over my notes and John is going to

14  ask some questions, but I can ask some questions after

15  John.

16                      EXAMINATION

17  BY MR. GIBBONS:

18      Q.   Mr. Honts, my name is John Gibbons.  I

19  represent the City of Chicago in this case.

20           Now, I think you have in front of you your

21  report, which has been marked as Exhibit 148; is that

22  right?

23      A.   Yes.

24      Q.   Starting on page 1, in the middle of the page,

Royal Reporting Services, Inc.
312.361.8851