## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NICOLE HARRIS,               )
             Plaintiff,       )
 v.                       )     No. 14-cv-4391
                         )
CITY OF CHICAGO, et al.,    )     District Judge John W. Darrah
                         )
            Defendants.     )

### PLAINTIFF NICOLE HARRIS' MOTION IN LIMINE # 19,
### TO ADMIT THE EXPERT TESTIMONY OF DR. RICHARD LEO AND TO BAR
### ANY TESTIMONY OF DEFENDANTS' PURPORTED EXPERT PAUL CASSELL

Plaintiff Nicole Harris moves both to admit the testimony of her false confession expert, Dr. Richard Leo, whose Rule 26 expert report is attached as Exhibit A, and to bar the testimony of the Defendants' proffered counter-witness Paul Cassell, whose Rule 26 expert report is attached as Exhibit B.

Dr. Leo is a social scientist who has spent the past 25 years conducting research, studying, and writing about police interrogation and the risk of obtaining false confessions using certain interrogation techniques.  *See* Leo CV, Exh. C.  Paul Cassell is a former prosecutor, Supreme Court Clerk, and federal district court judge who is not a social scientist, has not conducted research in the field, and is a self-appointed denier of a legal principle that the Seventh Circuit adopted as the law of this Circuit more than 20 years ago.  *See U.S. v. Hall*, 165 F.3d 1095 (7th Cir. 1999) (affirming admissibility of expert social science testimony on causes of false confessions).  As set forth in detail below, the Seventh Circuit and at least three judges in this district have repeatedly applied the holding of *Hall*, including both to the testimony of Dr. Leo himself and to the principles he intends to set forth in his testimony.

As is well-known to this Court, consideration of expert testimony is governed by Fed. R. Evid. 702 and case law interpreting that rule.  In resolving whether to admit or exclude certain testimony, the Court is directed to employ a three-part test:

(1) is the tendered witness qualified as an expert by his knowledge, skill, experience, training, or education?;

(2) is the witness's reasoning or methodology underlying his testimony scientifically reliable?; and

(3) has the witness applied scientific methods and principles reliably to the facts of the case, and will such testimony assist the trier of fact in understanding the evidence or in resolving a disputed factual issue?

*Myers v. Illinois Cent. R.R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010); *Caine v. Burge*, 11 C 8996, 2013 WL 1966381, at *2 (N.D. Ill. May 10, 2013). Rule 702 also requires that the testimony must be based upon sufficient facts or data. *Zamecnik v. Indian Prairie Sch. Dist. No. 204,* 636 F.3d 874, 881 (7th Cir. 2011) (quoting Fed. R. Evid. 702).

Under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), this Court is charged as a "gatekeeper" of what expert testimony to admit. Here, the defendants have proffered Cassell <u>not</u> as a social psychology expert on the causes of false confessions, but rather as a "former federal judge," hired exclusively to try to convince the Court that it should block Dr. Leo from testifying. Cassell repeatedly boasts, in his CV, written report, and deposition, that he has gotten Dr. Leo's and other social scientists' testimony excluded. (*See, e.g.*, Cassell Rpt., Exh. B, at 3 n.5 and 39-46; Cassell CV, Exh. D, at 10; Cassell Dep., Exh. E, at 31:03-08 (hereafter "Cassell at").) Interestingly, however, Cassell conceded at his deposition that he has never testified before a jury as a false confessions expert. (Cassell at 90:2-5.) And he omits that in 75% of the cases on which he bases his argument, the court considered the admissibility of the expert testimony under the inapplicable *Frye* test and not the FRE 702/*Daubert* test that applies to this case. And zero percent of the cases upon which he relies are from the Seventh Circuit, which has already and extensively ruled on the issue. Indeed, as discussed below, Cassell's position flies directly in the face of well-established Seventh Circuit law. Sections I-III of this memorandum

2

explain why Dr. Leo's proposed testimony is admissible, and Sections IV.A & IV.B explain why

Professor Cassell's proposed testimony is not.

**I.      The Seventh Circuit, as well as several district judges in this circuit, have already concluded that (1) Dr. Leo is qualified to issue the opinions he had tendered; (2) his reasoning and methodology are scientifically reliable, and (3) his testimony will assist the trier of fact understand the evidence and/or determine a factual issue.**

More than 20 years ago, in *U.S. v. Hall*, No. 94–20036 (C.D. Ill. 1995), Judge Harold Baker

rejected the proffered testimony of social psychologist Dr. Richard Ofshe under Rule 702.

Defendant Hall sought to qualify Dr. Ofshe as an expert in the fields of police interrogation and

false confessions and sought to offer his opinions on (a) the existence of false confessions, (b) the

coercive police interrogation techniques which are likely to produce false confessions, and (c) the

fact that individuals can be coerced into giving false confessions.  Judge Baker rejected the request,

holding that:  (1) Dr. Ofshe's proposed testimony would need to judge the credibility of an FBI

polygrapher and a County Sheriff who had interrogated Hall; and (2) Dr. Ofshe's testimony would

add nothing to what the jury would know from common experience.  *See Hall*, 93 F.3d 1341. The

Seventh Circuit reversed, holding:

> One of the hallmarks of the American criminal justice system is the importance it attaches to the protection of the rights of criminal defendants. Just because someone is charged as a defendant does not mean that he committed the crime in question; that simple truth lies behind the presumption of innocence and the many procedural rules that combine to assure that due process is observed.
>
> In this direct criminal appeal, we confront one of the most disturbing claims that can be brought:  [A criminal defendant] asserts that the government got the wrong man when it convicted him for the kidnapping (and murder) of [the victim] . . ..  He tried to show this through the use of certain expert testimony[] that would have put before the jury his claim that his "confession" to the crime was actually false.  Because we believe that the district court erred in excluding this testimony, we reverse and remand for a new trial.

*Id.* at 1339.  The Seventh Circuit went on to explain that the district court had erroneously

"overlooked the utility of valid social science. . . .  Even though the jury may have had beliefs

about the subject, the question is whether those beliefs were correct.  Properly conducted social

science research often shows that commonly held beliefs are in error. Dr. Ofshe's testimony, assuming its scientific validity [which the Court discussed separately], would have let the jury know that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried." *Id.* at 1345.

On remand, U.S. District Court Judge Billy Joe McDade conducted a hearing on Dr. Ofshe's qualifications and opinions, denied the government's motion to exclude his testimony, and permitted him to testify that:

> (1) experts in his field agree that false confessions exist;
>
> (2) individuals can be coerced into giving false confessions, and
>
> (3) there exist identifiable coercive police interrogation techniques which are likely to produce false confessions.

*U.S. v. Hall*, 974 F. Supp. 1198, 1199 (C.D. Ill. 1997). The Seventh Circuit affirmed. *U.S. v. Hall*, 165 F.3d 1095 (7th Cir. 1999). With one blip of an exception discussed here in a footnote,[1] *Hall* has remained the controlling law in this and many other circuits for more than 20 years.[2]

Applying *Hall*, Judge Milton Shadur allowed Dr. Ofshe's testimony, concluding that his qualifications and opinions had met *Daubert* standards "by a wide margin" on numerous prior

---

[1] The blip is as follows: Two-and-a-half years *after* the Seventh Circuit issued *Hall*, the district court in *U.S. v. Mamah*, 00 CR 396, 2002 WL 34358182 (N.D. Ill. Feb. 4, 2002) barred Dr. Ofshe from providing similar testimony that the Seventh Circuit had expressly permitted in *Hall*. The district court held that "Dr. Ofshe's proposed expert testimony will not assist the trier of fact to understand or determine a fact in issue" and "is not admissible." *Id*. at *3. "Were it to be received," the court held, "the jury's ability to speculate would be exalted and the risk of jury confusion apparent. This prejudice overrides any possible probative value attendant to the proffered evidence." *Id*. Remarkably, the district court reached this conclusion without citing or distinguishing *Hall*. On appeal, a different panel of the Seventh Circuit – which also ruled without citing *Hall* – affirmed. *U.S. v. Mamah*, 332 F.3d 475, 477 (7th Cir. 2003). The circuit split was not considered *en banc*, but no judge of that or any other court has ever cited *Mamah*, and as seen throughout the remainder of this brief, it is the Seventh Circuit's opinion in *Hall* that remains the Circuit's controlling precedent.

[2] Several other federal courts of appeal have adopted the same position. *See, e.g., U.S. v. Shay*, 57 F.3d 126, 134 (1st Cir. 1995); *Soffar v. Dretke*, 368 F.3d 441, 478 (5th Cir. 2004); *Baylor v. Estelle*, 94 F.3d 1321, 1324–25 (9th Cir.1996); *Lunbery v. Hornbeak*, 605 F.3d 754, 763-65 (9th Cir. 2010) (Hawkins, J., concurring).

occasions.  *Scott v. City of Chi.*, 07 C 3684, 2010 WL 3034254 at *5 (N.D. Ill. Aug. 3, 2010) (*citing Hall,* 974 F. Supp. at 1205 (C.D. Ill. 1997), *aff'd*, 165 F.3d 1095 (7th Cir. 1999)).  Judge Shadur permitted Dr. Ofshe to testify both as to the phenomenon of false confessions and also:

> how he finds that the competing versions of [Plaintiff] Scott and Detective Fassl fit or do not fit "the model of interrogation influence developed in [Dr. Ofshe's] published articles." That is quite different from Ofshe's opining on the credibility of the two witnesses, as defense counsel would have it—instead his evaluations for the most part accept each one's testimony for what it is, properly leaving it to the jury to make the credibility determination and to decide (1) whether to accept Ofshe's model and (2) how that plays out in terms of the jury's credibility determination.

*Id*. at *5.

Three years later, in *Caine v. Burge*, 11 C 8996, 2013 WL 1966381 (N.D. Ill. May 10, 2013), Judge Thomas Durkin also admitted the testimony of Dr. Leo. With regard to his requisite "knowledge, skill, experience, training, [and] education," the Court held:

> Dr. Leo has a Ph.D. in social policy (specializing in criminology and social psychology) from the University of California, Berkeley, a master's degree in social sciences from the University of Chicago, and a bachelor's degree in sociology (with honors) from the University of California, Berkeley.  Dr. Leo is both a professor and research scholar at the University of San Francisco, and a fellow at the Institute for Legal Research Criminal Justice Studies Program at Berkeley. . . . Dr. Leo has authored dozens of peer-reviewed publications in the field of police interrogation and false confessions, and has been qualified to testify as an opinion witness over 200 times. Defendants do not challenge Dr. Leo's credentials. The Court concludes that Dr. Leo's education, experience, and knowledge qualify him as a witness who can render an opinion in the field of police interrogation and false confessions.

*Id.* at *1.  Judge Durkin next held that "it will be helpful for the jury to hear expert testimony on this issue."  *Id.* at *2.  Judge Durkin emphasized that "[a]lthough jurors' common sense may suggest to them that someone would never falsely confess to committing murder, Dr. Leo's testimony will educate jurors that false confessions sometimes *do* occur . . . and challeng[e] the common misperception among the public that once a person confesses to his guilt, he must be guilty," which, Judge Durkin concluded, we now know is not true.  *Id.* at *2 (*citing Hall*, 974 F. Supp. at 1206).  Judge Durkin held that just as Dr. Ofshe's testimony had in *Hall*, so too Dr. Leo's

testimony in *Caine* "would help the trier of fact determine whether the defendant falsely confessed after being subjected to coercive interrogation techniques." *Id.* (*citing Hall*, 974 F. Supp. at 1206). (Notably, *Mamah* is not cited.) Emphasizing that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system," Judge Durkin continued:

> Rule 702 allows opinion witnesses to testify if the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert applies the principles and methods reliably to the facts of the case. . . . The Supreme Court has set forth the following nonexhaustive list of guideposts: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community. . . .
>
> Dr. Leo asserts that there is a well-established empirical field of research—dating back to 1908—in the academic disciplines of psychology, criminology, and sociology on the subject of police interrogation practices, psychological coercion, and false confessions. . . . Scientific researchers have analyzed the patterns, characteristics, and indicia of reliability in true and false confession cases, and examine the "fit" between the suspect's post-admission narrative and the underlying crime facts/evidence in order to evaluate the likely reliability or unreliability of an incriminating statement, admission, or full confession from a suspect. . . . Researchers have found that this practice, referred to as the "fit standard" in Dr. Leo's report, is susceptible to contamination by interrogators and the media, among other sources. . . . In addition to relying on social science research regarding the contamination of post-admission narrative statements, Dr. Leo cites various studies and research on coercive interrogation techniques used by law enforcement that have been found to induce false confessions.

*Id.* at *2-3 (internal citations omitted). Judge Durkin denied defendants' motion to bar Leo's testimony, holding that Dr. Leo's report, standing alone, demonstrated that the field of police interrogation practices, psychological coercion, and false confessions is sufficiently developed in its methods to constitute a reliable body of specialized knowledge under Rule 702. *Id.* at *3.[3]

---

[3] It is significant that Professor Cassell was the defendants' expert in *Caine*. He issued both a written report and gave a deposition, making the several of the same objections in that case that he makes here. Judge Durkin permitted Dr. Leo's testimony over those objections. It is also significant that with one exception not applicable to this footnote, Cassell cites and quotes only from cases where the judge was convinced not to permit false confession expert testimony. There are approximately 17 cases in all, but he does not cite *Hall*, *Scott*, or *Caine*. When we asked Cassell at his deposition why he did not include *Caine*, a case in which he actively participated, he asserted that he was simply unaware of Judge Durkin's 2013 ruling admitting Dr. Leo's testimony until he looked it up on a break during his 2016 deposition *in this case*. Cassell at 17 ("I didn't have any knowledge of any ruling in the Caine versus Burge case until today.").

Finally, in *Kluppelberg v. Burge*, No. 13 CV 3963, 2016 WL 6821138, 2016 U.S. Dist. LEXIS 162983 (N.D. Ill. Sept. 16, 2016) Judge Lefkow also allowed expert testimony on the social science on the causes of false confessions, citing the Seventh Circuit's *Hall* opinion, the District Court's *Hall* opinion, and Judge Shadur's *Scott* opinion for the proposition:

> Because Ofshe's methodology is sound and can be applied to the facts in this case, he may testify concerning the false-confessions phenomenon in general and how a person may use the "fit" method to determine whether a confession is false. Further, he may explain how Kluppelberg's confession is consistent or inconsistent with objectively knowable facts so as to explain how his confession fits with his model of a false confession. He may not, however, comment or indicate that he believes Kluppelberg's trial testimony about the interrogation over that of a defense witness's account of the event.

*Id*. at *15-16 (citation omitted).

In sum, the law in this Circuit overwhelmingly approves the methods of inquiry that Dr. Leo (and his colleague Dr. Ofshe) have applied to false confessions; overwhelmingly approves permitting testimony on these subjects, and like the 200+ other times he has been qualified, approves and strongly endorses Dr. Leo's qualifications to opine on the matter. After a diligent review, Ms. Harris had not found any published case law to suggest a contrary result, and according to Dr. Leo personally, his testimony has never been rejected in this district. This Court should follow the well-established circuit precedent and admit Dr. Leo's proposed testimony.

## II.     In 2012 and 2015, the Seventh Circuit further emphasized the admissibility of Dr. Leo's testimony in the context of an exoneration case.

Although the Seventh Circuit has not taken up the question of the admissibility of Dr. Ofshe's or Dr. Leo's testimony since *Hall* and *Mamah*, they have issued two other opinions that shed significant light on how it would rule if again presented with the question. These two cases unequivocally establish the Seventh Circuit's views on social scientific testimony related to interrogations and false confessions, even if they do so only in *dicta*.

In the first case, *Harris v. Thompson*, 698 F.3d 609 (7th Cir. 2012), which as this Court knows is a precursor to this case, the Seventh Circuit considered Ms. Harris's habeas petition on

the ground that her then six-year old son Diante Dancy should not have been barred from testifying that he saw his younger brother, four-year old Jaquari, had strangled himself with the elastic band from a bed sheet. *Id*. at 616. The Seventh Circuit held that the trial judge had committed constitutional error by not permitting Diante to testify, but went further to determine whether the trial court's constitutional error was harmless. *Id*. at 613. To determine whether the error was harmless, the Court weighed the evidence before the original jury against the evidence that had been wrongfully excluded. In holding that the error was not harmless, the Court concluded:

> The videotaped confession was powerful evidence, but the jury had reasons to question its reliability, too—*reasons in line with leading research on false confessions*. The jury knew the confession was the product of interrogation stretching over 27 hours at the police station. Cf. Saul M. Kassin et al., *Police–Induced Confessions: Risk Factors and Recommendations,* 34 L. & Hum. Behav. 3, 16 (2010) (noting that "false confessions tend to occur after long periods of time" and "sleep deprivation is historically one of the most potent methods used to ... extract confessions"). The jury knew Harris did not have an attorney present during this questioning and that, as a mother who had just lost her son, she was under stress and stricken with grief. Cf. Gisli H. Gudjonsson et al., *Custodial Interrogation, False Confession and Individual Differences: A National Study Among Icelandic Youth,* 41 Personality & Individual Differences 49, 56 (2006) (finding that depressed mood is linked to a susceptibility to provide false confession to police). The jury knew that Harris's initial, unwarned confession was inconsistent with the physical evidence—she said she had used the telephone cord. Only in later confessions (and after many more hours of interrogation) did she correct this curious discrepancy. See Brandon L. Garrett, *The Substance of False Confessions,* 62 Stan. L.Rev. 1051, 1087 (2010) ("The vast majority of these exonerees made statements in their interrogations that were contradicted by crime scene evidence, victim accounts, or other evidence known to police during their investigation.").[12] The jury also heard Harris testify that she had spent a sleepless night handcuffed in the interrogation room and that the police had threatened her, pushed her, called her names, and deprived her of food, water, and access to the bathroom, though she had said otherwise in the recorded confession.

> [12] See generally Richard A. Leo, *False Confessions: Causes, Consequences, and Implications,* 37 J. Am. Acad. Psychiatry & L. 332, 337 (2009) ("Interrogators help create the false confession by pressuring the suspect to accept a particular account and by suggesting facts of the crime to him, thereby contaminating the suspect's postadmission narrative.... If the entire interrogation is captured on audio or video recording, then it may be possible to trace, step by step, how and when the interrogator implied or suggested the correct answers for the suspect to incorporate into his postadmission narrative."); accord, Steven A. Drizin & Beth A. Colgan, *Let the Cameras Roll: Mandatory Videotaping of Interrogations Is the Solution to Illinois' Problem of False Confessions,* 32 Loy. U. Chi. L.J. 337, 339–41 (2001). See also Innocence Project, False Confessions & Recording of Custodial Interrogations, http://www.innocenceproject.org/Content/False_ Confessions_Recording_Of_Custodial_Interrogations.php (last visited Oct. 12, 2012)("Over 25 percent of the more than 290 wrongful convictions overturned by DNA evidence in the U.S. have involved some form of a false confession.").

*Harris*, 698 F.3d at 631-32 (emphasis added). While this opinion does not speak directly to the precise question of whether any of these experts' testimony would be admissible in a civil rights case, it nevertheless identifies a veritable "Who's Who" of interrogation and false confession experts – Leo, Kassin, Ofshe, Gudjonsson, Garrett, Drizin, and Colgan – and describes their work as the "*leading research on false confessions*." In other words, while the court in *Harris* did not undertake a three-step *Daubert* analysis, it could hardly have issued a stronger endorsement that Dr. Leo and his professional colleagues have sufficiently developed the scientific methods of analyzing false confessions to constitute a reliable body of specialized knowledge. This opinion, standing alone, identifies that the Seventh Circuit stands behind its 1996 opinion in *Hall*.

But the Seventh Circuit has gone further. In *U.S. v. West*, 813 F.3d 619 (7th Cir. 2015), the Seventh Circuit was presented with a psychiatrist's testimony related to the reliability of a confession. Defendant West had moved to admit the expert testimony of Dr. Steven Dinwiddie, a psychiatrist on the faculty of the Northwestern University Medical School specializing in forensic psychiatry. In *West*, even after the prosecutor admitted that Dr. Dinwiddie's testimony was admissible "on the issue of the trustworthiness or reliability of West's confession," the Court nevertheless excluded the proposed testimony on the ground that the jury might "confuse the issue" of the confession's reliability with the inadmissible issue of "whether he is crazy or not." Id. at 623–24. The Seventh Circuit reversed, holding:

> We've explained before that competent expert testimony is admissible when it helps establish "that someone interrogating [the defendant] would experience difficulty obtaining reliable answers[ ] because [the defendant] was easily led." . . . Indeed, our circuit's pattern jury instruction on confessions directs the jury to "consider all of the evidence, *including the defendant's personal characteristics,*" in deciding how much weight to give a defendant's inculpatory statement. Federal Criminal Jury Instructions of The Seventh Circuit § 3.09 (2012) (emphasis added).
>
> . . . Dr. Dinwiddie's testimony was clearly relevant and admissible on the issue of the reliability of West's confession, as the government itself acknowledged.

*Id.* at 624 (*citing Hall,* 93 F.3d at 1345). Although the proffered testimonies are not the same, the overriding principles in *West* and this case are identical. In *West*, the Seventh Circuit unequivocally reaffirmed "that competent expert testimony is admissible when it helps establish that someone interrogating the defendant under the circumstances would experience difficulty obtaining reliable answers" and "exactly the sort of evidence that a jury ought to be permitted to hear to assess the trustworthiness of the defendant's statements to the police*." Id.* As long as the proposed expert is capable of establishing these principles for the jury, the Seventh Circuit supports it. And, for the reasons stated in detail in the next section, Dr. Richard Leo clearly qualifies.

### III. Dr. Leo is qualified to provide the social science testimony he offers, and has been held to be qualified by numerous federal trial judges under *Daubert*.

There can be no serious dispute that Dr. Leo qualifies under *Daubert* to testify on the issue of false confessions. In his 2013 opinion in *Caine v. Burge*, Judge Durkin set forth Dr. Leo's qualifications in detail and concluded that his education, experience, and knowledge unquestionably qualified him as a witness who can render an opinion in the field of police interrogation and false confessions. 2013 WL 1966381, at *1. At almost the exact time, a federal district court judge in Nebraska reached the same conclusion. *Livers v. Schenck*, 8:08CV107, 2013 WL 5676881 at *4 (D. Neb. Oct. 18, 2013) ("[T]he field of police interrogation practices, psychological coercion, and false confessions is sufficiently developed in its methods to constitute a reliable body of specialized knowledge under Rule 702."). The court further held that Dr. Leo was qualified under Rule 702 to give such testimony and that his testimony "could be helpful to the jury in understanding the phenomenon of false confessions." *Id*. at *4. In finding Leo's testimony admissible in its entirety, the Court rejected virtually every objection that defendants have raised here. Id. at *3-5. As Judge Durkin had done in *Caine*, the judge in *Livers* correctly held that "objections [to Leo or his testimony] go more to the weight than to the admissibility of the evidence and are properly the subject of effective cross-examination." *Id*. at 5.

As mentioned briefly above, Dr. Leo's testimony has been admitted in more than 200 proceedings in the past 20 years. His proposed testimony should be permitted here as well.

**IV. Defendants' retained expert is not qualified as a social psychologist in any regard, and he does not have the required knowledge, skill, experience, training, or education required to question Dr. Leo's conclusions. For these reasons, his testimony must be barred.**

In light of all this, how do Defendants' respond? They have proposed as their expert not a social scientist who has engaged in study, research, investigation, and writing on the subject of interrogations and their relationship to false confessions. Rather, they retained an advocate for law enforcement to convince this Court that Dr. Leo is not qualified, that his methodology and that of other false confession experts is not sound, and that his opinions are unreliable. Cassell implicitly asks this Court to ignore *Hall* and *West*, the district court holdings in *Scott*, *Caine*, and *Kluppelberg* (all civil rights cases from this district), the Seventh Circuit's recent and extensive reliance on the "leading research on false confessions" in *Harris v. Thompson*, 698 F.3d at 631-32, and all the other circuits that have admitted Dr. Leo's testimony.

For the reasons stated both above and below, the Court should admit Dr. Leo's opinions without further consideration, and it should exclude *from the jury* Cassell's personal opinions with respect to the reliability of Professor Leo's opinions in this case.

**A. Professor Cassell is not qualified by knowledge, skill, experience, training, or education to dispute the conclusions that Dr. Leo has reached.**

Cassell is not a social scientist. He has no training or expertise in psychology, sociology, or social psychology. He does not have any degree in any of those fields, and in fact, he has no memory of having taken any psychology or social psychology classes during his undergraduate or graduate educations. Cassell at 72:11-73:22. He admitted at his deposition that he has never done scientific experiments related to interrogations or false confessions. Cassell at 53:14-24. It also appears, although there is some ambiguity, that he has never even actually observed an

11

interrogation taking place within a police station. As far as we can tell from his Rule 26 report, he has not spent any time observing police detectives taking confessions from state court criminal defendants in murder cases or any other felonies for that matter.

Apparently sensitive to this significant gap in his qualifications, Cassell relies on a completely different set of credentials – none of which qualify him under Rule 702 or *Daubert* to challenge the opinions that Dr. Richard Leo has reached with respect to this case. For example, Cassell asserts that 15-16 years ago, as an Assistant United States Attorney, he participated in cases "that involved confessions." He further summarizes his "qualifications" by indicating that he was the Editor-in-Chief of his law review, a Court of Appeals clerk (to then-Judge Scalia), a Supreme Court clerk (to then-Justice Rehnquist), an AUSA, an official at main Justice, and a former federal district court judge (for 5-1/2 years), where he also heard cases regarding confessions. While Cassell's credentials as a lawyer, judge, and law professor are of course impeccable, none of these qualifications render Cassell an expert in the field of social psychology (a discipline at which Dr. Ofshe, Dr. Leo, and others have been toiling for years), nor as an expert in police interrogation or false confession.

For his part, Professor Cassell indicates that "I've been an expert in this area dating back to 2000," apparently referring to a series of interconnected law reviews he wrote on the subject in the late 90s. It nevertheless appears that Professor Cassell does not have the knowledge, skill, experience, training, or education to qualify as an expert under Rule 702 in the social psychology field that studies and evaluates the effects of interrogation on confessions and the manner in which certain interrogation techniques may cause a confession to be false. He does not purport have expertise in the empirical research "in the academic disciplines of psychology, criminology, and sociology on the subject of police interrogation practices, psychological coercion, and false confessions," as Judge Durkin held with respect to Dr. Leo.

12

There is no doubt that he has strong opinions about the way the social science research has developed in this area. He has made a cottage industry out of challenging whether Dr. Ofshe's, Dr. Leo's, and others' theories have been properly tested, are capable of being calculated with a rate of error; and have been properly accepted within the relevant scientific community, testifying against the social science research in at least ten states and several district courts. His personal (or one could even say, legal views) on this issue have never been accepted in this circuit, and they are therefore no more relevant to the Court's inquiry than the arguments of defendants' counsel.

While Professor Cassell has certain attacks on Dr. Leo's conclusions, those attacks could be made by any lawyer, including the defense lawyers in their cross-examination of Dr. Leo. For example, Cassell quarrels with Dr. Leo's statement that "there is simply *no* physical evidence consistent with Ms. Harris's confessions or linking her to Jaquari's death . . .." Cassell Report, Exhibit B, at 7. Cassell spends a significant portion of his report arguing that this statement misstates the record and therefore renders unreliable Dr. Leo's entire report. Cassell then builds a legal case along the lines of a cross-examination outline or closing argument, *see* Exhibit B at 7-12, to argue that no reasonable jury could or should rely on Dr. Leo's conclusions. But a review of those pages establishes that the arguments made there are not two competing expert opinions about the causes of false confessions, but rather a legal argument about what inferences should be drawn from the facts of the case and how a mistake that Dr. Leo made in describing the evidence should bar his testimony. There is nothing in Cassell's six pages of argument that cannot be brought out in cross-examination by Defendants' own legal counsel. Defendants do not get a second bite at these legal arguments by suiting up a former federal district court judge as a "false confession expert" who gets to lay out in "affirmative" form the very arguments related to "reliability" that defense counsel have every right to explore during Dr. Leo's cross-examination. For all these reasons, Ms. Harris requests this Court to bar Cassell's testimony from the jury.

13

**B. Professor Cassell's proposed testimony is not designed to assist and will not assist the trier of fact to understand the evidence or determine a factual issue, and therefore, his testimony should be barred.**

By his own admission, Cassell has not been hired in this case to provide any expert testimony *to a jury*. When asked that question specifically, Cassell indicated that he would have to consult with defense counsel to determine if such testimony was within the scope of his engagement. Cassell at 91:16-21, 92:11-19. In fact, as noted above, Professor Cassell conceded that he has never testified before a jury to offer expert opinions on the issue of false confessions. Cassell at 90:2-5 and 115:22-116:1. He has never provided an affirmative opinion to assist the jury to understand the evidence or determine a factual issue; rather he has only written reports, provided depositions, or testified at preliminary hearings, all for the purpose of excluding the testimony of social scientists who have studied interrogation techniques and false confessions. Indeed, Professor Cassell's entire report is designed solely to assert that Dr. Leo's testimony is not reliable and should not be admitted in this case. He never once says, if called upon to testify, this is what I would affirmatively tell the jury.

To Defendants, this is a cynical game. It does not matter to them that the Seventh Circuit has issued three opinions, two of which expressly hold (and one of which very strongly suggests) that the testimony Dr. Leo intends to provide to the jury is perfectly admissible. It does not matter to them that Dr. Leo has over 25 years of experience studying both the benefits and risks of certain police interrogation techniques. It does not matter to them that Defendants' lawyers are capable of cross-examining Dr. Leo and making the exact same arguments that Professor Cassell makes in his report.

It is clear that Defendants have retained Professor Cassell instead of a social scientist in part because they could not locate a social scientist to disagree with the basic propositions Dr. Leo intends to share with the jury and in part so that they could have Professor Cassell recite

14

his purely legal qualifications and then argue (*one judge to another*) that Dr. Leo's opinions should be kept from the jury. But this Court does not need Professor Cassell's assistance. It does not need to be told by a former federal district court judge how to rule on a motion under Rule 702. Professor Cassell's testimony adds nothing to the equation regarding the actual expert information that will be shared with the jury, and his testimony should be barred in its entirety.

WHEREFORE, for all the reasons stated here, Ms. Harris requests this Court to bar Paul Cassell's testimony in its entirety and to admit Dr. Richard Leo's testimony in its entirety.

Dated: January 6, 2017

Respectfully submitted,

*/s/Stuart Chanen*_____
One of Nicole Harris' Attorneys

| | | |
|---|---|---|
| Stuart J. Chanen | Janine L. Hoft | J. Samuel Tenenbaum |
| Margot Klein | Joey L. Mogul | Bluhm Legal Clinic |
| Nicole N. Auerbach | Jan Susler | Northwestern University |
| Valorem Law Group | People's Law Office | School of Law |
| 35 E. Wacker Dr., Suite 3000 | 1180 N. Milwaukee Ave. | 357 E. Chicago Ave. |
| Chicago, IL 60601 | Chicago, IL 60642 | Chicago, IL 60611 |
| (312) 676-5460 | (773) 235-0070 | (312) 503-4808 |

**Counsel for Plaintiff Nicole Harris**

<u>**CERTIFICATE OF SERVICE**</u>

I, Stuart Chanen, an attorney, certify that I caused **PLAINTIFF NICOLE HARRIS'**
**MOTION IN LIMINE # 19, TO ADMIT THE EXPERT TESTIMONY OF DR. RICHARD LEO**
**AND TO BAR ANY TESTIMONY OF DEFENDANTS' PURPORTED EXPERT PAUL**
**CASSELL** to be filed and served upon all counsel of record via the Court's ECF system on January
6, 2017.


<u>*/s/Stuart Chanen*_____</u>
Stuart Chanen