IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 4391 |
| v. ) | |
| ) | |
| CITY OF CHICAGO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendants Robert Bartik, Demosthenes Balodimas, Robert Cordaro, James Kelly, Michael Landando, Anthony Noradin, and Randall Wo (collectively "Defendants") have moved to bar certain testimony of Plaintiff Nicole Harris' proposed police practices expert, Gregg McCrary, pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). For the following reasons, the Court, in its discretion, grants in part and denies in part Defendants' motion.

**BACKGROUND**

**I.      Factual Background**

This is a wrongful conviction case involving several Chicago Police Department ("CPD") Officers. In her Complaint, Plaintiff alleges that on October 26, 2005, a jury in the Circuit Court of Cook County convicted her of murdering her four-year-old son, Jaquari Dancy, based in large part on a false and fabricated confession elicited during approximately 27-30 hours of intermittent interrogation by Chicago Police Officers. After the jury convicted her of murder, the Circuit Court of Cook County judge sentenced Plaintiff to 30 years in prison.

After exhausting her state court remedies, Plaintiff brought a habeas petition pursuant to 28 U.S.C. § 2254(d)(1) in the United States District Court for the Northern District of Illinois. After the district court denied her petition for a writ of habeas corpus, the United States Court of Appeals for the Seventh Circuit reversed the district court's denial with instructions to grant the writ on October 18, 2012. *See Harris v. Thompson,* 698 F.3d 609, 613 (7th Cir. 2012). On February 25, 2013, the State released Harris from prison on bond. On June 17, 2013, the Cook County's State's Attorney dismissed all charges against Plaintiff, and on January 25, 2014, the Circuit Court of Cook County found that Plaintiff was innocent of the charges for which she was convicted and granted her a Certificate of Innocence pursuant to 735 ILCS 5/1-702. Plaintiff filed the present lawsuit on June 12, 2014.

## II. Agent McCrary's Qualifications

According to Agent McCrary's vitae and expert report, he earned a Bachelor's of Fine Arts from Ithaca College, studied Criminal Justice at the graduate level, and further obtained a Masters of Arts in Psychological Services from Marymount University. He has been professionally involved in violent crime investigations and crime scene analysis for more than 40 years – including 25 years as an FBI Agent. While at the FBI, Agent McCrary investigated violent crimes as a field agent for approximately 17 years, after which he was promoted to Supervisory Special Agent and transferred to the FBI Academy in Quantico, Virginia. As a Supervisory Special Agent, McCrary worked for the National Center for the Analysis of Violent Crime ("NCAVC") in the operational wing of the Behavioral Science Unit. Agent McCrary's primary responsibility as a Supervisory Special Agent was to provide expertise in investigative techniques and crime scene analysis in violent crime investigations both to FBI field agents and any law enforcement agency that requested FBI assistance. His other responsibilities included

conducting research into violent and sexually violent crimes and providing training to law enforcement agencies nationally and internationally.

Agent McCrary has been a contributing author to The Crime Classification Manual (1992) and has co-authored articles in Criminal Investigative Failures (2009), and the Journal of Interpersonal Violence (1996). Also, Agent McCrary serves on the editorial review board for two professional journals, namely, The Journal of Aggression & Violence and The Journal of Family Violence. Furthermore, he has served as an adjunct professor of forensic psychology and criminal justice at Marymount University and DeSales University. As a consultant, Agent McCrary has provided operational support to major criminal investigations across the country for over 25 years. He has also been a panel member and presenter at the American Academy of Forensic Sciences regarding suicide and equivocal death investigations. Over the last 30 years, Agent McCrary has given presentations on the subjects of criminal investigative analysis, criminal sexuality, crime scene analysis, advanced homicide detective training, violent crime investigations, premise liability for violent crimes, criminal profiling, and cold case homicide investigations.

In addition, Agent McCrary has investigated over a 1,000 homicide cases nationally and internationally, including numerous equivocal death cases. Among the agencies with which Agent McCrary has trained and/or worked on violent crime investigations are the New York City Police Department, the New York State Police, the Texas Rangers, the Boston Police Department, the Florida Department of Law Enforcement, the Georgia Bureau of Investigation, the Massachusetts State Police, and the California Attorney General's Office. Agent McCrary has also worked or provided training for international agencies, including Scotland Yard, the Cuerpo Nacional De Policia in Spain, the Policia Judiciare in Portugal, the Hungarian National

Police, Budapest Homicide, the French National Police, the Dutch National Police, the Metropolitan Toronto Police, the Royal Canadian Mounted Police, and the Oslo Police Homicide, among others.

Agent McCrary has testified before select Senate Committees on Sexual Violence in New York State and Massachusetts. Courts have admitted Agent McCrary as a police practices expert in both federal and state cases. *See, e.g., Jimenez v. City of Chicago,* 732 F.3d 710 (7th Cir. 2013); *Williams v. Brown*, 208 F. Supp. 3d 713 (E.D. Va. 2016); *Tennessee v. Stevens*, 78 S.W.3d 817 (Tenn. 2002). In assessing Agent McCrary's expertise, the Court of Appeals of Ohio explained:

> McCrary worked as a special agent for the FBI for approximately 25 years. During that time, he took several graduate courses in criminal justice, and he received a master's degree in psychological services. He served his last ten years with the FBI in the behavioral-science unit, investigating cases and conducting research on violent criminal behavior to improve the operational effectiveness of the law-enforcement community. According to McCrary, the behavioral-science unit was developed in order to understand how people commit crimes, what motivates them to commit crimes, and how they get away with committing crimes.

*State v. Essa*, 194 Ohio App. 3d 208, 233, 955 N.E.2d 429 (Ohio Ct. App. 2011).

## LEGAL STANDARD

"In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires the district court to serve in a gatekeeping role and make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Haley v. Kolbe & Kolbe Millwork Co.*, ___ F.3d ___, 2017 WL 2953042, at *8 (7th Cir. July 11, 2017) (quoting *Daubert,* 509 U.S. at 592-93). "The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO*

4

*Indus., Inc.,* 758 F.3d 810, 817 (7th Cir. 2014); *see also Higgins v. Koch Dev. Corp.,* 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable."). Although the Seventh Circuit reviews "the district court's application of *Daubert* [] de novo," if "the court adhered to the *Daubert* framework, then its decision on admissibility is reviewed for abuse of discretion." *Estate of Stuller v. United States,* 811 F.3d 890, 895 (7th Cir. 2016).

      A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012); *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) ("the district court's role as gatekeeper does not render the district court the trier of all facts relating to expert testimony"). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley,* 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596). A district court's inquiry under *Daubert* is a flexible one and district courts have wide latitude in performing this gate-keeping function. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *United States v. Moshiri,* 858 F.3d 1077, 1083 (7th Cir. 2017). "[T]he proponent of the evidence must establish that the expert's testimony is reliable (and relevant) by a preponderance of the evidence." *United States v. Saunders,* 826 F.3d 363, 368 (7th Cir. 2016).

## ANALYSIS

      In the present *Daubert* motion, Defendants do not take issue with the portions of Agent McCrary's expert opinion concerning police practices, professional standards in relation to

5

police practices, and the problems with the investigation into Jaquari's death. *See, e.g., Jimenez,* 732 F.3d at 721-22. Instead, they seek to bar Agent McCrary's opinion testimony concerning false confessions. Defendants first argue that the Court should bar Agent McCrary's opinions concerning false confessions because they are based on "fatally underdeveloped social science," and thus are not reliable. The Court soundly rejected this argument in its June 5, 2017 ruling when considering Defendants' *Daubert* motion in relation to Plaintiff's false confession expert Dr. Richard Leo. Specifically, the Court concluded that that the science of psychology in relation to police coercion in interrogations and false confessions is sufficiently developed to constitute a reliable body of specialized knowledge. Similarly, in the Court's July 25, 2017 ruling regarding Plaintiff's *Daubert* motion in relation to Defendants' rebuttal expert Professor Paul Cassell, the Court reiterated this ruling. The Court therefore denies this aspect of Defendants' motion to exclude Agent McCrary's expert opinion testimony.

Next, Defendant Officers argue that Agent McCrary is not qualified to testify about false confessions because he lacks the specialized training, education, or experience in this particular field of social science. The Court agrees. An expert may be qualified "by knowledge, skill, experience, training or education." *See* Fed.R.Evid. 702; *see also Moshiri,* 848 F.3d at 1083. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy,* 593 F.3d 610, 616 (7th Cir. 2010) (internal quote and citation omitted). In making this determination, a "court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000).

6

Here, Defendants contend that although Agent McCrary has a Master's Degree in Psychological Services, he is not a psychologist nor is there any indication that he worked as a psychologist. (R. 255-3, McCrary Dep., at 230.) They further assert that Agent McCrary has not engaged in research or the publication of articles on the topic of false confessions. As to Agent McCrary's experience in the field as an FBI agent, when questioned about the basis for his false confession opinions at his deposition, Agent McCrary testified that he was involved in an Arizona investigation where certain police officers had obtained false confessions, but that those false confessions were easily disproved because the individuals immediately recanted and provided proof that they were not at the scene of the crime. (McCrary Dep., at 225-27.) Agent McCrary discusses another false confession case in his expert report related to the 2004 murder of 12-year-old Stephanie Crowe near San Diego, California. (R. 222-1 McCrary Expert Report, at 19.) In particular, Agent McCrary testified as a crime scene expert for the prosecution. *See Tuite v. Martel*, 460 Fed.Appx. 701, 704 (9th Cir. 2011) (unpublished). In both of these cases, Agent McCrary did not testify as a false confession expert nor did he take part in correcting the alleged false confessions. (McCrary Dep., at 225-26.)

In response, Plaintiff points to cases in which courts have admitted Agent McCrary as an expert, but these cases focus on crime scene analysis, criminal behavior and violent crime, and behavioral criminality – not false confessions. *See, e.g., 50 State Sec. Serv., Inc. v. Giangrandi*, 132 So. 3d 1128, 1139 (Fla. Dist. Ct. App. 2013) (Agent McCrary "accepted as an expert on security, criminal behavior, and violent crime"); *State v. Webb*, 128 Conn. App. 846, 853, 19 A.3d 678 (Conn. App. 2011) ("state presented testimony from Gregg McCrary, a consultant in the field of behavioral criminality"). Plaintiff also argues that experts "can certainly rely on professional studies to bolster their opinion[s], particularly when those studies are relied upon by

7

professionals in their field." (R. 255, Resp., at 4.) Plaintiff's argument misses the point because Agent McCrary's "field" is police practices, not the complex social science of false confessions and coercive interrogations as discussed in detail in *United States v. Hall*, 974 F. Supp. 1198, 1203–04 (C.D. Ill. 1997), *aff'd,* 165 F.3d 1095 (7th Cir. 1999) and the Court's June 5, 2017 *Daubert* ruling. Also, Plaintiff's reliance on this Court's decision in *Sanders* is misplaced because the Court concluded that the police practices expert was not opining as to human perception and the psychology of eyewitness identification, but instead that he was testifying about whether the defendant detectives deviated from accepted police practices in conducting a photo array and live lineup – which was well within the expert's area of expertise. *See Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4398011, at *9 (N.D. Ill. Aug. 18, 2016). Similarly, Plaintiff's reliance on *Ott v. Milwaukee,* No. 09 C 870, 2015 WL 1219587 (E.D. Wis. 2015), which concerns the basis of an expert's opinion under Federal Rule of Evidence 703, does not save the day because the fact that Agent McCrary relied upon articles concerning the voluntariness of confessions does not make him an expert in this field.

In sum, Agent McCrary is not a social scientist and has not contributed to the study of coercive interrogations and false confessions, therefore, his opinions on false confessions are beyond his expertise. Moreover, although his experience as a law enforcement agent included two cases in which the police obtained false confessions, his involvement in those proceedings was not related to the alleged false confessions or coercive interrogation. Therefore, the Court grants this aspect of Defendants' *Daubert* motion.

On a final note, Agent McCrary's false confession opinions are redundant to Dr. Leo's opinions, and, as discussed in the Court's earlier rulings, Dr. Leo is a nationally recognized expert on false confessions and is abundantly qualified to testify as such.

8

## CONCLUSION

For these reasons, the Court, in its discretion, grants in part and denies in part Defendants' motion to bar Agent Gregg McCrary's testimony brought pursuant to Federal Rules of Evidence and *Daubert*.

**DATED:** July 27, 2017

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**