# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICOLE HARRIS, | ) |
| Plaintiff, | ) |
| | ) Case No. 14 C 4391 |
| v. | ) |
| CITY OF CHICAGO, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Nicole Harris has moved to bar the testimony of Defendants' polygraph rebuttal expert witness Dr. John Palmatier pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). On May 31, 2017, the Court granted in part and denied in part Defendants' *Daubert* motion to exclude Plaintiff's polygraph expert Dr. Charles Honts. The Court presumes familiarity with that ruling. For the following reasons, the Court, in its discretion, grants in part, grants in part as moot, and denies in part Plaintiff's motion.

## BACKGROUND

**I.** **Factual Background**

This is a wrongful conviction case involving several Chicago Police Department ("CPD") Officers. In her Complaint, Plaintiff alleges that on October 26, 2005, a jury in the Circuit Court of Cook County convicted her of murdering her four-year-old son, Jaquari Dancy, based in large part on a false and fabricated confession elicited during approximately 27-30 hours of

intermittent interrogation by Chicago Police Officers. After the jury convicted her of murder, the Circuit Court of Cook County judge sentenced Plaintiff to 30 years in prison.

After exhausting her state court remedies, Plaintiff brought a habeas petition pursuant to 28 U.S.C. § 2254(d)(1) in the United States District Court for the Northern District of Illinois. After the district court denied her petition for a writ of habeas corpus, the United States Court of Appeals for the Seventh Circuit reversed the district court's denial with instructions to grant the writ on October 18, 2012. *See Harris v. Thompson,* 698 F.3d 609, 613 (7th Cir. 2012). On February 25, 2013, the State released Harris from prison on bond. On June 17, 2013, the Cook County's State's Attorney dismissed all charges against Plaintiff, and on January 25, 2014, the Circuit Court of Cook County found that Plaintiff was innocent of the charges for which she was convicted and granted her a Certificate of Innocence pursuant to 735 ILCS 5/1-702. Plaintiff filed the present lawsuit on June 12, 2014.

**II.     Dr. Palmatier's Qualifications**

In 1982, Dr. Palmatier graduated from Saginaw Valley State University with a Bachelor's degree in Psychology and Criminal Justice and obtained a Master's degree in Criminal Justice, Management, and Evaluation from Michigan State University in 1991. In 1996, Dr. Palmatier received his Ph.D. from Michigan State University in Social Science (Psychology and Criminal Justice). Before obtaining his Ph.D., Dr. Palmatier was with the Michigan Army National Guard working his way up to Special Investigating Officer. Dr. Palmatier also has experience in civilian law enforcement as a forensic specialist/polygraph examiner for the Michigan State Police from 1983 until 2000. Further, he served in the Saginaw City Police Department as both a uniformed police officer and detective from 1973 until 1977. Dr. Palmatier has taught Criminal

Justice as an adjunct professor at Nova Southeastern University, Florida Metropolitan University, the Chinese Academy of Sciences in Beijing, China, and Michigan State University.

Since 2003, Dr. Palmatier has served as a consultant and contractor conducting approximately 6,800 documented assessments that provided pre-employment screening services to government entities, in addition to specific issue assessments for private, public, and government entities addressing the full breadth of human behavior. Also, he has published and presented numerous papers on the polygraph process, including Palmatier, J.J. & Rovner, L. (2015), <u>Credibility Assessment: Preliminary Process Theory, the Polygraph Process, and Construct Validity</u>, International Journal of Psychophysiology, 95(1); Horvath, F. & Palmatier, J.J. (2008), <u>Two Types of Control Questions and Two Question Formats on the Outcomes of Polygraph Examinations</u>, Journal of Forensic Sciences, 53(4); and Palmatier, J.J. & Zhang, X.H. (2002), <u>Lie Detection In China: Where Is It and Where Is It Going</u>, The Chinese Procurator Office. Dr. Palmatier has testified as a polygraph expert in both state and federal courts. *See, e.g., Potter v. City of Miami Gardens,* 10 C 29849 (S.D. Fla. 2010); *Gosciminski v. Florida,* 132 So.3d 678 (Fla. 2014); *North Dakota v. James*, 08-2012 CR 3162 (N.D. 2008).

## LEGAL STANDARD

"In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires the district court to serve in a gatekeeping role and make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Haley v. Kolbe & Kolbe Millwork Co.*, ___ F.3d ___, 2017 WL 2953042, at *8 (7th Cir. July 11, 2017) (quoting *Daubert,* 509 U.S. at 592-93). "The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier

3

of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus., Inc.,* 758 F.3d 810, 817 (7th Cir. 2014); *see also Higgins v. Koch Dev. Corp.,* 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 702 and *Daubert* require the district court to determine whether proposed expert testimony is both relevant and reliable."). Although the Seventh Circuit reviews "the district court's application of *Daubert* [] de novo," if "the court adhered to the *Daubert* framework, then its decision on admissibility is reviewed for abuse of discretion." *Estate of Stuller v. United States,* 811 F.3d 890, 895 (7th Cir. 2016).

A district court's evaluation of expert testimony under *Daubert* does not "take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012); *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) ("the district court's role as gatekeeper does not render the district court the trier of all facts relating to expert testimony"). Once it is determined that "the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley,* 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596). A district court's inquiry under *Daubert* is a flexible one and district courts have wide latitude in performing this gate-keeping function. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *United States v. Moshiri,* 858 F.3d 1077, 1083 (7th Cir. 2017). "'[T]he key to the gate is not the ultimate correctness of the expert's conclusions,'" rather, "'it is the soundness and care with which the expert arrived at her opinion[.]'" *C.W. ex rel. Wood v. Textron, Inc.,* 807 F.3d 827, 834 (7th Cir. 2015) (citation omitted). "[T]he proponent of the evidence must establish that the expert's

4

testimony is reliable (and relevant) by a preponderance of the evidence." *United States v. Saunders,* 826 F.3d 363, 368 (7th Cir. 2016).

**ANALYSIS**

In the present *Daubert* motion, Plaintiff contends that (1) Dr. Palmatier's opinion on the circumstances surrounding Plaintiff's May 15, 2005 polygraph examination does not rebut an opinion offered by Dr. Honts; (2) Dr. Palmatier may not testify as to Dr. Honts' qualifications; (3) the Court should bar Dr. Palmatier from testifying about Dr. Honts' credibility and trustworthiness; and (4) the Court should bar Dr. Palmatier from testifying on police practices. The Court addresses each argument in turn.[1]

**I.   Circumstances Surrounding Plaintiff's May 2005 Polygraph**

Plaintiff first asserts that Dr. Palmatier's opinion concerning the circumstances surrounding Plaintiff's May 2005 polygraph examination does not rebut an opinion offered by Dr. Honts. In particular, Plaintiff takes issue with Dr. Palmatier's finding that "[t]he polygraph examination administered to Nicole Harris on May 15, 2005 was conducted under difficult conditions, but conditions that certainly did not preclude an attempt to do so." (Palmatier Rep., at 9.) In her motion, Plaintiff specifically argues that this opinion is not rebuttal testimony because Dr. Honts' opined that the physiological data underling Plaintiff's examination, such as the raw polygraph charts, was of sufficient quality to evaluate – despite the impropriety of the circumstances surrounding the investigation. In response, Defendants maintain that Dr. Palmatier's expert findings are proper rebuttal opinions because he analyzed the same underlying physiological data using the same scoring method as Dr. Honts, but concurred with Defendant

---

[1] Because the Court granted Defendants' *Daubert* motion regarding the videotaping/recording of Plaintiff's polygraph examination, along with Dr. Honts' opinions regarding the Chicago Police Department's polygraph policies, including certain CPD General Orders, the Court also bars Dr. Palmatier from testifying about these topics in rebuttal.

Officer Bartik that Plaintiff's polygraph was "at best Inconclusive and more probably Deceptive." (Palmatier Rep., at 10.)

In this context, the Court agrees that Dr. Palmatier's opinion testimony is proper rebuttal evidence because it directly contradicts Dr. Honts' conclusion that, when properly scored, the result of Plaintiff's polygraph examination was "Truthful." *See Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) ("The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party.") (citation omitted); *see, e.g., Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201, 215 (N.D. Ill. 2014). The Court therefore denies this aspect of Plaintiff's *Daubert* motion.

## II. Dr. Honts' Qualifications

Next, Plaintiff asserts that Dr. Palmatier improperly attacks Dr. Honts' qualifications by highlighting Dr. Honts' lack of experience in law enforcement. Specifically, in rebutting Dr. Honts' opinions concerning Defendant Bartik's training, continuation, and professionalism, Dr. Palmatier opines: "As someone with no experience in law enforcement, any opinion rendered by Dr. Honts regarding the role of supervision in this context, or how oversight should be conducted, is at best speculation and more likely something he was told or read in a text." (Palmatier Rep., at 9.)

In the May 31, 2017 ruling granting in part and denying in part Defendants' *Daubert* motion in relation to Dr. Honts, the Court rejected Defendants' argument that Dr. Honts was not qualified to render his opinions because he does not have experience as a law enforcement official and had not administered polygraphs test in homicide investigations. Moreover, it is well-settled that under *Daubert* "the district court must ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will 'assist

6

the trier of fact to understand the evidence or to determine a fact in issue.'" *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011) (quoting Fed.R.Evid. 702). Therefore, although Dr. Palmatier is free to testify about his experience as a law enforcement officer and that he administered polygraph examinations in active police investigations, any testimony concerning Dr. Honts' lack of law enforcement experience crosses the line into the Court's gatekeeping function concerning Dr. Honts' qualifications. The Court grants this aspect of Plaintiff's *Daubert* motion.

## III.    Dr. Honts' Credibility

Plaintiff further asserts that Dr. Palmatier makes improper credibility determinations in his rebuttal report. Indeed, it is the exclusive province of the jury to determine the weight and credibility of witness testimony. *See Stollings*, 725 F.3d at 765 ("The jury must still be allowed to play its essential role as the arbiter of the weight and credibility of expert testimony."); *Goodwin v. MTD Prod., Inc.,* 232 F.3d 600, 609 (7th Cir. 2000) ("credibility questions are within the province of the trier of fact"); *United States v. Hall,* 165 F.3d 1095, 1107 (7th Cir. 1999) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses.").

In support of her motion, Plaintiff points to Dr. Palmatier's alternative explanations as to why Dr. Honts' conclusions were in error, including: "(1) Dr. Honts never looked at the Harris examination and the resultant physiological tracings; (2) Dr. Honts is so inexperienced in the assessment of field data that a valid assessment was not possible, or; (3) Dr. Honts simply lied." (Palmatier Rep., at 5.) Plaintiff also highlights Dr. Palmatier's conclusion that Dr. Honts'

7

opinions are "'AT BEST' nothing more than hyperbolic conjecture, and should be distrusted if not outright discharged." (*Id*. at 9.)

In response, Defendants agree that experts cannot opine as to the credibility of witness testimony, but instead of addressing the exact opinions Plaintiff highlights directly above, Defendants point to where Dr. Honts attacked Defendant Officer Bartik's credibility in his expert report. As discussed in the Court's May 31, 2017 ruling, Dr. Honts is barred from offering any such testimony. Likewise, the Court bars Dr. Palmatier from making credibility determinations (as well as making comments about Dr. Honts' qualifications), including that Dr. Honts lied, Dr. Honts is so inexperienced that he could not offer a proper opinion, or that Dr. Honts never looked at Plaintiff's examination and the physiological tracings. As such, the Court grants Plaintiff's *Daubert* motion in this respect.

## IV. Police Practices

Also, Plaintiff moves to bar Dr. Palmatier from opining about police practices because Defendants disclosed him as rebuttal polygraph witness and that he is not qualified to testify as a police practices expert. Plaintiff specifically challenges Dr. Palmatier's statement that "[i]nvestigators often do not have the luxury of waiting for more optimal circumstances for the administration of a polygraph exam." (Palmatier Rep., at 5.)

Although Dr. Palmatier is not a police practices expert like Plaintiff's expert Agent Gregg McCrary, he is qualified to opine on polygraph procedures in the context of police investigations. *See Gayton v. McCoy,* 593 F.3d 610, 616 (7th Cir. 2010) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.") (internal quote and citation omitted). More specifically, Dr. Palmatier was a law enforcement

officer from 1973-2000, including seventeen years in which he was a forensic specialist and polygraph examiner for the Michigan State Police. Further, he has a Ph.d in Social Science with a focus in Psychology and Criminal Justice and teaches Criminal Justice at the university level. Based on his experience, education, and contribution to the study of polygraph procedures in law enforcement, Dr. Palmatier is qualified to opine about polygraph procedures in the context of police investigations. *See United States v. Moshiri*, 858 F.3d 1077, 1083 (7th Cir. 2017) (expert may offer opinion testimony under Rule 702 if he has specialized knowledge and is qualified based on knowledge, skill, experience, training, or education). As such, the Court, in its discretion, denies Plaintiff's motion to exclude Dr. Palmatier from testifying as such.

## CONCLUSION

For these reasons, the Court, in its discretion, grants in part, grants in part as moot, and denies in part Plaintiff's motion to bar Dr. Palmatier's expert opinion testimony brought pursuant to Federal Rules of Evidence and *Daubert*.

**DATED:** August 2, 2017

                                            **ENTERED:**

                                            **AMY J. ST. EVE**
                                            **United States District Court Judge**