```
 1                  IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3    NICOLE HARRIS,                ) Docket No. 14 C 4391
                                    )
 4                    Plaintiff,    )
                                    )
 5              vs.                 )
                                    )
 6    CITY OF CHICAGO, et al.,      ) Chicago, Illinois
                                    ) October 11, 2017
 7                   Defendants.)    1:30 o'clock p.m.

 8          TRANSCRIPT OF PROCEEDINGS - PRETRIAL CONFERENCE
                  BEFORE THE HONORABLE AMY J. ST. EVE
 9
      APPEARANCES:
10
      For the Plaintiff:        PEOPLE'S LAW OFFICE
11                              BY:  MS. JOEY L. MOGUL
                                     MS. JANINE L. HOFT
12                              1180 North Milwaukee Avenue
                                Chicago, Illinois  60622
13
                                VALOREM LAW GROUP
14                              BY:  MS. NICOLE N. AUERBACH
                                218 N. Jefferson St., Suite 300
15                              Chicago, Illinois  60661

16    For the Individual        HALE LAW, LLC
                                BY:  MR. ANDREW M. HALE
17                                   MR. SCOTT J. JEBSON
                                     MS. JENNIFER BITOY
18                              53 W. Jackson Blvd., Suite 330
                                Chicago, IL 60604
19
      Court Reporter:           MR. JOSEPH RICKHOFF
20                              Official Court Reporter
                                219 S. Dearborn St., Suite 1232
21                              Chicago, Illinois  60604
                                (312) 435-5562
22

23              * * * * * * * * * * * * * * * * *

24                      PROCEEDINGS RECORDED BY
                         MECHANICAL STENOGRAPHY
25                   TRANSCRIPT PRODUCED BY COMPUTER
```

1          THE CLERK:  14 C 4391, Harris vs. City of Chicago.

2          THE COURT:  Good afternoon.

3          MS. AUERBACH:  Good afternoon, your Honor.

4          THE COURT:  Put your names on the record for Joe, if

5     you would, please.

6          Ms. Mogul, we will start with you.

7          MS. MOGUL:  Joey Mogul on behalf of the plaintiff

8     Ms. Harris.

9          MS. AUERBACH:  Nicole Auerbach on behalf of the

10    plaintiff.

11         MS. HOFT:  Jeanine Hoft on behalf of the plaintiff.

12         MR. HALE:  Andy Hale on behalf of the police officer

13    defendants.

14         MR. JEBSON:  Scott Jebson for the individual

15    defendants.

16         MS. BITOY:  Jennifer Bitoy on behalf of the

17    individual defendants.

18         THE COURT:  So you are here for a status and some

19    follow-up final pretrial conference issues before we start our

20    trial coming up later this month.

21         I do not care if you stand or sit, as long as I can

22    hear you.

23         MS. MOGUL:  Okay.

24         THE COURT:  Whatever your preference is.

25         I have a list I am going to go through; and, then, if

1   you have questions or issues for me, you can raise them.

2          So, the jury questionnaire.  There was not agreement

3   on it.  I am not going to give the jury questionnaire.  I

4   will, as I said last time, do the voir dire and ask many of

5   those same questions; but, I will ask them.

6          MR. HALE:  Can I pause you there just on a question

7   for the questionnaire?

8          THE COURT:  Yes.

9          MR. HALE:  We had brought this up last time at the

10  pretrial, and I just want to just reiterate this point.  There

11  was a question about positive or negative experiences with the

12  police.  I guess what I wanted to articulate was I think

13  that's different than -- I may never have been -- had any

14  interaction with the police, so I don't have a personal

15  experience; but, I dislike the police.  I have an opinion

16  that's strongly negative about the police.

17         I think that question captures that for that juror

18  that an exper- -- an experience requires there to be an

19  experience or an interaction potentially, whereas an opinion

20  doesn't.

21         THE COURT:  Okay.  You are raising a voir dire

22  question.  I have not looked at your --

23         MR. HALE:  Oh, okay.  So --

24         THE COURT:  -- voir dire questions yet.

25         MR. HALE:  Okay.  I --

 1          THE COURT:  I do not know if something along those

 2     lines is in there.

 3          I understand the distinction.  I do not know that I

 4     would ask that particular question because I have not started

 5     putting my voir dire together for this case yet.  But I

 6     understand the distinction; and, if I do not ask that

 7     particular question, I will ask a question or questions that

 8     would elicit an answer to that.

 9          But I have not looked at your proposed voir dire yet

10     because I am not there yet.

11          Plaintiff's 14 is a picture of Nicole Harris.  I

12     could not tell from your response if there was an objection to

13     that.  It did not seem like you were objecting anymore.

14          MR. HALE:  Can I elaborate?  So, we actually --

15          THE COURT:  As long as you answer at some point if

16     you are --

17          MR. HALE:  Yes.

18          THE COURT:  -- objecting or not.

19          MR. HALE:  We would -- we have a picture similar to

20     that at the same time we would not object to.  And I have

21     another picture that I wanted to tender that I would ask to be

22     submitted.  I understand you had barred a picture --

23          THE COURT:  The mugshot.

24          MR. HALE:  Yeah, the mugshot.

25          There's a different picture that was from a --

1    basically an arrest document and -- from an arrest profile.

2    And we were able to redact it.

3            So, can I hand these up.

4            THE COURT:  Yes.

5            MS. HOFT:  Sounds like a mugshot to me if it's in an

6    arrest report.

7        (Document tendered to the Court.)

8            MR. HALE:  But the second page is what we propose.

9            THE COURT:  Okay.

10           So, do you object to -- let's start with my question,

11   and then we will get to this.

12           MR. HALE:  I don't object to that, no.

13           THE COURT:  All right.

14           So, Plaintiff's Exhibit 14 -- remember, you have to

15   move in front of the jury, but there is no objection to it.

16           MS. MOGUL:  Right.

17           And just, your Honor, on that basis, we don't have to

18   lay a foundation, but we have to make sure we move it in?

19           THE COURT:  Absolutely.

20           MS. MOGUL:  Thank you.

21           THE COURT:  I think I told you at the pretrial

22   conference I do not care if you come in Day One after the jury

23   is seated and after opening statements and say, "I move

24   Plaintiff's 1 through 100 in."  If there is no objection, I

25   will admit them.

```
 1              And same with defendants.  I do not care how you do
 2   it if there is no objection.  If there is an objection, then
 3   obviously you will have to do that.
 4              But Plaintiff's 14, for example, move its admission;
 5   there is no objection; it will be admitted.
 6              MS. MOGUL:  Thank you, your Honor.
 7              THE COURT:  The mugshot.
 8              MS. MOGUL:  I mean, it looks like a mugshot, you
 9   know.  And it's taken -- I don't know what time this is, but I
10   believe it's several hours after her arrest.  I don't see how
11   it's relevant in this case.
12              THE COURT:  Mr. Hale, what is the relevance?
13              MR. HALE:  This is how she -- what I think -- what I
14   think is relevant in terms of the time frame, you know, under
15   our version she first confesses at 12:45 a.m.  She's only been
16   in the police station for three hours.
17              THE COURT:  What time was this photo taken?
18              MR. HALE:  I don't know.
19              THE COURT:  So, obviously find out when.  And whoever
20   is going to lay the foundation for it, find out timing,
21   because that can make a difference on the Court's
22   determination.
23              MR. HALE:  Okay.
24              MS. HOFT:  What are we going to call this document
25   for the record?
```

```
 1              MS. AUERBACH:  Mugshot?

 2              THE COURT:  We already have --

 3              MR. HALE:  Right now I can call it anything.

 4              THE COURT:  Defendants' -- what would you like to

 5   call it?  Defendants' A?

 6              MR. HALE:  Sure.

 7              THE COURT:  We will call it Defendants' A for

 8   purposes of today.

 9              The next issue, the 911 calls, you have objected that

10   they are hearsay.  The case law is clear they come in under an

11   excited utterance exception.  Navarette vs. California, a

12   Supreme Court case from 2014, 134 Supreme Court 1683 at 1689.

13   A Seventh Circuit case, U.S. vs. Boyce, B-o-y-c-e, 742 F.3d

14   792 at 798.

15              They fall within that exception to the hearsay rule.

16   I am overruling your hearsay objection.

17              There was a question about the accuracy of the

18   transcription.  So, you will need to go back and check that

19   and somehow determine for foundational purposes that it is

20   accurate.  I do not have the recording, so I do not know.  But

21   that is your job.  So, go back and double-check.

22              I have overruled the hearsay objection.  Ideally you

23   get together and agree that this is what the tape says and

24   that the transcript accurately reflects the tape.

25              MS. MOGUL:  Thank you, your Honor.
```

```
 1              THE COURT:  Demonstrative exhibits.  I had asked you
 2    to exchange them and be prepared to address any objections.
 3              Did you exchange them?  Do you have any objections?
 4              MR. HALE:  We did, and we do.
 5              Do you want to go first?
 6              MS. AUERBACH:  No, you can.
 7              MR. HALE:  In terms of our objections --
 8              MS. AUERBACH:  Sure.
 9              MR. HALE:  -- or our exhibits?
10              MS. AUERBACH:  Either.
11              THE COURT:  I have not seen any of them.  So --
12              MR. HALE:  Let me address our exhibits.  So --
13              THE COURT:  And are these demonstratives you intend
14    to use in opening or demonstratives you intend to use with
15    witnesses or both?
16              MR. HALE:  So, these are ones for the opening.
17              MR. JEBSON:  Yes.
18              MR. HALE:  Do you want to --
19              MR. JEBSON:  Sure.
20              MR. HALE:  Well -- go ahead.
21              MR. JEBSON:  Judge, in terms of purely demonstrative,
22    it's a timeline that will be used in the opening and
23    throughout trial.
24              THE COURT:  Okay.
25              MR. JEBSON:  And, then, we have a body -- an
```

1    anatomical body -- that we didn't bring, but that would be

2    another demonstrative.

3            THE COURT:  For opening or for during --

4            MR. JEBSON:  Not during opening.  It would just be

5    during -- for an expert.

6            THE COURT:  Okay.

7            MR. JEBSON:  The other things used in opening are not

8    demonstrative.  There's pictures that we believe that will be

9    admitted into evidence.

10           THE COURT:  And are there objections to all of those?

11           MS. MOGUL:  Okay.  I'll admit we haven't had -- I

12   haven't had a chance to go through all of these.  I mean, we

13   are still exchanging our exhibit lists.

14           THE COURT:  Is there an objection to the use of the

15   timeline in the opening?

16           MS. AUERBACH:  No, not in theory.  And I apologize,

17   your Honor.  We spoke about the exchange of demonstratives and

18   thought that we would have an opportunity if we were going to

19   raise objections to address those between the two of us.  I

20   did not recall that you had asked us to be prepared to raise

21   them to you today because we had not presented them to you.

22           THE COURT:  Then I am going to wait --

23           MS. AUERBACH:  Okay.

24           THE COURT:  -- on demonstratives until you have had

25   the opportunity.

  1            MS. AUERBACH:  We may be able to work everything out.
  2    But I think it goes hand in hand with our exhibit objections.
  3            THE COURT:  Then I will let you try to work that out.
  4            MR. JEBSON:  There was one other demonstrative I
  5    didn't mention, but it doesn't make a difference.
  6            THE COURT:  And the anatomical body, if it is
  7    something your expert has used, it is probably appropriate
  8    unless there is something prejudicial about it.  But if it
  9    is -- I will have to see what the issue is.
 10            MS. MOGUL:  I mean, I'll just say it wasn't used at
 11    the dep.  So, I haven't had an opportunity to cross-examine
 12    this expert with that anatomical body.  It wasn't raised.  It
 13    wasn't something that the expert said they used or relied on.
 14            THE COURT:  Did the expert talk about it in his or
 15    her report?
 16            MS. MOGUL:  No.
 17            THE COURT:  Then see if you can work it out.  If not,
 18    you can raise it with me.
 19            Interim statements.  Again, since there was not
 20    agreement on that, I am not going to do that.
 21            And, then, the next things on my list all pertain to
 22    jury instructions, although there are some substantive issues
 23    in there.
 24            Before I go to the jury instructions -- your newly
 25    proposed and go back to some of your other ones -- are there

1    any just logistical issues.

2            MR. HALE:  I did have some.

3            THE COURT:  Okay.

4            MR. HALE:  The first one, I had a question about jury

5    selection.

6            THE COURT:  Yes.

7            MR. HALE:  When I went back and read your -- the

8    transcript from our last pretrial, at Page 29 --

9            THE COURT:  I do not have the transcript.

10           MR. HALE:  I know.  I'm going to summarize.

11           You said after you question the first 16 --

12           THE COURT:  Yes.

13           MR. HALE:  -- you said, "I will take the next 16 in

14   the venire and go through the exact same process.  I question

15   everybody before taking any strikes for cause or

16   peremptories."

17           So, does that mean -- let's say there's 40 people in

18   the room.  You question everybody and then we do our strikes?

19           THE COURT:  Yes.

20           MR. HALE:  Not by groups of 16?

21           THE COURT:  Correct.

22           MR. HALE:  Okay.  That's what I wanted to clarify.

23           Once everybody's been questioned, then we hand up our

24   three strikes?

25           THE COURT:  We question the entire panel, and then I

1   will take your cause strikes.

2           Now, sometimes if we have a juror and I bring her

3   down to sidebar and it is so obvious she is a strike for

4   cause, sometimes I will say at sidebar, "Is there any

5   objection to striking her for cause?"  You know, if she says,

6   "I cannot be fair.  I hate the Chicago Police Department;

7   there's nothing you could do that will make me be fair," if it

8   is something so obvious, I may just say, "Is there any

9   objection to it?" and do it at sidebar.

10          Otherwise, I will question the entire -- if we have a

11  panel of 40, all 40; and, then, I will take your strikes for

12  cause; and, then, you will exercise your peremptories.

13          MR. HALE:  Okay.  You answered my question.

14          My next question:  You had asked us last time about

15  the length of the opening statements.

16          THE COURT:  Yes.

17          MR. HALE:  I think Ms. Mogul said about an hour.  I

18  think I said maybe a little bit more.  Now that we've put it

19  together, I think, you know, ours probably could be an

20  hour-and-a-half, and I would ask for an hour-and-a-half -- up

21  to an hour-and-a-half -- for our opening.

22          THE COURT:  I am not going to cut you off.  That is

23  fine.  Part of why I asked was for planning purposes.

24          MR. HALE:  Okay.

25          There was an issue -- and this is maybe something --

1    we've continued to discuss it --

2              THE COURT:  But, by the way, if I feel like you abuse

3    it, I will give you a time limit for closing.

4              MR. HALE:  Okay.

5              THE COURT:  So, do not abuse your openings.

6              MR. HALE:  There was an issue that I apprised the

7    plaintiffs of yesterday.  There were four witnesses who were

8    on our original "May Call" list in the pretrial order that we

9    now would like to -- that we then took off, that we would now

10   like to put back on.  And I sent to plaintiffs yesterday a

11   revised list with those four "may calls."  I haven't submitted

12   it to the Court yet.  But I'd like to ask leave of Court to

13   file a revised witness list.

14             And the four people were Brian Donahue, who was the

15   ER doctor; Ally Levy, who was the victim-sensitive

16   interviewer, who is actually a "may call" for the plaintiff;

17   Scott Peterson, who is the DCFS person that took Diante that

18   night; and, Karen Wilson also from DCFS.

19             They were originally in the pretrial order on our

20   "May Call" list.  We parsed it down, but now we're thinking we

21   should have kept him on; and, I'd ask leave of Court to add

22   them and then file an amended witness list.

23             THE COURT:  Are you seeking to add them back to your

24   "May Call" list or --

25             MR. HALE:  Yes.

1        THE COURT:  -- your "Will Call"?

2        MR. HALE:  To "May Call."

3        THE COURT:  I assume there is no objection since they

4   were on the original and one of them is on yours?

5        MS. MOGUL:  No, no objection.

6        And just for that, your Honor, I mean, when we filed

7   our revised witness list, that day we were informed of changes

8   to our exhibit lists that they are now objecting to things

9   that we previously had agreement on.  So, we too -- we had

10  removed Karen Wilson from our "May Call" list because they had

11  agreed that a document could come in.  And now that they're

12  objecting to it, we're going to have to add Ms. Wilson back to

13  our "May Call" list.

14       THE COURT:  So, file a revised witness list along

15  those lines.

16       You may not add new witnesses on your revised witness

17  list that you have not raised with the Court just now.  Let me

18  make that crystal clear.  I am not giving you leave to add ten

19  more new witnesses who we have never heard of.

20       So, yes, you may file that.

21       MS. AUERBACH:  I'm sorry.  By when, your Honor?

22       THE COURT:  Monday.

23       Which is the 16th, Katie?

24       THE CLERK:  Yes.

25       THE COURT:  So, by the 16th.

1          Did you file an exhibit list with the final pretrial

2    order with Judge Darrah?

3          MS. MOGUL:  We did.

4          MR. HALE:  Yes.  We've actually exchanged, your

5    Honor -- we've exchanged -- we both have revised our list to

6    withdraw objections.  We've exchanged those lists.  And we're

7    in the process of objecting and finalizing that because it's

8    due, I know, next week.

9          THE COURT:  Okay.

10         MS. MOGUL:  So, on that point, your Honor, you wanted

11   us to file our exhibits and our exhibit lists with you on

12   October 13th.  But since then -- at the last pretrial.  Since

13   then, you asked that we file our exhibit on October 17th.

14         THE COURT:  The revised exhibit list.

15         MS. MOGUL:  Yes.

16         THE COURT:  Yes.  The revised exhibit list because I

17   think you can do better than you did with "throwing in the

18   kitchen sink" objections.  I gave you until the 17th for that.

19         So, the exhibits themselves I do not need until --

20         MR. HALE:  I'm sorry, until?

21         THE COURT:  I am looking.  Hold on.

22         I do not need the exhibits until the 20th.

23         MS. AUERBACH:  Are you --

24         THE COURT:  But the list I want --

25         MS. AUERBACH:  -- going to make determinations, then,

 1   between the 17th and 26th?

 2        THE COURT:  Probably not.  I often do those in the

 3   context of trial because many of these are foundation or

 4   hearsay objections that I need to hear the testimony on.

 5        MS. AUERBACH:  Okay.

 6        THE COURT:  If there are any really significant

 7   exhibits that you want a determination on in advance, I would

 8   have hoped you would have brought those in motions in limine.

 9        MS. AUERBACH:  Your Honor, part of the problem was

10   that we had agreement on a couple of those, and then we just

11   learned that that agreement no longer exists.

12        THE COURT:  If there was agreement in the final

13   pretrial order and now there is not, that is a problem.

14   Because if you agreed and you filed it with the Court and you

15   said there was no objection, that is a problem.

16        MR. HALE:  Okay.

17        THE COURT:  It is like trying to get me to revise

18   rulings I have already made.

19        But if you have made representations and filed them

20   with the Court that there is no objection and now you are

21   trying to back off of that, you better have a really good

22   reason.

23        MR. HALE:  Okay.

24        THE COURT:  Because that is not fair to anybody

25   because then you are just creating more work.  And when you

```
 1   file something with the Court, everybody should be able to

 2   rely on it.

 3           MS. AUERBACH:  Your Honor, one of the other questions

 4   that I have is we had agreed that for purposes of opening

 5   statements, that anything that is an admitted exhibit could be

 6   shown during openings.

 7           THE COURT:  You had agreed to that?

 8           MS. AUERBACH:  We -- thinking that you would have

 9   made a pronouncement as to what was admitted or not.  So --

10           THE COURT:  That means you cannot use it in openings.

11           MS. AUERBACH:  Okay.

12           THE COURT:  I cannot rule on --

13           MS. AUERBACH:  I understand.

14           THE COURT:  -- these on a vacuum.  You do not want me

15   to rule on these in a vacuum.

16           MS. AUERBACH:  I understand.

17           THE COURT:  I need to hear the foundational

18   testimony.

19           MS. AUERBACH:  Okay.

20           But if it was not objected to in the original

21   pretrial, then we can deem any of those admitted?

22           THE COURT:  If it is not objected to and you are now

23   objecting to it, you better have a really good reason.  I have

24   not seen the revised exhibit list, but you better have a

25   really good reason.
```

 1          MR. HALE:  Okay.

 2          MR. JEBSON:  Judge, for the opening --

 3          THE COURT:  So, if you come in with 30 new exhibits

 4  that you did not object to and now you are objecting to, I can

 5  tell you right now that you do not have a good reason for all

 6  30 of those.

 7          MR. HALE:  Understood.

 8          THE COURT:  If there is one that slipped through for

 9  some reason, then I will entertain it.  But otherwise, that is

10  not fair.

11          MR. JEBSON:  There's three autopsy pictures that we

12  plan on using in the opening, and we brought copies today.

13          THE COURT:  Are those ones that I have ruled on

14  already?  Because I ruled on some of the autopsy pictures.

15          MS. MOGUL:  Right.  And I believe, your Honor, the

16  ruling -- and if I'm wrong, I apologize.  My memory was you

17  agreed to various parts of the clothing that were part of the

18  post-mortem exam.  They want to show pictures of the neck,

19  which you had not ruled on yet.

20          THE COURT:  I believe the neck was under advisement

21  because the argument was that it was relevant based on the

22  evidence that was going to come in, and I could not make that

23  determination because I do not know -- I could not make a

24  relevance determination without hearing what some of the

25  evidence was.

 1          MR. JEBSON:  So, on those, we can't -- you will not
 2    be making a ruling on those?
 3          THE COURT:  Unless you are in agreement on the
 4    dispute.  And I cannot remember the particular dispute, but
 5    there was a representation that one witness was going to say
 6    something in particular.  I ruled on this a long time ago, so
 7    I am going off of memory.
 8          MR. JEBSON:  Because this is -- I'm sorry.
 9          THE COURT:  But if I have not ruled on it and it is
10    not admitted, unless you have agreement from the other side,
11    you cannot use it in opening.  You can make the argument, but
12    you cannot use the exhibit in opening.
13          And it sounds like you are in agreement that if I
14    have ruled on it and it is coming in, you can use it in
15    opening.  It sounds like you have reached that agreement.  You
16    are all shaking your heads "Yes."
17          MS. AUERBACH:  We have, yes.
18          THE COURT:  Okay.
19          MR. HALE:  One other --
20          THE COURT:  Do you agree with that, Mr. Hale?
21          MR. HALE:  I do.
22          THE COURT:  All right.
23          MR. HALE:  One other thing on the exhibits.  I know
24    from the transcript last time you said you didn't need
25    impeachment-type materials or refreshing recollection

 1    materials.  The vast majority of our exhibits are all marked

 2    for identification purposes only, which includes refreshing

 3    recollection or impeachment.

 4            THE COURT:  Deposition transcripts, et cetera.

 5            MR. HALE:  Or even police reports or, you know -- I

 6    mean, virtually everything other than photographs and -- I

 7    mean --

 8            THE COURT:  I think there was some police reports

 9    that you marked for exhibits, not for just impeachment or

10    refreshing purposes.

11            MR. HALE:  That is true.

12            So -- but anything that we marked as identification

13    only, you're saying you don't need?

14            THE COURT:  I do not need.

15            MR. HALE:  Okay.  I just wanted to be clear on that.

16            THE COURT:  I do not need.

17            MR. HALE:  Okay.

18            THE COURT:  I may need to see it during the trial if

19    there is an objection, but I do not need to see that in

20    advance.

21            MS. MOGUL:  Can I raise an issue with respect to

22    exhibits around police reports, your Honor?

23            THE COURT:  Yes.

24            MS. MOGUL:  You know, we -- there's been a change in

25    the parties' positions on this.  They originally listed

1    exhibits which we objected to as hearsay.  We believe they're

2    still hearsay when introduced by the defendants.  We are now

3    going to seek the introduction of 14 police reports.  Not the

4    24 that the defendants have sought, but 14 that originally we

5    listed as impeachment evidence but not as substantive

6    evidence.  We are now going to move them in as substantive

7    evidence as party opponent admissions.

8              THE COURT:  Do they overlap with any of the 24 that

9    the defendants identified?

10             MS. MOGUL:  They all overlap with what they have

11   sought.

12             THE COURT:  14 is a smaller subset of --

13             MS. MOGUL:  Yes.

14             And they were all -- I mean, they were all listed as

15   impeachment, not as substantive.

16             THE COURT:  But the defendants listed them as

17   exhibits?

18             MS. MOGUL:  Yes.

19             THE COURT:  I assume if you listed them as exhibits,

20   you are not going to object to them coming in.

21             MR. JEBSON:  Judge, I believe that your order was for

22   us to submit a list of any police reports that we're going to

23   seek for substantive evidence.  And we filed something saying

24   that we're not going to seek any police reports.

25             THE COURT:  But they were -- Mr. Hale just

 1    contradicted that a moment ago because I said I thought you

 2    had some that you were going to seek for substantive evidence.

 3           MR. HALE:  I think in the original pretrial order we

 4    did.

 5           THE COURT:  Okay.

 6           MR. HALE:  Didn't we?

 7           MR. JEBSON:  Yeah, but then I think you issued an

 8    order saying that for us --

 9           THE COURT:  But I thought he just said you were still

10    going to seek admission of some.

11           MR. HALE:  No, no.  I was agreeing that they were

12    listed that way originally.

13           THE COURT:  So, if you want to seek -- because the

14    law surrounding police reports is a little more complicated

15    under the rules, I am going to have you file something with

16    supporting documentation if you are objecting to the admission

17    of them.

18           MS. AUERBACH:  You would like us to file --

19           THE COURT:  File a motion to admit the police reports

20    and attach which ones you want to admit, because reports often

21    have layers of hearsay within them.

22           MS. AUERBACH:  Okay.

23           THE COURT:  So, if you have a police report of an

24    interview of somebody who is not a party -- there is going to

25    be hearsay within it -- I want you to submit to the Court

```
 1    exactly what it is you seek to admit --

 2            MS. AUERBACH:  Okay.

 3            MS. MOGUL:  Okay.

 4            THE COURT:  -- with supporting memo.

 5            And I would like that by Monday, the 16th, and then

 6    your response by Thursday, the 19th.

 7            MR. HALE:  Can I ask another logistical question?

 8            THE COURT:  Yes.

 9            Just one more thing.  I have addressed it to a small

10    extent in my rulings on the deposition designations because it

11    came up a bit there, but flesh out the law on it.

12            MR. HALE:  You had mentioned in -- last time that you

13    give some initial instructions to the jurors.  Does that

14    include things like the plaintiff has the burden of proof and

15    that's why they go first?  Or if we propose something like

16    that, can -- you said we could -- you'd entertain something if

17    we submitted it or agreed to it.

18            THE COURT:  I will think about it.  I have a set.

19    Some of it is written, some of it is just in my head of what I

20    tell them.  I will tell them the plaintiff has the burden of

21    proof; that it is a preponderance of the evidence, which is

22    not beyond a reasonable doubt.  I will tell them just the

23    basic stuff in terms of they cannot have contact with you.  I

24    mean, you have tried a case before me.

25            MR. HALE:  Yes.
```

```
 1              THE COURT:  And Mr. Jebson certainly has a couple.

 2              So, if there is something you are worried I am going

 3   to miss that you really want me to say to them, you can let me

 4   know.  But my initial instructions to them during the course

 5   of jury selection and once they are sworn in and seated are

 6   pretty thorough and try to give them a full explanation of

 7   what it's about.

 8              MR. HALE:  One last issue -- and this is something

 9   maybe we can just continue to talk about.  We've been having a

10   discussion about -- for the opening -- what is considered a

11   demonstrative, you know, and what has to be --

12              THE COURT:  You are kidding me.

13         (Laughter.)

14              MR. HALE:  We -- we don't think --

15              THE COURT: Seriously?  You are all so experienced.

16              MS. AUERBACH:  No, I don't -- I'm not aware --

17              MR. HALE:  Well, I don't think -- there's no

18   confusion --

19              MS. AUERBACH:  -- of the specific issue.

20              MR. HALE:  -- on our end.

21              THE COURT:  See if you can work that out.  If I have

22   to bring you in here and teach you what a demonstrative is --

23              MR. HALE:  Yeah.  To be clear, I think --

24              THE COURT:  -- it is going to be very disappointing.

25              MS. AUERBACH:  I'm not sure that we disagree.  I
```

```
 1   thought I agreed with you yesterday.

 2             MR. HALE:  Perhaps we do.

 3             THE COURT:  If you cannot work it out, you can let me

 4   know.

 5             MR. HALE:  Okay.

 6             That's all I have, your Honor.

 7             THE COURT:  While I have you all here, too -- and I

 8   do not know that I reminded you of this at the final pretrial;

 9   but, given your last comment, I am going to remind you of it.

10   And I know I inherited this case earlier this year and late in

11   the game, but you probably know from my comments, and you

12   probably know from appearing before me, and you probably know

13   from my reputation -- but if you don't know, I will make it

14   clear -- I really do not like bad behavior in the courtroom.

15   I really do not like you being unprofessional to each other.

16   Some of the briefs I got in this case with the snarkiness and

17   the personal attacks, completely unacceptable.

18             I know all of you and all of your abilities, and I

19   will not be happy if you try to pull that in the courtroom.  I

20   will not allow it to happen.  If it continues, I will call you

21   out in front of the jury.  And you do not want me to do that.

22   I do not want to do that.

23             So, I fully expect you to be professional.  Advocate

24   for your clients, do what you need to do, but do it on a

25   professional manner.  Because I really do not have tolerance
```

1  for that kind of snarky unprofessionalism.

2          I will say no more.  I do not think I have to, to

3  you.  But you are on full notice that that will not fly here.

4          MS. AUERBACH:  Your Honor, we have a couple of

5  things.

6          Number one, I alerted the defendants yesterday that

7  one of the witnesses that we thought would come live, which is

8  Diante Dancy, is out of the jurisdiction and will not.  And,

9  so, we intend to designate his video deposition.  And I think

10  that defendants were okay with exchanging --

11          THE COURT:  Is he the one at college?

12          MS. MOGUL:  Yes.

13          MS. AUERBACH:  Yeah.

14          MR. HALE:  We agreed to do that.

15          MS. MOGUL:  So, we're sorry that we missed your date,

16  but this is something that we learned since the last pretrial

17  and the date you asked us to give the deps.

18          THE COURT:  Do you think you are going to agree to

19  all of these designations or --

20          MS. AUERBACH:  Of course, because now you just told

21  us we have to get along.  No.

22      (Laughter.)

23          MS. AUERBACH:  I think it's unlikely that we'll

24  entirely agree.

25          THE COURT:  Okay.

1              Then file by Tuesday, in the same format that you did

2    before -- so, it is the color coded, and it is easy for me to

3    follow that -- your deposition designations for his

4    deposition -- file them the 17th and, then, give me the full

5    transcript.

6              I will tell you from having ruled on the other two

7    designations, that sometimes an "objection, hearsay" is all I

8    need.  But if it is a more complicated evidentiary issue, if

9    you give me two words, if you want -- it is something you

10   really care about, you may want to give me more supporting

11   law.

12             MS. AUERBACH:  Fair enough.

13             And, so, to that end -- and I'm very cognizant of not

14   encroaching on asking you to revisit decisions that you've

15   made -- there's a couple of issues with respect to the dep

16   designations that I wanted to see if you'd be amenable to me

17   raising --

18             THE COURT:  I will not.

19             MS. AUERBACH:  -- right now.

20             THE COURT:  I will not.  I based it on your

21   submissions to the Court.  I personally did those.  I spent a

22   lot of time on those.

23             MS. AUERBACH:  Understood.

24             THE COURT:  And if your objections were not thorough

25   enough or did not give me support in law, then that is what

1    you have to live with.

2              MS. AUERBACH:  So, one of the issues I want --

3              THE COURT:  And one of the reasons in this case in

4    particular, since I took this over, I have probably ruled on

5    over 70 motions.  We are not --

6              MS. AUERBACH:  Understood.

7              THE COURT:  The minute I let one of you start doing

8    it -- we are not going down that route.

9              MS. AUERBACH:  Okay.

10             That probably then takes -- there was one other --

11   one of the questions -- I'm not asking you to revisit your

12   ruling, but when certain stuff comes out, it kind of orphans

13   other things that were designated.  And, so, I was curious if

14   you would be amenable to, you know, us submitting, like, three

15   or four lines around something.

16             THE COURT:  Not unless you agreed to it.

17             MS. AUERBACH:  Okay.

18             MR. HALE:  She asked me, and I didn't agree.  I

19   didn't think it was necessary.

20             THE COURT:  You did?

21             MS. AUERBACH:  Did not.

22             MR. HALE:  She asked me this morning if I'd agree,

23   and I said I don't agree.

24             THE COURT:  No.

25             MS. AUERBACH:  Okay.

```
 1              THE COURT:  Those are time consuming.  That takes up
 2    quite a bit of time for the Court to go through those --
 3              MS. AUERBACH:  Understood.
 4              THE COURT:  -- to read the whole deposition.  If you
 5    did not put something in the first round, you have got to live
 6    with it.
 7              MS. AUERBACH:  Okay.  Thank you, your Honor.
 8              Can we have those videos then made?
 9              THE COURT:  Those are final rulings.
10              MS. AUERBACH:  Great.
11              THE COURT:  So, yes, you can, and you should.
12              MS. AUERBACH:  Okay.
13              THE COURT:  What else from you before we turn to --
14              MR. HALE:  Nothing from the defendants, your Honor.
15              THE COURT:  Okay.
16              So, let's go -- I am sorry, did you have anything
17    else --
18              MS. MOGUL:  No, we don't, your Honor.
19              THE COURT:  -- from the plaintiffs?  All right.
20              Let's go to jury instructions.  I want to start with
21    your new instructions.
22              So, plaintiff's -- bear with me a second here.  I
23    have got a lot of notes and paper.
24         (Brief pause.)
25              THE COURT:  Plaintiffs have submitted a new state law
```

1  conspiracy.

2          Ms. Mogul, I am going to ask you again if you would

3  please keep track of the Court's changes, because then I am

4  going to have you e-mail a full set to Suzanne --

5          MS. MOGUL:  Okay.

6          THE COURT:  -- with all of the changes.  There will

7  be some under advisement, but I will make the changes from

8  there.

9          MS. MOGUL:  Okay.

10          THE COURT:  So, the new state law conspiracy

11  proposal, the defendants -- and this is Plaintiff's Proposed

12  36.  The defendants had three objections.  The first objection

13  was to the last line of the first paragraph, which reads:

14  "The principal element of a conspiracy is an agreement to

15  accomplish an unlawful purpose or to accomplish a lawful

16  purpose by unlawful means."

17          I am overruling your objection.  I am including that

18  language.  That is an exact statement of the law.  I am

19  looking at Adcock vs. Brakegate, 164 Ill.2d 54, a 1994

20  Illinois Supreme Court case that is cited all the time.  I

21  will give that language.

22          The next objection is to the last line in Paragraph

23  1:  "Direct proof of such an agreement -- " this is the

24  paragraph that's numbered No. 1 as opposed to the first

25  paragraph, the first element.  The last line:  "Direct proof

1   of such an agreement, however, is rarely available since

2   conspiracies are by their very nature secretive."

3          I am sustaining the objection to that.  That is

4   argumentative.  You are free to argue that, but that is not

5   going in the jury instruction.

6          The final objection is -- well, the second to last

7   objection is to the fourth element:  "As a result, plaintiff

8   was maliciously prosecuted and/or had emotional distress

9   intentionally inflicted upon her as defined in the

10  instructions for these claims."

11         Defendants had given some different proposed

12  language.

13         I am going to give a modification of 4 that I think

14  makes more clear what I am referring to.  So, the fourth

15  element will read:  "As a result, plaintiff was maliciously

16  prosecuted and/or had emotional distress intentionally

17  inflicted upon her as -- " and this is what I am adding " -- I

18  have already defined for you in the instructions for these

19  crimes -- " "as I have already defined for you in the

20  instructions for these claims."

21         MS. AUERBACH:  "For these claims," your Honor?

22         THE COURT:  Claims.

23         MS. AUERBACH:  Okay.

24         THE COURT:  I said "crimes" first of all, but I

25  misread it.  It is "claims."

1          MS. AUERBACH:  Okay.

2          MS. MOGUL:  Wait.

3          THE COURT:  I know it did say "claims."

4          MS. MOGUL:  "I've already defined for you -- "

5          THE COURT:  "In the instructions for these claims."

6          MS. MOGUL:  Got it.  Thank you.

7          THE COURT:  And, then, the last issue that I'm going

8   to keep under advisement just a bit is the "willful and

9   wanton" language and whether to add.  I do not think that is

10  coming in, but I will give you a final ruling on that at some

11  point when we revisit jury instructions.

12         So, that takes care of the state conspiracy law.

13         The certificate of innocence, you have backed off of

14  your earlier agreement and are asking for a different proposed

15  instruction.  Why is it that you are now backing off of or

16  trying to back off of your prior agreement?

17         MR. JEBSON:  Because the original one I do not think

18  accurately informs the jury about what exactly the certificate

19  is, what effect it has.  And I think because of that, it can

20  lead the jury to make the wrong conclusions, which would be

21  unfairly prejudicial to the defendant.

22         THE COURT:  As of now, the other one will stand and I

23  will look at this closer throughout the trial when I see how

24  the evidence is coming in.

25         MS. MOGUL:  And, so, is this the one we sent in with

```
 1   the revision to Defendants' 11?

 2           THE COURT:  This is Defendants' Proposed Jury

 3   Instruction No. 11-A.  No.  And there is an 11-B.  They gave

 4   two.  I did not get a new one from you.

 5           MS. MOGUL:  Okay.  I'm sorry.  I thought I did file

 6   something.

 7           So, let me be clear, your Honor.  Originally they

 8   filed an 11, and then they filed an 11-A.

 9           THE COURT:  Yes.

10           MS. MOGUL:  Now they're submitting an 11, 11-A and

11   11-B.

12           THE COURT:  Right.

13           MS. MOGUL:  You asked us at the last pretrial to

14   consider, you know, that we had to agree to one.  So, we took

15   their 11 and we revised the 11 slightly.  So, we definitely

16   stand on our objections to 11-A and 11-B.

17           THE COURT:  Can you tell me the docket number for

18   your revised --

19           MS. MOGUL:  Yes.

20           THE COURT:  You know what?  I do have that.  I am

21   sorry.  I just looked at it -- it says "Defendants' Jury

22   Instruction No. 11" -- and did not read what was behind it,

23   plaintiff's revisions to it.

24           MS. MOGUL:  Right.

25           THE COURT:  Okay.
```

1          So, I am going to hold off on this until I hear the

2    evidence.

3          And if I have kept something under advisement,

4    Ms. Mogul, if you would just write that on the jury

5    instruction that you send back to the Court --

6          MS. MOGUL:  Sure.

7          THE COURT:  -- so I know it is still under

8    advisement.

9          MS. HOFT:  Just as a point of clarification, which

10   one?  Now we have, like, five versions of 11.

11         THE COURT:  We have four versions.  I previously

12   ruled on one.  You can include the various versions that they

13   are under advisement.

14         MS. HOFT:  Okay.

15         THE COURT:  So, the next one is Defendants' 12,

16   criminal conviction vacated.  I am not going to give this

17   because I do not think it is an accurate summary of the Harris

18   vs. Thompson habeas opinion.

19         The Seventh Circuit reversed the decision of the

20   district court and remanded with instructions to grant a writ

21   of habeas unless the state elects to retry Harris within 120

22   days.  I do not think this is an accurate statement.  So, I am

23   not going to give Defendants' 12.

24         Plaintiff's 36, presence of the parties and their

25   counsel.  I am not going to give this in the final

1    instructions, but that will be one of the things I tell the

2    jury in my introductory comments -- that there will be lawyers

3    and people coming in and out of the courtroom, including at

4    counsel table, and they should not take that one way or the

5    other; and, that I will add the parties may come and go, as

6    well.

7         But I am not going to give that.  I do not think that

8    is a formal instruction for the end of the case.

9         MS. MOGUL:  Okay.

10        THE COURT:  Same with Plaintiff's 37.  This will all

11   be covered in my initial comments to the jury.

12        MS. MOGUL:  That's fine, your Honor.  Okay.

13        THE COURT:  So, those are my rulings on the new

14   instructions.

15        And, then, I want to go back to the old instructions

16   just a bit.

17        MR. JEBSON:  Can I ask you a quick question?

18        THE COURT:  Yes.

19        MR. JEBSON:  So, the certificate of innocence, I

20   believe -- I may be wrong about this -- all the different

21   versions have one thing in common -- that it's not binding.

22   So, I believe that the plaintiff is going to make a huge deal

23   in the opening statement about this.

24        So, would I be permitted to simply say that you'll be

25   instructed that it is not binding on them without -- I know

1    you haven't ruled on anything else --

2              THE COURT:  That is in all of them.

3              MR. JEBSON:  Right.

4              THE COURT:  I believe even in the one that was

5    originally agreed to and in plaintiff's proposal.  And it is

6    true.  You may say that.

7              MR. JEBSON:  Thank you.

8              MS. MOGUL:  Okay.  I just -- your Honor, I just want

9    to add going through -- I filed the new ones and the ones you

10   asked us to revise on the docket, but then I tried to send to

11   you both all of them in Microsoft Word to make changes, which

12   I understand is my obligation.

13             THE COURT:  Yes.

14             MS. MOGUL:  But I forgot the original Defendants' 11

15   on the CUI when I did that.  So, when I redo it, you want me

16   to send everything again or just the specific ones?

17             THE COURT:  What is easiest for you?

18             THE LAW CLERK:  Do you have the first 11?

19             MS. MOGUL:  Yeah.  Can I just send that to you

20   separately?

21             THE LAW CLERK:  Yeah, separately.

22             MS. MOGUL:  Okay.  Thank you.

23             I didn't realize it till today.

24             THE COURT:  Okay.

25             One of the issues that is prevalent throughout many

1   of these jury instructions is whether or not this is about a

2   coerced confession or about fabricated evidence or both.

3   Fabricated evidence is a separate claim from coerced

4   confession.  And going back to one of my very first orders in

5   the case back in March, it was discussed that there is a

6   fabricated evidence claim.

7            So, I am going to wait and see what the evidence is,

8   if the evidence supports fabricated evidence in addition to

9   coerced confession; and, if so, I will give the instructions

10  along those lines.  Based on the little bit I have seen, I am

11  guessing there will be sufficient evidence to support both of

12  those.  But I will wait and see what it says.

13           But if the evidence supports, then I will give --

14  modify the instructions to make clear that this is about a

15  coerced confession, as well as a fabricated evidence claim.

16  It was raised, as I said, in one of the first orders the Court

17  ruled on in this case.  And we talked about this throughout.

18  So, I am a little surprised there is a dispute over this.  But

19  I do not know the evidence like you know the evidence.  So, I

20  will wait and see.

21           The other issue that I want you to help clarify for

22  me along those same lines is, there is a dispute over is this

23  about a coerced confession or coerced interrogation or both,

24  and are they -- enlighten me if you would, please, Ms. Mogul,

25  because that is another theme that has come up in the jury

1    instructions.

2           It seems to me that your argument is about a Fifth

3    Amendment coerced confession and a due process fabricated

4    evidence, and that you are arguing that the coerced confession

5    was the product of a coerced interrogation.

6           MS. MOGUL:  Yes.

7           THE COURT:  Not that there is separate claims.

8           MS. MOGUL:  Yes, there are separate claims because we

9    believe --

10          MS. HOFT:  Well, there are two claims.

11          MS. MOGUL:  Okay.  There's the due process

12   fabrication claim --

13          THE COURT:  Yes.

14          MS. MOGUL:  -- that there was evidence that was

15   fabricated, which included the ultimate videotaped

16   confession --

17          THE COURT:  Right.

18          MS. MOGUL:  -- as well as additional evidence in this

19   case.

20          THE COURT:  Right.

21          MS. MOGUL:  So, it's not confined just to that

22   videotaped confession.

23          THE COURT:  I understand.

24          MS. MOGUL:  Okay.

25          THE COURT:  I understand.  I have not seen the

```
1    evidence, but I understand that is what you are arguing,
2    including police reports, et cetera.
3              MS. MOGUL:  Right.
4              And, then, we're bringing this Fifth Amendment claim
5    that it's applicable through the 14th Amendment, right?
6              THE COURT:  Right.
7              MS. MOGUL:  That she was coercively interrogated and
8    resultingly gave a -- relented, her will was overborne, and
9    she gave that coerced confession.  So, they are distinct
10   claims.
11             MS. AUERBACH:  Not the coercion claims.
12             THE COURT:  Yes.
13             MS. AUERBACH:  I had a feeling that that's what you
14   were getting at, your Honor.  There's not two separate
15   coercion claims.
16             MS. MOGUL:  Oh, no, no.
17             THE COURT:  That was my question.
18             MS. AUERBACH:  We don't have a claim for coercive
19   interrogation as a separate and distinct --
20             MS. MOGUL:  Right.
21             MS. AUERBACH:  -- cause of action.
22             THE COURT:  Because I have done some research and I
23   did not see anything really supporting that that would be --
24             MS. MOGUL:  No, no.
25             THE COURT:  -- separate from the Fifth Amendment.
```

```
 1              MS. HOFT:  We will call it coercive interrogation.
 2    They call it coerced confession.
 3              THE COURT:  Okay.
 4              Why do you call it coerced interrogation versus
 5    coerced confession?
 6              MS. AUERBACH:  I think we call it a coerced
 7    confession.
 8              THE COURT:  Or do you call it both?  I have seen you
 9    use it interchangeably.
10              MS. MOGUL:  It is -- you're right.  I guess, you
11    know, we generally call it a coercive interrogation,
12    understanding that there needed to be a confession because
13    we're looking at the course of the interrogation here.
14              THE COURT:  For jury instruction purposes, isn't it
15    the coerced confession that makes it the Fifth Amendment
16    violation?
17              MS. MOGUL:  It does.
18              THE COURT:  That you are going to argue they coerced
19    the confession based on the coercive interrogation tactics and
20    other issues?
21              MS. MOGUL:  It's true, your Honor.  And we would
22    agree.
23              And I guess at this point I understand that they've
24    objected.  We've always called it coercive interrogation
25    claim.  But if you want to call it a coerced confession claim,
```

1  that's fine.

2         THE COURT:  It seems like that is what you are asking

3  for.  I think under the law, that is probably a little more

4  appropriate.

5         MR. JEBSON:  It is.  And, then, there's a sub-issue

6  within that, that goes to whether or not they can -- we say

7  it's a coerced false confession.  And I think last time you

8  ruled that if they are not going to argue that we coerced a

9  true confession, then they're not entitled to that

10  instruction.  But if they do argue that the office- -- the

11  detectives coerced a true confession, then that would be the

12  instruction.

13         THE COURT:  And that is what I am going to have to

14  wait and see what happens in trial, what comes out; but, yes.

15  Thank you for reminding me of that.

16         MS. MOGUL:  I know you've considered this.  Honestly,

17  you know that our argument is this was a false confession.  No

18  question.  But we do believe that under the law, it does not

19  matter whether it's a true or false confession.  And in this

20  case, I mean, we will be arguing that she was coerced in

21  giving this false confession, but they're going to be arguing

22  she's guilty.

23         THE COURT:  Right.

24         MS. MOGUL:  Now, we could have some jurors who aren't

25  sure.  I hope that's not the case.  I hope they understand our

1    client's innocent.  But she could still prevail on a coerced

2    confession claim even if some jurors believe the confession is

3    true or some believe it's false.

4         THE COURT:  Do you agree with that as a legal

5    principle, that there can still be a coerced confession even

6    if it is true --

7         MR. JEBSON:  I do think --

8         THE COURT:  -- or just this evidence is not going to

9    support that?

10        MR. JEBSON:  Exactly.

11        THE COURT:  Okay.

12        So, it is an evidentiary issue for you --

13        MR. JEBSON:  Yes.

14        THE COURT:  -- not a legal issue?

15        MR. JEBSON:  Right.

16        THE COURT:  That's why I will keep that under

17   advisement.

18        MS. HOFT:  I think the reason why we call it coercive

19   interrogation, though, is to focus on the misconduct that

20   we're claiming.  And the constitutional violation is --

21        THE COURT:  But the constitutional violation is the

22   confession if it is a Fifth Amendment violation --

23        MS. HOFT:  Right.

24        THE COURT:  -- which is what it has been from the

25   beginning.  You got there -- your argument is the defendants

1    did this through the coercive interrogation techniques, but

2    the violation itself is the confession -- the Fifth Amendment

3    confession -- that she is --

4            MS. HOFT:  Right, but I don't think -- the Fifth

5    Amendment talks about self-incrimination, right, not

6    confessions.

7            THE COURT:  But it is the -- right, the Fifth

8    Amendment is privilege against self-incrimination.  But the

9    constitutional claim here is that the confession is what the

10   violation is.  True or false, it is the confession that is the

11   violation, not the interrogation tactics.

12           MS. MOGUL:  Right.  I mean, in Chavez vs. Miranda, it

13   says the confession must be admitted in order --

14           THE COURT:  Yes.

15           MS. MOGUL:  -- to have a claim.

16           THE COURT:  Yes.

17           MS. MOGUL:  We understand that.

18           THE COURT:  Okay.  I just wanted to make sure I was

19   clear.

20           So, the claim is for the coerced confession,

21   obviously through coercive interrogation techniques.  Whether

22   or not it is true, false, I will keep that under advisement

23   until I hear what the evidence is.

24           MS. MOGUL:  So, with respect to 1.25, I think that

25   was the multiple parties issue.

1          THE COURT:  Yes.

2          MS. MOGUL:  We included that in our issues

3    instruction, which I believe is our Plaintiff's Proposed 19 at

4    the end.

5          THE COURT:  And I assume there is no objection to the

6    Pattern 1.25, the multiple defendants?

7          MR. JEBSON:  No.

8          THE COURT:  I will give that separately --

9          MR. JEBSON:  Yes.

10          THE COURT:  -- from Plaintiff's 19.

11          MR. JEBSON:  So, it's now not separate?

12          THE COURT:  It is now combined with Plaintiff's 19.

13          MR. JEBSON:  Okay.

14          But you're going to give it as a separate

15    instruction?

16          THE COURT:  I am going to give it separate.

17          MS. MOGUL:  And, so -- then, therefore, can we take

18    it out of the road map instruction?

19          THE COURT:  Please.

20          MS. MOGUL:  Okay.

21          THE COURT:  Did you agree on the -- so, I think the

22    only issue left on the road map is what we just talked about.

23    So, we will have to wait for the evidence to see if there is

24    support for the fabricated evidence claim.

25          MR. JEBSON:  There is one other small issue.

 1          THE COURT:  What is that?

 2          MR. JEBSON:  It's the defense position that the

 3   plaintiff did not plead the federal conspiracy count.  So, the

 4   complaint has a state law conspiracy count but does not have a

 5   federal conspiracy count.

 6          THE COURT:  And I am not persuaded by that, given --

 7   I went back and looked.  Paragraph 119 of the complaint spells

 8   out the federal conspiracy claim.  And even though it may not

 9   have been in a separate count, you know the Seventh Circuit

10   law is very clear on that, that it does not have to be.

11          But because you were on notice and it is in the

12   complaint, there is no prejudice.  And it is very similar to

13   the state conspiracy.  So, I am overruling that particular

14   objection.

15          So, I will keep the rest, as I said -- the parties

16   and claims -- under advisement.

17          The Plaintiff's 20 that you revised, denial of a fair

18   trial, I will give Plaintiff's 20 with defendants' two

19   proposed modifications; and, those two modifications were:  In

20   the first element, "The defendant knowingly fabricated or

21   knowingly participated."  I do not know that that is a hundred

22   percent necessary, but it is clear that both have to be

23   knowingly.  So, in order to make the sentence parallel, I will

24   add the "knowingly" in there.

25          And, then, the paragraph, "If you find that plaintiff

1    Harris has proved each of these," I will add "three things" in
2    there since there are three elements.
3           So, I will give Plaintiff's 20 with defendants' two
4    additions.
5           The coercive interrogation claim, I think we can now
6    call this a coercive confession claim.
7           MS. MOGUL:  Yes.
8           THE COURT:  I do not leave these subtitles -- or
9    these titles on there anyway.  So, that is not going to go
10   back -- or I will not instruct on that.
11          I do not know that there is anything else to change.
12          MR. JEBSON:  It was just you're going to decide
13   whether or not to put "false confession."
14          THE COURT:  That is the only thing that I said I had
15   to keep under advisement.  But I think everything else is okay
16   here other than the "false" aspect.
17          MR. JEBSON:  Is it going to be changed that the
18   plaintiff made -- instead of incriminating statements, it will
19   be either a false confession or a confession, whatever you
20   rule?
21          MS. MOGUL:  Well, your Honor, I mean --
22          THE COURT:  That is a separate issue.
23          MS. MOGUL:  Right.  I think we maintain it should
24   still be "incriminating statements."
25          MR. HALE:  All the incriminating statements all

1    revolve around the confession, though.

2            MS. MOGUL:  But in this case, you'll hear evidence,

3    your Honor -- and this pertains to the police reports we're

4    submitting, as well -- is -- regarding they're claiming she

5    made statements up into and leading to the ultimate videotaped

6    confession.

7            THE COURT:  But what was used -- they have to be used

8    against her in the criminal case.

9            Were there other statements she made beyond the

10   incriminating -- beyond the confession that were used against

11   her at trial.

12           MS. MOGUL:  Yes.  This course of the interrogation

13   and statements they claim she made did come in at trial.

14           THE COURT:  Via the video confession or separate?

15           MS. MOGUL:  Via testimony of the officers.

16           MS. HOFT:  Separate from --

17           MR. JEBSON:  But all relate to the confession,

18   though.

19           THE COURT:  Okay.  I will have to see the evidence.

20           So, under advisement on the coercive confession

21   instruction is incriminating statements versus confession and

22   true versus false.

23           The federal conspiracy claim, I will give with the

24   same modifications as to the state conspiracy claim.  So, the

25   language at the end of the first element, "direct proof of

1    such an agreement, however, is rarely available since

2    conspiracies are, by their very nature, secret," I am

3    sustaining objection.  That should come out.  And, then, the

4    same modification on Paragraph 4.

5            Malicious prosecution.  The defendants are arguing

6    that I should include a "willful and wanton" element as an

7    instruction here.  I have not found support in the law for

8    that.  So, if you have any case law that supports that willful

9    and wanton is an element of malicious prosecution, file

10   something with the Court by Tuesday to support that.

11           MR. HALE:  Okay.

12           THE COURT:  The "malice," I think, covers it.  But if

13   you think there is something separate besides malice, a

14   willful and wanton separate element, I am going to need to see

15   support.

16           The definition of "malice," I am going to keep that

17   under advisement.

18           The definition of "probable cause."  The last line

19   you have -- "mere suspicion of guilt is not sufficient" --

20   where is that from?

21           MS. MOGUL:  That is, I believe, from the jury

22   instruction with respect to false arrest.  I mean --

23           THE COURT:  The definition of "probable cause" for

24   malicious prosecution is different than for false arrest.

25           MS. MOGUL:  Absolutely.  And appreciate the Court's

1   direction on this.  It requires more, right?  It's less.

2          But, you know, if you can't have a false arrest based

3   on mere suspicion, then you certainly can't have a prosecution

4   based on mere suspicion.  I mean, that's what the Court in

5   Holmes vs. Village of Hoffman Estates, I believe, states.  You

6   know, it's one thing to make an arrest on the street in a

7   split-second situation.  It's another thing when you get back

8   to your station and you have time to reflect on what the

9   evidence exists in bringing that charge.  And that's why it's

10  very crime specific and you have to --

11          THE COURT:  It is very crime specific, yes.

12          MS. MOGUL:  Yes.

13          THE COURT:  Yes.  You have to have probable cause to

14  believe he committed that crime.

15          MS. MOGUL:  Right.

16          THE COURT:  All right.  I will keep that under

17  advisement.

18          MR. JEBSON:  Your Honor, did you see what the

19  defendants were offering?  So, if you look at our --

20          THE COURT:  Yes.

21          MR. JEBSON:  Okay.

22          THE COURT:  Yes.  Your Defendants' 6.

23          MR. JEBSON:  No.  I'm talking we offered language

24  different in our objection.

25          THE COURT:  Oh, in your objection.

```
 1              MR. JEBSON:  Yeah.

 2              THE COURT:  Yes.

 3              MR. JEBSON:  We would prefer that than our 6.  We

 4    think that --

 5              THE COURT:  Okay.

 6              MR. JEBSON:  So, we can withdraw our 6, and we'll

 7    offer the language we put in our objection.

 8              THE COURT:  I will consider Defendants' 6 withdrawn.

 9              And your objection to plaintiff's -- to Court

10    Proposed 2 and your response there, I will consider that in

11    place.

12              MR. JEBSON:  Thank you.

13              THE COURT:  The definition of "extreme and

14    outrageous," I am going to have to keep this under advisement,

15    as well, until I see the evidence; in particular, for the last

16    line, that "plaintiff Harris was particularly susceptible to

17    emotional distress because of some physical or mental

18    condition or peculiarity."

19              I need to wait and see what the evidence is, if

20    anything supports that.

21              Your requirement for personal involvement, I am going

22    to keep that under advisement.  There is a failure to

23    intervene claim, so this gets confusing when you have a

24    failure to intervene claim.  But we will revisit that.

25              And I think that is it.
```

1          And the verdict form, I am going to hold off on,

2     although I think we can agree that now we can call it

3     plaintiff Harris coerced confession claim rather than

4     interrogation claim?

5          MS. MOGUL:  Yes.

6          THE COURT:  Okay.

7          That is all I have for you today.

8          MS. MOGUL:  So, tell me what to do now.

9       (Laughter.)

10          MS. MOGUL:  I mean, I understand I'm going to make --

11          THE COURT:  In general or jury instruction specific?

12          MS. MOGUL:  I would appreciate that advice.  Trust

13    me, I could use that.

14       (Laughter.)

15          MS. MOGUL:  I find this -- I've made a few mistakes

16    along the way, and I apologize for the inconvenience.  I'm

17    trying to get this as correct as possible.  But for some

18    reason I had a mental issue.

19          THE COURT:  Here is what I would love if you did.  I

20    do not need you to file anything else unless I gave you

21    specific instruction today to file something by a certain

22    time.

23          MS. MOGUL:  Great.

24          THE COURT:  As to the jury instructions, if you would

25    take the last set in Word that you were working off of, make

 1   these changes to that set.  If something is still under

 2   advisement, keep "under advisement" on the -- just type it in

 3   somewhere on that particular instruction, and then e-mail them

 4   to Suzanne --

 5           MS. MOGUL:  I will.

 6           THE COURT:  -- in a full set like that.  And, then,

 7   we will take over from there.

 8           MS. MOGUL:  Okay.

 9           THE COURT:  Did you get the verdict form e-mailed, as

10   well?

11           So, I have that.  You do not have to do anything else

12   with the verdict form.

13           MS. MOGUL:  Okay.  Great.  Thank you.

14           THE COURT:  Is that clear?

15           MS. HOFT:  Except change the --

16           THE COURT:  And copy --

17           MS. HOFT:  -- phraseology of the --

18           THE COURT:  Yes.

19           MS. HOFT:  -- coerced confession?

20           THE COURT:  Yes, that is true.  Well, we can do that.

21   I can do that.  I am going to have to play with the verdict

22   form anyway.  But I can do that.

23           And copy defense counsel on whatever you send --

24           MS. MOGUL:  Okay.

25           THE COURT:  -- to Suzanne.

```
 1              MS. MOGUL:  When would you like that by?

 2              THE COURT:  When can you get it to me?

 3              MS. MOGUL:  I mean, I'm going to do it tomorrow.  I

 4    am going to just get this done and get it to you.

 5              THE COURT:  Sometime before the end of next week.

 6              MS. MOGUL:  Okay.

 7              THE COURT:  All right.

 8              MS. MOGUL:  Thank you.

 9              THE COURT:  Anything else?

10              MR. JEBSON:  No.

11              THE COURT:  Nothing else?

12              MR. HALE:  Thank you, your Honor.

13              THE COURT:  Anything else from plaintiffs?

14         (No response.)

15              THE COURT:  Now, my next question for you is -- it is

16    October 11th.  We start jury selection on October 26th.  Would

17    you like to come back sometime between now and then, or do you

18    want to come back the morning of the 26th?  If you want to

19    come back between now and then --

20              MS. MOGUL:  I mean, I wouldn't mind coming back

21    earlier, before the 26th, because then we might get into more

22    of the evident- -- the exhibits issues.

23              THE COURT:  Okay.  Hold on.  Let me find a date for

24    you.

25              MS. MOGUL:  We will be back here on the 19th.  Oh,
```

```
 1   no, you can't do the 19th.  Sorry.

 2             THE COURT:  You are?  You are here on something else?

 3             MS. MOGUL:  Yes.

 4             THE COURT:  Yes, you are here on something else.

 5             How about -- would you do the afternoon of the 18th?

 6   2:00 o'clock on the 18th?

 7             MR. HALE:  Sure.

 8             THE COURT:  Is that all right?

 9             MS. MOGUL:  Yeah.

10             THE COURT:  Okay.

11             I will not have more than an hour, but we will do

12   2:00 o'clock on the 18th for any final issues.

13             MS. MOGUL:  Okay.

14             MR. HALE:  Thank you, your Honor.

15             MS. MOGUL:  Thank you.

16             MR. JEBSON:  Thank you.

17             MS. HOFT:  Thank you.

18             MS. AUERBACH:  Thank you.

19                         *     *     *     *     *

20

21   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
22

23
     /s/ Joseph Rickhoff                      October 16, 2017
24   Official Court Reporter

25
```